# Exhibit A

**DAVID A. DILLARD, CA Bar No. 97515**
DDillard@lrrc.com
**CONSTANTINE MARANTIDIS, CA Bar No. 173318**
cmarantadis@lrrc.com
**SAMI I. SCHILLY, CA Bar No. 301653**
sschilly@lrrc.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, California 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Defendant
Delta Scientific Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RSA Protective Technologies, LLC, | Case No. 2:19-cv-06024-JAK-PLA |
| Plaintiff, | **DEFENDANT DELTA SCIENTIFIC CORPORATION'S FINAL INVALIDITY CONTENTIONS** |
| vs. | |
| Delta Scientific Corporation, | |
| Defendant. | **Hon. John A. Kronstadt** |

Pursuant to the Standing Patent Rules for Cases Assigned to Judge John A. Kronstadt ("S.P.R.") 4.2.2, Defendant Delta Scientific Corporation ("Defendant" or "Delta") hereby provides its Final Invalidity Contentions as to claims 1-5, 7, 10, 14-21, 23, 26 and 31-35 (collectively the "Asserted Claims") of U.S. Patent No. 8,215,865 (the "'865 patent"), asserted by Plaintiff RSA Protective Technologies, LLC ("Plaintiff" or "RSA") against Delta in the present action.

## I.    <u>GENERAL RESERVATIONS</u>

These Final Invalidity Contentions are based on information reasonably known and available to Delta at this time. Discovery is ongoing and has not yet closed. Delta reserves the right to supplement and/or revise these Final Invalidity

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-1-

Contentions as additional information becomes available.

These Final Invalidity Contentions may also require subsequent amendment, alteration, or supplementation based on, for example, any additional alleged infringement assertions provided by RSA; any relevant arguments or stipulations made by RSA in this case or any other proceeding or litigation involving the '865 Patent or related patent(s); and any additional prior art or other relevant information learned through the course of fact and expert discovery, which are still ongoing, including references known to the experts and the experts' opinions.

The contentions and disclosures provided below and in the attached exhibits are illustrative of how each reference identified invalidates the asserted claims. By not discussing other portions of the references, Delta does not waive the right to rely on other portions of the reference, and indeed, Delta expressly reserves their right to rely on other portions of the references. Similarly, the obviousness combinations of references provided under 35 U.S.C. § 103 are examples only and are not intended to be exhaustive. Delta reserves the right to use additional obviousness combinations of the references identified in these contentions in this litigation. For example, a secondary reference may be used as a primary reference, and vice versa. In particular, Delta is currently unaware of the extent, if any, to which RSA will contend that any limitations of the asserted claims are not disclosed in the references identified by Delta. To the extent an issue arises with respect to any such limitation, Delta reserves the right to identify other references that would have made obvious the addition of the allegedly missing limitation to the disclosed device, system or method.

Delta's contentions under 35 U.S.C. §§ 102 and 103 are made in the alternative, and should in no way be seen as admissions: (1) as to the proper construction or scope of the asserted claims; (2) that any asserted claims meet the written description, enablement, or definiteness requirements of 35 U.S.C. § 112; (3) that any asserted claims meet the eligible subject matter requirements of 35

-2-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

U.S.C. § 101 or (4) that Defendants waive the right to assert any of the foregoing as bases for invalidity.

## II.    FINAL INVALIDITY CONTENTIONS

### A.    The Identity of Each Item of Prior Art that Allegedly Anticipates Each Asserted Claim or Renders it Obvious

Based on the prior art presently known to Delta, as well as its current understanding of the meaning of the claims and Plaintiff's infringement contentions, Delta identifies the following non-exhaustive list of prior art as anticipating and/or rendering obvious the asserted claims of the '865 Patent:

### 1.    Patents and Patent Publications

| Reference | Country of Origin | Issuance or Publication Date |
|---|---|---|
| US 2004/0033106 ("Turpin") | United States | Feb. 19, 2004 |
| | | |
| US 2006/0090408 ("'408 publication" or "Darcy")[2] | United States | May 4, 2006 (Filed February 9, 2005) |
| 5,836,715 ("'715 patent" or "Hendrix")[3] | United States | November 17, 1998 |
| US 2002/0073876 ("'876 publication" or "Einar")[4] | United States | June 20, 2002 |
| 3,943,540 (the "'540 | United States | January 27, 1976 |

[2] Darcy is a primary reference relied upon in the Petition for Reexamination of the '865 Patent, filed on March 30, 2020 ("Reexam Petition") (Ex. D).

[3] Hendrix is a secondary reference cited in the Reexam Petition (Ex. D).

[4] Einar is a secondary reference cited in the Reexam Petition (Ex. D).

-3-

112614733.3

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

patent" or "Bruner")[5]

## 2. Sales, Offers for Sale, and Public Uses

| Activity or Event | Country of Origin | Date of Anticipating Activity or Event[6] |
|---|---|---|
| Sale and public use of DSCTT203RB bollards installed at Amgen in Thousand Oaks, CA ("TT203R"), sold by Delta | United States | 1997 |
| Sale and public use of DSC800RFB bollards installed at UCLA Health Sci. Bldg. No. 1, Los Angeles CA ("DSC800RFB"), sold by Delta | United States | 2002 |
| Sale and public use of the DSC501 shallow mount barrier ("DSC501"), sold by Delta for installation at the Washington Navy Yard, Washington DC | United States | 2001 |

As to any of the foregoing references that describe a product that was actually in use and/or on sale prior to the priority date of the '865 Patent, Delta

[5] Bruner is a secondary reference cited in the Reexam Petition (Ex. D).

[6] Dates provided are at least as early as the listed year.

-4-

112614733.3

reserves the right to separately rely upon the products themselves and any associated evidence of such prior uses or sales that may be uncovered through the course of discovery, which has not yet closed. The charts attached hereto shall be understood to likewise describe the manner in which Delta would intend to rely upon such prior use or sale evidence.

### B. Anticipation and/or Obviousness

Based on the art presently known to Delta, as well as its current understanding of the meaning of the claims and RSA's infringement contentions, Delta contends that the following references anticipate and/or render obvious to a person having ordinary skill in the art, alone or in combination with other prior art, one or more of the asserted claims of the '865 Patent, as set forth below. For any single reference listed below, Delta's contention is that, to the extent RSA contends any limitation is not expressly disclosed by that reference, such limitation would nevertheless be obvious in view of the teaching of that reference and the knowledge of one of ordinary skill in the art.

| Reference, Activity, or Event | Claims of the '865 Patent | Basis | Exhibit |
|---|---|---|---|
| Turpin | All asserted claims | 35 U.S.C. §102 35 U.S.C. §103 | A |
| Turpin and DSC501 | All asserted claims | 35 U.S.C. §103 | A |
| Darcy | All asserted claims | 35 U.S.C. §103 | D |
| Darcy and Bruner and Einar | Claims 32 and 35 | 35 U.S.C. §103 | D |

-5-

112614733.3

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

| Reference, Activity, or Event | Claims of the '865 Patent | Basis | Exhibit |
|---|---|---|---|
| Darcy and DSC501 | All asserted claims | 35 U.S.C. §103 | D, E |
| DSC800RFB | Claims 1, 3-5, 7, 10, 14-16, 18-23, 26, 31-35 | 35 U.S.C. §102 35 U.S.C. §103 | B |
| TT203R | Claims 1, 3-5, 7, 10, 14-15 | 35 U.S.C. §102 35 U.S.C. §103 | C |

### 1.    <u>Motivation to Combine</u>

Motivation and suggestion to combine one or more of the prior art references with any of the other prior art references, or other references cited below, exists. Generally, motivation and suggestion to combine any of these prior art references with each other exists within the prior art references themselves, as well as within the knowledge of those of ordinary skill in the art. Moreover, the relied-upon prior art references identify and address the same technical issues and suggest very similar solutions to those issues.

Furthermore, the nature of the problem or problems to be solved would have given a person of ordinary skill in the art reason to combine the prior art references, and the modifications or combinations would have had more than a reasonable expectation of success. Moreover, there were a finite number of identified, predictable solutions that had a reasonable expectation of success to lead one of ordinary skill in the art inexorably to the claimed inventions. The claimed inventions were the result of the application of known technical concepts to designs to yield predictable results.

Aside from, or related to, the express teachings, suggestions, and motivations to combine discussed in the cited references, it would have been obvious to one of

-6-

112614733.3

ordinary skill in the art to combine one or more of the prior art references with any other prior art references, or other references cited herein, under the legal standard to determine obviousness under 35 U.S.C. § 103. *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).

In addition, common knowledge of those of ordinary skill in the art can be prior art and may be relied on by Delta by way of testimony or declarations in combination with the above prior art publications and patents. This includes knowledge of well-known technology and various industry practices, standards, and protocols.

Consequently, the Asserted Claims, to the extent that they are not anticipated, would have been obvious.

Exemplary motivations to combine the references are provided in the claim charts attached hereto. Additional motivations to combine, along with evidence supporting these motivations, may still be discovered as discovery has not yet closed, including through outstanding depositions and expert testimony and discovery. Delta further reserves the right to provide rebuttal evidence in response to any contention by Plaintiff concerning Delta's Final Invalidity Contentions, including any rebuttal evidence concerning the existence of a claim element in the prior art, a motivation to modify or combine, a reasonable expectation of success and evidence refuting purported secondary considerations.

**2.    References Relating to the General States of the Art at the Time of the Alleged Invention**

The prior art references identified below and those incorporated by reference as discussed above are illustrative of the general state of the art to which the '865 patent pertains (i.e., what one of ordinary skill in the art would have understood) at a time prior to the date of the alleged invention of the Asserted Claims of the '865 patent.

This prior art is exemplary only, and is not in any way intended to limit the

-7-

112614733.3

scope of what one of ordinary skill in the art would have understood at the times of the alleged inventions. Delta reserves the right to rely upon additional prior art, information, or knowledge to demonstrate what one of ordinary skill would have understood at the time prior to the date of the alleged invention of the Asserted Claims of the '865 patent.

Unless otherwise noted, all patents are United States patents. On information and belief, each listed publication or invention became prior art at least as early as the dates given.

a) **Patents**

| Prior Art | Country of Origin | Date of Issuance |
| --- | --- | --- |
| 1,203,006 A | US | 10/1916 |
| 1,449,518 A | US | 3/1923 |
| 1,969,845 A | US | 8/1934 |
| 2,958,926 A | US | 11/1960 |
| D233,219 S | US | 10/1974 |
| 3,856,268 A | US | 12/1974 |
| 3,934,540 A | US | 1/1976 |
| 4,062,149 A | US | 12/1977 |
| 4,515,499 A | US | 5/1985 |
| 4,576,508 A | US | 3/1986 |
| 4,822,207 A | US | 4/1989 |
| 4,828,424 A | US | 5/1989 |
| 4,934,097 A | US | 6/1990 |
| 5,006,008 A | US | 4/1991 |
| 5,201,599 A | US | 4/1993 |
| 5,354,037 A | US | 10/1994 |
| 5,406,663 A | US | 4/1995 |

-8-

112614733.3

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 5,836,715 A | US | 11/1998 |
| 5,860,762 A | US | 1/1999 |
| 5,961,249 A | US | 10/1999 |
| 6,219,991 B1 | US | 4/2001 |
| 6,341,877 B1 | US | 1/2002 |
| 6,367,208 B1 | US | 4/2002 |
| 6,454,488 B1 | US | 9/2002 |
| 6,702,512 B1 | US | 3/2004 |
| 6,805,515 B2 | US | 10/2004 |
| 7,118,304 B2 | US | 10/2006 |
| 8,215,865 B2 | US | 7/2012 |

b) **Patent Publications**

| Prior Art | Country of Origin | Date of Publication |
|---|---|---|
| 2002/0073876 | US | 6/2002 |
| 2003/0127636 | US | 7/2003 |
| 2004/0033106 | US | 2/2004 |
| 2004/0067104 | US | 4/2004 |
| 2004/0190990 | US | 9/2004 |
| 2005/0201829 | US | 9/2005 |
| 2006/0090408 | US | 5/2006 |
| 2008/0205982 | US | 1/2008 |
| 2008/0038056 | US | 2/2008 |
| 2008/0122756 | US | 5/2008 |
| 2009/0028638 | US | 1/2009 |
| 2009/0035061 | US | 2/2009 |
| 2009/0250674 | US | 10/2009 |

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

112614733.3

### c) Foreign Patents and Publications

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 34 12354 | DE | 10/1985 |
| 4004851 | DE | 2/1990 |
| 0009235 | EP | 4/1980 |
| 0 955 414 | EP | 11/1999 |
| 1 054 108 | EP | 11/2000 |
| 1 479 826 | EP | 11/2004 |
| 2057107 | FR | 4/1971 |
| 2 194 577 | GB | 3/1988 |
| 2 229 472 | GB | 9/1990 |
| 10176314 | JP | 6/1998 |
| 11061746 | JP | 3/1999 |
| 2001295298 | JP | 10/2001 |
| WO 02/081824 | WO | 10/2002 |

### d) Other Publications

| Prior Art | Date |
|---|---|
| Department of Defense Handbook, "Selection and Application of Vehicle Barriers" MIL-DDBK-1013/14, Feb. 1, 1999 | 1999 |
| Project File for Amgen project for TT203 | 1997 |
| Project File for UCLA Health Science Building for DSC800RFB | 2002 |
| Project File for SPAWAR, San Diego, CA for DSC800RFB | 2002 |
| Project File for Naval Annex in MD for DSC501 | 2001 |
| Project File for Naval Weapons Station in NJ for | 2001 |

-10-

112614733.3

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

| Prior Art | Date |
|---|---|
| DSC501 | |
| Drawings for the DSC501 | 2001,2004 |
| Delta Scientific Press Release dated March 8, 2001 | 2001 |
| Delta Scientific brochure dated February 2002 | 2002 |
| Cold-Formed Steel Design, Third Edition, authored by Wei-Wen Yu, 2000 | 2000 |
| Cold-Formed Steel Structures to the AISI Specification, Hancock et al, 2001 | 2001 |
| Applied Structural Steel Design, Third Edition, Spiegel & Limbrunner, 1986 | 1986 |
| FEMA 426, Risk Management Series, Reference Manual to Mitigate Potential Terrorist Attacks Against Buildings, December 2003 | 2003 |
| FEMA 430, Chapter 4, Perimeter Security Design | |
| Hollow Structural Sections Connections Manual, American Institute of Steel Construction, 1997 | 1997 |
| The National Capital Urban Design and Security Plan, National Capital Planning Commission, October 2002 | 2002 |
| Designing for Security in the Nation's Capital, National Capital Planning Commission, October 2001 | 2001 |
| Media Release, Planning Commission Approves Final Urban Design and Security Plan for the Nation's Capital, National Capital Planning Commission, October 3, 2002 | 2002 |

| Prior Art | Date |
|---|---|
| Disguising Security as Something Artful – Ugly Barriers to Car Bombers Put Up After 9/11 Morph Into 'Designer Bollards', The Wall Street Journal, June 24, 2004 | 2004 |

To the extent not identified in the above tables, Delta incorporates by reference herein all prior art submitted to or considered by the United States Patent and Trademark Office ("PTO") or any foreign patent office in connection with the examination of the '865 patent, as well as any related U.S. or foreign applications and reserves the right to rely upon such references. Delta further incorporates by reference all prior art references cited in Petitions for *Inter Partes* Review of the '865 patent filed with the Patent Trial and Appeals Board ("PTAB") on June 6, 2019: IPR2019-01161 and IPR2019-01162. Delta further incorporates herein all prior art references presented in the Petition for Ex Parte Reexamination of U. S. Patent No. 8,215,865, filed March 30, 2020. Delta further incorporates any additional prior art cited in any patent infringement action in which claims of the '865 patent or any patent related to the '865 patent, e.g., U.S. Patent 7,699,558 (the "'558 patent"), were or are asserted. For convenience, the references incorporated by reference in this paragraph and which Delta has identified as being excluded from the tables above are listed below. These references are references cited in the petitions for *Inter Partes* Review of the '865 Patent, including IPR2020-01369, and invalidity contentions of others accused of infringement by RSA which RSA has produced in this proceeding. Accordingly, it is Delta's understanding that these references are already in RSA's possession and are not being separately produced by Delta, but to the extent these documents are not in RSA's possession, Delta requests the RSA advise Delta as such.

112614733.3

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

e)   **Patents and Patent Publications**

| Prior Art | Country of Origin | Date of Issuance or Publication |
|---|---|---|
| 3,881,697 | US | 5/1975 |
| 4,018,055 | US | 4/1977 |
| 4,123,887 | US | 11/1978 |
| 4,645,168 | US | 2/1987 |
| 4,705,426 | US | 11/1987 |
| 7,040,836 | US | 5/2006 |
| 7,101,112 | US | 10/2005 |
| 7,232,275 | US | 6/2007 |
| 8,197,156 | US | 6/2012 |
| 2008/0232901 | US | 9/2008 |
| 8326389 | DE | 1/1984 |
| 8602044 | DE | 3/1986 |
| 3827030 | DE | 4/1989 |
| 91/06721 | WO | 5/1991 |
| 2 261 454 | GB | 5/1993 |
| 2 282 838 | GB | 4/1995 |
| 1033786Y | Spain (ES) | 3/1997 |
| 688483 | Switzerland (CH) | 10/1997 |
| 29717516 | DE | 1/1998 |
| 19826445 | DE | 12/1999 |
| 200071499 | AU | 5/2001 |
| 2002-115324 | JP | 4/2002 |
| 2004-068428 | JP | 3/2004 |
| 2004/092543 | WO | 10/2004 |

-13-

112614733.3

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

### f)    Other Publications

| Prior Art | Date |
|---|---|
| SecureUSA 2002 Project Designs | 2002 |
| Lateral Loads, http://web.mit.edu/4.441/1_lectures/1_lecture18/1 lecture18.html, MIT Structures I: Lateral Loads lecture notes, 1998, last accessed June 15, 2020 | 1998 |
| Robert E. Kimmerling, GEOTECHNICAL ENGINEERING CIRCULAR NO. 6: Shallow Foundations, Federal Highway Administration, Sept. 2002 | 2002 |
| John M. Biggs, Introduction to Structural Dynamics, McGraw-Hill, ISBN 07-005255-7, 1964 | 1964 |
| Crash Testing and Evaluation of the Anti-Ram Wall with Single Unit Truck, TTI, 2002 | 2002 |
| SD-STD-02.01, Revision A, Certification Standard, Test Method for Vehicle Crash Testing of Perimeter Barriers and Gates, Dept. of State., March 2003 | 2003 |
| The National Capital Urban Design and Security Plan, National Capital Planning Commission, Oct. 2002 | 2002 |
| Thornton Tomasseti Project Designs | 2004 |
| Calpipe Security Bollards | 2003 |
| Mark Maremont Disguising Security as Something Artful Ugly Barriers to Car Bombers Put Up After 911 Morph Into Designer Bollards WALL STREET JOURNAL | 2004 |

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-14-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

## C.     Claim Charts

Attached as Exhibits A – C are final invalidity claim charts for the Asserted Claims of the '865 patent for primary references Turpin, DSC800RFB, and TT203R.  Attached as Exhibit D is a red-lined version of the Reexam Petition, which includes a final invalidity claim chart for the primary reference Darcy[7]. Exhibit E is a preliminary invalidity chart for the Asserted Claims which is based on the combination of Darcy and the prior art public sale and use of the DSC501 barrier.  For each asserted claim, these charts specifically identify where each claim limitation is disclosed in the prior art reference or references.  Delta's final invalidity charts are exemplary.  All references identified in the charts can be used as primary references for obviousness and primary references can be used as secondary references.  Delta reserves the right to provide additional disclosures to address any elements that Plaintiff claims to be lacking.  Delta additionally reserves the right to include further information to support its invalidity defenses based on additional discovery, which has not yet closed, expert testimony and analysis, including information concerning the elements taught by each reference and the suggestion or motivation to modify or combine prior art references for obviousness purposes.

Although Delta has identified at least one disclosure of a limitation contained in each prior art reference, Delta has not necessarily identified each and every disclosure of the same limitation in the same reference.  In an effort to focus the issues, Delta has cited representative portions of an identified reference, even where a reference may contain additional support for a particular claim limitation. Delta may rely on uncited portions of the prior art references and on other publications and expert testimony to provide context and as aids in understanding

---

[7] Portions of the Reexam Petition that do not pertain to the invalidity arguments under Darcy have been stricken.

-15-

112614733.3

and interpreting the portions that are cited.  Where Delta cites to a particular figure in a reference, the citation should be understood to encompass the caption and description of the figure and any text relating to the figure.  Similarly, where Delta cites to particular text referring to a figure, the citation should be understood to include the figure as well.

## III.    INVALIDITY UNDER 35 U.S.C. § 112

### A.    Written Description Under 35 U.S.C. §112, Paragraph 1

Delta contends that the following claim limitations fail to comply with 35 U.S.C. § 112, paragraph 1:

- "Rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in all claims.

"To fulfill the written description requirement, the patent specification must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (internal quotation marks and citation omitted) (modification in original).  "[A] broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope."  *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1127 (Fed. Cir. 2008).  "The purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification."  *Atl. Rsch. Mktg. Sys. v. Troy*, 659 F.3d 1345, 1354 (Fed. Cir. 2011) (quoting *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1319 (Fed. Cir. 2011)).  A patentee's "original disclosure serves to limit the permissible breadth of his later-drafted claims."  *Gentry*, 134 F.3d at 1479.

Delta contends that all of the Asserted Claims are invalid as failing to meet the written description requirement because the claim element "rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards,

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-16-

which was introduced during prosecution and appears in all claims, is unsupported by the original disclosure and impermissibly broad.

There is no support in the original disclosure for the claim limitation that "rotation is resisted of a bollard or bollards <u>and the base;</u>" the disclosure only discusses rotation of the bollard(s), but does not discuss resisting rotation of the base, nor does it describe how such resistance to rotation is achieved. To the extent RSA argues this feature is inherent in all bollard systems, then the limitation "overreach[es] the scope of the inventor's contribution to the field of art as described in the patent specification," also failing to meet the written description requirement. *Atl. Rsch. Mktg.*, 659 F.3d at 1354.

Discovery is ongoing, and various depositions, including the deposition of a co-inventor, are still outstanding. As a result, it is premature for Delta to determine whether there are other failures to comply with 35 U.S.C. § 112, paragraph 2. Accordingly, Delta reserves the right to supplement or modify the positions and information in these Invalidity Contentions to the extent other relevant information is uncovered through further discovery.

**B.    Indefiniteness Under 35 U.S.C. §112, Paragraph 2**

Delta contends that the following claim limitations fail to comply with 35 U.S.C. § 112, paragraph 2:

- "Shallow excavation" appearing in all claims.
- " Such that rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in all claims.

The Supreme Court has held that the proper standard for indefiniteness under 35 U.S.C. § 112, paragraph 2 is as follows: "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 901 (2014). The Supreme Court further explained that "a patent must be

-17-

112614733.3

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* at 909 (internal quotation and punctuation omitted).

Delta contends that all of the Asserted Claims are invalid as indefinite because the claim element "such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in each independent claim fails to inform with reasonable certainty those skilled in the art the scope of the Asserted Claims.

Whether a bollard structure comprising one or more bollards and a base is able to resist rotation of the bollard(s) and the base depends not only on the design and characteristics of the bollard(s) and the base, but the amount of the collision force transferred to the bollard by the impact. A bollard structure may resist rotation from a relatively low collision force, but may be unable to resist rotation by a greater collision force. The amount of force generated by a collision will be dependent on many factors including the weight and speed of the vehicle. The claims do not set forth any criteria by which the resistance to rotation of the bollard(s) and base is to be determined, nor is the claim term "impact" defined in a way that would provide reasonable certainty as to the scope of the claims.

Similarly, Delta contends that all of the Asserted Claims are invalid as indefinite because the claim element "shallow excavation" appearing in each independent claim fails to inform with reasonable certainty those skilled in the art the scope of the Asserted Claims. The metes and bounds of whether a bollard structure comprises a base that is "configured to be mounted in a shallow excavation" is not made clear by the '865 Patent or its prosecution history.

Discovery is ongoing, and various depositions, including the deposition of a co-inventor, are still outstanding. As a result, it is premature for Delta to determine whether there are other failures to comply with 35 U.S.C. § 112, paragraph 2. Accordingly, Delta reserves the right to supplement or modify the positions and

Lewis Roca
ROTHGERBER CHRISTIE

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

-18-

112614733.3

information in these Invalidity Contentions to the extent other relevant information is uncovered through further discovery.

DATED:  October 26, 2020

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By   /s/ David A. Dillard
          David A. Dillard

Attorneys for Defendant
Delta Scientific Corporation

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-19-

112614733.3

**CERTIFICATE OF SERVICE**

I certify that on October 26, 2020, pursuant to Federal Rules of Civil Procedure, a true and correct copy of the foregoing document described as **DEFENDANT DELTA SCIENTIFIC CORPORATION'S FINAL INVALIDITY CONTENTIONS** was served on the parties in this action by electronic mail addressed as follows:

Sasha G. Rao
**srao@maynardcooper.com**
Maynard Cooper & Gale, LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 2600
San Francisco, CA 94111.com

Joseph V. Saphia
**JSaphia@haugpartners.com**
Jessica H. Zafonte
**JZafonte@haugpartners.com**
Laura Chubb
**LChubb@haugpartners.com**
HAUG PARTNERS LLP
745 Fifth Avenue, New York, NY 10151

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on October 26, 2020 at Glendale, California.

/s/ Stacy Goodwin

112614733.3

# Exhibit B

**DAVID A. DILLARD, CA Bar No. 97515**
DDillard@lrrc.com
**CONSTANTINE MARANTIDIS, CA Bar No. 173318**
cmarantadis@lrrc.com
**SAMI I. SCHILLY, CA Bar No. 301653**
sschilly@lrrc.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, California 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Defendant
Delta Scientific Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RSA Protective Technologies, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Delta Scientific Corporation,<br><br>Defendant. | Case No. 2:19-cv-06024-JAK-PLA<br><br>**DEFENDANT DELTA SCIENTIFIC CORPORATION'S REVISED FINAL INVALIDITY CONTENTIONS**<br><br>**Hon. John A. Kronstadt** |

Pursuant to the Standing Patent Rules for Cases Assigned to Judge John A. Kronstadt ("S.P.R.") 4.2.2, Defendant Delta Scientific Corporation ("Defendant" or "Delta") hereby provides its Final Invalidity Contentions as to claims 1-5, 7, 10, 14-21, 23, 26 and 31-35 (collectively the "Asserted Claims") of U.S. Patent No. 8,215,865 (the "'865 patent"), asserted by Plaintiff RSA Protective Technologies, LLC ("Plaintiff" or "RSA") against Delta in the present action.

## I.    GENERAL RESERVATIONS

These Final Invalidity Contentions are based on information reasonably known and available to Delta. Discovery is ongoing and has not yet closed. Delta reserves the right to supplement these Final Invalidity Contentions to the extent

-1-

112614733.4

new, pertinent information becomes available, for example during Mr. John Crawford's pending deposition and/or in response to any rebuttal expert report from RSA regarding invalidity. Delta also reserves the right to supplement these Final Invalidity Contentions to the extent RSA modifies its Final Infringement Contentions to assert additional claims.

Delta also reserves the right to rely on any relevant arguments or stipulations made by RSA in this case or any other proceeding or litigation involving the '865 Patent or related patent(s) which relate to validity or the references on which Delta relies, for example, if RSA, in other litigation, admits that a prior art reference teaches any claim limitations. Delta also reserves the right to rely on experts and the experts' opinions.

The contentions and disclosures provided below and in the attached exhibits are illustrative of how each reference identified invalidates the asserted claims. By not discussing other portions of the references, Delta does not waive the right to rely on other portions of the reference, and indeed, Delta expressly reserves their right to rely on other portions of the references. Similarly, the obviousness combinations of references provided under 35 U.S.C. § 103 are examples only and are not intended to be exhaustive. Delta reserves the right to use additional obviousness combinations of the references identified in these contentions in this litigation. For example, a secondary reference may be used as a primary reference, and vice versa.

Delta's contentions under 35 U.S.C. §§ 102 and 103 are made in the alternative, and should in no way be seen as admissions: (1) as to the proper construction or scope of the asserted claims; (2) that any asserted claims meet the written description, enablement, or definiteness requirements of 35 U.S.C. § 112; or (3) that Defendants waive the right to assert any of the foregoing as bases for invalidity.

-2-

112614733.4

## II.    FINAL INVALIDITY CONTENTIONS

### A.    The Identity of Each Item of Prior Art that Allegedly Anticipates Each Asserted Claim or Renders it Obvious

Based on the prior art presently known to Delta, as well as its current understanding of the meaning of the claims and Plaintiff's infringement contentions, Delta identifies the following list of prior art as anticipating and/or rendering obvious the asserted claims of the '865 Patent:

#### 1.    Patents and Patent Publications

| Reference | Country of Origin | Issuance or Publication Date |
|---|---|---|
| US 2004/0033106 ("Turpin") | United States | Feb. 19, 2004 |
| US 2006/0090408 ("'408 publication" or "Darcy")[1] | United States | May 4, 2006 (Filed February 9, 2005) |
| 5,836,715 ("'715 patent" or "Hendrix")[2] | United States | November 17, 1998 |
| US 2002/0073876 ("'876 publication" or "Einar")[3] | United States | June 20, 2002 |
| 3,943,540 (the "'540 patent" or "Bruner")[4] | United States | January 27, 1976 |

[1] Darcy is a primary reference relied upon in the Petition for Reexamination of the '865 Patent, filed on March 30, 2020 ("Reexam Petition") (Ex. D).

[2] Hendrix is a secondary reference cited in the Reexam Petition (Ex. D).

[3] Einar is a secondary reference cited in the Reexam Petition (Ex. D).

[4] Bruner is a secondary reference cited in the Reexam Petition (Ex. D).

-3-

112614733.4

## 2.    Sales, Offers for Sale, and Public Uses

| Activity or Event | Country of Origin | Date of Anticipating Activity or Event[5] |
|---|---|---|
| Sale and public use of DSCTT203RB bollards installed at Amgen in Thousand Oaks, CA ("TT203R"), sold by Delta | United States | 1997 |
| Sale and public use of DSC800RFB bollards installed at UCLA Health Sci. Bldg. No. 1, Los Angeles CA ("DSC800RFB"), sold by Delta | United States | 2002 |
| Sale and public use of the DSC501 shallow mount barrier ("DSC501"), sold by Delta for installation at the Washington Navy Yard, Washington DC | United States | 2001 |

As to any of the foregoing references that describe a product that was actually in use and/or on sale prior to the priority date of the '865 Patent, Delta reserves the right to rely upon the products themselves and any associated evidence in the record of such prior uses or sales. The charts attached hereto shall be

---

[5] Dates provided are at least as early as the listed year.

-4-

112614733.4

understood to likewise describe the manner in which Delta would intend to rely upon such prior use or sale evidence.

### B.  Anticipation and/or Obviousness

Based on the art presently known to Delta, as well as its current understanding of the meaning of the claims and RSA's infringement contentions, Delta contends that the following references anticipate and/or render obvious to a person having ordinary skill in the art, alone or in combination with other prior art, one or more of the asserted claims of the '865 Patent, as set forth below.  For any single reference listed below, Delta's contention is that, to the extent RSA contends any limitation is not expressly disclosed by that reference, such limitation would nevertheless be obvious in view of the teaching of that reference and the knowledge of one of ordinary skill in the art.

| Reference, Activity, or Event | Claims of the '865 Patent | Basis | Exhibit |
|---|---|---|---|
| Turpin | All asserted claims | 35 U.S.C. §102 35 U.S.C. §103 | A |
| Turpin and DSC501 | All asserted claims | 35 U.S.C. §103 | A |
| Darcy | All asserted claims | 35 U.S.C. §103 | D |
| Darcy and Bruner and Einar | Claims 32 and 35 | 35 U.S.C. §103 | D |
| Darcy and DSC501 | All asserted claims | 35 U.S.C. §103 | D, E |
| DSC800RFB | Claims 1, 3-5, 7, | 35 U.S.C. §102 | B |

-5-

112614733.4

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

| Reference, Activity, or Event | Claims of the '865 Patent | Basis | Exhibit |
|---|---|---|---|
|  | 10, 14-16, 18-23, 26, 31-35 | 35 U.S.C. §103 |  |
| TT203R | Claims 1, 3-5, 7, 10, 14-15 | 35 U.S.C. §102 35 U.S.C. §103 | C |

### 1. <u>Motivation to Combine</u>

Motivation and suggestion to combine one or more of the prior art references with any of the other prior art references, or other references cited below, exists. Generally, motivation and suggestion to combine any of these prior art references with each other exists within the prior art references themselves, as well as within the knowledge of those of ordinary skill in the art. Moreover, the relied-upon prior art references identify and address the same technical issues and suggest very similar solutions to those issues.

Furthermore, the nature of the problem or problems to be solved would have given a person of ordinary skill in the art reason to combine the prior art references, and the modifications or combinations would have had more than a reasonable expectation of success. Moreover, there were a finite number of identified, predictable solutions that had a reasonable expectation of success to lead one of ordinary skill in the art inexorably to the claimed inventions. The claimed inventions were the result of the application of known technical concepts to designs to yield predictable results.

Aside from, or related to, the express teachings, suggestions, and motivations to combine discussed in the cited references, it would have been obvious to one of ordinary skill in the art to combine one or more of the prior art references with any other prior art references, or other references cited herein, under the legal standard to determine obviousness under 35 U.S.C. § 103. *See KSR Int'l Co. v. Teleflex,*

112614733.4

*Inc.*, 550 U.S. 398 (2007).

In addition, common knowledge of those of ordinary skill in the art can be prior art and may be relied on by Delta by way of testimony or declarations in combination with the above prior art publications and patents. This includes knowledge of well-known technology and various industry practices, standards, and protocols.

Consequently, the Asserted Claims, to the extent that they are not anticipated, would have been obvious. Exemplary motivations to combine the references are provided in the claim charts attached hereto.

## 2. References Relating to the General States of the Art at the Time of the Alleged Invention

The prior art references identified below and those incorporated by reference as discussed above are illustrative of the general state of the art to which the '865 patent pertains (i.e., what one of ordinary skill in the art would have understood) at a time prior to the date of the alleged invention of the Asserted Claims of the '865 patent.

This prior art is exemplary only, and is not in any way intended to limit the scope of what one of ordinary skill in the art would have understood at the times of the alleged inventions. Delta expressly reserves the right to rely upon additional information or knowledge personally known to any witnesses or experts to demonstrate what one of ordinary skill would have understood at the time prior to the date of the alleged invention of the Asserted Claims of the '865 patent.

Unless otherwise noted, all patents are United States patents. On information and belief, each listed publication or invention became prior art at least as early as the dates given.

### a) Patents

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 1,203,006 A | US | 10/1916 |

-7-

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 1,449,518 A | US | 3/1923 |
| 1,969,845 A | US | 8/1934 |
| 2,958,926 A | US | 11/1960 |
| D233,219 S | US | 10/1974 |
| 3,856,268 A | US | 12/1974 |
| 3,934,540 A | US | 1/1976 |
| 4,062,149 A | US | 12/1977 |
| 4,515,499 A | US | 5/1985 |
| 4,576,508 A | US | 3/1986 |
| 4,822,207 A | US | 4/1989 |
| 4,828,424 A | US | 5/1989 |
| 4,934,097 A | US | 6/1990 |
| 5,006,008 A | US | 4/1991 |
| 5,201,599 A | US | 4/1993 |
| 5,354,037 A | US | 10/1994 |
| 5,406,663 A | US | 4/1995 |
| 5,836,715 A | US | 11/1998 |
| 5,860,762 A | US | 1/1999 |
| 5,961,249 A | US | 10/1999 |
| 6,219,991 B1 | US | 4/2001 |
| 6,341,877 B1 | US | 1/2002 |
| 6,367,208 B1 | US | 4/2002 |
| 6,454,488 B1 | US | 9/2002 |
| 6,702,512 B1 | US | 3/2004 |
| 6,805,515 B2 | US | 10/2004 |
| 7,118,304 B2 | US | 10/2006 |

-8-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 8,215,865 B2 | US | 7/2012 |

b)     **Patent Publications**

| Prior Art | Country of Origin | Date of Publication |
|---|---|---|
| 2002/0073876 | US | 6/2002 |
| 2003/0127636 | US | 7/2003 |
| 2004/0033106 | US | 2/2004 |
| 2004/0067104 | US | 4/2004 |
| 2004/0190990 | US | 9/2004 |
| 2005/0201829 | US | 9/2005 |
| 2006/0090408 | US | 5/2006 |
| 2008/0205982 | US | 1/2008 |
| 2008/0038056 | US | 2/2008 |
| 2008/0122756 | US | 5/2008 |
| 2009/0028638 | US | 1/2009 |
| 2009/0035061 | US | 2/2009 |
| 2009/0250674 | US | 10/2009 |

c)     **Foreign Patents and Publications**

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 34 12354 | DE | 10/1985 |
| 4004851 | DE | 2/1990 |
| 0009235 | EP | 4/1980 |
| 0 955 414 | EP | 11/1999 |
| 1 054 108 | EP | 11/2000 |
| 1 479 826 | EP | 11/2004 |
| 2057107 | FR | 4/1971 |
| 2 194 577 | GB | 3/1988 |

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-9-

112614733.4

| 2 229 472 | GB | 9/1990 |
|---|---|---|
| 10176314 | JP | 6/1998 |
| 11061746 | JP | 3/1999 |
| 2001295298 | JP | 10/2001 |
| WO 02/081824 | WO | 10/2002 |

**d)      Other Publications**

| Prior Art | Date |
|---|---|
| Department of Defense Handbook, "Selection and Application of Vehicle Barriers" MIL-DDBK-1013/14, Feb. 1, 1999 | 1999 |
| Project File for Amgen project for TT203 | 1997 |
| Project File for UCLA Health Science Building for DSC800RFB | 2002 |
| Project File for SPAWAR, San Diego, CA for DSC800RFB | 2002 |
| Project File for Naval Annex in MD for DSC501 | 2001 |
| Project File for Naval Weapons Station in NJ for DSC501 | 2001 |
| Drawings for the DSC501 | 2001,2004 |
| Delta Scientific Press Release dated March 8, 2001 | 2001 |
| Delta Scientific brochure dated February 2002 | 2002 |
| Cold-Formed Steel Design, Third Edition, authored by Wei-Wen Yu, 2000 | 2000 |
| Cold-Formed Steel Structures to the AISI Specification, Hancock et al, 2001 | 2001 |
| Applied Structural Steel Design, Third Edition, Spiegel & Limbrunner, 1986 | 1986 |

-10-

| Prior Art | Date |
|---|---|
| FEMA 426, Risk Management Series, Reference Manual to Mitigate Potential Terrorist Attacks Against Buildings, December 2003 | 2003 |
| FEMA 430, Chapter 4, Perimeter Security Design | |
| Hollow Structural Sections Connections Manual, American Institute of Steel Construction, 1997 | 1997 |
| The National Capital Urban Design and Security Plan, National Capital Planning Commission, October 2002 | 2002 |
| Designing for Security in the Nation's Capital, National Capital Planning Commission, October 2001 | 2001 |
| Media Release, Planning Commission Approves Final Urban Design and Security Plan for the Nation's Capital, National Capital Planning Commission, October 3, 2002 | 2002 |
| Disguising Security as Something Artful – Ugly Barriers to Car Bombers Put Up After 9/11 Morph Into 'Designer Bollards', The Wall Street Journal, June 24, 2004 | 2004 |

To the extent not identified in the above tables, Delta incorporates by reference herein all prior art submitted to or considered by the United States Patent and Trademark Office ("PTO") or any foreign patent office in connection with the examination of the '865 patent, as well as any related U.S. or foreign applications and reserves the right to rely upon such references. Delta further incorporates by reference all prior art references cited in Petitions for *Inter Partes* Review of the

-11-

112614733.4

'865 patent filed with the Patent Trial and Appeals Board ("PTAB") on June 6, 2019: IPR2019-01161 and IPR2019-01162. Delta further incorporates herein all prior art references presented in the Petition for Ex Parte Reexamination of U. S. Patent No. 8,215,865, filed March 30, 2020. Delta further incorporates any additional prior art cited in any patent infringement action in which claims of the '865 patent or any patent related to the '865 patent, e.g., U.S. Patent 7,699,558 (the "'558 patent"), were or are asserted. For convenience, the references incorporated by reference in this paragraph and which Delta has identified as being excluded from the tables above are listed below. These references are references cited in the petitions for *Inter Partes* Review of the '865 Patent, including IPR2020-01369, and invalidity contentions of others accused of infringement by RSA which RSA has produced in this proceeding. Accordingly, it is Delta's understanding that these references are already in RSA's possession and are not being separately produced by Delta. To the extent these documents are not in RSA's possession, Delta requests that RSA advise Delta as such.

e)    **Patents and Patent Publications**

| Prior Art | Country of Origin | Date of Issuance or Publication |
|---|---|---|
| 3,881,697 | US | 5/1975 |
| 4,018,055 | US | 4/1977 |
| 4,123,887 | US | 11/1978 |
| 4,645,168 | US | 2/1987 |
| 4,705,426 | US | 11/1987 |
| 7,040,836 | US | 5/2006 |
| 7,101,112 | US | 10/2005 |
| 7,232,275 | US | 6/2007 |
| 8,197,156 | US | 6/2012 |

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-12-

112614733.4

| Prior Art | Country of Origin | Date of Issuance or Publication |
|---|---|---|
| 2008/0232901 | US | 9/2008 |
| 8326389 | DE | 1/1984 |
| 8602044 | DE | 3/1986 |
| 3827030 | DE | 4/1989 |
| 91/06721 | WO | 5/1991 |
| 2 261 454 | GB | 5/1993 |
| 2 282 838 | GB | 4/1995 |
| 1033786Y | Spain (ES) | 3/1997 |
| 688483 | Switzerland (CH) | 10/1997 |
| 29717516 | DE | 1/1998 |
| 19826445 | DE | 12/1999 |
| 200071499 | AU | 5/2001 |
| 2002-115324 | JP | 4/2002 |
| 2004-068428 | JP | 3/2004 |
| 2004/092543 | WO | 10/2004 |

f)      **Other Publications**

| Prior Art | Date |
|---|---|
| SecureUSA 2002 Project Designs | 2002 |
| Lateral Loads, http://web.mit.edu/4.441/1_lectures/1_lecture18/1 lecture18.html, MIT Structures I: Lateral Loads lecture notes, 1998, last accessed June 15, 2020 | 1998 |
| Robert E. Kimmerling, GEOTECHNICAL ENGINEERING CIRCULAR NO. 6: Shallow Foundations, Federal Highway Administration, Sept. 2002 | 2002 |
| John M. Biggs, Introduction to Structural Dynamics, McGraw-Hill, ISBN 07-005255-7, 1964 | 1964 |

-13-

112614733.4

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

| Prior Art | Date |
|---|---|
| Crash Testing and Evaluation of the Anti-Ram Wall with Single Unit Truck, TTI, 2002 | 2002 |
| SD-STD-02.01, Revision A, Certification Standard, Test Method for Vehicle Crash Testing of Perimeter Barriers and Gates, Dept. of State., March 2003 | 2003 |
| The National Capital Urban Design and Security Plan, National Capital Planning Commission, Oct. 2002 | 2002 |
| Thornton Tomasseti Project Designs | 2004 |
| Calpipe Security Bollards | 2003 |
| Mark Maremont Disguising Security as Something Artful Ugly Barriers to Car Bombers Put Up After 911 Morph Into Designer Bollards WALL STREET JOURNAL | 2004 |

### C.    Claim Charts

Attached as Exhibits A – C are final invalidity claim charts for the Asserted Claims of the '865 patent for primary references Turpin, DSC800RFB, and TT203R.  Attached as Exhibit D is a red-lined version of the Reexam Petition, which includes a final invalidity claim chart for the primary reference Darcy[6]. Exhibit E is a final invalidity chart for the Asserted Claims which is based on the combination of Darcy and the prior art public sale and use of the DSC501 barrier. For each asserted claim, these charts specifically identify where each claim limitation is disclosed in the prior art reference or references.  Delta's final invalidity charts are exemplary, as explained in Delta's reservations herein.  All references identified in the charts can be used as primary references for obviousness and primary references can be used as secondary references.

Although Delta has identified at least one disclosure of a limitation contained

[6] Portions of the Reexam Petition that do not pertain to the invalidity arguments under Darcy have been stricken.

-14-

112614733.4

in each prior art reference, Delta has not necessarily identified each and every disclosure of the same limitation in the same reference.  In an effort to focus the issues, Delta has cited representative portions of an identified reference, even where a reference may contain additional support for a particular claim limitation. Delta may rely on uncited portions of the prior art references and on other publications and expert testimony to provide context and as aids in understanding and interpreting the portions that are cited.  Where Delta cites to a particular figure in a reference, the citation should be understood to encompass the caption and description of the figure and any text relating to the figure.  Similarly, where Delta cites to particular text referring to a figure, the citation should be understood to include the figure as well.

## III.   INVALIDITY UNDER 35 U.S.C. § 112

### A.   Written Description Under 35 U.S.C. §112, Paragraph 1

Delta contends that the following claim limitations fail to comply with 35 U.S.C. § 112, paragraph 1:

- "Such that rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in all claims.

"To fulfill the written description requirement, the patent specification must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (internal quotation marks and citation omitted) (modification in original).  "[A] broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope."  *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1127 (Fed. Cir. 2008).  "The purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification."  *Atl. Rsch. Mktg. Sys. v. Troy*, 659 F.3d 1345, 1354 (Fed. Cir. 2011) (quoting *In re*

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-15-

112614733.4

*Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1319 (Fed. Cir. 2011)). A patentee's "original disclosure serves to limit the permissible breadth of his later-drafted claims." *Gentry*, 134 F.3d at 1479.

Delta contends that all of the Asserted Claims are invalid as failing to meet the written description requirement because the claim element "rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards, which was introduced during prosecution and appears in all claims, is unsupported by the original disclosure and impermissibly broad.

There is no support in the original disclosure for the claim limitation that "rotation is resisted of a bollard or bollards <u>and the base;</u>" the disclosure only discusses rotation of the bollard(s), but does not discuss resisting rotation of the base, nor does it describe how such resistance to rotation is achieved. To the extent RSA argues this feature is inherent in all bollard systems, then the limitation "overreach[es] the scope of the inventor's contribution to the field of art as described in the patent specification," also failing to meet the written description requirement. *Atl. Rsch. Mktg.*, 659 F.3d at 1354.

### B.    Indefiniteness Under 35 U.S.C. §112, Paragraph 2

Delta contends that the following claim limitations fail to comply with 35 U.S.C. § 112, paragraph 2:

- "Shallow excavation" appearing in all claims.

- " Such that rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in all claims.

The Supreme Court has held that the proper standard for indefiniteness under 35 U.S.C. § 112, paragraph 2 is as follows: "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572

-16-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

U.S. 898, 901 (2014). The Supreme Court further explained that "a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* at 909 (internal quotation and punctuation omitted).

Delta contends that all of the Asserted Claims are invalid as indefinite because the claim element "such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in each independent claim fails to inform with reasonable certainty those skilled in the art the scope of the Asserted Claims.

Whether a bollard structure comprising one or more bollards and a base is able to resist rotation of the bollard(s) and the base depends not only on the design and characteristics of the bollard(s) and the base, but the amount of the collision force transferred to the bollard by the impact. A bollard structure may resist rotation from a relatively low collision force, but may be unable to resist rotation by a greater collision force. The amount of force generated by a collision will be dependent on many factors including the weight and speed of the vehicle. The claims do not set forth any criteria by which the resistance to rotation of the bollard(s) and base is to be determined, nor is the claim term "impact" defined in a way that would provide reasonable certainty as to the scope of the claims.

Similarly, Delta contends that all of the Asserted Claims are invalid as indefinite because the claim element "shallow excavation" appearing in each independent claim fails to inform with reasonable certainty those skilled in the art the scope of the Asserted Claims. The metes and bounds of whether a bollard structure comprises a base that is "configured to be mounted in a shallow excavation" is not made clear by the '865 Patent or its prosecution history.

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-17-

112614733.4

DATED:  October 29, 2020

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By   /s/David A. Dillard
            David A. Dillard

Attorneys for Defendant
Delta Scientific Corporation

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-18-

112614733.4

**CERTIFICATE OF SERVICE**

I certify that on October 29, 2020, pursuant to Federal Rules of Civil Procedure, a true and correct copy of the foregoing document described as **DEFENDANT DELTA SCIENTIFIC CORPORATION'S REVISED FINAL INVALIDITY CONTENTIONS** was served on the parties in this action by electronic mail addressed as follows:

| | |
|---|---|
| Sasha G. Rao<br>**srao@maynardcooper.com**<br>Maynard Cooper & Gale, LLP<br>Transamerica Pyramid Center<br>600 Montgomery Street, Suite 2600<br>San Francisco, CA 94111.com | Joseph V. Saphia<br>**JSaphia@haugpartners.com**<br>Jessica H. Zafonte<br>**JZafonte@haugpartners.com**<br>Laura A. Chubb<br>**LChubb@haugpartners.com**<br>HAUG PARTNERS LLP<br>745 Fifth Avenue, New York, NY 10151 |

I declare that I am a member of the bar of this Court.

Executed on October 29, 2020, at Arcadia, California.

/s/David A. Dillard

-19-

112614733.4

# Exhibit C

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RSA Protective Technologies, LLC<br><br>Plaintiff,<br><br>v.<br><br>Delta Scientific Corporation<br><br>Defendant. | Case No. 2:19-CV-06024 JAK (PLA) |

OPENING EXPERT REPORT OF DR. AZIM ESKANDARIAN

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................1

II.    BACKGROUND AND QUALIFICATIONS....................................................2

III.   SUMMARY OF OPINIONS...................................................................4

IV.    APPLICABLE LAW ...........................................................................5

       A.    Lack of Written Description................................................6

       B.    Indefiniteness....................................................................6

       C.    Anticipation .....................................................................6

       D.    Obviousness......................................................................8

V.     PERTINENT BACKGROUND RE PROTECTIVE VEHICLE BARRIERS9

VI.    OVERVIEW OF THE '865 PATENT ........................................................15

VII.   PERSON OF ORDINARY SKILL IN THE ART ("POSITA")...................18

VIII.  CLAIM CONSTRUCTION ...................................................................20

IX.    ANALYSIS OF THE ASSERTED CLAIMS UNDER 35 U.S.C. § 112 .....21

       A.    Written Description ...........................................................21

       B.    Indefiniteness....................................................................22

X.     THE PRIOR ART RELIED ON HEREIN RENDERS THE ASSERTED CLAIMS ANTICIPATED AND/OR OBVIOUS .........................................24

       A.    Turpin et al., alone and/or in combination with the DSC501 Renders Obvious Claims 1-5, 7, 10, 14-21, 23, 26, 30-35...............................24

             1.    Overview of Turpin et al..........................................24

             2.    Overview of DSC501...............................................30

             3.    Motivation to Combine the teachings of Turpin and the DSC501 ...................................................................35

             4.    Claim Analyses .....................................................36

                   a)    Claim 1...................................................36

                         (1)    A bollard structure comprising: ..........................36

                         (2)    at least one bollard; and......................................36

i

(3)     a base comprising opposed ends and a plurality of structural members which intersect and are tied together, ..............................................................37

(4)     for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; ........................................40

(5)     each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; ..........................................................43

(6)     wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and ..................................45

(7)     wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. ..........................................................46

b)     Claim 2:  The bollard structure of claim 1, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. ....................................................................48

c)     Claim 3:  The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base. .......................................49

d)     Claim 4:  The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches. .....................50

e)     Claim 5:  The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members. .........................................................51

f)     Claim 7:  The bollard structure of claim 5, wherein at least one tubular member comprises a tube. ...........................51

g)     Claim 10:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube..............................................................................51

ii

h)  Claim 14:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate............................................................................... 52

i)  Claim 15:  The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members................................................................................52

j)  Claim 16...................................................................................52

   (1)  A bollard structure comprising: ...........................52

   (2)  a plurality of bollards; and ..................................52

   (3)  a base comprising opposed ends and a plurality of structural members which intersect and are tied together,.............................................................54

   (4)  for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; ........................................54

   (5)  each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; ...........................54

   (6)  wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and .....54

   (7)  wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. ...........................................................................55

k)  Claim 17 :  The bollard structure of claim 16, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. ......................................................55

l)  Claim 18:  The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is

iii

112759262.2

parallel to the direction of expected impact, and wherein each of the plurality of bllards is secured to at least one structural member that extends in the first direction. ......55

m)  Claim 19:  The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base. ........................................56

n)  Claim 20:  The bollard structure of claim 16 wherein the base has a height of 3 inches to 14 inches. .....................56

o)  Claim 21:  The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members. ...........................................................57

p)  Claim 23:  The bollard structure of claim 21, wherein at least one tubular member comprises a tube....................57

q)  Claim 26:  The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube...............................................................................57

r)  Claim 30:  The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate...............................................................................57

s)  Claim 31:  The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members....................................................................57

t)  Claim 32:  The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. ...............................................57

u)  Claim 33...................................................................................59

(1)  A bollard structure comprising: ...........................59

(2)  a plurality of bollards; and ...................................59

(3)  a base comprising opposed ends and a plurality of members which intersect and are tied together,...59

(4)  for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one stuctural member extending to intersect with the at least one first structural member;...............................................59

(5)  each of the plurality of bollards being secured to at

iv

112759262.2

least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; ...........................59

(6)    at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured;................60

(7)    wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and .....61

(8)    wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. ...........................................................................61

v)    Claim 34:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member. ......................................62

w)    Claim 35:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. ...............................................63

B.    Delta's DSC800RFB Anticipates and/or Renders Obvious Claims 1, 3-5, 7, 10, 14, 15, 16, 18-21, 23, 26, 30-35 ............................................69

1.    Overview of DSC800RFB ........................................................69

2.    Claim Analyses ....................................................................70

a)    Claim 1..........................................................................70

(1)    A bollard structure comprising: ...........................70

(2)    at least one bollard; and........................................70

(3)    a base comprising opposed ends and a plurality of structural members which intersect and are tied

112759262.2

together,.............................................................71

 (4) for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; ........................................72

 (5) each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;.............................................................74

 (6) wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and...................................75

 (7) wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. ........................................................................76

b) Claim 3:  The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base. ........................................77

c) Claim 4:  The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches......................78

d) Claim 5:  The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members. ........................................................78

e) Claim 7:  The bollard structure of claim 5, wherein at least one tubular member comprises a tube. ...........................78

f) Claim 10:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube.............................................................................79

g) Claim 14:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate.............................................................................79

h) Claim 15:  The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel

vi

112759262.2

members...................................................................79

 i) Claim 16.............................................................80

  (1) A bollard structure comprising: ..........................80

  (2) a plurality of bollards; and ..................................80

  (3) a base comprising opposed ends and a plurality of structural members which intersect and are tied together,............................................................80

  (4) for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; ........................................80

  (5) each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; ...........................81

  (6) wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and .....81

  (7) wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the roation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. ...................................................................81

 j) Claim 18:  The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and wherein each of the plurality of bollards is secured to at least one structural member that extends in the first direction......82

 k) Claim 19:  The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base. .......................................83

 l) Claim 20:  The bollard structure of claim 16 wherein the base has a height of 3 inches to 14 inches.....................83

112759262.2

m)    Claim 21:  The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members. ..............................................83

n)    Claim 23:  The bollard structure of claim 21, wherein at least one tubular member comprises a tube....................83

o)    Claim 26:  The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube........................................................................83

p)    Claim 30:  The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate........................................................................83

q)    Claim 31:  The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members................................................................84

r)    Claim 32:  The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. ..............................84

s)    Claim 33.......................................................................85

(1)    A bollard structure comprising: ...........................85

(2)    a plurality of bollards; and ..................................85

(3)    a base comprising opposed ends and a plurality of members which intersect and are tied together,...85

(4)    for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; ........................................85

(5)    each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; .............................86

(6)    at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured;.................86

viii

112759262.2

(7)    wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and .....87

(8)    wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. ...................................................................................87

t)    Claim 34:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member. .....................................87

u)    Claim 35:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. .............................................88

C.    Delta's TT203R Anticipates and/or Renders Obvious Claims 1, 3-5, 7, 10, 14, and 15 ..............................................................................88

1.    Overview of TT203R .................................................................88

2.    Claim Analyses .........................................................................89

a)    Claim 1 .............................................................................89

(1)    A bollard structure comprising: ...........................89

(2)    at least one bollard; and .......................................89

(3)    a base comprising opposed ends and a plurality of structural members which intersect and are tied together, ..............................................................90

(4)    for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; .......................................92

(5)    each bollard being secured to at least one of the at least one first structural member and the at least one

ix

112759262.2

structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;.............................................................93

(6)     wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and...................................94

(7)     wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the roation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. ...............................................................................96

b)     Claim 3:  The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base. .........................................96

c)     Claim 4:  The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches. ......................96

d)     Claim 5:  The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members. ..........................................................97

e)     Claim 7:  The bollard structure of claim 5, wherein at least one tubular member comprises a tube. ...........................98

f)     Claim 10:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube..................................................................................98

g)     Claim 14:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate................................................................................98

h)     Claim 15:  The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members..............................................................................99

D.     Darcy, alone and/or in combination with the DSC501 Anticipates and/or Renders Obvious Claims 1-5, 7, 10, 14-21, 23, 26, 30-35 ......99

1.     Darcy's Status as Prior Art .........................................................99

2.     Overview of Darcy.....................................................................99

3.     Overview of DSC501.............................................................102

4.     Motivation to Combine ...........................................................103

x

5.      Claim Analyses ...............................................................104

a)      Claim 1.................................................................104

(1)      A bollard structure comprising: .........................104

(2)      at least one bollard; and....................................104

(3)      a base comprising opposed ends and a plurality of structural members which intersect and are tied together,...........................................................104

(4)      for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and.........................................105

(5)      at least one structural member extending to intersect with the at least one first structural member;.....106

(6)      each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;...........................................................107

(7)      wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and................................108

(8)      wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. ................................................................108

b)      Claim 2:  The bollard structure of claim 1, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. ..................................................................109

c)      Claim 3:  The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base. ......................................110

d)      Claim 4:  The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches....................111

e)      Claim 5:  The bollard structure of claim 1, wherein the

xi

112759262.2

plurality of structural members comprises one or more tubular members. ........................................................111

f)    Claim 7:  The bollard structure of claim 5, wherein at least one tubular member comprises a tube. .........................114

g)    Claim 10:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube...................................................................................114

h)    Claim 14:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate....................................................................................114

i)    Claim 15:  The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members................................................................................115

j)    Claim 16.................................................................................115

(1)    A bollard structure comprising: .........................115

(2)    a plurality of bollards; and ..................................115

(3)    a base comprising opposed ends and a plurality of structural members which intersect and are tied together,..............................................................115

(4)    for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; ......................................116

(5)    each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; ..........................116

(6)    wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and ...116

(7)    wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.

xii

.....................................................................117

k) Claim 17: The bollard structure of claim 16, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. .......................................................117

l) Claim 18: The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and wherein each of the plurality of bollards is secured to at least one structural member that extends in the first direction.....117

m) Claim 19: The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base. ......................................118

n) Claim 20: The bollard structure of claim 16 wherein the base has a height of 3 inches to 14 inches. ....................118

o) Claim 21: The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members. ...........................................................118

p) Claim 23: The bollard structure of claim 21, wherein at least one tubular member comprises a tube...................119

q) Claim 26: The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube.................................................................................119

r) Claim 30: The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate.................................................................................119

s) Claim 31: The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members..............................................................................119

t) Claim 32: The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. ..........................................119

u) Claim 33................................................................120

 (1) A bollard structure comprising: ........................120

 (2) a plurality of bollards; and .................................120

 (3) a base comprising opposed ends and a plurality of members which intersect and are tied together,.120

xiii

(4)    for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; ....................................121

(5)    each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; ..........................121

(6)    at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured; ...............121

(7)    wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and ...122

(8)    wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. ....................................................................122

v)    Claim 34:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member. ...................................123

w)    Claim 35:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. ............................................124

112759262.2

## I.    INTRODUCTION

1.    I, Azim Eskandarian, have been retained by Lewis Roca Rothgerber Christie LLP on behalf of Delta Scientific Corporation ("Delta" or "Defendant"). I have been asked by counsel to provide my independent expert opinion regarding the validity of claims 1-5, 7, 10, 14-21, 23, 26, and 31-35 (the "Asserted Claims") of U.S. Patent No. 8,215,865 (the "'865 patent") in view of certain prior art and prior art combinations described below.  I have also been asked to provide my independent expert opinion as to whether the Asserted Claims of the '865 patent could meet the requirements of 35 U.S.C. §112 Paragraphs 1 and 2.

2.    I have set forth my academic and professional qualifications and relevant experience in Section II of this report, and have attached a copy of my curriculum vitae as Exhibit A, which contains further details on my education, experience, publications, and other qualifications for rendering an expert opinion here.

3.    In forming the opinions I express in this report, I considered materials further referenced in Exhibit B, and the references discussed in this report. Further, I relied on my own knowledge, training, and over 36 years of experience in designing, developing, teaching, and consulting in the mechanical engineering field.

4.    My opinions expressed here are my own and not that of the university I work for (Virginia Polytechnic Institute and State University --"Virginia Tech"). This activity is not part of my Virginia Tech responsibilities, but rather the expertise is provided as a private consultant.

5.    I am compensated at my standard hourly rate of $500 per hour for the

1

time I spend on this matter. My compensation is not related in any way to the outcome of this proceeding, and I have no other interest in this proceeding.

## II.    BACKGROUND AND QUALIFICATIONS

6.    I am currently the Department Head and an Endowed Chaired Professor, Nicholas and Rebecca Des Champs Chair, in the Mechanical Engineering Department of the Virginia Polytechnic Institute and State University, Blacksburg, VA. In this capacity, I lead one of the nation's largest and highly ranked Mechanical Engineering Departments (number 17, among top 20 in the U.S., according to the US News and World Report, an annual report of college rankings). I am also a professor who conducts research, provides professional services, and consults as an expert.

7.    Prior to joining Virginia Tech, I was a Professor of Engineering and Applied Science at The George Washington University (GWU); Director of the Center for Intelligent Systems Research; and Director of George Washington University's Transportation Safety and Security Area Of Excellence Program, an interdisciplinary initiative and selected area of excellence for the university, and director of the National Crash Analysis Center (at various periods during my 23 year service at GWU as faculty). My full Curriculum Vitae and list of publications is attached as Exhibit A.

8.    I received my B.S., M.S., and D.Sc. degrees in Mechanical Engineering from George Washington University, Virginia Polytechnic Institute and State University, and George Washington University in 1982, 1983, and 1991, respectively.

2

112759262.2

9.     My background and experiences are in the field of advanced transportation systems with emphasis in highway and vehicle safety and efficiency and intelligent transportation systems.  My research includes, but has not been limited to, vehicle and barrier crash worthiness; computer simulation and modeling of vehicle crashes and their interaction with highway appurtenances; design optimization of structures under impact; testing and evaluation of vehicles, barriers, and safety and physical security systems; meshless computational methods; and research and development related to various aspects of vehicle safety systems.  I also have conducted research in intelligent and autonomous vehicles, therefore covering a range from crashworthiness to crash avoidance for safety.

10.     I have taught graduate level courses in, among others, vehicle dynamics, simulation and visualization, and system dynamics modeling and control.

11.     I have been an editor for the following journals:

- IEEE Transactions on Intelligent Transportation Systems Transactions (**Editor-in-Chief, 2019-present,** Senior Editor, 2017-2018, Associate Editor, 2004-2016)

- ASME Journal of Dynamic Systems, Measurement, and Control (Associate Editor, 2015-2018)

- International Journal of Automotive Technology (Associate Editor, 2003-2017)

- Journal of Multi-body Dynamics of Institution of Mechanical Engineers (Editorial Board, 2000-2015)

- International Journal of Vehicle Autonomous Systems (Editorial Board, 2005-

3

2015)

- International Journal of Vehicle Information and Communication Systems (Editorial Board, 2005-2014)

12.    I have also been a peer reviewer on more than twenty journals and proceedings in the area of automotive engineering and transportation.

13.    My research, as related to this case, has focused on fundamental areas of dynamics and controls, applied/computational mechanics in mechanical engineering with applications in vehicle and barrier crashworthiness, occupant modeling and injury biomechanics, modeling, analyses, design and development of safety and security barrier systems, and crash avoidance and intelligent and autonomous vehicles, among other areas. I consider myself an expert in these areas.

14.    I am a named inventor of U.S. Patent No. 8,519,853 titled "Unobtrusive Driver Drowsiness Detection System and Method."  This patent is related to the collision avoidance and safety contributions of my research.

## III.    SUMMARY OF OPINIONS

15.    It is my opinion that the claim term "rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in all independent claims of the '865 patent is unsupported by the original specification of the '865 patent.

16.    It is my opinion that the claim term "rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in all independent claims of the '865 patent fails to inform with reasonable certainty the scope of the Asserted Claims to those skilled in the art.

4

112759262.2

17.     It is my opinion that claims 1-5, 7, 10, 14-21, 23, 26, and 30-35 of the '865 patent are rendered obvious over U.S. Patent Publication No. 2004/0033106 to Turpin et al. ("Turpin") alone, and/or in combination with Delta's DSC501 ("DSC501") barrier.

18.     It is my opinion that claims 1, 3-5, 7, 10, 14, 15, 16, 18-21, 23, 26, and 30-35 of the '865 patent are anticipated and/or rendered obvious over Delta's DSC800RFB ("DSC800RFB") bollard.

19.     It is my opinion that claims 1, 3-5, 7, 10, 14, and 15 of the '865 patent are anticipated and/or rendered obvious over Delta's DSCTT203RB ("TT203R") bollard.

20.     It is my opinion that claims 1-5, 7, 10, 14-21, 23, 26, and 30-35 of the '865 patent are anticipated and/or rendered obvious over U.S. Patent Publication No. 2006/0090408 to Darcy ("Darcy") alone, and/or in combination with Delta's DSC501.

21.     In the sections that follow, I provide a summary of my bases for these conclusions.

## IV.   **APPLICABLE LAW**

22.     I have been informed by counsel that a patent issued by the U.S. Patent and Trademark Office is entitled to a presumption of validity, which may be overcome by clear and convincing evidence of facts that support the ultimate conclusion of invalidity.   Counsel have also informed me that the following standards are used to determine invalidity, which I have been informed are based on the pre-America Invents Act ("AIA") version of the statute.   I used these standards

5

to guide my analysis.

23.     Counsel have also told me that, for purposes of the report, the publications, patents, and products cited herein qualify as prior art to the asserted patents.

### A.     Lack of Written Description

24.     Counsel have informed me that pursuant to 35 U.S.C. Section 112, first paragraph, "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same…" 35 USC § 112, ¶ 1.

25.     Counsel have informed me that a claim is invalid for lack of written description if the patent specification, which consists of the written description of the patent including the drawings and the as-filed claims, fails to adequately describe all elements of the claim such that one of ordinary skill in the art in reading the patent would determine that the inventor possessed the claimed invention.

### B.     Indefiniteness

26.     Counsel have informed me that a claim is indefinite if, viewed in light of the specification and prosecution history, the claim fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

27.     I have been further informed that if a claim term is indefinite, all claims in which that term appears are invalid.

### C.     Anticipation

28.     I have been informed that a patent claim must be novel to be valid. A

6

112759262.2

claim that lacks novelty is invalid.

29.    Counsel have informed me that a patent claim is "anticipated" and therefore invalid under 35 U.S.C. Section 102, if, among other things, (a) the alleged invention was known or used by others in this country, or patented or described in a printed publication in the United States or a foreign country, before the alleged invention thereof by the patent's applicant(s), or (b) the alleged invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent.  I understand that the date one year prior to the filing of a patent application is referred to as the "critical date."

30.    Counsel have also informed me that a patent claim may be invalid under 35 U.S.C. Section 102(g)(2) if, before the patentee's invention thereof, the invention was made in the United States by another inventor who had not abandoned, suppressed, or concealed it.

31.    Counsel also informed me that references or products that fall into one or more of these categories are called "prior art," and that to anticipate a patent claim pursuant to 35 U.S.C. Section 102, a single reference must contain all of the elements and limitations described in the claim either expressly or inherently.

32.    Counsel have informed me that in deciding whether a single item of prior art anticipates a patent claim, one should consider what is expressly stated or present in the piece of prior art, and what is inherently present. I understand that

7

112759262.2

something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art. It is my understanding that one of ordinary skill in the art may not have recognized the inherent characteristics or functioning of the prior art at the time.

## D.    Obviousness

33.    Counsel have informed me that a patent claim is "obvious" and therefore invalid under 35 U.S.C. Section 103 if the claimed subject matter would have been obvious to a person of ordinary skill in the art as of the priority date of the patent based upon one or more prior art references. I understand that an obviousness analysis must consider: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of non- obviousness (such as unexpected results, commercial success, long-felt but unsolved needs, failure of others, copy by others, licensing, and skepticism of experts). Secondary indicia of non-obviousness may include a long felt but unmet need in the prior art that was satisfied by the invention of the patent; commercial success covered by the patent; unexpected results achieved by the invention; praise of the invention by others skilled in the art; taking of licenses under the patent by others; and deliberate copying of the invention. Even assuming such indicia exists, it is my understanding that there must be a nexus between any such secondary indicia and the claimed invention.

34.    Counsel have informed me that a conclusion of obviousness may be based upon a combination of prior art references, particularly if the combination of elements does no more than yield predictable results. I understand that a patent

8

112759262.2

composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. Moreover, I understand that it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in a way the claimed new invention does. I further understand that to determine obviousness the courts look to the interrelated teachings of multiple patents, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art.

35.    Counsel have informed me that in determining whether a combination of prior art references renders a claim obvious, it is helpful to consider whether there is some teaching, suggestion, or motivation to combine the references and a reasonable expectation of success in doing so. I understand, however, that the teaching, suggestion, or motivation to combine inquiry is not required and may not be relied upon in lieu of the four obviousness factors outlined above.

## V.    **PERTINENT BACKGROUND RE PROTECTIVE VEHICLE BARRIERS**

36.    Security barriers provide physical security around buildings and protections for pedestrians where required.  They were traditionally designed to prevent cars from entering or intruding into sidewalks or building areas where vehicles should not be driven.  For example, bollards, planters, portable New Jersey type barriers, luminaire supports, walls, fences, or even trashcans could be designed and installed for this purpose.  However, in their conventional designs, these barriers have served more of a deterrent than an actual barrier, capable of stopping an

9

112759262.2

intruding vehicle.

37.    Considering heightened security nationally and internationally, the security barriers had to fulfill a more stringent requirement of stopping a vehicle from entering the secured area.  For example, the barrier designed for secure Government buildings had to stop a vehicle carrying explosives when crashing into the barrier.  Therefore, the design of all actual security barriers had to accommodate enough resistance to intruding vehicles.  This requirement means the barrier's design had to consider the loading, i.e., the weight (mass), and speed (velocity), and the angle of attack of the intruding vehicle, among other related crash parameters.  Obviously, the physics of impact dictates that the required resistance for stopping a small car at 35 or 55 miles per hour (MPH) would be different from blocking a truck at the same speed.  More so, the required resistance had to be even more if the truck (intruding threat) was loaded with additional weight (say explosives.)

38.    In the conventional structural design of the barriers, it was well known that the barriers could provide more resistance if they were installed in a deeper, wider, and longer well-supported foundation, e.g., with concrete and rebars, and lateral and longitudinal supports, etc., along with numerous other design features. However, for many Government buildings in the cities requiring security barriers, the buildings' available space may not allow sufficient room or depth for such installations.  A well-known limiting factor has been the existence of utility lines (electricity, gas, cable, etc.) around or near the buildings, exactly where the barriers need to be installed.  This limitation mandated the design of barrier systems, which were shallower to avoid interference from the utility lines, but could still provide the

10

necessary resistance to an intrusion or threat.

39.     The Department State (DOS) and Department of Defense (DOD) had been among the leading U.S. agencies concerned with securing their buildings around the world with barriers.  This was well before the formation of the Department of Homeland Security after 9/11.  For example, the DOD military handbook MIL-HDBK-1013/14, <u>Department Of Defense Handbook: Selection And Application Of Vehicle Barriers</u>, of February 1, 1999, guided barrier designs and installation.  The handbook clearly considers the loads that impacting vehicle (threat) imposes into barriers to the barrier's design.  For example, the vehicle weight, speed, and direction of impact, among other variables, determine the loading condition into the barrier.  The barrier had to meet specific stoppage criteria and limit the threat (vehicle) intrusions behind the barrier.  The handbook also discussed guidance on wedge type barriers and bollards, and the performance results of crash tests of selected barriers.

40.     Originally, the Bureau of Diplomatic Security published the perimeter barrier test methods in 1985 to assess the crash performance of perimeter barriers and gates.  However, subsequently, the frequency and threat levels of vehicle attacks with explosive payloads increased both internationally and domestically, and thus, required further barrier mitigation for these threats.  The design of barriers needed to address a broad range of threat conditions, considering vehicle types, attack velocities of the different vehicles, and various acceptable penetration limitations.  Additional criteria concerned the location of installations, and hence the limited available depth feature of the barrier design, aesthetics, and different organizational

11

112759262.2

requirements.  For example, the DOS had to fulfill various design requirements and limitations according to the local regulations and ordinances of its facilities throughout the world.

41.    The Department of State, Bureau of Diplomatic Security, developed a crash testing standard to meet the broader needs of multiple organizations responsible for protecting U.S. assets domestically and abroad.  The Specification for Vehicle Crash Test of Perimeter Barriers and Gates was first published in 1985 as SD-STD-02.01.  In that standard, the test vehicle was specified as a medium-duty truck weighing 6800 kg (15 000 lb). The payload was to be securely attached to the frame and nominal impact velocities were 50 km/h (30 mph), 65 km/h (40 mph), and 80 km/h (50 mph) with penetration limits of 1 m (3 ft), 6 m (20 ft), and 15 m (50 ft), measured from the attack face of the perimeter security device to the final resting position of the front of the frame rails of the test vehicle.  This standard has been the guiding principle and requirement for the design of security barriers throughout the 1990s and early 2000s.

42.    Installation of barriers for the protection of an embassy compound required consideration of many underground conditions in the perimeter, such as utilities, soil properties, water table, near surface rock, and the labor costs of deep foundations.  In some facilities, the installations could extend a few acres.  When the deeper designs of various barriers, including bollards, could not fulfill the shallow depth requirements, alternate designs of bollards were considered.  In addition, other barrier systems, such as wedge barriers could be placed in shallow foundations that extended into protected space, and still provided anti-ram (intrusion prevention)

12

112759262.2

performance as required in the test standard.

43.    The National Crash Analysis Center ("NCAC") (a DOT sponsored center housed at The George Washington University from 1992 to 2015) had extensive expertise in the highway barrier design for safety in mitigating vehicle crashes.  The Department of State Bureau of Physical Security had contracted them (I served as the Director of the NCAC at the time) to help develop earlier shallow barrier systems.  Prior to 2003, the NCAC developed a shallow bollard system with reinforcement at its foundation that met the standard's criteria of limiting the truck payload penetration.  Their design was developed and evaluated through simulation and full-scale crash tests to prove the performance of the developed system.

44.    It was not until 2003 that the U.S. State Department, Bureau of Diplomatic Security, issued an updated standard (SD-STD-02.01, Revision A) for the testing of perimeter barriers.  This update was done for several reasons.  The revised standard provided more stringent design requirements.  For example, due to building setback limitations of many facilities, i.e., the space between the security barrier and the buildings (to be secured) the highest test level was adopted, and those allowing more than 1-m (3-ft) penetration distance were dropped.  Therefore, the revised standard only uses a 1-m (3-ft) penetration distance.  Other reasons concerned the method of securing the payload (steel drums filled with soil simulating explosive weight) with straps instead of a previous rigid installation—this modification representing a more realistic emulation of the real-life payloads and their possible penetration or projectiles after an impact (crash into a barrier).  A third modification considered measurements of the penetration location of the threat

13

vehicle. The cargo bed of trucks could effectively penetrate certain types of barriers. Accordingly, the penetration distance was changed to measure from the inside face or non-impact surface of the barrier to the front of the cargo bed when the vehicle has reached its final position. Finally, it was noticed that different truck designs could affect the results of the barrier performance. Therefore, the revised test standard required the use of very specific diesel-powered medium-duty trucks to be uniform in testing and evaluation of the barriers.

45. Later, these changes were adopted with some modifications into the ASTM "Standard Test Method for Vehicle Crash Testing of Perimeter Barriers," F2656-07.

46. It is evident from the above brief historical description of the security barrier design and testing that the market demand for security barriers has existed and magnified since the early 1980s and concerned the U.S. DOD and DOS. It was further intensified after the 9/11 attacks. The concern has been significant to the level that the government developed test procedures for security barriers in 1985; a standard and guidance utilized throughout the 1990s and early 2000s, and later adopted by an ASTM standard. The review also demonstrates several notable characteristics of security barrier designs. The barriers must be designed to loading conditions and meet specific criteria (penetration limits, etc.). Therefore, any innovation in barrier design had to consider the intruding vehicle's weight (mass), speed, and attack angle, among other crash conditions. The security barrier installation location had also been considered from the onset of standards development, therefore, dictating the various locale limitations for installations both

14

112759262.2

domestically and internationally.  It was well known in the 1980s and 1990s that the security barriers had to be installed to accommodate shallow installations in cities where the perimeter of buildings was above or near utility lines underneath, therefore, imposing more stringent design requirements for the barrier.  The significance of this was mentioned in the listed references, including government design guidance and standards for security barriers.  These issues were tested in the 1990s by the testing and development contractors who developed and evaluated barrier design for DOS.

## VI.    OVERVIEW OF THE '865 PATENT

47.    I have reviewed the '865 Patent, entitled "Anti-Ram System and Method of Installation."  '865 Patent, p. 1.  The '865 Patent includes 35 claims, of which claims 1, 16, and 33 are independent.  *Id.*, 9:15-12:25.  The '865 Patent discloses "bollard systems for use in protecting building and other structures from being rammed by vehicles."  *Id.*, 1:40-43.

48.    The '865 Patent describes the use of a "shallow pad or base" which is contrasted with traditional "deep trench foundations."  *See* '865 Patent, 4:30-32.  The '865 patent describes "standard deep trench foundations" as being at a depth of 4' to 6'.  *Id.*, 2:44-45.

49.    FIG. 1 of the '865 Patent depicts an example of a row of "bollards secured to a shallow mounting pad or base."  '865 Patent, 2:33-35.  FIG. 1 is shown below.  FIG. 1 illustrates the anti-ram system after it is installed.  *Id.*, 6:61-62.



**FIG. 1**

FIG. 1 of '865 Patent

50.    FIG. 3 of the '865 Patent illustrates an embodiment of the claimed invention with four bollards mounted on the framework for the pad or base of the anti-ram system, prior to the introduction of supporting media.  '865 Patent, 6:1-3. FIG. 3 is reproduced below.



FIG. 3 of the '865 Patent

51.    FIG. 3 shows bollards 14 mounted on a steel framework 23 for the pad of the anti-ram system, with "transversely extending tubular members 24, longitudinally extending tubular members 26, and longitudinally extending angle members 28." '865 Patent, 7:50-55. "[T]he tubular members 24 and 26 have a rectangular cross-section, such that they form a generally planar upper and lower surface for the pad." *Id.*, 7:55-58. "The longitudinally extending tubular members 26 are welded to the sides of the transversely extending tubular members 24, [and d]epending on the strength requirements of a particular anti-ram system, the welds can be fillet welds or full penetration welds on all four sides of the tubular members 26." *Id.*, 7:58-63. "Similarly, the longitudinally extending angle members 28 are welded to the sides of the tubular members 24 by either full penetration or fillet welds," or "[a]lternatively, angular notches can be cut in the transversely extending

17

tubular members 24 for the longitudinally extending angle member to pass through, in which case the angle member may be formed as one continuous piece." *Id.*, 7:63-8:2.  "Holes are provided in the transversely extending tubular members 24 to receive the cylindrical bollards 14." *Id.*, 8:2-4.  "[T]he cylindrical bollards are secured to the tubular members 24 by fillet or full penetrations welds at both the upper and lower surfaces of the tubular members 24." *Id.*, 8:4-6.

## VII.   <u>PERSON OF ORDINARY SKILL IN THE ART ("POSITA")</u>

52.   Counsel has informed me that I should consider materials in these proceedings through the lens of a person having ordinary skill in the art ("POSITA") related to the '865 Patent at the time of the earliest purported priority date of the '865 Patent.  I have done so during my review.  Except as expressly noted below, I was asked by counsel to use July 26, 2004, as the purported earliest priority date.

53.   Based upon my experience in this field and taking into account pertinent prior art, a POSITA as of July 26, 2004 would have had a Bachelor's of Science Degree (or a similar technical Master's Degree, or higher degree) in an academic area focusing on mechanical, structural, or civil engineering with two or more years of experience in the design and/or testing of vehicle barrier systems. Additional education in a relevant field or industry experience may compensate for a deficit in one of the other aspects of the requirements stated above.

54.   I base this characterization of a POSITA in view of my professional and personal experiences, including my knowledge of colleagues and others at or shortly before July 26, 2004.  Specifically, my experience working with the companies, researchers, academics, and designers and engineers practicing in the industry has

112759262.2

allowed me to become directly and personally familiar with the level of skill of individuals and the general state of the art.  I am familiar with the knowledge of persons of ordinary skill in the art as of July 26, 2004.

55.    Counsel informs me that a POSITA is a hypothetical person who is presumed to have known all the relevant art at the time of the invention.

56.    With this background in mind, a POSITA would have known that in the early 2000s there was a growing market demand for moving-vehicle barriers as a result of terrorist threats, and especially after the 9/11 attack.  He or she would have known that the growing market demand included a growing demand for barriers that did not interfere with underground utility lines that were typically buried from 18" to 36" deep.  A POSITA also would have known that shallow "pad" foundations were ubiquitous as supports for a myriad of upright structures.

57.    A POSITA would have known that the use of steel structural members, e.g., steel tubes, I-beams, channel beams, angles, and plates were commonplace in the designs of the bases for moving-vehicle barriers, such as wedge barriers and bollard systems.  He or she would have been aware of bases for these barriers that had structural members extending front to back (i.e., in the direction of the collision) as well as side-to-side structural members that intersected with front-to-back members.

58.    With respect to bollard systems, a POSITA would have known that the resistance to rotation of a bollard and base could be increased by enlarging the dimensions of the base, e.g., width, length or depth, or by increasing the weight of the base.  He or she would have known that the resistance to rotation of a bollard

19

and base could be increased by adding reinforced concrete around the perimeter of the base. Another known technique known to a POSITA to increase resistance to rotation of a bollard and base was to add concrete to the interior of the base to add weight and to use rebar extending between the structural members to prevent cracking and to tie the concrete to the structural members.

59.    A POSITA also would have known how the forces would have spread from a bollard through the base as a result of an impact against the bollard.

## VIII.    **CLAIM CONSTRUCTION**

60.    I understand that for purposes of my analysis in this matter that the terms appearing in a patent claim should be interpreted according to their "ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent." 37 C.F.R. § 42.100(b). In that regard, I understand that the best indicator of claim meaning is its usage in the context of the patent specification as understood by a POSITA. I further understand that the words of the claims should be given their plain meaning unless that meaning is inconsistent with the patent specification or the patent's history of examination before the Patent Office. I also understand that the words of the claims should be interpreted as they would have been interpreted by a POSITA at the time the invention was made (not today). I also understand that certain terms have been construed by the Court in this action as set forth in the claim construction order issued by this court on August 10, 2020, and I have adopted those constructions.

20

## IX.    ANALYSIS OF THE ASSERTED CLAIMS UNDER 35 U.S.C. § 112

### A.    Written Description

61.    Based on my review of the specification of the '865 patent, I have found no support in the specification of the '865 patent for the claim limitation that "rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards."  The specification of the '865 patent discloses resisting rotation of the bollard or bollards only.  *See, e.g.*, Col. 2, lines 60-64  ("In the shallow mount bollard system of this invention, the resistive forces are all at the base of the bollard (at the top of the trench) and therefore reduce the likelihood of the bollard rotating and vehicle breaching the security system.); Col. 3, lines 5-8 ("The bollard system of this invention is able to become more shallow (14″ to 6.5″ to 3″) by controlling the compliance supplied by the foundation to resist the rotation at the base of the bollard.); Col. 5, lines 38-41 ("The bollard system of this invention does not lend itself to the installation of a single bollard, since without an extended base or pad, there is not sufficient resistance to stop the rotation of the pipe bollard.").

62.    I have also reviewed U.S. Provisional Application Nos. 60/591018 (RSA-DELTA043705), 61/600,955 (RSA-DELTA043729), 60/605,959 (RSA-DELTA043752), 60/622,385 (RSA-DELTA043770), 60/674,965 (RSA-DELTA043814), and 60/679,547 (RSA-DELTA044050), and found no specific disclosure in any of these provisional applications discussing resisting rotation of the bollard(s) and the base.  I understand that U.S. Patent No. 7,699,558, to which the '865 patent also claims priority, has the same specification (with different claims) as the '865 patent.

21

63.    In summary, I have found no express disclosure of resisting rotation of the base in the specification of the '865 patent or in its parent applications. It is my opinion that the inclusion of this limitation in the claims broadens the scope of the claims beyond that which was originally disclosed in the specification. The amended claims include those bollard systems which require a higher impact load to cause rotation of the bollard(s) and the base than it would take to cause rotation of just the bollard. It is my opinion that this limitation extends the scope of the claims beyond the inventor's contribution to the field of art, as described in the patent specification.

## B.    **Indefiniteness**

64.    The claim element "such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in each independent claim fails to inform with reasonable certainty the scope of the Asserted Claims to those skilled in the art.

65.    Resisting rotation of the bollard(s) and the base is a performance requirement, which is dependent on numerous variables. However, I have not found any disclosure in the claims themselves nor the specification that explains how that performance should be measured. For example, whether a bollard structure comprising one or more bollards and a base is able to resist rotation of the bollard(s) and the base depends not only on the design and characteristics of the bollard(s) and the base, but the amount of the collision force transferred to the bollard by the impact. A bollard structure may resist rotation from a relatively low collision force, but may be unable to resist rotation by a greater collision force. The amount of force

22

generated by a collision will be dependent on many factors, including the weight and speed of the vehicle.  The claims do not set forth any criteria by which the resistance to rotation of the bollard(s) and base is to be determined.  The '865 patent could have defined a test by which "resistance to rotation" is to be determined by, for example, requiring the bollard system to pass a certified crash test whose criteria and methodology is known.  The Department of State, Department of Defense, and ASTM all have very well-known crash test protocols.  I have found nothing in the '865 patent that describes, or even suggests, how "resistance to rotation" should be determined.

66.    To the contrary, the '865 patent describes that "[t]he bollard system of this invention does not lend itself to the installation of a single bollard, since without an extended base or pad, there is not sufficient resistance to stop the rotation of the pipe bollard." '865 Patent, Col. 5, lns. 38-41.  This is an example of a bollard system "of the invention," (which includes a bollard and a base), that has insufficient resistance to prevent rotation of the bollard without extending the base.  This creates many questions:  What constitutes "insufficient" resistance to rotation vs sufficient resistance to rotation?  What is the impact force?  If this means the base must be "extended," what are the dimensions of the base that must be extended?  How much should it be extended?  What degree of rotation (short of complete prevention) is "resistance"? There are no guidelines for any of these questions.

67.    Thus, it is my opinion that the claims of the '865 patent, all of which include this limitation, fail to inform with reasonable certainty the scope of the Asserted Claims to those skilled in the art.

23

112759262.2

X.   **THE PRIOR ART RELIED ON HEREIN RENDERS THE ASSERTED CLAIMS ANTICIPATED AND/OR OBVIOUS**

A.   **Turpin et al. alone and/or in combination with the DSC501 Renders Obvious Claims 1-5, 7, 10, 14-21, 23, 26, 30-35**

1.   **Overview of Turpin et al.**

68.   U.S. Patent Publication No. 2004/0033106 to Turpin et al. ("Turpin") is titled "Automatic Self Contained Collapsible Traffic Barrier Bollard System and Method of Installation."  Turpin was filed on April 16, 2003, and published on February 19, 2004, both of which are prior to the July 26, 2004, earliest possible priority date of the '865 Patent.

69.   Turpin is directed to "an automatic collapsible self-contained, below-grade traffic barrier bollard system which can be installed with a minimum amount of excavation and minimum on-site construction."  Turpin, ¶ [0003].  The Turpin structure is generally described at paragraph [0011]:

The automatic self-contained collapsible traffic barrier bollard system system [sic] of the present invention is designed as an in-ground traffic barrier system which is comprised of a plate steel vault having four sides and a top and a bottom.  The top features an approach side and a shoulder side.  The interior of the plate steel vault includes supports, which are evenly spaced throughout the vault and are parallel to each other.  The surfaces of the supports feature a flat steel plate of adequate size in order to accommodate vehicular traffic.  The interior of the vault also includes an operational rotating rod, which is removably secured

24

112759262.2

to each bollard collar. The operational rotating rod is also secured to each beam in the interior of the vault and is designed to reach from side to side for impact control. The operational rotating rod features two split bushing blocks at each connection or securing point which provide for the rotation of the rod in order to raise and lower each respective bollard. Each respective split bushing block provides for a steel bushing or the like which will also provide for a grease fitting for maintenance purposes as well as an extra thick steel collar added from the pivot point. The operational rotating rod of the present invention is also secured to an arm that provides a push lever, which is secured to an electromagnetic worm gear actuator with two pins or the like. The present invention also provides for easy access to the serving of the actuator by providing for an inspection cover, which is easily removed as necessary.

70.    Figure 2 of Turpin shows a partially cut-away top view of the bollard structure of Turpin and Figure 4 shows a side cut-away view of the bollard structure of Turpin. Both figures are reproduced below for convenience.

25

112759262.2



Fig. 2

112759262.2



*Fig. 4*

71.    Turpin discloses a steel vault 12 with opposed ends 14, a top 16, and a bottom 18, and having an approach side 17 and a shoulder side 19.  Turpin, ¶ [0025]. The interior 22 of the vault 12 is comprised of supports 20 which are evenly spaced throughout the vault 12 and are parallel to each other.  Turpin, ¶ [0026].  I-beams 23 are respectively mounted to the top of the supports 20 and are disposed parallel to the direction of traffic flow over the vault 12.  *Id.*  "Mounted atop and perpendicular to the I-beams 23 are a plurality of channel beams 25, which support a flat steel plate 24 disposed over the vault 12."  *Id.*  The interior 22 of the vault 12 also includes an operational rotating rod 26, which is typically made of a schedule 80 steel pipe, which is removably secured to each of a plurality of bollards 34.  *Id.*  Each of the bollards 34 is secured to the rotating rod 26 by means of a collar secured to the rod with four Grade 8 bolts, which allows for easy, rapid replacement of a damaged bollard.  *Id.*, ¶ [0027].  The rotating rod 26 is designed to reach from side to side of the vault for impact control.  *Id.*, ¶ [0028].

27

72.    "The operational rotating rod 26 is also secured with bushings to each I-beam 23 in the interior of the vault 12."  Turpin, ¶ [0028].  "The operational rotating rod 26 features split bushing blocks 32 at each connection or securing point, which provides for the rotation of the rod 26 in order to raise or lower each respective bollard 34."  *Id.*

73.    To install the vault 12 of Turpin, in a preferred embodiment, an opening "approximately 12′×9′×24″ deep or the like" is prepared to create a pit.  Turpin, ¶ [0049].  In the center of the pit is an area approximately 7′×3′×1′ that is filled with gravel, thus creating a gravel bed onto which the vault 12 is placed.  *Id.*  As such, the vault 12 of Turpin is placed approximately 12" below grade.

74.    When the system of Turpin is deployed, "the traffic barrier bollards 34 are raised in a fashion so that they are tilted toward the oncoming vehicular traffic at a 60° or the like angle with the road surface."  Turpin, ¶ 30.  "[T]he traffic barrier arms are raised to the point where they stop against a solid steel plate 42 which limits and controls the travel of the base of the each respective bollards 34."  *Id.*  When a vehicle comes into contact with the bollards 34, the top corners of the bollards 34 enter the grill of the vehicle.  *Id.*, ¶ [0031].  As the vehicle continues forward, the bumper contacts the bollards, and as momentum carries the vehicle forward, damage to the vehicle increases until bending stresses in the bollards reach yield and the bollards begin to deform.  *Id.*  The vehicle experiences rapid deceleration, and additional damage is inflicted to the vehicle as it moves over the bollards 34.  *Id.*

75.    In a preferred embodiment of Turpin, "the bollards [34] are constructed of 4" x 4" x ½" steel posts."  Turpin, ¶ [0027].

28

112759262.2

76.    In the example embodiment, the bollards 34 resist rotation upon impact, and the bolts will fail in shear when subjected to sufficiently high forces, and the bollards 34 will ultimately fail in bending, rotating backward over the support structure upon sufficient application of force.  Turpin, ¶¶ [0033]-[0047].  Turpin describes the mechanics upon impact, when a specific force is applied and with specific materials employed in detail.  *Id.*

77.    Turpin also explains that when the 4" x 4" x ½" structural tubes are used as the bollards 34, the rod 26 fails in bending when sufficient force is applied.  Turpin, ¶ [0042].  Turpin further explains that "additional security against such a failure of the bollards at the point of rotation, i.e. at the rod 26 and the support bushings 32 therefor, steel straps of ½″×16″ may be secured around the bushings."  *Id.*  Turpin also explains:  "the invention has been described with reference to a specific embodiment, [but] this description is not meant to be construed in a limiting sense. Various modifications of the disclosed embodiment as well as alternative embodiments of the invention will become apparent to one skilled in the art upon reference to the description of the invention. It is therefore contemplated that the appended claims will cover any such modifications of embodiments that fall within the true scope of the invention."  *Id.*, ¶ [0052].

78.    A POSITA would recognize that the example embodiment of Turpin could be modified to create a more robust system, for example if it was desired to avoid shearing or "rotation" of the bollards in resistance to a particular impact force. For example, by using thicker or larger bollards than the example 4" x 4" x ½" steel posts, a POSITA would recognize that stronger materials would provide a stronger

29

design, which could withstand higher forces of impact, and it would therefore take a higher force to shear or rotate the bollards of Turpin.  Moreover, a POSITA would understand that the structure of Turpin would initially resist rotation of the bollards upon the example impact described in Turpin, and that the structure of Turpin would not shear at various impact forces lower than those described in the example embodiment of Turpin.  In other words, a POSITA would understand that a myriad of factors determine performance of the structure, and that under many conditions, the bollards of Turpin would not shear.

## 2.    Overview of DSC501

79.    I have been informed that Delta's DSC501 barrier ("DSC501") was on sale, sold, and in public use at least as early as 2002, which is prior to the July 26, 2004, earliest possible priority date of the '865 Patent.

80.    The DSC501 is described in a brochure provided by Delta from 2002, titled "Advanced highest security, high duty cycle counter-terrorist protection!" ("2002 Brochure").  DS00002398.  As shown and described in the 2002 Brochure and engineering drawings of the DSC501 that I have reviewed, the DSC501 is a shallow foundation wedge barrier sold by Delta since at least as early as 2002. Exemplary images of the DSC501 are shown below.

112759262.2



2002 Brochure



2002 Brochure

81.     Wedge barrier systems such as the DSC501 are used to prevent vehicles from passing the barrier system, like bollard barrier systems.  The DSC501 is an

31

active barrier system, meaning that the barrier (in this case a wedge) can be moved between a lowered state (which allows for vehicles to pass over the barrier) to a raised state (creating a wedge which stops vehicles from passing the barrier).

82.    The 2002 Brochure explains that the DSC501 is set in a shallow foundation of 18 inches deep, and that the DSC501 barrier is capable of stopping a 15,000 pound truck moving at 50 mph with zero penetration past the barrier.

83.    The image below is a side perspective view of the DSC501 in its open position.  The DSC501 can be prefabricated prior to arrival at a job site, and rebar rods are placed inside of the structure, which extend through generally rectangular holes in the interior I-beams and the C-channels which form the side walls of the structure.



2002 Brochure

84.    The drawing below, taken from an engineering drawing for the DSC501 shows aspects of the DSC501 barrier in an exploded view, with labeling added by counsel.  DS00002391.

32



85.     Immediately below is a 3D-image prepared by Delta showing the placement of a rebar cage in the DSC501.  (DS00006881).  After placing the rebar, cement is poured in the area of the rebar behind the large square steel tube.  The hardened concrete can be seen in the images below the 3D-image, which were also taken from the 2002 brochure.

33

112759262.2



3-D Image of DSC501 with rebar



2002 Brochure

86.    Cement is added to the base of the DSC501 to make the base heavier to improve resistance to linear or rotational movement when a vehicle crashes into the barrier.  The use of rebar in concrete is also known to increase the tensile strength of the concrete.  Providing rebar, rebar grillage or a rebar cage that extends between,

34

through and/or around the non-rebar structural steel members assures that the concrete will remain with the non-rebar members if the base is lifted during a collision. The portions of the square steel tubing and rebar that extend laterally outwardly into adjacent concrete add additional strength and stability to the barrier.

### 3.    Motivation to Combine the teachings of Turpin and the DSC501

87.    Prior to July 26, 2004, there existed market pressures for shallow mount barriers. I have been informed that the creation of Delta's DSC501 was the result of such market pressures. Turpin similarly explains that the invention of Turpin was borne by market pressures. *See, e.g.*, Turpin, ¶¶ [0008] – [0009].

88.    The Turpin bollard system is a "drop-in" barrier, meaning that it is constructed at a manufacturer's facility and then shipped to a user's location. *See* Turpin, ¶ [0010]. Installation involves setting the barrier into a shallow excavation, preferably onto a bed of gravel centered in the excavation. *Id.*, ¶ [0049]. A rebar cage is formed around the unit and concrete is poured into the space around the exterior of the barrier. *Id.* It would have been an obvious choice by a POSITA to use the well-known technique of adding concrete into the interior of the base of the barrier between structural members as taught for example by the DSC501 barrier to increase the weight of the barrier base. The locations within the interior of the base would be selected so that the added concrete would not interfere with any of the moving components of the barrier. It was well known to a POSITA that increasing weight of the base would increase the resistance to rotation of the bollards and base resulting from an impact by a moving vehicle against one or more of the bollards.

35

112759262.2

89.     As exemplified by the DSC501 and as known by a POSITA, it would have been advantageous to reinforce the poured concrete with rebar which would increase the tensile strength of the concrete for preventing or at least reducing cracking of the concrete.  The addition of weight to the Turpin barrier by adding concrete to interior spaces may allow for the use of lighter, less costly steel structural members and/or decreasing the height of the base.  Such results would have been very predictable to a POSITA.

### 4.     Claim Analyses

#### a)     Claim 1

##### (1)     A bollard structure comprising:

90.     To the extent the preamble is considered limiting, Turpin discloses a bollard structure having a plurality of bollards and a base.  Turpin, Abstract.

##### (2)     at least one bollard; and

91.     Turpin discloses a bollard structure that requires a minimum of two bollards, however in accordance with the illustrated preferred embodiment four are employed.  Turpin, para. [0027]; *see* Turpin, Figures 1 and 4.

112759262.2



Truncated FIG. 1 of Turpin (Annotated by Counsel)



Truncated FIG. 4 of Turpin (Annotated by Counsel)

**(3)      a base comprising opposed ends and a plurality**

37

**of structural members which intersect and are**

**tied together,**

92.    Turpin discloses that the base of the bollard structure includes a steel vault having a top plate (24), a bottom wall (18), two end walls (14), an approach side wall (17) and a shoulder side wall (19), all of which are structural members. Inside the vault, there is a network of additional structural members that intersect and are tied together.



Truncated FIG. 1 of Turpin (Annotated by Counsel)

93.    As shown in Figures 2, 4, and 5 of Turpin, the network of structural members inside the vault is made up of supports 20 which are evenly spaced throughout the vault 12 and are parallel to each other. *See* Turpin, para. [0011] ("The surfaces of the supports [20] feature a flat steel plate of adequate size to accommodate vehicular traffic.").

94.    Turpin discloses:

"Mounted atop the supports 20 are a set of I-beams 23 disposed parallel

38

to the direction of traffic flow over the vault. Mounted atop and perpendicular to the I-beams 23 are a plurality of channel beams 25, which support a flat steel plate 24 disposed over the vault 12. . . . The interior 22 of the vault 12 also includes an operational rotating rod 26, typically made of a schedule 80 steel pipe, which is removeably [sic] secured to each of a plurality of bollards 34."

Turpin, para. [0026].

95.    Turpin also discloses: "The operational rotating rod 26 is also secured with bushings to each I-beam 23 in the interior of the vault 12.  The rotating rod 26 is designed to reach from side to side for impact control."  Turpin, para. [0028].



Truncated FIG. 2 of Turpin (Annotated by Counsel)

39

112759262.2



Truncated FIG. 4 of Turpin (Annotated by Counsel)



Truncated FIG. 5 of Turpin (Annotated by Counsel)

> (4)  **for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction**

40

**intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;**

96.     Turpin discloses that, for each bollard of the bollard structure, I-beams 23 (the at least one first structural member) and side end walls 14 of the vault extend from the approach side wall 17 to the opposite shoulder side wall 19, which is a first direction intersecting the opposed ends (approach side end and shoulder side end). *See* Turpin, Figs. 2 and 4.

97.     The channel beams 25 approach side wall 17 and shoulder side wall 19 of the vault and rotatable rod 26 (the at least one structural member) extend perpendicular to the I-Beams 23 and end walls 14.  The I-beams 23 intersect with at least the channel beams 25 and rotating rod 26 and abuts the approach and shoulder side walls 17 and 19.

41



Truncated FIG. 2 of Turpin (Annotated by Counsel)

112759262.2



Truncated FIG. 4 of Turpin (Annotated)

**(5)      each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;**

98.     Turpin discloses that each bollard is secured to the rotating rod 26 (the at least one structural member) and to two of the I-beams 23 (the at least one first structural member).  *See* Turpin, para. [0027] ("Each of the bollards 34 is secured to the rotatable rod 26 by means of a collar secured to the rod with four Grade 8 bolts…."); *see also* Turpin, para. [0028] ("The operational rotating rod 26 is also

43

secured with bushings to each I-beam 23 in the interior of the vault 12. . . . The operational rotating rod 26 features split bushing blocks 32 at each connection or securing point, which provides for the rotation of the rod 26 in order to raise or lower each respective bollard 34. Each respective split bushing block 32 provides for steel bushings or the like which will also provide for grease fittings for maintenance purposes.").

99.    The rotatable rod 26 is secured to steel straps of ½" x 16", which may be secured around the bushings.  *See* Turpin, para. [0042] ("[A]dditional security against such a failure of the bollards at the point of rotation, i.e. at the rod 26 and the support bushings 32 therefor, steel straps of ½"×16" may be secured around the bushings.").

100.   The bollards 34, in their upright position, extend upwardly from the base.  When a force is applied to the bollard, the force will be transmitted to the base. *See* Turpin, para. [0043] ("The axial force will be reacted by the structure below the grade of the roadway.")

112759262.2



Truncated FIG. 4 of Turpin (Annotated by Counsel)



Truncated FIG. 5 of Turpin (Annotated by Counsel)

**(6)** **wherein the base is configured to be mounted in**

**a shallow excavation with the at least one bollard**

45

112759262.2

**extending above grade; and**

101.   The Turpin bollard structure is configured to be mounted in a shallow excavation with the bollards extending above grade when activated.  *See* Turpin, para. [0010] ("The system of the present invention can be installed with a minimum amount of excavation and a minimum amount of on-site construction.")



Truncated FIG. 4 of Turpin (Annotated by Counsel)

**(7)**   **wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or**

46

**bollards and the base from an impact against the**

**bollard or bollards.**

102.    The configuration of the vault and interior structural members provide

space between the I-beams 23 (the at least one first structural members) into which

concrete or other media may be poured or placed after the base is mounted in the

excavation to make the base heavier, which will increase resistance to rotation of the

bollards and the base from an impact.



Truncated FIG. 5 of Turpin (Annotated by Counsel)

103.    Turpin does not disclose that the supports 20 and/or I-beams 23 are

purposely configured to retain concrete in the interior spaces 22 therebetween.

Nevertheless, Turpin's design allows concrete to be introduced into those interior

spaces. This claim is not a method claim and does not require the presence of cement

in the vault to infringe.  Such actual pouring would have been obvious to a POSITA

in view of the prior art sale and installation of Delta's DSC501 barrier, discussed

47

below with respect to claim 35. The DSC501 installation includes the introduction of rebar and concrete into a large portion of the interior of the base, which adds weight to the base, thereby increasing the resistance to rotation of the barrier upon an impact against the barrier. A POSITA would have been motivated to modify Turpin in view of the DSC501 installation to include rebar and concrete into the base, as such modification would yield predictable results (improved performance with a heavier base). In addition, the technique used in the DSC501 installation for arresting vehicles upon impact would provide the same results when used with the structure of Turpin. There was an apparent reason to combine Turpin with the DSC 501 as described above, as Turpin teaches the need to have bollards mounted on a shallow foundation for arresting movement of a vehicle, and additional weight in the base of Turpin would allow for a more robust design to arrest such movement. Moreover, it would have been obvious to try to use the rebar and concrete used to fill the base of the DSC501 in combination with the similarly structured vault of Turpin. Any alleged improvement provided in the teachings of the '865 patent is a predictable use of such prior art elements according to their established functions.

b)    **Claim 2: The bollard structure of claim 1, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured.**

104. In the Turpin bollard structure, the opposed ends are formed by the approach side wall 17 and shoulder side wall 19 of the vault. Each are structural members (steel plates) to which an end of the I-beam 23 (first structural member)

48

112759262.2

are secured.



Truncated FIG. 4 of Turpin (Annotated by Counsel)

c)    **Claim 3:  The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base.**

105.   In the Turpin bollard structure, the intersecting structural members, e.g., I-beams 23, channel beams 25, I-beams 23 and rotating rod 26 all have axes that extend parallel to a plane, e.g., top plate 16 or bottom plate 18 of the base.

49



Truncated FIG. 2 of Turpin (Annotated by Counsel)

### d) **Claim 4:  The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches.**

106.    Turpin describes the installation of a preferred embodiment as follows:

The first step in the installation of a preferred embodiment of the present invention requires that the existing roadway be cut away to a dimension of approximately 12′×9′×24″ deep or the like, thus creating a pit or the like. Located directly in the center of the pit or the like is an area approximately 7′×3′×1′ that must be filled with gravel, thus

50

creating a gravel bed. Once the soil and gravel are compacted, the system 10 of the present invention may be placed into this foundation perimeter leaving an area of 2′ of concrete in front of the approach side 17, and 1′ of concrete after the shoulder side 19. . . . Further to the method, the system 10 is set into the pit and leveled with the road surface.

Turpin, ¶ [0049].

107.   A two feet deep pit filled with one foot of gravel leaves a depth of 12 inches from the bottom to the top of the vault for the top to be level with the road surface.

> **e)   Claim 5:  The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members.**

108.   In the Turpin bollard structure, a structural member, i.e., the rotating rod 26, is a schedule 80 steel pipe and is a tubular member.  Turpin, para. [0026].

> **f)   Claim 7:  The bollard structure of claim 5, wherein at least one tubular member comprises a tube.**

109.   In the Turpin bollard structure, the rotating rod 26, which is a structural member, is a schedule 80 steel pipe which is a tube.  Turpin, para. [0026].

> **g)   Claim 10:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube.**

110.   In the Turpin bollard structure, the rotating rod 26, which is a structural

51

member, is a schedule 80 steel pipe which is a tube.  Turpin, para. [0026].

> **h)** **Claim 14:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate.**

111.   The Turpin bollard structure includes a bottom plate 18 as well as side plates 14, 17, 19 and a top plate 24.  Turpin, para. [0025].

> **i)** **Claim 15:  The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members.**

112.   In the Turpin bollard structure, at least the bottom plate 18 as well as side plates 14, 17, 19 and a top plate 24, supports 20, rotating rod 26, I-beams 23, which are structural steel members.  See, e.g., Turpin, para. [0025], [0026].

> **j)** **Claim 16**
>
> **(1)** **A bollard structure comprising:**

113.   See Section X.A.4.a.1.

> **(2)** **a plurality of bollards; and**

114.   Turpin discloses that in a preferred embodiment of the Turpin bollard structure, there are four bollards.  Turpin, para. [0027].



Truncated FIG. 1 of Turpin (Annotated by Counsel)



Truncated FIG. 4 of Turpin (Annotated by Counsel)

53

**(3)** **a base comprising opposed ends and a plurality of structural members which intersect and are tied together,**

115.   See Section X.A.4.a.3.

**(4)** **for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;**

116.   See Section X.A.4.a.4.

**(5)** **each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;**

117.   See Section X.A.4.a.5.

**(6)** **wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the**

54

112759262.2

**excavation; and**

118. See Section X.A.4.a.6.

> **(7)    wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.**

119. See Section X.A.4.a.7.

> **k)    Claim 17 :  The bollard structure of claim 16, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured.**

120. See Section X.A.4.b.

> **l)    Claim 18:  The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and wherein each of the plurality of bollards is secured to at least one structural member that extends in the**

112759262.2

**first direction.**

121.   The Turpin bollard structure is configured to resist impact from a direction of expected impact (the approach direction) and each of the bollards are secured to structural members, i.e., I-beams 23 that extend in the first direction, i.e., the direction of approach.



Truncated FIG. 4 of Turpin (Annotated by Counsel)

    m)    **Claim 19:  The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base.**

**122.**   See Section X.A.4.c.

    n)    **Claim 20:  The bollard structure of claim 16 wherein**

56

**the base has a height of 3 inches to 14 inches.**

123. See Section X.A.4.d.

**o)  Claim 21:  The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members.**

124. See Section X.A.4.e.

**p)  Claim 23:  The bollard structure of claim 21, wherein at least one tubular member comprises a tube.**

125. See Section X.A.4.f.

**q)  Claim 26:  The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube.**

126. See Section X.A.4.g.

**r)  Claim 30:  The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate.**

127. See Section X.A.4.h.

**s)  Claim 31:  The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members.**

128. See Section X.A.4.i.

**t)  Claim 32:  The bollard structure of claim 16, comprising a rebar grillage comprising intersecting**

57

112759262.2

**and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured.**

129.   Turpin discloses the use of re-bar outside of the vault and pouring concrete around the vault after rebar is placed in the area in which the concrete is to be poured.  *See* Turpin, para. [0025], [0049].  It would be understood by a POSITA that the rebar would be formed in a "grillage" comprising intersecting and tied together rebar members, and that such rebar members would extend coextensively with at least a portion of the base that includes a structural member to which a bollard is secured, as the rebar would be ineffective if not provided in a manner that meets these limitations.  Accordingly, Turpin discloses the limitations of claim 32.

Moreover, a "rebar grillage comprising intersecting and tied together rebar members that would extend coextensively with at least a portion of the base that includes a structural member to which a bollard is secured" is obvious in view of the DSC501 barrier, discussed below with respect to claim 35. The DSC501 includes a rebar grillage comprising intersecting and tied together rebar members in the interior of the base which extend laterally across the base and out of the base through portals in the side walls of the base.  It would have been obvious to a POSITA to add rebar grillage to the interior of the Turpin base to add weight to the base and to more extensively tie the structural members together to more thoroughly dissipate the forces received by the base during a collision.

58

112759262.2

u)    **Claim 33**

(1)    **A bollard structure comprising:**

130.    See Section X.A.4.a.1.

(2)    **a plurality of bollards; and**

131.    See Section X.A.4.j.2.

(3)    **a base comprising opposed ends and a plurality of members which intersect and are tied together,**

132.    See Section X.A.4.a.3.

(4)    **for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;**

133.    See Section X.A.4.a.4.

(5)    **each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard**

59

112759262.2

**to the base;**

134. See Section X.A.4.a.5.

> **(6)    at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured;**

135. Turpin discloses that the bollards are secured to the I-beams 23. Both the rod 26 and C-channels 25 extend parallel to the ends of the base and extend between I-beams to which adjacent bollards are secured. *See* Turpin Fig. 2.

112759262.2



Truncated FIG. 2 of Turpin (Annotated by Counsel)

**(7)** **wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and**

136. See Section X.A.4.a.6.

**(8)** **wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the**

61

112759262.2

**base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.**

137. See Section X.A.4.a.7.

      v)    **Claim 34:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member.**

138. Turpin discloses members that extend between a structural member (e.g., I-beam 23) to which a first bollard is secured and a structural member (e.g., another I-beam 23) to which a second bollard adjacent to the first bollard is secured that are structural members (e.g., channel beams 25 or rotatable rod 26).  *See* Fig. 5 of Turpin.

62



Truncated FIG. 5 of Turpin (Annotated by Counsel)

w) **Claim 35:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member.**

139.   Turpin discloses that "#5 re-bar, or the like, is placed in the areas in which concrete is to be placed."  Turpin, para. [0049].

140.   As shown in Figs 3 and 4 of Turpin, concrete may be placed below and around the sides of the vault 12.

63



Truncated FIG. 3 of Turpin (Annotated by Counsel)

141.    Turpin does not appear to explicitly disclose the use of rebar within the vault 12.  To the extent that Turpin does not disclose a rebar member as a structural member that extends between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured, such an arrangement would be obvious in view of DSC501.

142.    Below are images of a DSC501 barrier taken from the 2002 Brochure.

64



143.  The image above is a side perspective view of the DSC501 in its open position. Rebar rods extend through generally rectangular holes in the interior I-beams and the C-channels which form the side walls.

144.  For convenience, drawings showing aspects of the base of the DSC501 barrier are provided below.  DS00002391.

112759262.2



Engineering Drawing Exploded view of DSC501 base

(with added labeling by counsel) (DS00002391)

112759262.2



Engineering Drawings Top View of DSC501 base (DS00002394)



3D Image of DSC501 Design (DS00006881)

145.   Above is a 3D image prepared by Delta showing the placement of the

67

112759262.2

rebar in the DSC501.  Cement is poured in the area of the rebar behind the large square steel tube.  The hardened concrete can be seen in the images below, also taken from the 2002 brochure.



2002 Brochure

146.  The DSC barrier demonstrates numerous concepts that were well known and used in commercial practice in 2002 and prior.  These included the use of tubular steel, steel I-Beams and C-channel beams in the design of barrier bases. The addition of cement to the base, or any other media to make the base heavier to improve resistance to linear or rotational movement when a vehicle crashes into the barrier.  The use of rebar in concrete is known to increase its tensile strength. Providing rebar, rebar grillage or a rebar cage that extends between, through and/or around the non-rebar structural steel members assures that the concrete will remain with the non-rebar members if the base is lifted during a collision.

147.  The portions of the square steel tubing and rebar that extend laterally

68

outwardly into adjacent concrete add additional strength and stability to the barrier.

148. The DSC501 makes use of a long and wide but shallow (18 inches) base. The shallow depth of the base which allows it to be used in applications where deep trenching is not a practical option, e.g. locations where utility lines and the like may be buried.

**B.  Delta's DSC800RFB Anticipates and/or Renders Obvious Claims 1, 3-5, 7, 10, 14, 15, 16, 18-21, 23, 26, 30-35**

**1.  Overview of DSC800RFB**

149. I have been informed that Delta sold a bollard product under the name DSC800RFB ("DSC800RFB") which was on sale, sold, installed at the UCLA Health Science Building, and thereafter in public use at least as early as 2002, which is more than one year before July 26, 2004.

150. The DSC800RFB is a removable fixed bollard, meaning that the bollard is capable of being removed, but is not hydraulic and will typically remain in place after installation. *See* DS00001030. The bollard is formed of a pipe having a 17 cm diameter. *Id.* The bollard extends below grade 17.25" and is attached to a 16" x 16" x 1" plate (a top plate) just below grade and a 16" x 16" x 1" plate (a bottom plate) at the bottom of the bollard (i.e., 17.25" below grade). *Id.* The top plate has a circular opening. *Id.* The top and bottom plates are connected by 10.75" diameter cylindrical casing through which the bollard is inserted. *Id.* The lower portion of the bollard, i.e., the portion of the bollard located below grade, is inserted through the opening of the top plate and extends into the cylindrical casing between the top and bottom plates. *Id.* Concrete and rebar surround the bollard and plates below

69

grade, creating a foundation for the bollard system. *Id.* As can be seen in DS00001030, a typical bollard array includes three aligned bollards, with concrete and rebar extending therebetween. *Id.*

### 2. **Claim Analyses**

#### a) **Claim 1**

##### (1) **A bollard structure comprising:**

151. To the extent the preamble is considered limiting, the DSC800RFB installation is a bollard structure.



DS00001030.

##### (2) **at least one bollard; and**

152. The DSC800RFB installation has a bollard.

112759262.2



DS00001030 (annotations by counsel).

> **(3)     a base comprising opposed ends and a plurality of structural members which intersect and are tied together,**

153.    The base of the DSC800RFB includes a foundation base assembly comprising a plurality of structural members.  The structural members include a generally horizontal lower steel plate, a generally horizontal upper steel plate, and a steel foundation tube extending generally vertically between the lower and upper plates.  Structural members of the base also include intersecting and tied-together steel bars (rebar) forming a cage around the foundation tube assembly.

71

112759262.2



DS00001030 (annotations by counsel).

> **(4)** **for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;**

154.   The DSC800RFB includes a lower plate that inherently includes a first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed

72

ends, and at least one structural member extending to intersect with the at least one first structural member. The '865 patent discusses this inherency:

> In its most basic form the bollard system of this invention would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards. . . . **The cross pieces are inherent in the continuous plate.**

'865 Patent, 5:48-52 (emphasis added).

155.   The figure below shows the upper plate in a plan view. The lower plate has substantially the same structure, except that the lower plate does not have the opening to accommodate the bollard or the screw holes of the upper plate.



DS00001030 (annotations by counsel).

156.   For convenience, the following schematic shows an annotated drawing of the lower plate.

73

112759262.2



Schematic prepared by counsel

> **(5)** **each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;**

157. The DSC800RFB includes a bollard that is secured to the lower plate and foundation tube, which includes the at least one first structural member and the at least one structural member of the base, and extends upwardly from the base so as to transmit forces applied to the bollard to the base.

74

112759262.2



DS00001030 (annotations by counsel).

**(6)     wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and**

158.   The DSC800RFB includes a foundation base assembly that has a height of 16.75" and is configured to be mounted in a shallow excavation with the bollard extending above grade.

75

112759262.2



DS00001030 (highlighting by counsel).

> **(7)** **wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.**

159.  The DSC800RFB includes a foundation tube assembly and rebar cage that are configured to retain within the base supporting media introduced into the base, i.e., concrete, when the base is mounted in the excavation.  The added weight

76

112759262.2

of the concrete increases resistance to rotation of the bollard and the base from an

impact against the bollard.



DS00001030 (highlighting by counsel).

> **b)** **Claim 3: The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base.**

160. The DSC800RFB includes structural members that include a generally

horizontal lower steel plate, a generally horizontal upper steel plate, and a steel

foundation tube extending generally vertically between the lower and upper plates.

Structural members of the base also include intersecting and tied-together steel bars

(rebar) forming a cage around the foundation tube assembly. Each of these structural

77

members has an axis that extends parallel to a plane of the base.

**c)**     <u>**Claim 4: The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches.**</u>

161. It would have been obvious to a POSITA to tailor the dimensions of the DSC800RFB based on the needs of a particular installation, including reducing the overall height of the base to a height of 3 inches to 14 inches. The DSC800RFB has a height of 16.75 inches. Including the rebar cage, an excavation of slightly deeper than 16.75 inches would be required. The '865 patent does not disclose that a base height of 14 or less inches is critical to accomplish the purpose of the invention, i.e., to avoid underground utilities which are typically installed at greater depths. Fourteen inches appears to be arbitrary. Thus, a base having a height of 16.75 inches or slightly higher would be equivalent to a 14 inch base and simply a matter of obvious design choice. Moreover, it would have been obvious to reduce the height of the base of the DSC800RFB to reduce the amount of required excavation.

**d)**     <u>**Claim 5: The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members.**</u>

162. The DSC800RFB includes a steel foundation tube that comprises a tubular member.

```
4. WEIGHT: BOLLARD (WITHOUT DECORATIVE CASTING)....95.8 lbs
            FOUNDATION TUBE.................................97.7 lbs
            TOTAL BOLLARD..................................193.5 Lbs
```

DS00001030.

**e)**     <u>**Claim 7: The bollard structure of claim 5, wherein at**</u>

78

**least one tubular member comprises a tube.**

163. The DSC800RFB includes a steel foundation tube that comprises a tube.

```
4. WEIGHT: BOLLARD (WITHOUT DECORATIVE CASTING)....95.8 lbs
           FOUNDATION TUBE.....................................97.7 lbs
           TOTAL BOLLARD.......................................193.5 Lbs
```

DS00001030.

**f)      Claim 10:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube.**

164. The DSC800RFB includes a steel foundation tube that comprises a tube.

```
4. WEIGHT: BOLLARD (WITHOUT DECORATIVE CASTING)....95.8 lbs
           FOUNDATION TUBE.....................................97.7 lbs
           TOTAL BOLLARD.......................................193.5 Lbs
```

DS00001030.

**g)      Claim 14:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate.**

165. The DSC800RFB includes upper and lower plates that each comprise a plate. DS00001030.

**h)      Claim 15:  The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members.**

166. DSC800RFB includes various structural members, all of which

79

comprise structural steel members. Example provided below from engineering drawing:

> 7. REINFORCING STEEL SHALL BE DEFORMED BARS CONFORMING TO
> ASTM A615, GRADE 60 (60,000 PSI OR 413.7MPA)

DS00001030.

### i) Claim 16

#### (1) A bollard structure comprising:

**167.** See Section X.B.2.a.1.

#### (2) a plurality of bollards; and

**168.** The DSC800RFB installation has a plurality of bollards.



DS00001030.

#### (3) a base comprising opposed ends and a plurality of structural members which intersect and are tied together,

**169.** See Section X.B.2.a.3.

#### (4) for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second

80

**of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;**

170. See Section X.B.2.a.4.

**(5)    each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;**

171. See Section X.B.2.a.5.

**(6)    wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and**

172. See Section X.B.2.a.6.

**(7)    wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such**

81

**that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.**

173.  See Section X.B.2.a.7.

**j)    Claim 18:  The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and wherein each of the plurality of bollards is secured to at least one structural member that extends in the first direction.**

174.  The DSC800RFB bollard structure is configured to resist impact from a direction of expected impact, and the first direction is parallel to the direction of expected impact. Each of the plurality of bollards is secured to at least one structural member (generally horizontal lower steel plate) that extends in the first direction.



82

112759262.2

DS00001030 (annotations added by counsel).

    **k)**     <u>**Claim 19: The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base.**</u>

175. See Section X.B.2.b.

    **l)**     <u>**Claim 20: The bollard structure of claim 16 wherein the base has a height of 3 inches to 14 inches.**</u>

176. See Section X.B.2.c.

    **m)**     <u>**Claim 21: The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members.**</u>

177. See Section X.B.2.d.

    **n)**     <u>**Claim 23: The bollard structure of claim 21, wherein at least one tubular member comprises a tube.**</u>

178. See Section X.B.2.e.

    **o)**     <u>**Claim 26: The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube.**</u>

179. See Section X.B.2.f.

    **p)**     <u>**Claim 30: The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate.**</u>

180. See Section X.B.2.g.

112759262.2

q)    **Claim 31:  The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members.**

181.   See Section X.B.2.h.

r)    **Claim 32:    The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured.**

182.   The DSC800RFB bollard structure comprises a rebar grillage comprising intersecting and tied together rebar members extending coextensively with a least a portion of the base that includes a structural member to which a bollard is secured.

```
7    REINFORCING STEEL SHALL BE DEFORMED BARS CONFORMING TO
     ASTM A615, GRADE 60 (60,000 PSI OR 413 7MPA)
```

DS00001030.



DS00001030 (highlighting by counsel).

    **s)**    <u>**Claim 33**</u>

    **(1)**    <u>**A bollard structure comprising:**</u>

183.  See Section X.B.2.a.1.

    **(2)**    <u>**a plurality of bollards; and**</u>

184.  See Section X.B.2.i.2.

    **(3)**    <u>**a base comprising opposed ends and a plurality of members which intersect and are tied together,**</u>

185.  See Section X.B.2.a.3.

    **(4)**    <u>**for each bollard of the bollard structure at least**</u>

85

**one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;**

186. See Section X.B.2.a.4.

**(5)    each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;**

187. See Section X.B.2.a.5.

**(6)    at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured;**

188. In the DSC800RFB bollard structure, at least a portion of the rebar (of the plurality of members) extends parallel to the ends of the base extending between

86

112759262.2

a lower plate of one bollard, to which a first bollard is secured, and a lower plate of a second bollard to which a second bollard is secured, the second bollard being adjacent to the first bollard.

> **(7)** **wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and**

189. See Section X.B.2.a.6.

> **(8)** **wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.**

190. See Section X.B.2.a.7.

> **t)** **Claim 34: The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is**

**secured comprises a structural member.**

191. The rebar, which is at least one of the plurality of members that extends between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured, comprises a structural member.

> u) **Claim 35: The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member.**

192. The rebar, which is at least one of the plurality of members that extends between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured, comprises rebar.

C. **Delta's TT203R Anticipates and/or Renders Obvious Claims 1, 3-5, 7, 10, 14, and 15**

1. **Overview of TT203R**

193. I have been informed that Delta sold a bollard product under the name DSCTT203RB ("TT203R") which was on sale, sold, installed at Amgen in Thousand Oaks, and thereafter in public use at least as early as 1997, which is more than one year before July 26, 2004.

194. The TT203R is a removable fixed bollard, meaning that the bollard is

88

capable of being removed, but is not hydraulic and will typically remain in place after installation. *See* DS00000321. The bollard is formed of a pipe and extends below grade 17.625". *Id.* The bollard is attached to a 15" square plate (a top plate) at grade and a 15" square plate (a bottom plate) at the bottom of the bollard (i.e., 17.625" below grade). *Id.* The top plate is attached to a bracket, which also attaches to an access box. *Id.* The top plate has a circular opening. The top and bottom plates are connected by a casing (also called a foundation tube assembly) through which the bollard is inserted. *Id.* The lower portion of the bollard, i.e., the portion of the bollard located below grade, is inserted through the opening of the top plate and extends into the casing between the top and bottom plates. *Id.* Concrete and rebar surround the bollard and plates below grade, creating a foundation for the bollard system. DS0000753.

### 2. Claim Analyses

### a) Claim 1

#### (1) A bollard structure comprising:

195.  To the extent the preamble is considered limiting, the TT203R is a bollard structure.

DS00000321.

#### (2) at least one bollard; and

196.  The TT203R has a bollard.



DS00000321 (annotations by counsel).

> **(3)** **a base comprising opposed ends and a plurality of structural members which intersect and are tied together,**

197. The base of the TT203R includes a foundation base assembly comprising a plurality of structural members. The members include a generally horizontal lower steel plate, a generally horizontal upper steel plate, a steel foundation tube extending generally vertically between the lower and upper plates and a laterally extending steel access box.

90

112759262.2



DS00000321 (annotations by counsel).

198.    Additionally, intersecting and tied-together steel bars (rebar) form a cage around the foundation tube assembly.

112759262.2



DS00000754 (highlighting by counsel).

> **(4)** **for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;**

199. The lower plate of the TT203R inherently includes a first structural

member extending from a first of the opposed ends of the base to a second of the

opposed ends of the base in a first direction intersecting with the opposed ends, and

at least one structural member extending to intersect with the at least one first

structural member.

> In its most basic form the bollard system of this invention would
> have its base or pad formed of a continuous flat piece of steel with
> holes cut out for the bollards. . . . The cross pieces are inherent in
> the continuous plate.

'865 Patent, 5:48-52.

200.    For convenience, the following schematic shows an annotated drawing

of the lower plate.



Diagram prepared by counsel.

> **(5)    each bollard being secured to at least one of the**
>
> **at least one first structural member and the at**
>
> **least one structural member of the base for the**
>
> **respective bollard and extending upwardly from**

93

**the base so as to transmit forces applied to the at least one bollard to the base;**

201. The bollard of the TT203R is secured to the lower plate and foundation tube, which includes the at least one first structural member and the at least one structural member of the base, and extends upwardly from the base so as to transmit forces applied to the bollard to the base.



DS00000321 (annotations by counsel).

**(6)    wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and**

202. The TT203R includes a foundation base assembly that has a height of

94

112759262.2

17.625 inches and is configured to be mounted in a shallow excavation with the bollard extending above grade.



DS00000321 (annotations by counsel).



DS00000321 (annotations by counsel).

95

(7)    **wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.**

203.   The TT203R includes a foundation tube assembly and rebar cage that are configured to retain within the base supporting media introduced into the base, i.e., concrete, when the base is mounted in the excavation.  The added weight of the concrete increases resistance to rotation of the bollard and the base from an impact against the bollard.

b)    **Claim 3:  The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base.**

204.   The TT203R includes structural members that include a generally horizontal lower steel plate, a generally horizontal upper steel plate, and a steel foundation tube extending generally vertically between the lower and upper plates. Structural members of the base also include intersecting and tied-together steel bars (rebar) forming a cage around the foundation tube assembly.  Each of these structural members has an axis that extends parallel to a plane of the base.

c)    **Claim 4:  The bollard structure of claim 1, wherein the**

96

112759262.2

**base has a height of 3 inches to 14 inches.**

205.   It would have been obvious to a POSITA to tailor the dimensions of the TT203R based on the needs of a particular installation, including reducing the overall height of the base to a height of 3 inches to 14 inches.   The TT203R foundation base assembly has a height of 17.625 inches.   Including the rebar cage, an excavation of slightly deeper than 17.625 inches would be required.   The '865 patent does not disclose that a base height of 14 or less inches is critical to accomplish the purpose of the invention, i.e., to avoid underground utilities which are typically installed at greater depths. Fourteen inched appears to be arbitrary. Thus, a base having a height of 17.625 inches or slightly higher would be equivalent to a 14 inch base and simply a matter of obvious design choice.   Moreover, it would have been obvious to reduce the height of the base of the TT203R to reduce the amount of required excavation.

> d)    **Claim 5:  The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members.**

206.   The TT203R includes a steel foundation tube that comprises a tubular member.

112759262.2



DS00000321.(annotations by counsel).

> **e)** **Claim 7:  The bollard structure of claim 5, wherein at least one tubular member comprises a tube.**

207.  The TT203R includes a steel foundation tube that comprises a tube. See Section X.C.2.e.

> **f)** **Claim 10:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube.**

208.  The TT203R includes a steel foundation tube that comprises a tube. See Section X.C.2.e.

> **g)** **Claim 14:  The bollard structure of claim 1, wherein**

98

**the plurality of structural members comprises at least one plate.**

209.   The TT203R includes upper and lower plates that each comprise a plate.  See Section X.C.2.e.

> h)   **Claim 15:  The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members.**

210.   The TT203R includes various structural members, all of which comprise structural steel members.

**D.   Darcy, alone and/or in combination with the DSC501 Anticipates and/or Renders Obvious Claims 1-5, 7, 10, 14-21, 23, 26, 30-35**

**1.   Darcy's Status as Prior Art**

211.   I understand that U.S. Patent Publication No. 2006/0090408 to Darcy ("Darcy") was filed on February 9, 2005, and claims priority to a provisional application filed on October 22, 2004, which is after July 26, 2004.  I have not made an independent assessment of whether the '865 patent is entitled to the July 26, 2004, priority date.  Counsel has asked me to review Darcy under the assumption that Darcy may properly be considered prior art, and I have not made an independent assessment of whether Darcy is prior art, or whether the '865 patent is entitled to the July 26, 2004, priority date.

**2.   Overview of Darcy**

212.   Darcy is directed to a vehicle barrier system which requires less ground preparation than typical barrier systems, which Darcy explains are often embedded

99

in the ground at a depth of 48 inches.  Darcy, ¶¶ [0003] – [0005].  Darcy discloses a vehicle barrier system 10 "including a reaction mass 12 for installation in the earth and at least one post 14 immovably anchored in the reaction mass 12 and extending upwardly therefrom."  Darcy, ¶ [0027].  Figures 1, 5, and 6A of Darcy are shown below illustrating an example embodiment.



Darcy, Fig. 1

112759262.2

Darcy, Fig. 5



FIG. 6A

Darcy, Fig. 6A

213. The reaction mass 12 of Darcy "includes a forward member 16 for confronting and compressing the surrounding earth and absorbing energy from the impact of the vehicle 18 with post 14," and "extends rearwardly 20 sufficiently from post 14." Darcy, ¶ [0027]. "Reaction mass 12 has depth d of approximately 15 inches and in FIG. 1 its top 17 is shown flush with the surface 24." *Id.*

214. Darcy describes an embodiment of the frame 40 as follows:

Frame 40 of reaction mass 12, FIG. 5, may be formed of steel shapes including but not limited to forward channel 42 and rearward channel 44, which are 15 inches high and 3.375 inches wide and have a weight of 33.9 pounds per linear foot. End channels 46 and 48 may be made of similar channel material and there may be cross-beams 50, 52, and 54. Lateral stabilizer 56 may be made of a "T" shape with a

101

height of 6 inches, a width of 10 inches, and a weight of 26.5 pounds per linear foot. I-beams having a height of 14 inches, a width of 10 inches and a weight of 61 pounds per linear foot. The entire frame has a length l equal to 137½ inches and a width w equal to 48.625 inches and an overall weight including frame 40 and bearing post 14 of 4,700 pounds. Also included may be ½ inch steel plate bottom and channel "grabbers"."

Darcy, ¶ [0028].

215.   Beams 42-56 may be fastened in any suitable fashion such as bolts or welding.  Darcy, ¶ [0029].

216.   Darcy also discloses that "[r]eaction mass 12 frame 40, FIG. 7, may be filled with a strong dense material such as concrete 90, FIG. 7, having a density of approximately 144 pounds per cubic foot so that the overall modular reaction mass including frame 40 and concrete 90 with posts 14 weighs approximately 12,235 pounds."  Darcy, ¶ [0030].

217.   Darcy explains in an embodiment: "The size and weight of reaction mass 12 and post 14 combined with the resistance of the earth 26 makes it possible for vehicle barrier system 10 to operate effectively to arrest the movement of vehicles even though it requires installation to only a depth of 21 inches."  Darcy, ¶ [0027].

### 3.    Overview of DSC501

218.   See Section X.A.2. above.

### 4.    **Motivation to Combine**

219.    Prior to July 26, 2004, there existed market pressures for shallow mount barriers. I have been informed that the creation of Delta's DSC501 was the result of such market pressures. Darcy similarly explains that the invention of Darcy was borne by market pressures. *See, e.g.*, Darcy, ¶ [0003].

220.    Installation of the Darcy barrier involves setting the barrier into a shallow excavation. Darcy, ¶ [0031]. Concrete is poured into the space around the exterior of the barrier. *Id.*, ¶ [0030]. It would have been an obvious choice by a POSITA to use the well-known technique of adding concrete into the interior of the base of the barrier between structural members as taught for example by the DSC501 barrier to increase the weight of the barrier base. The locations within the interior of the base would be selected so that the added concrete would not interfere with any of the moving components of the barrier. It was well known to a POSITA that increasing weight of the base would increase the resistance to rotation of the bollards and base resulting from an impact by a moving vehicle against one or more of the bollards.

221.    As exemplified by the DSC501 and as known by a POSITA, it would have been advantageous to reinforce the poured concrete with rebar which would increase the tensile strength of the concrete for preventing or at least reducing cracking of the concrete. The addition of more weight to the Darcy barrier by adding concrete to interior spaces may allow for the use of lighter, less costly steel structural members and/or decreasing the height of the base. Such results would have been very predictable to a POSITA.

103

### 5. Claim Analyses

### a) Claim 1

#### (1) A bollard structure comprising:

222. Darcy discloses a vehicle barrier system including a plurality of posts 14 (i.e., bollards). Darcy, ¶ [0027].

#### (2) at least one bollard; and

223. Darcy discloses at least one post 14 (e.g., bollard). Darcy, ¶ [0027].



Darcy, Fig. 5 (annotated by counsel)

#### (3) a base comprising opposed ends and a plurality of structural members which intersect and are tied together,

224. Darcy discloses a base (reaction mass 12) comprising opposed ends (beam or forward channel 42 and beam or rearward channel 44) and a plurality of structural members (beams 42, 44, 50 and 52) which intersect and are tied together. Darcy, ¶¶ [0027] - [0029]. Darcy also discloses that beams 42-54 are welded

104

together. *Id.*, ¶ [0028].



Darcy, Fig. 5 (annotated by counsel)

> **(4)** **for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and**

225. Darcy discloses a first structural member (beam 50 or 52) extends from a first of the opposed ends (beam or rearward channel 44) to a second of the opposed ends (beam or forward channel 42) of the base in a first direction and intersects the opposed ends. *See* Darcy, Fig. 5.

105

112759262.2



Darcy, Fig. 5 (annotated by counsel)

**(5)** **at least one structural member extending to intersect with the at least one first structural member;**

226. Darcy discloses beam 42 and 44, which are structural members, that extend and intersect with beams 50 and 52, which define a first structural member. *See* Darcy, Fig. 5.

112759262.2



Darcy, Fig. 5 (annotated by counsel)

> **(6)** **each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;**

227. Each bollard (post 14) of Darcy is secured to at least one of the at least one first structural member (beam 50 or 52) for the respective post 14 (bollard) and extends upwardly from the reaction mass 12 (base) so as to transmit forces applied to the at least one post 14 (bollard) to the reaction mass 12 (base). *See* Darcy, ¶ [0027] ("There is shown in FIG. 1 a vehicle barrier system 10 according to this invention including a reaction mass 12 for installation in the earth and at least one

107

post 14 immovably anchored in reaction mass 12 and extending upwardly therefrom").

> **(7)**   **wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and**

228.   Darcy discloses the "[r]eaction mass 12 has depth d of approximately 15 inches and in FIG. 1 its top 17 is shown flush with the surface 24," and "[t]he size and weight of reaction mass 12 and post 14 combined with the resistance of the earth 26 makes it possible for vehicle barrier system 10 to operate effectively to arrest the movement of vehicles even though it requires installation to only a depth of 21 inches."  Darcy, ¶ [0027].   At least one bollard (post 14) extends above grade.  *Id.*

229.   Darcy also explains: "One of the important advantages of this invention in addition to the fact that it requires less ground preparation and can be shallow ground mounted is the fact that it admits of easy and aesthetic variations in design and appearance."  Darcy, ¶ [0031].

> **(8)**   **wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the**

108

**bollard or bollards.**

230. The beam 50 or 52 of Darcy (at least one first structural member) and the beam 42 or 44 (at least one structural member) of Darcy or both are welded (tied) together. *See* Darcy, ¶ [0029]. In addition, supporting media such as concrete may be received within the interior of the base. *See* Darcy, ¶ [0012] ("The metal framework may be filled in situ); *id.*, ¶ [0030] ("Reaction mass 12 frame 40, FIG. 7, may be filled with a strong dense material such as concrete 90, FIG. 7, having a density of approximately 144 pounds per cubic foot so that the overall modular reaction mass including frame 40 and concrete 90 with posts 14 weighs approximately 12,235 pounds."). Thus, the beams 42, 44, 50, and 52 (structural members) of Darcy retain supporting media such that rotation is resisted of a post 14 (bollard) and the reaction mass 12 (base) from an impact against the post 14 (bollard).

b) **Claim 2: The bollard structure of claim 1, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured.**

231. The structural members (beams 42, 44) form the opposed ends.



Darcy, Fig. 5 (annotated by counsel)

c)    **Claim 3:  The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base.**

232.   The beams 42, 44, 50 and 52 have axes that extend parallel to a plane of the reaction mass 12 (base).

110

112759262.2



Darcy, Fig. 5 (annotated by counsel)

d)      **Claim 4:  The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches.**

233.   Darcy discloses "[r]eaction mass 12 has depth d of approximately 15 inches and in FIG. 1 its top 17 is shown flush with the surface 24."  Darcy, ¶ [0027]. Darcy also discloses that in an embodiment, the cross beams 50, 52 have a height of 6 inches."  *Id.*  The height of the base appears to be a matter of design choice as long as it remains shallow (i.e. not deep).  I did not find any advantages identified in the '865 patent that stemmed from the base having a height of up to 14 inches that would not be available if the base had a height of 15 inches.

e)      **Claim 5:  The bollard structure of claim 1, wherein the plurality of structural members comprises one or more**

111

112759262.2

**tubular members.**

234.   The plurality of structural members include beams which define angles and/or channels.  *See* Darcy, ¶¶ [0028], [0029].

235.   Claims 8 and 9 of the '865 patent state that tubular members include angles and channels.   Thus, the beams of Darcy, which include angles and/or channels are tubular members.

236.   Moreover, such an arrangement would be obvious in view of DSC501. Below are images of a DSC501 barrier taken from the 2002 brochure entitled "Advanced Highest security, high duty cycle counter-terrorist protection!". DS00002398.



237.   The image above is a side perspective view of the DSC501 in its open position. Rebar rods extend through generally rectangular holes in the interior I-beams and the C-channels which form the side walls.

238.   For convenience, a drawing showing aspects of the base of the DSC501 barrier are provided below.

112



Exploded view of engineering drawing of DSC501 base (with added labeling by

counsel) (DS00002391)

239.   The DSC barrier demonstrates numerous concepts that were well known and used in commercial practice in 2002 and prior.  These included the use of tubular steel, steel I-Beams and C-channel beams in the design of barrier bases.

240.   The portions of the square steel tubing and rebar that extend laterally outwardly into adjacent concrete add additional strength and stability to the barrier.

241.   The DSC501 makes use of a long and wide but shallow (18 inches) base.  The shallow depth of the base which allows it to be used in applications where deep trenching is not a practical option, e.g. locations where utility lines and the like

113

112759262.2

may be buried.

242.   A POSITA would have been motivated to combine Darcy and the DSC501 design to provide additional strength and stability to the barrier.

    **f)**    **<u>Claim 7:  The bollard structure of claim 5, wherein at least one tubular member comprises a tube.</u>**

**243.**   I have found no identified advantage in the '865 patent regarding benefits of using a tubular member that is a tube versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in Darcy, are considered equivalent to tubes.  In the alternative, use of a tube instead of a beam is a matter of design choice.  Also, see Section X.D.5.e.

    **g)**    **<u>Claim 10:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube.</u>**

244.   I have found no identified advantage in the '865 patent regarding benefits of using a structural member that is a tube versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in Darcy, are considered equivalent to tubes.  In the alternative, use of a tube instead of a beam is a matter of design choice.  Also, see Section X.D.5.e.

    **h)**    **<u>Claim 14:  The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate.</u>**

245.   The beams 42, 44, 50 and 52 disclosed in Darcy each define a plate on their upper portions.

114

i) **Claim 15:  The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members.**

246.    The beams 42, 44, 50 and 52 include steel.  *See* Darcy, ¶¶ [0027], [0028].

j) **Claim 16**

(1) **A bollard structure comprising:**

247.    See Section X.D.5.a.1.

(2) **a plurality of bollards; and**

248.    Darcy disclose the use of a plurality of posts 14 (e.g., bollards).  *See* Darcy, Fig. 5.



Darcy, Fig. 5 (annotated by counsel)

(3) **a base comprising opposed ends and a plurality**

115

112759262.2

**of structural members which intersect and are tied together,**

249. See Section X.D.5.a.3.

**(4)    for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;**

250. See Section X.D.5.a.4.

**(5)    each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;**

251. See Section X.D.5.a.5.

**(6)    wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the**

116

**excavation; and**

252. See Section X.D.5.a.6.

**(7)    wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.**

253. See Section X.D.5.a.7.

**k)    Claim 17:  The bollard structure of claim 16, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured.**

254. See Section X.D.5.b.

**l)    Claim 18:  The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and wherein each of the plurality of bollards is secured to at least one structural member that extends in the**

117

**first direction.**

255.    Each post 14 (bollard) is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and each of the plurality of posts 14 is secured to at least one structural member (50 or 52) that extends in the first direction.  *See* Darcy, Figs. 1 and 5.



Darcy, Fig. 5 (annotated by counsel)

m)    **Claim 19:  The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base.**

256.    See Section X.D.5.c.

n)    **Claim 20:  The bollard structure of claim 16 wherein the base has a height of 3 inches to 14 inches.**

257.    See Section X.D.5.d.

o)    **Claim 21:  The bollard structure of claim 16, wherein**

118

**the plurality of structural members comprise one or more tubular members.**

258. See Section X.D.5.e.

    p)    **Claim 23:  The bollard structure of claim 21, wherein at least one tubular member comprises a tube.**

259. See Section X.D.5.a.f.

    q)    **Claim 26:  The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube.**

260. See Section X.D.5.g.

    r)    **Claim 30:  The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate.**

261. See Section X.D.5.h.

    s)    **Claim 31:  The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members.**

262. See Section X.D.5.i.

    t)    **Claim 32:  The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is**

119

**secured.**

263. To the extent Darcy does not disclose a rebar member as a structural member that extends between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured, such an arrangement would be obvious in view of the DSC501.

264. Moreover, a "rebar grillage comprising intersecting and tied together rebar members that would extend coextensively with at least a portion of the base that includes a structural member to which a bollard is secured" is obvious in view of the DSC501 barrier, discussed below with respect to claim 35. The DSC501 includes a rebar grillage comprising intersecting and tied together rebar members in the interior of the base which extend laterally across the base and out of the base through portals in the side walls of the base.  It would have been obvious to a POSITA to add rebar grillage to the interior of the Turpin base to add weight to the base and to more extensively tie the structural members together to more thoroughly dissipate the forces received by the base during a collision.

 u)   **Claim 33**

  (1)   **A bollard structure comprising:**

265. See Section X.D.5.a.1.

  (2)   **a plurality of bollards; and**

266. See Section X.D.5.j.2.

  (3)   **a base comprising opposed ends and a plurality of members which intersect and are tied**

120

**together,**

267. See Section X.D.5.a.3.

(4) **for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;**

268. See Section X.D.5.a.4.

(5) **each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;**

269. See Section X.D.5.a.5.

(6) **at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first**

121

**bollard is secured;**

270. Darcy discloses beam or rearward channel 44 and beam or forward channel 42 (a member) extends parallel to the first and second opposed ends (ends defined by the beam or forward channel 42 and beam or rearward channel 44) and between beams 50 and 52 (structural members) to which the posts 14 (bollards) are secured. *See* Darcy, Fig. 5.



Darcy, Fig. 5 (annotated by counsel)

> **(7)** **wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and**

271. See Section X.D.5.a.6.

> **(8)** **wherein the at least one first structural member**

122

**or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.**

272. See Section X.D.5.a.7.

> **v)      Claim 34:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member.**

273. The beam 42 or 44 (member) extends between adjacent beams 50 and 52 (structural members) to which the posts 14 (bollards) are secured is a structural member. *See* Darcy, Fig. 5.

123



Darcy, Fig. 5 (annotated by counsel)

w)    <u>**Claim 35:  The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member.**</u>

274.   To the extent Darcy does not disclose a rebar member as a structural member that extends between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured, such an arrangement would be obvious in view of DSC501.

275.   Below are images of a DSC501 barrier taken from the 2002 Brochure entitled "Advanced Highest security, high duty cycle counter-terrorist protection!". DS00002398.

124



276.   The image above is a side perspective view of the DSC501 in its open position. Rebar rods extend through generally rectangular holes in the interior I-beams and the C-channels which form the side walls.

277.   For convenience, drawings showing aspects of the base of the DSC501 barrier are provided below.

125



Engineering Drawing of Exploded view of DSC501 base (with added labeling by counsel) DS00002391

126



Top View of DSC501 base (engineering drawing) (DS00002394)



3D Image of DSC501 Design (DS00006881)

278.   Above is a 3D image prepared by Delta showing the placement of the

127

rebar in the DSC501.  Cement is poured in the area of the rebar behind the large square steel tube.  The hardened concrete can be seen in the images below, also taken from the 2002 brochure.



2002 Brochure

279.  The DSC barrier demonstrates numerous concepts that were well known and used in commercial practice in 2002 and prior.  These included the use of tubular steel, steel I-Beams and C-channel beams in the design of barrier bases. The addition of cement to the base, or any other media to make the base heavier to improve resistance to linear or rotational movement when a vehicle crashes into the barrier.  The use of rebar in concrete is known to increase its tensile strength. Providing rebar, rebar grillage or a rebar cage that extends between, through and/or around the non-rebar structural steel members assures that the concrete will remain with the non-rebar members if the base is lifted during a collision.

280.  The portions of the square steel tubing and rebar that extend laterally

128

outwardly into adjacent concrete add additional strength and stability to the barrier.

281.    The DSC501 makes use of a long and wide but shallow (18 inches) base.  The shallow depth of the base which allows it to be used in applications where deep trenching is not a practical option, e.g. locations where utility lines and the like may be buried.

282.    My analysis and opinions contained in this report are based upon the information available to date and I am prepared to testify if needed as to the opinions expressed herein.

Dated:  November 9, 2020                    By: _____

                                                    Dr. Azim Eskandarian

129

112759262.2

# EXHIBIT A



96 N. 3rd Street
Suite 301
San Jose, CA 95112

408 261 8800
experts@teklicon.com
teklicon.com

## AZIM ESKANDARIAN, D.Sc.

## Education

**D.Sc.**, 1991, Mechanical Engineering, The George Washington University, Washington, D.C.
**M.S.**, 1983, Mechanical Engineering, Virginia Polytechnic Institute and State University, Blacksburg, VA.
**B.S.**, 1982, Mechanical Engineering (with senior award), The George Washington University, Washington, D.C.

## Professional Appointments

### Academic

**8/2015-Present Virginia Polytechnic Institute and State University, Blacksburg, VA (Virginia Tech)**
          Professor and Department Head, Mechanical Engineering Department
April 2018-      Nicholas and Rebecca Des Champs Chaired Professor of Mechanical Engineering

**1993-7/2015**     **The George Washington University, Washington, DC (GWU)**
2003-7/2015     Professor of Engineering and Applied Science

2000-2003     Associate Professor of Engineering and Applied Science

1993-2000     Associate Research Professor of Engineering and Applied Science

        Appointments in Civil and Environmental Engineering Department (CEE) and
        Mechanical and Aerospace Engineering Department (MAE), and earlier in
        ME program of Civil, Mechanical, and Environmental Engineering (CMEE) Department
        [*in 1999 CMEE was reorganized into two Departments of CEE and MAE*]

**1989-1992**     **Pennsylvania State University, York, PA**
1990-1992:     Assistant Professor, Mechanical Engineering, and MET and IET programs

1989-1990:     Instructor, Mechanical Engineering, and MET and IET programs

**1982-1983**     **Virginia Polytechnic Institute and State University, Blacksburg, VA**
        Research Assistant, Mechanical Engineering Department

### Previous Academic Leadership and Administrative

1996-7/2015     Director and Founder, Center for Intelligent Systems Research (CISR), GWU

5/2013-7/2015     Director, National Crash Analysis Center (NCAC), GWU; 1992 Co-founder
1998-2002

2003-7/2015     Director and Founder, GW Area of Excellence in Transportation Safety and Security

1998- 2003     Co-Founder and Co-Director, GW Transportation Research Institute

2012-7/2015     Chair of Graduate Programs Committee
2000-2007

### Industry

**1986-1988**     **VSE Corporation, Alexandria, Virginia**; Mechanical Engineer

**1983-1986    Phillips Cartner and Co., Inc., Alexandria, Virginia**; Project Engineer

## Areas of Specialty and Interest

**Basic Areas**

- Dynamic Systems and Controls
- Intelligent Systems
- Machine Learning
- Multi-body and Impact Dynamics
- Applied Mechanics and Nano-mechanics
- Non-linear Dynamic FEM and Meshless Methods

**Applications**

- Intelligent and Autonomous Vehicles
- Collision Avoidance and Driver Assistance
- Vehicle Dynamics, Control, and Active Safety
- Intelligent Transportation Systems
- Robotics; Neurodynamics
- Vehicle Crashworthiness and Occupant Injury Biomechanics

## Honors, Awards, and Recognitions

| | |
|---|---|
| 2019 | Editor-in-Chief, IEEE Transactions on ITS |
| 2018 | Nicholas and Rebecca Des Champs Chaired (endowed) Professor |
| 2017 | IEEE ITS Society's Outstanding Research Award |
| 2017 | Vice-President of Administrative Activities, IEEE ITS Society |
| 2013 | Fellow of ASME (American Society of Mechanical Engineers) |
| 2013 | Senior Member of IEEE (Institute for Electrical and Electronic Engineers) |
| 2013 | Article in IEEE Transactions on ITS among "Top 10 Best Research Papers" in 10 years 2000-09 |
| 2012 | ASME 2012 IMECE, Houston, TX, Nov. 9-15, 2012. Best Student Paper Award, second place, (Volume 8: Mechanics of Solids, Structures and Fluids) |
| 2011 | Distinguished Researcher Award, School of Engineering and Applied Science, GWU |
| 2011 | Certificate of Appreciation, ASME Dynamic Systems and Controls Division for Local Arrangement Chairmanship of ASME DSC Conference |
| 2010 | Among the highest cited authors of IEEE Transactions on ITS (documented by editorial board) |
| 2007-2013 | Board of Governors of IEEE Intelligent Transportation Systems Society, twice elected |
| 2006 | SAE (Society of Automotive Engineers) Ten Year Service recognition |
| 2003 | Recognition Award for Services as Director of FHWA/NHTSA National Crash Analysis Center 1998-02 |
| 2000-2002 | President of GW-Chapter of Sigma-Xi Scientific Research Society (Secretary during 1999-00) |
| 1988-1989 | NASA PREST program Fellowship award at GWU |
| 1982 | Superior Achievement Award in ME Design at the "Annual Senior Design Award Competition", GWU |
| 1982 | Pi Tau Sigma Engineering Fraternity |
| 1981 | Tau Beta Pi, Engineering Honor Society |

## Experience Summary

- 36 years of progressive academic (30) and professional (6) experience, with leadership roles in academia.

### Virginia Tech

*Administration and Budget*

- Leading the Mechanical Engineering Department with 67 faculty, 30 affiliate faculty, and 27 staff, serving over 1100 undergraduate (sophomore to senior) and 300 graduate students, with 180 PhD students; ranked the third largest in the nation in graduating Mechanical Engineers (ASEE 2017 Data), awarding about 400 BS ME degrees each year. Supervising an annual budget of over $32M, including $18M in research expenditures, which have been increased by 28% over four years (from $14M) and steadily growing.

- The department is ranked 15th (8th in public schools) in undergraduate and 23rd (12th in public schools) for graduate programs in Mechanical Engineering by the US News and World Report 2019 College rankings and ranked 51-100 in World QS survey among all ME departments worldwide.

- Increased faculty by 25%; recruited 17 new faculty (8 from underrepresented groups and female) and 11 new staff (replacements and new hires); promoted 11 successful P&T cases. Currently advertising for seven (7) new faculty positions.

- Obtained two fully funded new endowed positions, awarded three faculty Professorships, and revived and awarded four ME endowed Faculty Fellows. Department has 16 endowed professorships and faculty fellowships, and another three endowed professorships will be awarded this year.

- Completed a new strategic plan within the first year and commissioned new initiatives for improvements in both

graduate and undergraduate academic policies and curricula, enhancing diversity and inclusivity, and scholarship in the department; expanded the development and outreach activities through the college Development Office; and developed/enhanced new facilities and new labs, among other activities.

☐ Reorganized staff for improved service; created a new position for departmental communications and outreach activities initiating a significant departmental communications campaign, another position for facilities, and a third one for graduate programs at National Capital Region (Washington DC metropolitan area) for expansion of graduate programs.

### *Academics and Innovations*

☐ Created a new structure of graduate studies with five thrust areas to improve collaborations, communications, academic programing, and consultation among faculty. It has resulted in enhanced dialogue, multiple faculty initiatives and significant collaborative proposals and scholarship activities, and improved academic programs.

☐ Expanding the ME graduate program at Virginia Tech National Capital Region (NCR) with five faculty placed there. Hired a new faculty and Graduate Program Coordinator for ME at VT NCR.

☐ Expanding the Online Distance Learning course portfolio of ME graduate curriculum in collaboration with the VT's College of Engineering (COE) and Technology-Enhanced Learning and Online Strategies (TLOS).

☐ Created a new ME Professoriate Certificate program to train and certify graduate students for academic positions.

☐ Department revised its UG curriculum significantly, including establishing three new instructional laboratories for revised courses and enhancing the experiential learning and hands-on activities. Created a new UG instructional Robotics and Mechatronics lab.

☐ Department is starting a new ME undergraduate Major in Robotics and Mechatronics, and establishing a second ME Major in Automotive Engineering, and a Minor in Nuclear Engineering. Creating a new sequence of AI and Machine learning courses for ME at both undergraduate and graduate levels.

☐ Enhanced the industry support of Senior Capstone Design leading to 40% (20/50) sponsored projects in 2019-20.

☐ Developed a new mentoring/advising guideline to improve advisor-advisee communications and relationships.

☐ Expanded the department's mentoring program for Tenure-Track faculty; creating a new guideline for improved mentoring practices.

### *Advancement and Alumni Relations*

☐ Obtained over $4M of new endowments, including a new $2M endowed professorship and $2M in new undergraduate scholarships in collaboration with the college and university advancement team, in addition to the regular stream of annual gifts. Another endowed professorship is forthcoming.

☐ Total 4-year philanthropic donations increased by 41% to $12M, as compared to previous 5-year period.

☐ Established a new ME Society of Distinguished Alumni in 2018 and inducted 20 members with 10 new inductees in 2018-2019 and 10 legacy members who were also members of COE Academy of Academic Excellence.

☐ Established frequent and regular communications with alumni through newsletters, Annual Reports, ME Momentum Magazine (a digital quarterly) and many other routine publications reflecting students, faculty, staff, alumni, and departmental achievements.

☐ Engaged alumni in campus activities and student life, by periodic lectures, visits, and industry advising/recruiting.

### *Diversity and Inclusion*

☐ Created and led a new Diversity Committee to enhance diversity in all aspects of the ME Department.

☐ Served at the University diversity and inclusivity committee and participated in the college initiatives leading to new diverse faculty and student recruitments.

☐ Recruited 8 new faculty from underrepresented groups, while utilizing the university's Target of Talent and Future Faculty programs for two positions.

☐ Markedly expanded the diversity of ME Advisory Board, Faculty, and Staff.  For the first time in decades the ME Department has multiple African American, Hispanic origin, and female faculty which together comprise 24% of faculty now.

### *International Programs*

☐ Supported the expansion of two major international Exchange Programs (Technical University of Darmstadt, Germany and Shandong University, China), led by two ME faculty members.

- Department created three new international research collaborations with MOUs. One major international initiative involves a new endowed position in ME (raising the number of endowed faculty to 17 in the department) and a collaborative center with India for Frontier of Materials research.

- Supported the VT India international program resulting in new sponsored research for faculty from Indian industry (Mahindra Mahindra) and a new industrial presence at VT's Corporate Research Center.

- Currently considering an international masters (1+1) program as a distance learning initiative in collaboration with the VT's VP for International Programs.

### *Current Personal Research and Scholarship*

- Was awarded the inaugural Nicholas and Rebecca Des Champs Chaired Professorship in 2018.

- Established a new Autonomous Systems and Intelligent Machines Lab at Virginia Tech's Mechanical Engineering Department, equipped with multiple state-of-the-art autonomous mobile robots, a smart city emulation environment, an autonomous car under development, and multiple cooperative driving simulators and EEG and Eye-Monitoring systems for driver interface, cognitive behavior, neuro-engineering, and autonomous driving research. Lab has already received significant publicity in the news media in five broadcasted pieces.

- Editor-in-Chief of IEEE Transactions on ITS, among the highest impact factor journals in transportation field.

- Advised 11 graduate students and post-docs and several rotating undergraduate students.

### GWU

- Founded/co-founded and directed two research centers, forming an institute and a university/school academic **area of excellence**. At some periods directed a research team of over 50 people, including 28 faculty, scientists, post-docs, and technicians, and over 22 students; raised the annual research budget above $3 million/year.

- Published extensively with sponsored funding of $27.3 million ($11.5 million as PI and $15.8 million as primary Co-PI). Associate editor and board member of five journals.

- Advised, and directed/co-directed 18 PhD dissertations, 18 master theses, 12 post-docs, and 36 graduate student projects; involved in 142 student projects and examinations. **Eight alumni hold faculty positions**.

- 1996-2015: Founded and directed the **Center for Intelligent Systems Research (CISR)**, conducting research in intelligent systems, dynamics, and controls, with a primary focus on intelligent vehicles and active safety systems. Established four new labs including two full-size Driving Simulators and a mobile robotics lab.

- 2003-2015: Founded and directed GW Transportation Safety and Security program, at the time one of only seven University and School **areas of excellence** through an intramural competition, with a university investment of over $3 million over the years. Developed a cross-disciplinary academic and research scholarship program, involving collaboration of faculty from four engineering departments with diverse backgrounds.

- May 2013-2015 & 1998-2002: (Co-founded in 1992); Directed the **FHWA/NHTSA National Crash Analysis Center (NCAC)** at GW, sponsored by the US Department of Transportation and industry for automotive and highway safety research. Research included impact dynamics and computational mechanics for simulation and analysis of vehicle and barrier crashes, injury biomechanics, vehicle test and design, and accident reconstruction. Significantly increased productivity, scholarship, publications, external funds, client portfolio, and external partnerships of the center.

- Was instrumental in the development of a unique automotive safety curriculum at CMEE Department (1994), and later introduced a new graduate option in intelligent vehicles and transportation systems and an undergraduate concentration in transportation engineering at CEE Department.

- Developed and revised 12 new courses. Established 4 new laboratories and significantly enhanced 4 more at GW. Offered an on-line course for three years. At Penn State York, assisted the university-industry liaison with local industries, and developed two new labs and four new short courses and seminars for industrial training.

- Maintained two student exchange programs for 15 years with University of Stuttgart, Germany and University of Valenciennes, France, and initiated a new MOU with KAIST, Korea, 2011.

- Assisted GW's VP for Government Relations during 1998-2001 in fund raising and presented to congressmen and various government agencies, resulting in a $28 million building at GW, Virginia Campus.

- 1983-1988: Industry experience at two companies; as a Mechanical Engineer performed mechanical and structural analysis and design of military vehicles and other systems using FEM. Developed software for design functions and provided analytical support for design, fabrication, assembly and prototype production. Initiated the company's first CAD and FEM capability, which resulted in significant improvements in responsiveness to clients. Performed structural tests, experimental stress analysis, and verification with theory and FEM models. Provided project management and client support.

## Sponsored Research and Scholarship

**Total Research Awards: $28.23 million**; $12.43 million as PI & $15.8 million as Co-PI or a Key Investigator:

| | | |
|---|---|---|
| 2019-21 Nuclear Regulatory Agency | (PI) Faculty Development Program in Nuclear Engineering at Virginia Tech; Co-PI Juliana Duarte Pacheco, ($150K cost-share; total $650K) | $450,000 |
| 2019-2020 IEEE | (PI) Develop an Experts' Workshop on Advances and Challenges of Autonomous Vehicles (contract under final negotiations) | $30,000 |
| 2018-2020 General Motors | (PI) ME Capstone Design- Flexible Automated Mobility; Co-PI Robin Ott Educational Support | $25,000 |
| 2018-present VA Tech Foundation | (PI) Endowed Professorship; Des Champs fund, Research on Autonomous Vehicles and Mobile Robots | $180,000 |
| 2015-2018 Virginia Tech | (PI) Internal Research Initiation Fund | $260,000 |
| 2013-2014 US DOT FHWA & NHTSA | (PI) Advanced Crash Analysis to Improve Safety and Security 5/2013-12/2014 | $2,880,606 |
| 2010-2013 US DOT FHWA, 23% cost shared | (Co-PI) Nano Material Modeling and Simulation by New Multiple Length/Time Scale Theories and Algorithms. (PI, Dr. James Lee, MAE Department, GWU.) | $1,302,000 |
| 2007-2008 US DOT FHWA, 50% cost shared | (PI) Communications Considerations in the Simulation of Vehicle Infrastructure Integration (VII)-Enabled Applications. (Co-PI, Dr. J. Blum) Subcontractor: UVA. | $668,332 |
| 2005-2007 US DOT FHWA, 50% cost-shared | (PI) Development and Evaluation of an Advanced Vehicle Speed Adaptation System (AVSAS). | $802,000 |
| 2003-2005 US DOT FMCSA | (PI) Advanced Driver Fatigue Study. Signal processing and pattern recognition for unobtrusive driver drowsiness detection and monitoring systems | $700,000 |
| 2004-2006 NSF | (Co-PI) Predicting and Optimizing Nano/Micro Sensor Material Behavior in Extreme Environments (PI & Co-PI: Dr. Y. Chen and Prof. James Lee) | $310,000 |
| 2005-2007 Ford Motor Co. | (Investigator) Rollover Dynamics Modeling and Simulation (PI, Dr. K. Digges) | $250,000 |
| 2002-2015 GWU, Internal Funds | (PI) **"GW Initiative for Excellence in Transportation Safety and Security"**, an internal major GW and SEAS cross-disciplinary area of academic excellence, including faculty from four Engineering Departments. | $3,100,000 |
| 1999-2004 US DOT FHWA and NHTSA | (PI) Automotive Safety Research Initiative. Areas:<br>- Collision avoidance, driver assistance, and vehicle controls<br>- Vehicle active suspension, and dynamics modeling of vehicle rollover<br>- ITS and inter-vehicular and vehicle-infrastructure networks<br>- Impact dynamics and FEM for smart airbags/vehicle-occupant interactions. | $1,464,900 |
| 2001-2004 Santos Foundation | (Co-PI ) Development of Improved Vehicle Roof Crush Test Procedures, (Co-PI: K. Digges). | $400,000 |
| 2004-2005 NTSB | (PI) Evaluation and Development of Tire Models. | $15,000 |
| 2004-2006 US DOT | (PI) Faculty Advisor- obtained Dwight Eisenhower Fellowship Award for a doctoral student. | $65,000 |
| 1999-2002 NAS, NCHRP | (PI) Improving the Compatibility of Vehicles and Roadside Safety Hardware. | $300,000 |

| | | |
|---|---|---|
| 2002, 6 Months NAS, TRB | (PI) Safety Evaluation and Crash Testing of Secure Mailboxes. | $25,000 |
| 1998-2002 US DOT FHWA | (PI ) Advanced Methods in Transportation. Projects: Inverse Analysis of Structures under Impact Load; Analysis of Sleep Deprived Drivers Experimental Data; Analysis of Driver Speed Profiles. | $374,240 |
| 1996-2000 US DOT FHWA | (PI) Advanced Engineering Systems Research in Transportation. Projects: Optimization and inverse design methods for structures under impact; Simulation and human factors study of traffic control in construction zones. | $337,150 |
| 1999-2001 Union Switch and Signal (DOT/FRA) | (PI) Intelligent Optimum Route Planning and Scheduling for Rail Systems. Used intelligent agents, AI, and optimization methods for route planning. | $175,000 |
| 2001-2002 US DOS | (PI) Evaluation and development of anti-ram barrier design concepts for safety installations. | $700,000 |
| 1999-2002 EPRI and US DOD/Army Research | (Co-PI) Stochastic Analysis of Network Performance. (PI: N. Singhpurwalla) Joint effort with GW's Institute for Reliability and Risk Analysis, in a consortium with Cornell Univ., UC Berkeley, Univ. of Wisconsin, Univ. of Illinois, and Washington State Univ. Analysis of complex interactive networks using stochastic modeling and neural networks for improving reliability, fault tolerance, and prevention and control of failures. | $1,350,000 |
| 1998-2002<br><br>1992-1997 US DOT FHWA &NHTSA, DOS | (Co-PI) Operation and Maintenance of FHWA/NHTSA National Crash Analysis Center (NCAC). (1998-2002, Co-PI and Director); (1992-1997, Deputy Director and Director of Simulation and Modeling) Impact dynamics; computational methods for transient and non-linear response of materials using non-linear FEM with applications in automotive crashworthiness; Meshless computational methods; Inverse analysis and optimum design of multi-bodies and structures under impact; Automotive safety systems analysis including airbag-dummy/occupant interactions; Occupant biomechanics and injury analysis; Vehicle reverse engineering; vehicle and barrier modeling and performance evaluation by crash simulation and tests. | $6,343,000<br><br>$5,738,300 |
| 1996-1997 RAFAEL | (PI) Airbag and Dummy Simulation. | $5,000 |
| 1997, 1 month The University of Mississippi | (PI) Three-dimensional FE Modeling of Pavement and Truck Tire. | $2,000 |
| 1996, 3 months VSE Corporation, Alexandria, VA | (PI) Thickness and Contour Determination of Critical Vehicle Parts for Impact FEM. | $17,600 |
| 1992-1994 NASA Goddard Space Flight Center | (Co-PI) Development of Generic Software Tools for Simulation and Testing of Spacecraft Control Systems. Under the joint GWU and NASA PREST program. | $80,000 |
| 1994, 3 months VSE Corporation, Alexandria, VA | (Co-PI) Material Characterization of Vehicle Components for Dynamic Impact Analysis. | $15,000 |
| 1992-1993 Penn State Univ. | Robot Parameter Identification and Dynamics Modeling. | |
| 1989-1990 NSF SBIR: ATR Corporation | (Consultant)- An Advanced Hybrid Neural Network for Robot Dynamics Modeling. | |

**Additional Major Contributions to Research/Scholarship:**

☐ Contributed significantly to the winning technical proposals for the National Crash Analysis Center's competitive contract (2009-2013) for $16M and cooperative agreement (2003-2008) for over $10M, as part of GW's Transportation Safety and Security Area of Excellence. *These are in addition to the above listed items.*

☐ Contributed to the GW's award from NSF in 1999 for High Performance Connectivity under the Washington Research and Education Network. This allowed GW's involvement and usage of vBNS and an increase in GW's data transmission capacity.

## Teaching

### Courses at Virginia Tech

*Undergraduate*

- ME 4015, 4016: ME Capstone Design Course

*Graduate:*

- ME 6984- Mechanical Engineering Professoriate Preparation

### Courses Taught at The George Washington University

☐ Introduced a new graduate area of specialty in Intelligent Vehicles and Transportation Systems.

☐ Contributed significantly to the development of a new graduate Masters and Doctoral concentration in Automotive Safety since 1994 in ME program of Civil, Mechanical, and Environmental Engineering (CMEE) Department and later in 1999 in Civil and Environmental Engineering Department.

☐ Established a new undergraduate curriculum and option for Transportation Engineering within Civil Engineering (2004) at GWU as part of a new *area of excellence* for the University and SEAS.

☐ Consistently received high ratings in student evaluations.

*Undergraduate:*

- Introduction to Mechanics of Solids (Including a new on-line version)
- Introduction to Engineering (Revised)
- Mechanical Design
- Engineering Systems Design
- Analysis and Synthesis of Mechanisms

*Graduate:*

- System Dynamics Modeling and Control  (New)
- Analytical Mechanics: Dynamics  (Revised)
- Robotic Systems
- Vehicle Dynamics  (New)
- Simulation and Visualization [Computational Sciences]  (New)
- Numerical Methods in Engineering
- Intelligent Transportation Systems  (New)
- Intelligent Systems Theory and Applications  (New)
- Special Topics
  *Also serve as coordinator for four (4) more courses.*

### Courses Taught at Penn State York Campus

*Undergraduate:*

- Production Design [and Laboratory]; formerly: Robotics and Automation  (New)
- Computer Numerical Control Systems and Sensors [and Laboratory]  (New)
- Product Design  (Revised)
- Manufacturing Processes [and Laboratory] (Revised)
- Manufacturing Materials and Processes [and Laboratory]

*Special Short Courses for Industry:*

- Computer Integrated Manufacturing (CIM); 30-Hour Short Course (New)
- Computer Integrated Manufacturing; 8-Hour Seminar/Workshop (New)
- Computer Numerical Control (CNC) Systems with Lab; 30-Hour Short Course  (New)

- Computer Numerical Control Systems; 8-Hour Seminar/Workshop  (New)

## Laboratories Developed (and Enhanced)

### Virginia Tech

1. **Autonomous Systems and Intelligent Machines (ASIM)** Lab (Established 2016): I) Multiple autonomous mobile robots for cooperative control, collision avoidance, connected vehicle and traffic emulation; II) Dual integrated state-of-the-art Driving Simulators (one Full-Cabin), EEG, Eye-monitoring, and other sensors for driver interface, performance, and cognitive behavior testing. Capable of simulating mixed autonomous and manual driving. Two connected autonomous cars under development.

### GWU

2. **Mobile Robotics Lab** (GW/CISR Established 2013): Multi mini mobile robots for trajectory control, wireless motion coordination, collision avoidance, and simulated connected vehicles.

3. **Vehicle Driving Simulator Laboratory** (GW/CISR, Established 1998): A full-size passenger vehicle simulator with driver monitoring, eye-tracking, and physiological (EEG) testing capabilities.

4. **Truck Driving Simulator** (GW/CISR, Established 2004): A full- truck cabin vehicle simulator with all monitoring and data acquisition systems.

5. **Virtual Realty Laboratory** (GW/CISR, Established 2003): Interactive virtual 3-D embedded stereoscopic environment.

6. **Traffic and Networks Laboratory** (GW/CISR, Established 2004): Equipped with networks and traffic simulation software, PCs, video surveillance, millimeter wave radar, and acoustic sensors, among others for research in sensor integration for networks monitoring, modeling, and controls.

7. **NCAC Crash Test Film and Data Library** (GW/NCAC, upgraded)
This unique national resource of 19,000 crash test films and data allows investigation of crash performance of vehicles. Equipped with a motion analyzer, a variety of video editing and reproduction hardware and software tools for crash test film analysis.  Initiated a complete film digitizing system in 1999 for public on-line search and download access.

8. **Vehicle Modeling Laboratory** (GW/NCAC, upgraded)
A complete vehicle reverse engineering and digitizing laboratory. CAD files containing geometric and assembly data of the entire vehicle structure and mechanical components are generated. CAD files are preprocessed and finite element mesh is generated.  Vehicle FE models are developed and validated by crash tests. Lab is equipped with robotic measurement arms, scanners, cutting tools, ultrasonic thickness measurement instrumentation, computer workstations, and the related software.

9. **High Performance and Parallel Computing Laboratory** (GW/NCAC, upgraded)
Provides the computing resources required for crash simulations and many other intensive numerical calculations. In 2001-02, it was upgraded with a new 32 processor Origin 3800 Silicon Graphics parallel processing machine and several other donated parallel computers (e.g. HP).

### Penn State

10. **Computer Integrated Manufacturing (CIM) Cell** (Established 1991 at Penn State York Campus)
Developed and operated a new CIM cell for training and education using both internal campus funds and Penn State/MANTECH resource center. Developed an associated CNC and robotics laboratory.

## Academic Advising

Involved in advising and examinations of 145 graduate students and researchers as follows:

**Doctoral Dissertations (52):**    Directed/Co-Directed: **20+2 in progress**; Plus Reader/Examiner: 32

**Masters Theses (42):**    Directed/Co-Directed: **21+2 in progress**; Plus Reader/Examiner: 19

**Student Projects (36):**    Directed:  **36**

**Post-Docs and Research Scientists (23)**:    Directed and Co-Directed:  **23;**    **Visiting Scholars: 3**

Eight former students are now faculty in US and abroad.

Undergraduate students (numbers pending on the year)

Advised over 30 undergraduate students per semester at Penn State York from 1989-92.

## Recent Post-Docs Directed

### Virginia Tech

1. Dr. Prasenjit Ghorai (June 2019- )
2. Dr. Yuan Lin (March 2016- August 2018)
3. Dr. Lirong Wang (August 2016-17)

### Visiting Scholars (Students):

4. Chaoxian Wu (2017-2019)
5. Chuanyang Sun (2018-2019)
6. Xi Wang (2017-2018)

## Doctoral Dissertations Directed (Co-Directed where indicated)

### Virginia Tech

1. Mehr, Goodarz, in progress, Research Area: Estimation in Intelligent Vehicles.

2. Ce Zhang, in progress, Research Area: Human Cognition, Perception, and Controls for Cooperative Autonomous Driving

### GWU

3. Goli, Mohammad, December 2018: *Vehicle Platooning: Multi-vehicle Merging and Control.*

4. Radwan, Randa Samaha, February 2015, *Real World Derived Simulation Methodology for the Evaluation of Fleet Crash Protection of New Vehicle Designs.*

5. Sengoz, Kivanc, Defended 2014, finalized Jan 2017, (co-directed), *Development of a Generalized Isotropic Yield Surface for Pressure Insensitive Metal Plasticity Considering Yield Strength Differential Effect in Tension, Compression, and Shear Stress States.*

6. Ruparel, Tejas, December 2014, *Multiple Grid Multiple Time-Scale (MGMT) Simulations in Linear Structural Dynamics.*

7. Tahan, Fadi, December 2013 (co-directed), *An Integrated Approach to Identify Thoracic Injuries in Rollover Crashes.*

8. Buyuk, Murat, August 2013 (co-directed), *Development of a Tabulated Thermo-Viscoplastic Material Model with Regularized Failure for Dynamic Ductile Failure Prediction of Structures under Impact Loading.*

9. Kildare, Shaun, May 2012 (co-directed), *Multiple Frontal Impacts Prevention, Prediction and Protection.*

10. Soudbakhsh, Damoon, May 2011, *Development of a Novel Steering Collision Avoidance System.*

11. Sahraei, Elham, *Protection of Rear Seat Occupants in Frontal Crashes, Assessment Methodology and Injury Metrics* (co-directed)

12. Mahadevaiah, Umashankar, January 2009 (co-directed), *Development and Validation of a New Contact Algorithm for Use in Explicit Finite Element Codes.*

13. Mohan, Pradeep, June 27, 2008 (co-directed), *Development of Objective Metrics to Improve Vehicle Compatibility in Frontal Collisions.*

14. Stephen Arhin, December 2007, *Development and Evaluation of an Advanced Speed Adaptation System.*

15. Ali Mortazavi, May 2007, *Intelligent Drowsy Driver Detection and Warning for Commercial Vehicle Operations.*

16. Blum, Jeremy, May 2005 (co-directed), *CARAVAN: A Communications Architecture for Reliable Adaptive Vehicular Ad Hoc Networks.*

17. Soltani, Hamed, May 2004, *Rollover Simulation, Validation, and Control, Using Vehicle Dynamics Models.*

18. Sayed, Riaz A. S., August 2003, *Driver Drowsiness and Fatigue Detection by Experimental Analysis and Neural Network Modeling.*

19. Chen, Youping, December 2002 (Co-directed), *From Atomic Model to Continuum Theory.*

20. Kurtaran, Hassan, May 2001, *Design Optimization of Structures under Impact Loading with Approximation Methods.*

21. Omar, Tarek, May 1999 (Co-directed), *Recurrent Artificial Neural Networks for Modeling Vehicles Impacts.*

22. Marzougui, Dhafer, 1998 (Co-directed), *Implementation of a Fracture Failure Model to a Three-Dimensional Dynamic Finite Element Code (DYNA3D).*

☐ Reader and Examiner for **30 additional Doctoral Dissertations**

## Masters Theses Directed (Date indicates graduation, Co-directed where indicated)

### Virginia Tech

1. Lang, Yifie, in progress, Research area: Hybrid maps to improve SLAM in autonomous driving

2. Khattak, Vanshaj, in progress, ECE, Research Area: Autonomous vehicle trajectory planning and control to minimize harm in frontal and oblique collisions.

3. Wu, Xihui, July 2020, *Predictive Path Planning for Vehicles at Intersections.*

4. Nicholas Merrill; May 2020, *Modified Kernel Principal Component Analysis and Autoencoder Approaches to Unsupervised Anomaly Detection.*

5. Sridhar, Srivatsan, September 2017, *Cooperative Perception in Autonomous Ground Vehicles Using a Mobile Robot Test-bed.*

### GWU

6. Panzer, Florian, December 2014, *Structural Optimization of a Surrogate Test Vehicle using Honeycomb Material.*

7. Wehler, Thomas, December 2014, *Evaluation of Composites for Light-Weighting of Highly Loaded Components in Dynamic Impacts of Vehicles.*

8. Rittner, Markus, December 2014, (co-directed), *An Investigation of Force Characteristics of Various Vehicle Roof Shapes in Jordan Rollover Tests using Simulations.*

9. Riahi, Pouria, August 2014, *A Steady-State Visual Evoked Potential Brain-Computer Interface System Evaluation as an In-Vehicle Warning Device.*

10. Bonnevie, Simon, 2011 (co-directed), *Vehicle Dynamics Modeling and Simulation Approach for Safety Performance Evaluation, Design Selection, and Critical Placement of Cable Barriers in Curves.*

11. Karcher, Jullien, December 2009 (co-directed), *Vehicle Dynamics Modeling and Simulation for the Safety Evaluation, Selection and Placement of Cable Barrier System.*

12. Galli, Richard M., August 2008, (co-directed), *Development and Validation of Finite Element Models and Analysis of Critical Parameters of High-Tension Cable Barrier Systems.*

13. Laoufi, Morione, 2005, *Development of a Comprehensive Vibration Model for Evaluation of Rumble Strips.*

14. Guerra Sa, Rodolfo C., 2004, *A Methodology for Vehicle Finite Element Modeling Incorporating Robust Fine Uniform Mesh and Comprehensive Interior.*

15. Hedayati, S. Amirahmad, 2004, *Analysis of Vehicle Rollover Using Finite Element Models and Crash Test Data.*

16. Bousquet, Melaine, 2004, *Study of the Importance of the Height of a W-Beam Guardrail in a Vehicle to Guardrail Crash Test.*

17. Sayyar, Arash, 2004, *Structural Modeling and Optimization of Thriebeam Guardrail for Vehicle Safety.*

18. Amini, Mahmoudreza, 2004, *Analysis of Soil and Wood Post Interactions Using Dynamic Finite Element Models.*

19. Burel, Jean-Yves P., 2004 (Co-Directed), *Dynamic Analysis of Occupant Behavior in Vehicle Rollover Event.*

20. Tahan, Fadi, 2004, *Secure Mailboxes Safety Assessment using Finite Element Simulations and Crash Testing.*

21. Godrick, Daniel, 2003 (Co-Directed), *An Analysis of Light Truck Rollover Examining Real World Accidents and Controlled Crash Tests.*

22. Delaigue, Pierre, Fall 2002, *A Comprehensive Vehicle Braking Model for Prediction of Stopping Distances.*

23. Yonten, Karma, Fall 2002 (Co-directed), *Constitutive and Numerical Modeling of Concrete for Crashworthiness Simulation of Roadside Safety Hardware.*

☐ Committee Chair, Reader, or Examiner for **19 additional Masters Theses**

**Student Projects Directed (Masters Level or Internship)**

1. Lesueur, Maxime, 2014, *On the Development of a nonlinear Visco-Elastic Model Coupled with Progressive Damage for Modeling the Mechanical Behavior of Fiber-Reinforced Polymers (FRP).*

2. Dony, Lucian, 2014, *Simulation of the Influence of the Parameters of Driver Models in Lane Keeping.*

3. Gross, Nicholos, 2013, *Influence of Electronic Stability Controls on Vehicles on Curves.*

4. Fahmy, Ismail, 2012, *Control Systems and Analysis of Driver-vehicle Integrated Models.*

5. Noblet, Clements, 2011, *Experimentation and Measurement Methods for Driver Reaction Time.*

6. Bonnevie, Simon, 2008, *Vehicle Dynamics Modeling and Applications in Simulink.*

7. Kerisit, Christopher, 2008, *Vehicle Dynamics Modeling of Critical Surface Maneuvers.*

8. Moreau, Johann, 2007, *Implementation of a Vehicle Integrated Infrastructure Network Simulation for a Traffic Management Application.*

9. Karcher, Jullien, 2007 (Co-directed), *Data Analysis of Driver and Chest Injuries in Planar Impact Rollovers.*

10. Linder, Thorsten and Stiehle, Ursula, 2005, *Enhanced Vehicle Active Steering System for Collision Avoidance Maneuvers.*

11. Laoufi, Morione, 2005, *Traffic Networks Safety and Queue Modeling.*

12. Shayesteh, Yassman, (ECE) 2004, *Development of a Wireless Integrated Sensor Module for Traffic Monitoring.*

13. Negri, Berangere, 2002, *Validation of a Dodge Neon Reduced FE Model, Including a US SID Side Impact Simulation on LS-Dyna.*

14. Poncet, Fredrick, 2002, *Validation of Dodge Neon Finite Element Model and Airbag Unfolding in out of Position Situations.*

15. Chuiki, Mohammed, 2002, *Validation of a Chevrolet S-10 Vehicle Finite Element Model for a Full Frontal Crash Impacts.*

16. Bauer, Mathias, Fall 2002 (Co-directed), *Robust Control Design of Vehicle Active Steering In Evasive Maneuvers.*

17. Malcher, Daniel, 2002. (Co-directed), *Robust Control of Active Suspension for Vehicle Rollover Avoidance.*

18. Schawrz, Stephan, Fall 2002. (Co-directed), *Comparison of LS-DYNA and MSC-DYTRAN Simulation of an Out-of-position Airbag Deployment.*

19. Yepremyen, L., 2002. (Co-directed EMSE), *Piecewise Linear Approximations in $R^m$ and Their Applications to Optimization.*

20. Burel, Jean-Eves, 2001, *Rollover and Driver Injuries.*

21. Delaigue, Pierre, 2001, *Vehicle Brake Dynamic Modeling in MATLAB.*

22. Glaster, Manuel, 2001, *Investigation of Drivers' Inattentiveness and Distraction.*

23. Vahidi, Ardalan, 2001, *Predictive Time Delay Controls for Vehicle Suspensions.*

24. Demrican, Emere, 1999, *Modeling and Regression Analysis of Driver Speed Profiles on Curves.*

25. Remigio, Mylene, Computational Sciences, 1999, *Intelligent Agents and Optimization for Railroad Traffic.*

26. Gan, Lin, CS, 1997, *Virtual Reality Visualization of UTCD and Highway Construction Zones.*

27. Schmitz, Heinz-Georg, 1997, *Finite Element Analysis and Evaluation of Guardrail Systems.*

Other Directed Graduate Student Projects without Documented/Published Reports

28. Ali, Imran, 2004, *Driving Simulator Scenario Development Projects.*

29. Khan, Nadeem, 2004, *Driving Simulator Analysis Projects.*

30. Khan, Wisal, 2003, *Driving Simulator Scenario Development.*

31. Ganganala, Nagendra, 2002, *FE Automotive Safety Project.*

32. Jain, Prashant, 2002, *Multibody Dynamics project.*

33. Mohan, Pradeep, MS, 2002, *Finite Element Modeling for Crash Analysis.*

34. Moinuddin, Sayed, 2002, *Finite Element Modeling.*

35. Kutznetov, Alexander, CS, 2002 (co-advised), *Software Development for Crash Data Analysis.*

36. Shrestha, Deepak, 1995, *ITS Research Project.*

### Recent Undergraduate Students Projects

*Virginia Tech*

1. Timothy Ryan
2. Curtis Mussen
3. John Kuempel
4. Ali El Beshbishi

## Professional Activities: External Service

### Journal Editorship

- Editor-in-Chief, IEEE Intelligent Transportation Systems Transactions (2019- )
- Senior Editor, IEEE Intelligent Transportation Systems Transactions (2017-2018)
- Associate Editor, IEEE Intelligent Transportation Systems Transactions (2004-2016)
- Associate Editor, ASME Journal of Dynamic Systems, Measurement, and Control (2015-2018)
- Advisory Member, ASME Press Robotics Engineering Book Series (2013- )
- Associate Editor, International Journal of Automotive Technology (2003-2017)
- Editorial Board of Journal of Multi-body Dynamics of Institution of Mechanical Engineers (2000-2015)
- Editorial Board of International Journal of Vehicle Autonomous Systems (2005- )
- Editorial Board of International Journal of Vehicle Information and Communication Systems (2005-2014)

### Conference Editorial and Leadership/Organizing Activities

- Program Committee, IEEE ITSC 2019, Auckland, New Zealand.
- **Conference General Chair**, ASME Dynamic Systems and Control Conference, Tysons Corner, VA, Oct. 2017.
- International Program Committee, 20th IEEE Intelligent Transportation System Conf., Yokohama, Japan, Oct. 16-19, 2017.
- Associate Editor, Technical Program Committee, IEEE Intelligent Vehicle Symposium, Redondo Beach, CA, June 2017.
- Invited Panelist, Advancing Diversity Workshop at Virginia Tech, session on Increasing Equity in Faculty Recruitment, Blacksburg, VA, Jan 10, 2017.
- International Program Committee, 19th IEEE Intelligent Transportation System Conf. Rio de Janerio, Brazil, Nov.1-4, 2016.
- Session Co-chair, Communications and Protocols in ITS, 19th IEEE ITS Conf. Rio de Janerio, Brazil, Nov.1-4, 2016
- International Program Committee, IEEE Intelligent Vehicle Symposium, Gothenburg, Sweden, June 19-22, 2016.
- **Conference Invited Sessions Chair**, 8th ASME Dynamic Systems and Control Conference, Columbus, Ohio, 2015.
- Session Co-Chair, Human Robot Interaction, 8th ASME Dynamic Systems and Control Conference, Columbus, Ohio, 2015.
- Program Co-Chair, IEEE Intelligent Vehicle Symposium, Korea, June 2015.
- Program Chair (one of three), 17th IEEE Intelligent Transportation System Conf. Qingdao, China Oct., 2014.
- Chair session, "Cooperative Driving, Intelligent and Autonomous Vehicles," the 3rd International Conference on Connected Vehicles and Expo, November 3-7, 2014, Vienna, Austria.
- Program Committee, 16th IEEE Intelligent Transportation System Conf. Hague, Netherlands, Oct. 6-9, 2013.
- Program Committee, TRB 16th International Conference on Road Safety on Four Continents, Beijing, China, May 15-17, 2013.
- **General Chair, 14th** IEEE Intelligent Transportation System Conf. Washington, DC, Oct. 5-7, 2011.
- **Local Arrangement Chair**, ASME Dynamic Systems and Control Conference, Arlington, VA, Nov. 2011.

- Co-Chair Session, Vehicle Dynamics and Control 2, ASME Dynamic Systems and Control Conference, Arlington, VA, Nov. 2011.

- Scientific Committee, the 3rd International Conference on Impact Loading of Lightweight Structures, ICILLS, Valenciennes, France, June 28-July 1, 2011.

- Program Committee, IEEE Intelligent Transportation System Conf. Madeira, Portugal, Sep., 2010.

- Program Committee, IEEE Intelligent Vehicles Symposium, San Diego, CA, June 21-24, 2010.

- Program Committee, TRB 15th International Conference on Road Safety on Four Continents, Abu Dhabi, UAE, March 28-30, 2010.

- Chair, Session on Engine Control and Identification, ASME Dynamic Systems and Control (DSC) 2009 Conference, Hollywood, CA, Oct. 12-14

- Co-Chair, Session on Advanced Powertrain Control and Ground Vehicle Dynamics, ASME Dynamic Systems and Control (DSC) 2009 Conference, Hollywood, CA, Oct. 12-14

- Co-organizer of session on Modeling and Control of Vehicle Dynamics, ASME Dynamic Systems and Control (DSC) 2009 Conference, Hollywood, CA, Oct. 12-14

- Co-organizer of session on Control, Optimization and Identification of Advanced Automotive Systems, ASME Dynamic Systems and Control (DSC) 2009 Conference, Hollywood, CA, Oct. 12-14

- Co-Chair of Conference, IEEE Intelligent Vehicles Symposium, Xian, China, June 3-5, 2009.

- Chair, Session on Collision Detection/Avoidance in The 11th International IEEE Conference on Intelligent Transportation Systems, Beijing, China, October 12-15, 2008.

- Co-Chair, Session on Vehicle Control, IEEE Intelligent Vehicles Symposium, Eindhoven, The Netherlands, June 4-6, 2008.

- Technical Committee, IEEE Intelligent Vehicles Symposium, Eindhoven, Netherlands, June 4-6, 2008.

- Chair the Session, Poster PTP, IEEE Intelligent Vehicles Symposium, Istanbul, Turkey, June 11-15, 2007.

- Invited Panel Member, Future Truck and Bus Safety Research Directions Conference, TRB of National Research Council and Federal Motor Carrier Safety Administration of US DOT, Washington, DC, March 23-24, 2005.

- Organizing Technical Committee member and Invited Speaker, 1st International Conference on Traffic Safety, Tehran University, Iran, Dec. 22-25, 2005.

- Co-Chair of Session on "Safety", 8th International IEEE ITSC Conference, Vienna, Austria, Oct. 13-16, 2005.

- Chair of Special Sessions, 7th International IEEE ITSC Conference, Washington, DC, Oct. 3-6, 2004.

- Co-chair session with Ji, Q., "Non-intrusive and Real-time Driver Status Monitoring", 7th International IEEE ITSC Conference, Washington, DC, Oct. 3-6, 2004.

- Co-chair session with Behringer, R., "DARPA Grand Challenge on Autonomous Vehicles", 7th International IEEE ITSC Conference, Washington, DC, Oct. 3-6, 2004.

- Chair, Session on "Vehicle Dynamics, Ride and Handling II", Multi-Body Dynamics Symposium 3, Loughborough University, UK, July 12-13, 2004.

- **General Chair, Organizer**, **and Editor** of Intelligent Transportation Systems Safety and Security Conference, Miami, Florida, USA, March 24-25, 2004.

- Host and co-organizer of a Seminar in Virtual Reality in Transportation Safety and Security, The George Washington University, Virginia Campus, Ashburn, VA, June 10, 2004.

- Scientific Organizing Committee member of International Crashworthiness and Design Symposium, Lille France, Dec.2-4, 2003.

- Co-Chair, Session on Continuous Systems, Technical Committee on Vibration and Sound, ASME IMECE, New York, NY, Nov. 2001.

- Co-Chair and panel member for session on Highway Safety Design, First Safety on the Road Conference, Cairo, Egypt, Nov. 2000.

- Co-Chair and panel member for session on Traffic Congestion, Traffic Flow, and Safety, First Safety on the Road Conference, Cairo, Egypt, Nov. 2000.

- Chair, Workshop on Improving Compatibility of Vehicles with Roadside Hardware, GW, Virginia Campus. Under a sponsored research from National Academy of Sciences, May 17, 2002.

- Co-Chair, session on Today's Issues in Aviation and Automotive Safety, Ten-Year Anniversary Celebration of The George Washington University, Virginia Campus. December 3, 2000.

- Chair, Panel on Intelligent Transportation Systems, The George Washington University, Virginia Campus Tech. Expo 2000, Ashburn, VA, Apr. 24, 2000.

- Co-chair, FHWA sponsored Workshop on "Issues and Plans for Roadside Safety Features Research," The George Washington University, Virginia Campus, Ashburn, VA, April 11-12, 1997.

- **Organizer, Co-Chair, and Editor**, Neural Networks Applications in Highway and Vehicle Engineering Conference, The George Washington University, VA Campus, Ashburn, VA, April 10-11, 1996.

- Chair, session on Simulation and Modeling, the International IEMS Conference, Coco Beach, Fl., Mar. 13-15, 1995.

- Contributor to various workshops of ITS America, National Automated Highway Systems Consortium, and National Cooperative Highway Research Program of TRB, 1994-1997.

- Hosted the first joint meeting of the Aggressivity and Compatibility Group of the crashworthiness sub-committee of the Motor Vehicle Research Advisory Committee (MVRAC) with the European Counterparts at GW, VA Campus, June 1998.

- Invited expert, "New and Future Car Safety Technology", a workshop of The Herbert Quandt Stiftung, the Foundation of BMW AG, Washington, D.C. July 1997.

- Invited expert to contribute to Strategic Plan for Improving Roadside hardware (NCHRP Project 17-13), for TRB of National Research Council of The National Academy of Sciences, TRB Annual Meeting, Washington, D.C., January 8, 1996.

- Attended the White House Briefing on NEXTEA (the National Economic Crossroads Transportation Efficiency Act- the Bill later passed as TEA21 by US Congress), 1997.

## Peer Review for Government Panels

- Expert Committee for the Canada Foundation for Innovation's 2017 *Innovation Fund competition* (Dec. 2016)

- CDC (Center for Disease Control and Prevention) Review Panel, 2012

- NSF Review Panels, 2007-2013: Several for CMMI, CISE, and Engineering Directorate, and many major interdisciplinary programs.

- Canada Foundation for Innovation, Nov. 2008

- Canadian National Centers of Excellence, AUTO 21 NCE, Windsor, September 2007

- US DOT Eisenhower Fellowship Program, US DOT NHI, 2006

- Scientific Consultant and Reviewer to Arthur S. Flemming Award Commission, 2004-2011

- Canadian National Centers of Excellence, AUTO 21 NCE, Windsor 2000, and Toronto 2004

- National Research Council of The National Academy of Sciences, ITS-IDEA program of the Transportation Research Board (TRB) 1997-98.

## Peer Review for Journals and Proceedings (selected list)

- National Academy of Engineering (NAE) Bridge Magazine

- ASME Journal of Dynamic Systems, Measurements, and Control

- IEEE Transactions on Control Systems Technology

- IEEE Transactions on Neural Networks

- IEEE Transactions on Vehicular Technology

- IEEE Transactions on Intelligent Transportation Systems

- Journal of Vibration and Control

- IMechE Journal of Multibody Dynamics

- IMechE Journal of Automotive Engineering

- Neural Networks, the official Journal of the International Neural Networks Society

- Journal of Robotics Engineering

- International Journal of Robotics Research
- Journal of Computer Methods in Applied Mechanics and Engineering
- International Journal of Transportation Research, Part C
- Journal of Intelligent Transportation Systems
- Journal of Accident Analysis and Prevention
- ASCE Journal of Transportation Engineering
- Journal of Computer Aided Civil and Infrastructure Engineering
- ASEE Journal of Engineering Technology
- Reviewer for proposals for ASME new Book Series in Robotics, 2011
- Reviewer for John Wiley Book Series, 2011

*Conference Proceedings*

- Transportation Research Board Annual Meeting, Washington, DC, 2015
- 7th Annual ASME DSC Conference, San Antonio, TX, 2014
- 3rd International Conference on Connected Vehicles and Expo, Vienna, Austria, 2014
- 17th IEEE Intelligent Transportation System Conf. Qingdao, China , 2014
- 16th IEEE Intelligent Transportation System Conf. Hague, Netherlands, 2013
- IEEE International Symposium on Robotic and Sensors Environments, 2013
- Transportation Research Board Annual Meeting, Washington, DC, 2013
- 5th Annual ASME DSC and 11th Motion and Vibration Conference, Fort Lauderdale, FL, 2012
- IEEE Forum on Integrated and Sustainable Transportation Systems (FISTS), Vienna, Austria, 2011
- IEEE ITSC 13th International Conference, Madeira, Portugal, 2010
- IEEE Intelligent Vehicles Symposium, San Diego, CA, 2010
- ASME DSC Conference, Hollywood, CA, 2009
- IEEE Intelligent Vehicles Symposium, Xian, China, 2009
- IEEE Intelligent Vehicles Symposium, The Netherlands, 2008
- IEEE Intelligent Vehicles Symposium, Istanbul, Turkey, 2007
- IEEE ITSC 9th International Conference, Toronto, Canada, 2006
- IEEE ITSC 8th International Conference, Vienna, Austria, 2005
- IEEE ITSC 7th International Conference, Washington, DC, 2004
- ASME IMECE, Chicago, IL, 2006
- ASME IMECE, Washington, DC, Nov. 2003
- ASME IMECE, New York, NY, Nov. 2001
- Transportation Research Board Annual Meeting, 2002
- Transportation Research Board publications (conference proceedings and TRB Papers various years)
- 35th Hawaii International Conference on System Sciences, Critical Infrastructure Systems, 2001
- Invited reviewer for various proposals for national and international universities and agencies

## External Committee Service

- VP Administration & Executive Committee Member, IEEE Intelligent Transportation System Society (5/2016-12/2018)
- Member of Executive committee of Department Chairs Committee, ASME, (2017- 2019)
- Member, IEEE Committee on Transportation and Aerospace Policy (2009-2014)
- Member, ASME DSC Division, Automotive and Transportation Systems Committee (2005-)
- Member, ASME DSC Division, Mechatronics Committee (2005-)

- Member, IEEE ITSS, Intelligent Transportation System Society (2003-); elected for Board of Governors (2008-2010, 2011-2013)
- Member, IEEE CSS, Control Systems Society (2005-)
- Member, IEEE RAS, Robotics and Automation Society (2005-)
- Member of National Academy of Sciences Transportation Research Board Vehicle-Highway Automation Committee (2013-18)
- University Representative of National Academy of Sciences Transportation Research Board (2008-2015)
- Motor Vehicle Safety Research Advisory Committee (MVSRAC) of National Highway Traffic Safety Administration (NHTSA) of DOT, Aggressivity and Compatibility Group of the Crashworthiness Subcommittee, membership by invitation from government, (1995-1999)
- Member of National Academy of Sciences Transportation Research Board, Computational Mechanics subcommittee of the committee for Roadside Safety Features (1994-2000)
- Advanced Vehicle Control and Safety System (AVCS) committee of the Intelligent Transportation Society (ITS) of America (1994-1996)

## Professional Society Memberships

- Fellow of the American Society of Mechanical Engineers (ASME) and member of DSC Division (2013-)
- Senior Member of IEEE, affiliated with ITS, Robotics, and CS Societies (2013-)
- Member of the Society of Automotive Engineers (SAE)
- Associate Member of the American Society of Civil Engineers (ASCE) (ended 2007)
- Member of ITS America through organizational membership for GWU-CISR (2002-2014)
- Member of the Advanced Vehicle Control Systems (AVCS) Committee of ITS America (1996-97)
- Member of the American Society for Engineering Education (ASEE) (1992-95)
- Senior Member of the Society of Manufacturing Engineers (SME, CASA & RI Societies) (1990-95)

## Consulting

1988-present: Consulting in the areas of system dynamics analysis and mathematical modeling and simulation, neural networks, intelligent transportation systems, stress, failure and Finite Element analysis, intellectual property evaluation, and expert witness services for clients including universities, government agencies, manufacturers, and consulting companies. Sample clients: Carnegie Mellon University Robotics Institute, University of North Carolina Transportation Center, US DOT, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Palo Alto; Latham and Watkins, LLP, Washington, DC, Dickstein Schapiro, LLC, Washington, DC., and Frommer, Lawrence, and Haug, LLP, New York, NY and Washington, DC.

## Internal University Service

### Virginia Tech Service

- Member of the University Diversity and Inclusivity Committee, (2016-present)
- Chair of the ME Department Diversity Committee (2015-present)
- Virginia Tech's Department Heads Executive Council (COE Representative), (2018-2020)
- College of Engineering Department Head's Subcommittee on P&T Expectations Document (2018-19)
- Invited Member of Intelligent Infrastructure and Human Centered Communities (IIHCC) University Destination Area Committee (2016- present)
- Member of University's Cluster Hire Search Committee, representing Inclusivity and Diversity for Intelligent Infrastructure and Human Centered Communities (IIHCC) University Destination Area (2017-18)

### GWU Service

Department

- **Chair** of Faculty Search Committees, CEE Department, (2005, 2007-08, 2010-11, 2012-13)

- **Chair** of Graduate Programs Committee, CEE Department (2000-07; 2012-present)
- **Chair** of Faculty Search Committee for water Resources Area (2010-11)
- **Lead** CEE Colloquia (2010-11)
- Graduate Programs Committee, CEE Department (2007-12)
- Undergraduate Programs Committee, CEE Department (2007-08)
- Undergraduate Curriculum Committee, CEE Department (2002-04; 2007-09)
- Faculty Search Committee for External Recruiting of a new CEE Chair (2003-04)
- Faculty Search Committee for Structures area (2003-04)
- Faculty Search Committee for Transportation area (2004)
- CEE By-Laws Committee (2001)
- Committee for Strategic Planning CEE (2000)
- Faculty Search Committee for structural faculty position (2000-01)
- Transportation Group Committee for a new initiative for SEAS-Industry Collaboration (1998-99)
- Mechanical Engineering Faculty committee for the Strategic Plan of the School of Engineering and Applied Science; Chair of subcommittee for Virginia Campus (1998)

School

- Tenure and Promotion Sub-Committee (2014-16 & 2011-13)
- Research award selection committee (2012-13)
- **Chair**, Tenure and Promotion Sub-Committee (2011-12)
- **Chair,** Research award selection committee (2011-12)
- Finance Committee (2010-15)
- Teaching award selection committee (2010-11)
- Ethics Committee (2009-10)
- Dean Search Committee (2007-08)
- School Subcommittee for Tenure and Promotion procedures (2004-05)
- SEAS Graduate Programs Committee (2001-04)
- Committee for potential opportunities with the National Transportation Safety Board, NTSB (2001)
- SEAS committee on Intelligent Highway and Vehicle Systems (1994-96)

University

- University review panel for University Awarded Signature Programs (invited by Provost) (2012)
- University Advisory Research Committee (2010-13)
- University Hybrid Course Innovation Sub-committee, Task Force on Excellence Through Innovation (2010-11)
- University Search Committee for Chief Research Officer (2005-06)
- University Research and Instructional Technology Committee (RITC) (2002-07)
- University Research Advisory Council (RAC) (2003-2006)
  - Special Subcommittee of RAC on Research Enhancement Incentive Award (2003-04)
- Computational Sciences Program (CSP) interdisciplinary committee (1997-00)
  - **Chair** of Budget and Resource committee of CSP
  - Admissions and Executive Committees of CSP
- Committee on Strategic Planning for Academic Information Technology (SPAIT) (2000-01)
  - Research Subcommittee for SPAIT
- Research and Instructional Technology Committee of the Instructional Technology Advisory Council (ITAC) of the University (1999-00)

Selected Other GWU Activities

☐ Contributed significantly to the successes of the University's Office of Government Relations and GW Virginia Campus Executive Dean in congressional and government fund raising. Prepared proposals and made presentations to US congressmen, their staff, and government agencies. One major effort resulted in construction of a new $28 million building, housing the NTSB's training academy at GW, Virginia Campus.

☐ Contributed significantly to the departmental graduate and undergraduate recruiting.

☐ Initiated a new internship program at GW-TRI with the ENSIMEV, University of Valenciennes, France since 2000, involving exchange of 2-3 graduate students annually.

☐ Revived a graduate student exchange program (MOU) with Stuttgart University, Germany.

☐ Initiated a new Distinguished Speaker Series for GW-TRI (1999-2001) and continued with Seminars for an area of academic excellence (2002-present)

☐ Actively contributed to the conferences, seminars, presentations, annual technical expositions, PR events, and other activities for the promotion of the GW Virginia Campus.

## Selected Media Appearances

☐ Interviewed by Voice of America, on Autonomous Driving and VT Mechanical Engineering Department Research (July 2019.)

☐ Interviewed, cited by Virginia Business, Gary Robertson: AI advancements raise questions: Researchers consider ethical issues as they work on a variety of projects; Published June 29, 2018. https://www.virginiabusiness.com/article/ai-advancements-raise-questions/

☐ Interviewed, by Justin Ward. Researchers use simulation to study self-driving cars.

*MVT*. http://www.kmvt.com/content/news/426515351.html (June 5, 2017.)

*WHSV*. http://www.whsv.com/content/news/425950913.html (June 2, 2017.)

*WDBJ*. http://www.wdbj7.com/content/news/Virginia-Tech-advancing-autonomous-car-research-with-new-simulator-425397334.html (May 30, 2017.)

☐ Appeared in article, Virginia Tech mechanical engineering lab receives autonomous driving simulator. *Augusta Free Press*. http://augustafreepress.com/virginia-tech-mechanical-engineering-lab-receives-autonomous-driving-simulator/ (May 29, 2017.)

☐ Interviewed, Rosaire Bushey. Virginia Tech mechanical engineering lab receives autonomous driving simulator. *Virginia Tech News*. https://vtnews.vt.edu/articles/2017/05/autonomous-driving-simulator.html (2017, May 25.)

☐ Invited interview, IEEE, ITS Podcast Episode 20: "Active Safety with Prof. Azim Eskandarian", Dec. 1, 2014.

☐ Invited participant in NPR's Dianne Rehm Show on *Driverless* (*Autonomous) Vehicles*, Sep. 27, 2012.

☐ Interviewed and quoted on-line, NOVA, PBC on *Drowsy Driving Warning*, 2013.

☐ GWU SEAS Video on Research; Vimeo, (https://vimeo.com/74841453), 2013.

☐ Interviewed and quoted on-line, Forbes and CNN Tech-WIRED on *Autonomous Vehicles* Sep. 2012.

☐ Interviewed and quoted in the IEEE Institute (IEEE news magazine), "Crash-Free Commutes: IEEE members work to make vehicles smarter and safer", by Kathy Kowalenko, January 6, 2012.

☐ GWU Video Clip, on GWU Office of VP Research, Youtube, and The Science Coalition (Tomorrow's Innovators are in University Today: http://innovators.sciencecoalition.org/video.php?id=381), 2012.

☐ Interviewed and quoted in the article, "In-car Internet: Safety boost or driver danger?" November 9th, 2011, Mark Henricks; http://www.carinsurancequotes.com/articles/in_car_internet/.

☐ Interviewed and quoted by WTOP News concerning the safety issues of Distracted Driving, 2011.

☐ GW OVPR Experts Series broadcasted on-line at GW's Research web site and at local ABC Channel 7 commercials: *Professor Azim Eskandarian, spotlights of research in automotive safety.*

☐ Interviewed and quoted in a USA Today article Study: Sleepiness a factor in 17% of road deaths, Nov. 23, 2010.

☐ Interviewed and quoted in BBC On-line article: "Car that drives itself gets closer to reality", 2010.

- Washington Post Magazine, for simulation technology in education, Nov. 7, 2010. Same article also referenced in *First Bell*, the daily ASEE (American Society of Engineering Education)
- Local CBS News for driver distraction and drowsiness safety, June 2010.
- GW Today, online news interview, August 2010.
- Local CBS and NBC News channels for truck driver drowsiness detection research, 2006.
- Local Fox News channel for drowsy driver research, 2004.
- ABC discovery news; topic: road safety features concerning Princess Diana's fatal car accident.
- GW radio, broadcasted 1999 and printed in *By George* (GW's Paper) in Feb. 3, 2000 issue, Topic: "The Anatomy of Accidents"
- Interviewed and a complete film produced entitled, "CYBERMASH", by Beyond Productions Pty Limited (Australia) for the TV program Beyond 2000-Episode 19- Tape 6/9/1999.
- Brazilian Science Discovery Channel, program for auto safety research, 1996.

## Penn State Service (Jan. 1989-1992)

Committee Service at Different Semesters:

- Academic Affairs Committee
- Faculty Affairs Committee
- Faculty Services Committee
- Faculty member of the Industrial Advisory Committee at Penn State York; actively participated in obtaining equipment and instrumentation grants for various laboratory courses from local industries and various university-sponsored programs.
- Assisted the Industrial Resource Center (MANTEC) of York County, Pennsylvania to assess industrial training needs in the region through the continuing education department.
- Developed and taught new short courses and seminars in Computer Integrated Manufacturing (CIM) and Computer Numerical Control (CNC) for Continuing Education Department.

## Publications

[195 Total Published work:] 177 referred journal (66) and conference (111) publications, 1 book and 1 edited reference handbook, 8 book chapters, 3 edited volumes, 4 other refereed publications, 1 patent, 94 additional presentations/abstracts and over 37 technical reports.

### Patents

1. Eskandarian, A. and Mortazavi, A., "Unobtrusive Driver Drowsiness Detection System and Method", Pub. No. US8519853 B2; Application number US 12/613,306; Publication date: Aug 27, 2013. (Licensed by a company.) Also Patented in Canada in 2015.

### Books

*1.* Eskandarian, A., Editor-in-Chief, Handbook of Intelligent Vehicles, Springer, March 2012. *Springer:* 524,000 Downloads (June 2020.) https://doi.org/10.1007/978-0-85729-085-4. Also translated into Chinese language. *Section Editor for the following sections, each including multiple chapters:*
   - Eskandarian, A., Section Editor, *Vehicle Longitudinal and Lateral Control Systems*, Section 2, Handbook of Intelligent Vehicles, Springer 2012, pp. 165-232.
   - Eskandarian, A., Section Editor, *Driver Assistance*, Section 5, Handbook of Intelligent Vehicles, Springer 2012, pp. 489-602.
   - Eskandarian, A., Section Editor, *Drowsy and Fatigued Driver Detection, Monitoring, Warning*, Section 7, Handbook of Intelligent Vehicles, Springer 2012, pp. 893-996.
2. Chen, Y., Lee, J., and Eskandarian, A., Meshless Methods in Solid Mechanics, Springer Verlag, May 2006.

## Book Chapters

1. Eskandarian, A., Intelligent Vehicles, Book Chapter in Springer's **Robotics Encyclopedia,** forthcoming, 2020.

2. Eskandarian, A., Introduction to Intelligent Vehicles, Chapter 1, Handbook of Intelligent Vehicles, Springer, 2012, pp. 1-14.

3. Soudbakhsh, D., and Eskandarian, A., Vehicle Lateral and Steering Control, Chapter 10, Handbook of Intelligent Vehicles, Springer, 2012, pp. 209-232.

4. Eskandarian, A., Fundamentals of Driver Assistance, Chapter 19, Handbook of Intelligent Vehicles, Springer, 2012, pp. 491-536.

5. Blum, J., Eskandarian, A., and Arhin, S.A., Intelligent Speed Adaptation System, Chapter 22, Handbook of Intelligent Vehicles, Springer, 2012, pp. 581-602.

6. Eskandarian, A., Mortazavi, A., and Sayed, R.A., Drowsy and Fatigue Driving Problem Significance and Detection Based on Driver Control Functions, Chapter 36, Handbook of Intelligent Vehicles, Springer, 2012, pp. 941-974.

7. Sayed, R.A., and Eskandarian, A, and Mortazavi, A., Drowsy and Fatigued Driver Warning, Countermeasures, and Assistance, Chapter 37, Handbook of Intelligent Vehicles, Springer, 2012, pp. 975-996.

8. Wang, X., Li, J., Lee, J.D., and Eskandarian, A., A Multiscale Modeling of Multiple Physics, Handbook of Micromechanics and Nanomechanics, Editors: Shaofan Li and Xinlin Gao, Pan Stanford Pub. Pte Ltd, 2013.

## Edited Volumes & Edited Journals

1. Eskandarian, A., Sayed, R., and Blum, J. (Editors) *Intelligent Transportation Systems Safety and Security, Conference Proceedings, March 24-25, 2004, Miami, FL, USA. CD-ROM.*

2. Eskandarian (Guest Editor), Adeli, H. (Editor-in-Chief), Special issue of Journal of Computer-Aided Civil and Infrastructure Engineering in Neural Networks in Highway and Vehicle Applications, 1998.

3. Oskard, M., Eskandarian, A., and Shapiro, F., (Editors), Neural Networks Application in Highway and Vehicle Engineering, Conference proceedings, FHWA Publication, No. RD96154, April 1996.

## Refereed Journal Papers (Listed in two groups)

### Group I. Dynamics, Controls, and Intelligent Systems, (Applications in Intelligent Vehicles)

☐ Lin, Y., and Eskandarian, A., "Integrating Inter-vehicular Communication, Vehicle Localization, and a Digital Map for Cooperative Adaptive Cruise Control with Target Detection Loss," Submitted, in Review.

1. Merill, N. and Eskandarian, A., "Modified Autoencoder Training and Scoring for Robust Unsupervised Anomaly Detection in Deep Learning," IEEE Access, , DOI: 10.1109/ACCESS.2020.2997327. June 10, 2020.

2. Eskandarian, A., Wu, C., and C. Sun, "Research Advances and Challenges of Autonomous and Connected Ground Vehicles," in IEEE Transactions on Intelligent Transportation Systems. DOI: 10.1109/TITS.2019.2958352, 2019.

3. Wu, C., Lin, Y, and Eskandarian, A., "Cooperative Adaptive Cruise Control with Adaptive Kalman Filter Subject to Temporary Communication Loss", IEEE Access, DOI: 10.1109/ACCESS.2019.2928004; July 2019.

4. Sridhar, S., and Eskandarian, A., "Cooperative Perception in Autonomous Ground Vehicles using a Mobile Robot Testbed," IET Intelligent Transport Systems, Online, June 24, 2019.

5. Goli, M. and Eskandarian, A., "Merging Strategies and Trajectory Planning and Controls for Platoon of Connected and Autonomous Vehicles," International J. of ITS, DOI 10.1007/s13177-019-00188-z; June 25, 2019.

6. Soudbakhksh, D., Eskandarian, A., "A Steering Control Collision Avoidance System and Verification through Subject Study", IET Intelligent Transport Systems, Volume 9, Issue 10, December 2015, pp. 907 – 915.

7. Arhin, S. and Eskandarian, A., "Predicting Driver Braking and Stopping Behavior using an Intelligent Speed Adaptation System", International Journal of Engineering Research & Technology (IJERT), Vol. 4 Issue 06, June-2015, PP 708-711.

8. Soudbakhksh, D., Eskandarian, A., and Chichka, D., "Vehicle Collision Avoidance Maneuvers with Limited Lateral Acceleration Using Optimal Trajectory Control", *ASME Journal of Dynamic Systems, Measurement, and Control* 2013, July 2013, Vol. 135.

9.  Soudbakhksh, D. and Eskandarian, A. "Comparison of Linear and Nonlinear Controllers for Active Steering", *Journal of Systems and Control Engineering*, *Proceedings of the Institution of Mechanical Engineers, Part I:* Vol. 226 Issue 2, Feb. 2012, PP. 215-232 (in electronic form: Vol. 225, August 2011.)

10. Blum, J., Natarajan, R. and Eskandarian, A., "Synchronization Challenges in Media Access Coordination for Vehicular Ad Hoc Networks", *Wireless Communications and Mobile Computing*, Published online, Wiley InterScience, (www.interscience.wiley.com), 2010, DOI: 10.1002/wcm. 921.

11. Blum, J., and Eskandarian, A., "Cross-Layer Coordination for Safety Applications Enabled by Wireless Access in Vehicular Environments", *International Journal of Intelligent Transportation Research*, Vol. 7, No. 1, June 2009, pp. 27-37.

12. Mortazavi, A., Eskandarian, A., and Sayed, R.A., "Effect of Drowsiness on Driving Performance Variables of Commercial Vehicle Drivers", *International Journal of Automotive Technology*, 10 (3), 2009, pp. 391-404.

13. Arhin, S., Eskandarian, A., Blum, J., and Delaigue, P., "Development and Evaluation of an Advanced Intelligent Speed Adaptation (ISA) System", *Journal of Automobile Engineering, Proc. of Institution of Mechanical Engineers*, *Part D,* Vol. 222No. D9, Sep. 2008, pp. 1603-1614.

14. Arhin, S., Blum, J., Eskandarian, A., Delaigue, P., and Soudbakhsh, D., "Effectiveness and Acceptance of Adaptive Intelligent Speed Adaptation Systems", *Transportation Research Record (TRR), Journal of the Transportation Research Board*, No. 2086, Intelligent Transportation Systems and Vehicle Highway Automation, 2008, pp. 133-139.

15. Malcher, D., Eskandarian, A. and Delaigue, P., "Dynamic Models for Vehicle Roll Motion in Pre-Rollover Maneuvers", *Journal of Multi-body Dynamics, Proceedings of the Institution of Mechanical Engineers, Part K,* Volume 221, No. K2, 2007, pp. 291-301.

16. Blum, J. and Eskandarian A., "A Reliable Link Layer Protocol for Robust and Scalable Inter-Vehicle Communications", *IEEE Transactions on Intelligent Transportation Systems*, 8(1), 2007, pp. 4-13.

17. Blum, J. and A. Eskandarian, "CARAVAN: A Communications Architecture for Reliable Adaptive Vehicular Ad Hoc Networks", *SAE Transactions: Journal of Passenger Cars: Electronic and Electrical Systems*, v. 115-117, 2006, pp. 736-46.

18. Zhou, B., Blum, J., and Eskandarian, A., "Virtual Reality Visualization of Microscopic Traffic Simulations", *Transportation Research Record, Journal of Transportation Research Board (TRB) Human Performance; Simulation and Visualization*, No. 1937, 2005, pp. 159-166.

**19.** Blum, J., Eskandarian, A., and Hoffman, L., "The Challenges of Inter-Vehicle Ad Hoc Networks", *IEEE Transactions on Intelligent Transportation Systems,* Vol. 5 No.4, 2004, pp. 347-351. **Among Top 10 Best Research Papers and most cited of IEEE Transactions on ITS during 10-year period 2000-2009.**

20. Blum, J., and Eskandarian, A., "The threat of intelligent collisions," *IT Professional*, vol. 6, no. 1, pp. 24-29, Jan.-Feb. 2004, doi: 10.1109/MITP.2004.1265539.

21. Delaigue, P., and Eskandarian, A., "A Comprehensive Vehicle Braking Model for Predictions of Stopping Distances", *Journal of Automobile Engineering, Proceedings of I. Mech E. Part D*, Vol. 218, 2004, pp. 1409-1417.

22. Vahidi, A., and Eskandarian, A., "Research Advances in Intelligent Collision Avoidance and Adaptive Cruise Control", *IEEE Transactions on Intelligent Transportation Systems,* Vol. 4, Issue 3, 2003, pp. 143-153.

23. Blum, J., and Eskandarian, A., "Software Architecture for Adaptive Collision Avoidance System," *International Journal of Automotive Technology*, Manuscript No. E070, 2002, Vol. 3, No. 2, pp.79-88.

24. Blum, J., and Eskandarian, A., "Enhancing Intelligent Agent Collaboration for Flow Optimization of Railroad Traffic", *Transportation Research Part A*, Manuscript No. 2101, 2002, 36 (10), pp. 919-930.

25. Vahidi, A., and Eskandarian, A., "The Influence of Preview Uncertainties in Preview Control of Vehicle Suspensions", *Journal of Multi-body Dynamics, Proceedings of the Institution of Mechanical Engineers, Part K*, Vol. 216, Number 4, 2002, pp. 295-301.

26. Sayed, R., and Eskandarian, A., "Unobtrusive Drowsiness Detection by Neural Network Learning of Driver Steering", *Journal of Automobile Engineering, Proc. of Institution of Mechanical Engineers*, *Part D,* Vol. 215, 2001, PP. 969-975.

27. Vahidi, A. and Eskandarian, A., "Predictive Time-Delay Control of Vehicle Suspensions", *J. of Vibration and Control*, 7, 2001, pp. 1195-1211.

28. Omar, T., Eskandarian, and Bedewi, N.E., "Artificial Neural Networks for Modeling Dynamics of Impacting Bodies and Vehicles", *Journal of Multi-body Dynamics, Proceedings of I. Mech. E., Part K,* 2000, Vol. 214 No. K3. pp. 133-142.

29. Eskandarian, A., and Thiriez, S., "Collision Avoidance Using Cerebral Model Arithmetic Computer Neural Network", *Journal of Computer-Aided Civil and Infrastructure Engineering (Previously, Microcomputers in Civil Engineering*), Vol. 13, 1998, pp. 303-314.

30. Omar, T., Eskandarian, A., and Bedewi, N.E., "Vehicle Crash Modeling Using Recurrent Neural Networks", *Mathematical and Computer Modeling*, Pergamon, Vol. 28, No. 9, 1998, pp. 31-42.

31. Eskandarian, A., and Bedewi, N.E., "Experimental Identification of Friction Parameters of an Industrial Robot Manipulator Using An Energy Method", *ASEE Journal of Engineering Technology*, Vol. 14, No. 1, Spring 1997, pp. 40-45.

32. Eskandarian, A., "A Multi-disciplinary Approach for a Production Design Laboratory", *ASEE Journal of Engineering Technology*, Vol. 13, No. 1, Spring, 1996, pp. 24-29.

33. Eskandarian, A., Bedewi, N.E., Kramer, B., and Barbera, A.J., "Dynamics Modeling of Robotic Manipulators Using An Artificial Neural Network", *Journal of Robotic Systems*, Vol. 11, No. 1, Feb. 1994, pp. 41-56.

**Group II. Applied Mechanics/Impact Dynamics** (Applications in Vehicle Crashworthiness)

34. Ruparel, T., Eskandarian, A., and Lee, J., "Concurrent Multi-domain Simulations in Linear Structural Dynamics using Multiple Grid Multiple Time-scale (MGMT) Method" International Journal of Computational Methods, Published on-line August 2017. https://doi.org/10.1142/S0219876218500214

35. Yang Z, Lee, J, Liu, I-S, Eskandarian, A., "On non-equilibrium molecular dynamics with Euclidean objectivity", Acta Mechanica 228(2):693-710 Feb 2017; (online Oct. 2016.)

36. Yang Z, Lee J, Eskandarian A, "Objectivity in molecular dynamics simulations", *International Journal of Terraspace Science and Engineering*, 8(1):79-92 2016.

37. Lee, J, Chen, Y, Eskandarian, A, Lei, Y, Zeng X, Xiong L, "Multiscale Material Modeling: Theories and Applications", *International Journal of Terraspace Science and Engineerin*g 8(1):39-48 2016.

38. Lee, J. D., Chen, Y., Zeng, X. , Eskandarian, A., and M. Oskard, "Modeling and Simulation of Osteoporosis and Fracture of Trabecular Bone by Meshless Method", *International journal of Engineering Science,* Vol. 45, Issues 2-8, 2007, pp. 329-338.

39. Chen Y., Lee J. D., Eskandarian A and M. S. Oskard, "Meshless Analysis of Multiphase Materials", *Theoretical and Applied Fracture Mechanics*, 2006, 45, pp. 13-17.

40. Chen Y., Eskandarian A, Oskard, M. S., and J. D. Lee, "Meshless Simulation of Crack Propagation in Multiphase Materials", *Theoretical and Applied Fracture Mechanics*, Volume 45, Issue 1, February 2006, pp. 13-17.

41. Chen Y., Eskandarian A, Lee J. D. and M. S. Oskard, "Meshless Analysis of High-Speed Impact", *Theoretical and Applied Fracture Mechanics*, Volume 44, Issue 3, December 2005, pp. 201-207.

42. Yonten, K., Manzari, M., Marzougui, D., and Eskandarian, A., "An Assessment of Constitutive Models of Concrete in the Crashworthiness Simulation of Roadside Safety Structures", *International Journal of Crashworthiness*, Vol. 10. No. 1, 2005, pp. 5-19.

43. Tahan, F., Marzougui, D., Zaouk, A., Bedewi, N., Eskandarian, A., and Meczkowski, L., "Safety Performance Evaluation of Secure Mailboxes Using Finite Element Simulations and Crash Testing", *International Journal of Crashworthiness,* 2004, Vol. 10, No. 4, pp.341-349.

44. Chen Y., Eskandarian A, M. S. Oskard, and Lee J. D., "Meshless Analysis of Plasticity with Application to Crack Growth Problems", *Theoretical and Applied Fracture Mechanics*, 2004, 41/1-3, pp. 83-94.

45. Chen Y., Lee J. D. and Eskandarian A., "Micropolar Theory and its Applications to Mesoscopic and Microscopic Problems", *Computer Modeling in Engineering & Sciences*, 2004, 5, pp. 35-44.

46. Chen Y., Lee J. D. and Eskandarian A., "Atomistic Viewpoint of the Applicability of Microcontinuum Theories", *International Journal of Solids and Structures*, 2004, 41, pp. 2085-2097.

47. Lee J.D., Chen Y. and Eskandarian A., "A Micromorphic Electromagnetic Theory", *International Journal of Solids and Structures,* 41, 2004, pp. 2099-2110.

48. Kurtaran H., Büyük M., Eskandarian A., "Design Automation of a Laminated Armor for Best Impact Performance Using Approximate Optimization Method", *Int. Journal of Impact Engineering special issue,* Vol. 29, Issues 1-10, Dec. 2003, pp. 397-406.

49. Kurtaran, H., Buyuk, M., and Eskandarian; A., "Ballistic Impact Simulation of GT Model Vehicle Door Using Finite Element Method", *Theoretical and Applied Fracture Mechanics*, Vol. 40, No. 2, 2003, pp. 113-121.

50. Chen, Y., Lee, J.D., and Eskandarian, A., "Examining the Physical Foundations of Continuum Theories from the Viewpoint of Phonon Dispersion Relations," *International Journal of Engineering and Science*, 41, 2003, pp. 61-83.

*51.* Chen, Y., Lee, J.D., and Eskandarian, A., "Atomistic Counterpart of Micromorphic Theory," *Acta, Mechanica,* 161, 2003, pp. 81-102.

52. Kurtran, H., Eskandarian, A., Marzougui, D, and Bedewi, N.E., "Crashworthiness Design Optimization Using Successive Response Surface Approximations", *Computational Mechanics* (Springer),Volume 29, Nos. 4-5, 2002, pp 409-421.

53. Chen Y., Lee J. D. and Eskandarian A. "Finding Material Constants in Micromorphic Theory through Phonon Dispersion Relations", *Advances in Computational Engineering & Sciences*, edited by S. N. Atluri and D.W. Pepper, Tech Science Press, 2002.

54. Chen Y., Lee J. D. and Eskandarian A., "Local and Nonlocal Meshless Method of Fracture Mechanics", in *Advances in Computational Engineering & Sciences*, edited by S. N. Atluri and D.W. Pepper, Tech Science Press., 2002.

55. Chen, Y., Eskandarian, A., Kan, C.D., and Lee, J.D., "Thermo-plastic Effects on Structural Behavior During Crush and Impact", *International Journal of Vehicle Design*, Vol. 30, Nos. 1/2, 2002, pp. 22-32.

56. Chen, Y., Lee, J.D., and Eskandarian, A., "Dynamic Meshless Method Applied to Nonlocal Cracked Problems", *Theoretical and Applied Fracture Mechanics*, 38, 2002, pp. 293-300.

57. Kurtran, H., and Eskandarian, A., "Design Optimization of Multi-body Systems under Impact Loading by Response Surface Methodology," *Journal of Multibody Dynamics, Proceedings of Institution of Mechanical Engineers*, Part K, Vol. 215, 2001, PP. 173-185.

58. Noureddine, A., Eskandarian, A., and Digges, K., "Computer Modeling and Validation of a Hybrid III Dummy for Crashworthiness Simulation", *Mathematical and Computer Modeling*, 35, 2002, pp. 885-893.

59. Ennis, J., Marzougui, D., Eskandarian, A., and Bedewi, N.E, "Finite Element Modeling of Anthropomorphic Test Devices for Vehicle Crashworthiness Evaluation", *International Journal of Crashworthiness*, Vol. 6, No. 4, 2001, pp. 511-524.

60. Chen, Y., Lee, J.D., and Eskandarian, A., "Meshless Particle Methods for Nonlocal Continua", *Advances in Computational Engineering & Sciences* (edited by Atluri, Nishioka and Kikuchi), Tech Science Press, 2001.

61. Eskandarian, A., Marzougui, D., and Bedewi, N.E., "Impact Finite Element Analysis of Slip-Base Sign Support Mechanism", *ASCE Journal of Transportation Engineering*, Vol. 126 No.2, Mar/Apr 2000, pp.143-153.

62. Marzougui, D., Bahouth, G., Eskandarian, A., Meczkowski, L., and Taylor, H., "Evaluation of Portable Concrete Barriers Using Finite Element Simulation", *Journal of Transportation Research, Transportation Research Record No. 1720*, Paper No. 00-0501, National Academy Press, 2000, pp.1-6.

63. Marzougui, D., Eskandarian, A., and Bedewi, N.E., "Analysis and Evaluation of a Redesigned 3"x3" Slipbase Sign Support System Using Finite Element Simulations", *International Journal of Crashworthiness,* Vol. 4, No. 1, 1999, pp. 7-16.

64. Noureddine, A., Digges, K., Eskandarian, A., and Bedewi, N.E., "Analysis of Airbag Depowering and Related Parameters in Out of Position Environment", *International Journal of Crashworthiness,* Vol. 3. No. 4, 1998, pp. 237-248.

65. Eskandarian, A., Marzougui, D. and Bedewi, N.E., "Finite Element Model and Validation of a Surrogate Crash Test Vehicle for Impacts With Roadside Objects", *International Journal of Crashworthiness,* Vol. 2, No. 3, 1997, pp. 239-257.

66. Brown, E.F. and Eskandarian, A., "Nozzle Design Using an Iterative Dirichlet Approach", *International Journal for Numerical Methods in Engineering*, Vol. 22, 1986, pp. 481-494.

## Other Peer Reviewed Magazine Articles and Publications

2. Eskandarian, A., "Safety and Simulation", an invited article, *Testing Technology International*, UIP UK & International Press, 1998, pp. 94-98.

3. Eskandarian, A., Bedewi, N.E., and Meczkowski, L., "FHWA/NHTSA National Crash Analysis Center", *Public Roads, A Journal of Highway R&D, U.S. DOT, FHWA office of R&D*, Spring 1994, pp. 32-34.

4.  Eskandarian, A., "A Reference Model Dynamics-CMAC Algorithm for Simulation and Control of Robotic Manipulators", *D.Sc. Dissertation, The George Washington University*, Washington, D.C., 1991.

5.  Eskandarian, A., "A Method for Propulsion Nozzle Design", *Masters Thesis, Virginia Polytechnic Institute and State University*, Blacksburg, Virginia, 1983.

## Refereed Conference Papers (Listed in two groups)

### Group I. Dynamics, Controls, and Intelligent Systems, (Applications in Intelligent Vehicles)

1.  Park, J.E., Lee, J., Eskandarian, A., and Kim, Y.K., "Feasibility Study of Reinforcement Learning Control for Magnetorheological Elastomer Based Tunable Vibration Absorber System," ASME Conf. on Smart Materials, Adaptive Structures, and Intelligent Systems, SMASI 2020, Sep. 14-16, Irvine ,CA, Held Virtual.

2.  Khattar, V., and Eskandarian, A., "Reactive Online Motion Re-Planning for Crash Mitigation in Autonomous Vehicles Using Bezier Curve Optimization," ASME IMECE, Portland, OR, Nov. 15-19, 2020.

3.  Ghorai, P., and Eskandarian, A., "Study the Effect of Communication Delay for Perception and Collision Avoidance in Cooperative Autonomous Driving," ASME IMECE, Portland, OR, Nov. 15-19, 2020.

4.  Oh, S., Yu, J.H., Eskandarian, A., Kim, Y.K., "Design of Aiming Alignment Inspection System for On-Vehicle 3D Lidar Using Planar Target," ASME IMECE, Portland, OR, Nov. 15-19, 2020.

5.  Sun, C., and Eskandarian, A., "A Predictive Frontal and Oblique Collision Mitigation System for Autonomous Vehicles," ASME DSC Conference, Pittsburg, PA (Accepted), Oct 4-7, 2020.

6.  Ghorai, P., and Eskandarian, A., "Longitudinal Control Algorithm for Cooperative Autonomous Vehicles to Avoid Accident with Vulnerable Road Users", IEEE 23rd Intl. Conf. on Intelligent Transportation Systems (ITSC), Virtual, Sep. 20-23-2020.

7.  Mehr, G. and Eskandarian, A., "Estimating the Likelihood of Reaching a Road Target Using Multiple Lane Changes for Driver Assistance", IEEE 23rd Intl. Conf. on Intelligent Transportation Systems (ITSC), Virtual, Sep. 20-23, 2020.

8.  Wu, X., Eskandarian, A., "Predictive Motion Planning of Vehicles at Intersection Using a New GPR and RRT Approach", IEEE 23rd Intl. Conf. on Intelligent Transportation Systems (ITSC), Virtual, Sep. 20-23, 2020.

9.  Zhang, C, and Eskandarian, A., "A Computationally Efficient Multiclass Time-Frequency Common Spatial Pattern Analysis on EEG Motor Imagery," 42nd Annual International Conferences of the IEEE Engineering in Medicine and Biology Society (EMBS), Virtual, July 20-24, 2020.

10. Wu, X. and Eskandarian, A., "An Improved Small-Scale Connected Autonomous Vehicle Platform", 2019 ASME Dynamic Systems and Control Conference, Park City Utah, Oct. 8-11, 2019.

11. Merrill, N. and Eskandarian, A., "End-To-End Multi-Task Machine Learning of Vehicle Dynamics for Steering Angle Prediction for Autonomous Driving," Proceedings of ASME IDETC-CIE, 2019, Anaheim, CA, August 18-21, 2019.

12. Goli, M. and Eskandarian, A., "MPC- based Lateral Controller with Look-Ahead Design for Autonomous Multi-vehicle Merging into Platoon", proceedings of ACC 2019, Philadelphia, PA, July 10-12, 2019.

13. Lin, Y., Wu, C., and Eskandarian, A., "Integrating Odometry and Inter-Vehicular Communication for Adaptive Cruise Control with Target Detection Loss", IEEE Intelligent Vehicle Symposium, Changshu, Suzhou, China, June 26-28, 2018.

14. Lin, Y., Eskandarian, A., "Experimental Evaluation of Different Controllers for Cooperative Adaptive Cruise Control", Proceedings of the ASME Dynamic Systems and Control Conference, DSCC 2017, Tysons Corner, Virginia, October 11-13, 2017.

15. Sridhar, S., Eskandarian, A., "Visual Object Tracking on The Inverse Perspective Map for Autonomous Vehicles", Proceedings of the ASME Dynamic Systems and Control Conference, DSCC 2017, Tysons Corner, Virginia, October 11-13, 2017.

16. Lin, Y., Eskandarian, A., "Experimental Evaluation of Cooperative Adaptive Cruise Control with Autonomous Mobile Robots", 2017 IEEE Conference on Control Technology and Applications, Hawaii, August 2017.

17. Goli, M., and Eskandarian, A., "The Effect of Information, and Communication Topologies on Input-to-state Stability of Platoon", 19th IEEE International Conference on Intelligent Transportation Systems (ITSC), Rio de Janeiro, Brazil, 01 Nov 2016 - 04 Nov 2016.

18. Goli, M., and Eskandarian, A., "Mobile Robot Coordinated Platooning: A Small-Scale Experimental Evaluation to Emulate Connected Vehicles", ASME IMECE 2015, Houston, TX, Nov. 13-19, 2015.

19. Goli, M., and Eskandarian, A., "Evaluation of a Multi-vehicle Merging Strategy Under Different Lateral Maneuvers in the Presence of Sudden Braking", ASME DSC, Columbus, OH, Oct. 28-30, 2015.

20. Goli, M., and Eskandarian, A., "A Systematic Multi-vehicle Platooning and Platoon Merging", ASME DSC 2014, San Antonio, TX, Oct. 22-24, 2014.

21. Goli, M., and Eskandarian, A., "Evaluation of Lateral Trajectories with Different Controllers for Multi-vehicle Merging in Platoons", 3rd International Conference in Connected Vehicles and Expo (ICCVE), Nov. 3-7, 2014,Vienna, Austria.

22. Riyahi, P. and Eskandarian, A., "Analyzing Steady-State Visual Evoked Potentials for Effective User Response Detection for Brain-Computer Interfaces", ASME IMECE 2013, San Diego, CA, Nov. 15-21, 2013.

23. Riyahi, P. and Eskandarian, A., "A Robust Gauss-Newton Algorithm for Analyzing Steady-State Visual Evoked Potentials", 6th International IEEE EMBS Conference on Neural Engineering, San Diego, CA. Nov. 6-8, 2013.

24. Moreau, J., and Eskandarian, A., "Development and Comparison of Vehicle Preemptive Lane Keeping Systems by Steering Control", Transportation Research Board Annual Meeting, Washington, DC. Jan. 15, 2013.

25. Soudbakhsh, D. Eskandarian, A., and Chichka, D., "A Neighboring Optimal Controller for Disturbance Rejection During Vehicle Evasive Maneuvers", ASME DSC 2011, Arlington, VA, Oct.30-Nov.2, 2011.

26. Soudbakhsh, D. Eskandarian, A., and Morreau, J., "An Emergency Evasive Maneuver Algorithm for Vehicles", IEEE ITSC 2011, Washington, DC, Oct. 5-7, 2011.

27. Soudbakhsh, D. Eskandarian, A., Chichka, D., "Vehicle Evasive Maneuvers Trajectory Optimization Using Colllocation Technique", *ASME DSC 2010*, Cambridge, Massachusetts, September 13-15, 2010.

28. Soudbakhsh, D. Eskandarian, A., and Chichka, D., "Vehicle Steering Maneuvers with Direct Trajectory Optimization", *IEEE Intelligent Vehicle Symposium* (IV '2010), San Diego, CA, June 21-24, 2010.

29. Soudbakhsh, D. and Eskandarian, A., "A Collision Avoidance Steering Controller using Linear Quadratic Regulator", *SAE World Congress 2010*, Intelligent Vehicles Initiative sessions, Detroit, MI, April 13-15, 2010.

30. Eskandarian, A., "A Review of Safety Issues of Drowsy/Fatigue Driving and Countermeasure Mitigation", *TRB's 15th International conference in Road Safety in Four Continents*, AbuDhabi, UAE, March 28-30, 2010.

31. Arhin, S. A. and Eskandarian, A., "Driver Behavior Models for a Driving Simulator-Based Intelligent Speed Adaptation System", *Urban Transport 2009 Conference*, Bologna, Italy, June 22-24, 2009.

32. Laoufi, M. and Eskandarian, A., "Fuzzy Logic Control for Active Suspension of a Non- Linear Full-Vehicle Model", *IEEE Intelligent Vehicles Symposium* '09 in Xian, China, June 3-5, 2009.

33. Blum, J., and Eskandarian, A., "Avoiding Timeslot Boundary Synchronization for Multihop Message Broadcast in Vehicular Networks", *IEEE 69th Vehicular Technology Conference*: VTC2009-Spring, Barcelona, Spain, 26–29 April 2009.

34. Eskandarian, A., Soudbakhsh, D., Moreau, J., and Karcher, J., "Development of an Active Steering Control System in a Car Driving Simulator", *SAE World Congress 2009, Paper 2009-01-1290*, Intelligent Vehicles Initiative sessions, Detroit, MI, April 20-23, 2009.

35. Eskandarian, A., and Soudbakhsh, D., "Enhanced Active Steering System for Collision Avoidance Maneuvers", *The 11th International IEEE Conference on Intelligent Transportation Systems*, Beijing, China, October 12-15, 2008.

36. Blum, J., Neiswender, A. and Eskandarian, A., "Denial of Service Attacks on Inter-Vehicle Communication Networks", *The 11th International IEEE Conference on Intelligent Transportation Systems*, Beijing, China, October 12-15, 2008.

37. Eskandarian, A., Bauer, M., Soudbakhsh, D., "Investigation of Control Design of Vehicle Active Steering", *Proceedings of DSCC 2008, ASME 2008 Dynamic Systems and Control Conference*, Ann Arbor, Michigan, USA, October 20-22, 2008.

38. Blum, J., Tararakin, A. and Eskandarian, A., "Efficient Certificate Distribution for Vehicle Heartbeat Messages", *2nd IEEE International Symposium on Wireless Vehicular Communications* (WiVeC'2008), Calgary, Alberta, Canada, Sep. 21-22, 2008.

39. Delaigue, P., Eskandarian, A., Soudbakhsh, D. and Arhin, S., "Measuring Speed Behaviors for Future Intelligent Adaptive In-Vehicle Speed Management Systems", *IEEE Intelligent Vehicles Symposium IV 2008*, Eindhoven, The Netherlands, June 4-6, 2008.

40. Arhin, S., Blum, J., Eskandarian, A., Delaigue, P., and Soudbakhsh, D., "The Effectiveness and Acceptance of Adaptive Intelligent Speed Adaptation Systems", (08-1749) *TRB 87th Annual Meeting, Session # 565 Recent Progress in Integrated Vehicle-Highway Systems* (Committee: Vehicle-Highway Automation), Washington, DC, January 13-17 January 2008.

41. Mortazavi, A., Delaigue, P., Sayed, R.A., and Eskandarian, A., "Driving Behavior of Sleep Deprived Commercial Truck Drivers in a Simulated Driving Environment", (08-2734) *TRB 87th Annual Meeting, Session # 327* (Safety Data, Analysis and Evaluation), Washington, DC, January 13-17 2008.

42. Eskandarian, A., and Mortazavi, A., "Evaluation of a Smart Algorithm for Commercial Vehicle Driver Drowsiness Detection", *IEEE Intelligent Vehicle Symposium*, Istanbul, Turkey, June 13-15, 2007.

43. Sayed, R.A., Delaigue, P., Blum, J. and Eskandarian, A. "Development of an Intelligent Multimode Speed Adaptation System," *Society of Automotive Engineers World Congress*, Paper Number 2007-01-1321, Detroit, MI, April 2007.

44. Sayed, R., Delaigue, P., Blum, J., Eskandarian, A., and Digges, K., "Vehicle Dynamic Simulation for Reconstruction of Rollover Crashes", *ASME International Mechanical Engineering Congress and Exposition (IMECE)*, Chicago, IL, Nov. 5-10, 2006.

45. Blum, J., Delaigue, P., Sayed, R.A., and A. Eskandarian, "Driving Simulator Enhancements for the Evaluation of Intelligent Speed Adaptation Systems", *STISIM Users Conference*, Cambridge, MA, October 2006.

46. Blum, J., and Eskandarian, A., "Managing Effectiveness and Acceptability in Intelligent Speed Adaptation Systems", *IEEE Intelligent Transportation Systems Conference*, Toronto, Canada, September 17-20, 2006.

47. Blum, J. and Eskandarian, A., "Fast, Robust Message Forwarding for Inter-vehicle Communications Networks", Toronto, Canada, *IEEE Intelligent Transportation Systems Conference*, Sep 17-20, 2006.

48. Blum, J., and Eskandarian, A., "CARAVAN: A Communications Architecture for Reliable Adaptive Vehicular Ad Hoc Networks", *SAE World Congress*, Detroit, MI, 2006, paper No. 2006-01-1427.

49. Eskandarian, A. (Invited Speaker), and Sayed, R., "Analysis of Driver Impairment, Fatigue, and Drowsiness and an Unobtrusive Vehicle-Based Detection Scheme", *TAC2005, 1st International Conference of Traffic Accidents*, Tehran, Iran, Dec. 20-21, 2005.

50. Eskandarian, A. (Invited Speaker), Blum, J, Delaigue, P., and Sayed, R., "The Government Approach to Improving Vehicle/Highway Transportation Safety and its Effectiveness", *TAC2005, 1st International Conference of Traffic Accidents*, Tehran, Iran, Dec. 20-21, 2005.

51. Sayed, R., Eskandarian, A., and Delaigue, P., "Driver Fatigue and Drowsiness", *Truck and Bus Safety and Security Symposium*, Alexandria, Virginia, Nov. 14-16, 2005, pp. 100-111.

52. Blum, J., and Eskandarian, A., "Adaptive Space Division Multiplexing: An Improved Link Layer for Inter-Vehicle Communications", *IEEE Intelligent Transportation Systems Conference*, Vienna, Austria, October 13-16, 2005, pp. 455-460.

53. Schober, M. Wehlan, H., Eskandarian, A., and Kühne, R., "Comparing Driving Behavior for Manual, Conventional and Automated Cruise Control Driving in Car-Following by Scenarios Based on an Advanced Driver Performance Map", *Intelligent Transportation Systems Safety and Security Conference*, March 24-25, 2004, Miami, FL; CD-ROM.

54. Schober, M. Wehlan, H., Eskandarian, A., Wagner, P, and Kühne, R., "Calibration and Validation of Microscopic Car-Following Models on the Basis of the Intelligent Cruise Control Field Operational Test Data", *Intelligent Transportation Systems Safety and Security Conference*, Miami, FL, March 24-25, 2004, CD-ROM.

55. Zhou, B., Blum, J., and Eskandarian, A., "Virtual Reality Visualization of Microscopic Traffic Simulations", *Transportation Research Board (TRB) 84th Annual Meeting,* Poster Session 518, Data Mining and Visualization, Washington, D.C., January 9-13, 2005, CD ROM.

56. Blum, J., and Eskandarian, A. "Multi-planar Cellular Automata for Evacuation Planning and Management", *Intelligent Transportation Systems World Congress*, Nagoya, Japan, Oct. 2004, CD-ROM.

57. Blum, J., and Eskandarian, A. "Secure Media Access Coordination for Inter-Vehicle Communication", *Intelligent Transportation Systems Safety and Security Conference*, Miami, FL; March 24-25, 2004, CD-ROM.

58. Laoufi, M., Blum, J., and Eskandarian, A. "Predicting Intersection Queues with a Dynamic Balance Model", *Intelligent Transportation Society of America Annual Meeting*, San Antonio, TX, April 2004, CD-ROM.

59. Blum, J., and Eskandarian, A. "The Impact of Multi-modal Transportation on the Evacuation Efficiency of Building Complexes", 7th *IEEE Intelligent Transportation Systems Conference*, Washington, DC, Oct. 4-6, 2004, pp.702-7.

60. Blum, J., Eskandarian, A., and Hoffman, L., "Performance Characteristics of Inter-Vehicle Ad Hoc Networks", Shanghai, China: *The IEEE 6th International Conference on Intelligent Transportation Systems*, 2003, pp. 114-119.

61. Blum, J., Eskandarian, A., and Hoffman, L., "Mobility Management of Inter-Vehicle Networks", Columbus, OH: IEEE IV Symposium, 2003, pp. 150-155.

62. Blum, J., Eskandarian, A., and Hoffman, L., "An Improved Communications Architecture for ITS Networks", *Intelligent Transportation Society of America 2003 Annual Meeting*, Minneapolis, MN, 2003, CD-ROM.

63. Blum, J., and Eskandarian, A., "Adaptability Requirements for Effective Collision Avoidance Systems", *Proceeding of ITS America 12th annual meeting*, Long Beach, CA, April 29-May 2, 2002, CD ROM.

64. Blum, J., and Eskandarian, A., "Domain-specific genetic agents for flow optimization of freight railroad traffic", *Proceeding of COMPRAIL 2002*, Lemnos, Greece, Computers in Railways VIII. J. Allan, R.J. Hill, C.A. Brebbia, G. Sciutto, and S. Sone (eds.), June 12-15, 2002, pp. 787-796.

65. Vahidi, A., and Eskandarian, A., "A Study on the Effect of Preview Uncertainties in Preview Control of Vehicle Suspensions", *Proceedings of ASME International Mechanical Engineering Congress and Exposition*, IMECE2001/DE-23240, New York, N.Y, Nov. 11-16, 2001, pp 1-6.

66. Sayed, R., Eskandarian, A., and Mort Oskard, "Monitoring Drowsy Drivers with Artificial Neural Networks", *ITS America Conference*, Miami, FL., June 4-8, 2001, CD.

67. Sayed, R. A. and Eskandarian, A., "Driver Drowsiness Detection Using Artificial Neural Networks", 80th *Transportation Research Board Annual Meeting, Committee on Simulation and Measurement of Vehicle and Operator Performance*, Washington, DC, Jan. 2001. CD.

68. Omar, T.A., Eskandarian, A., and Bedewi, N.E., "Modeling Vehicles' Offset and Oblique Impacts Using Recurrent Artificial Neural Networks", *ASME International Mechanical Engineering Congress and Exposition*, AMD-Vol. 246/BED-Vol. 49, Crashworthiness, Occupant Protection, and Biomechanics in Transportation Systems, Orlando, FL, November 5-10, 2000, pp. 49-65.

69. Vahidi, A. and Eskandarian, A., "Predictive Control of Vehicle Suspensions with Time Delay for a Quarter-Car Model", proceedings of *2nd Triennial International Symposium on Multi-Body Dynamics: Monitoring & Simulation Techniques*, U. of Bradford, West Yorkshire, UK, June 27-28, 2000, pp. 97-105.

70. Omar, T., Eskandarian, A., and Bedewi, N.E., "Crash Analysis of Two Vehicles in Frontal Impact Using Artificial Neural Networks", *ASME International Mechanical Engineering Congress and Exposition, Anaheim, CA*, AMD-Vol. 230, BED-Vol. 41, Crashworthiness, Occupant Protection, and Biomechanics in Transportation Systems, Nov. 1998, pp. 115-129.

71. Omar, T., Bedewi, N.E., and Eskandarian, E., "Recurrent Artificial Networks for Crashworthiness Analysis", *ASME Winter Annual Meeting*, *International Mechanical Engineering Congress and Exposition*, AMD-Vol. 225, BED-Vol. 38, Crashworthiness, Occupant Protection, and Biomechanics in Transportation Systems, Dulles Texas, Nov. 1997, pp. 109-118.

72. Eskandarian, A., Thiriez, S., and Ziegler, T., "Application of CMAC Neural Network for Collision Avoidance", *FHWA Conference: Neural Network Applications in Highway and Vehicle Engineering*, Ashburn, Virginia, April 10-11, 1996, pp. 231-242.

73. Bedewi, N.E., and Eskandarian, A., "Parameter Identification of an Industrial Robot Manipulator for a Dynamic Simulation Model", *the Second International IEMS Conference*, Coco Beach, Fl., Mar. 13-15, 1995, pp. 518-524.

74. Eskandarian, A., Bedewi, N.E., Barbera, A.J., and Kramer, B., "Simulation and Control of Robotic Manipulators Using A Hybrid Dynamics-CMAC Algorithm", *the First Joint US/JAPAN Conference on Adaptive Structures*, Technomic Publishing Co., Nov. 1990, PP. 1004-1037.

## Group II. Applied Mechanics/Impact Dynamics (Applications in Vehicle Crashworthiness)

75. Ruparel, T., Yonten, K., and Eskandarian, A., "Analyzing Roadside Safety Implications of Future Vehicle Designs", ASME IMECE 2014, Montreal, CN, Nov. 14-20, 2014.

76. Ruparel, T., Eskandarian, A., and Lee, J., "Concurrent Multiple-Time-Scale Simulations with Improved Numerical Dissipation for Structural Dynamics", ASME IMECE 2013, San Diego, CA, Nov. 15-21, 2013.

77. Samaha, R.R., Prasad, P., Marzougui, D., Chongzen, Cui, Kan, C.D., and Eskandarian, A., "An Integrated Modeling Method to Evaluate Fleet Safety Performance of New Vehicle Designs", ASME IMECE 2013, San Diego, CA, Nov. 15-21, 2013.

78. Ruparel, T., Eskandarian, A., and Lee, J., "Multiple Grid and Multiple Time-Scale (MGMT) Simulations in Continuum Mechanics", ASME 2012 IMECE, Houston, TX, Nov. 9-15, 2012. **Second Best Student Paper Award of the related Sessions (**Volume 8: Mechanics of Solids, Structures and Fluids.)

79. Yang, Z., Wang, X., Lee, J., and, Eskandarian, A., "Simulating Nano-Machining Process with Molecular Dynamics", ASME 2012 IMECE, Houston, TX, Nov. 9-15, 2012.

80. Chen, Y., Lee, J.D., Oskard, M., and Eskandarian, A., "Meshless Analysis of Crack Propagation in Multiphase Material", *ICF11, the 11th International Conference on Fracture, in Turin, Italy, March 20-25, 2005*.

81. Chen Y., Eskandarian A., Oskard M.S. and Lee J. D., "Meshless Analysis of Crack Propagation in Multiphase Micromorphic Solids", *World Congress of Computational Mechanics VII*, Beijing, China, Tsinghua University Press & Springer-Verlag, September 5-10, 2004.

82. Chen Y., Lee J. D., and Eskandarian A., "Field Representation of Atomic N-body Problem", *World Congress of Computational Mechanics* VII, Beijing, China, Tsinghua University Press & Springer-Verlag, September 5-10, 2004.

83. Yonten, K., Manzari, M., Marzougui, D., and Eskandarian, A., "An Assessment of Constitutive Models of Concrete in the Crashworthiness Simulation of Roadside Safety Structures", *International Crashworthiness Conference,* San Francisco. CA, July, 2004.

84. Tahan, F., Marzougui, D., Zaouk, A., Bedewi, N., Eskandarian, A., and Meczkowski, L., "Safety Performance Evaluation of Secure Mailboxes Using Finite Element Simulations and Crash Testing", *International Crashworthiness Conference, Session 3B*, San Francisco, CA, July 14-16, 2004.

85. Bousquet, M., Marzougui, D., Eskandarian, A., and Bedewi, N., "Influence of the Height of W-beam guardrails on their crash safety performance in impacts with pickup trucks", *Proceedings of International Crashworthiness and Design Symposium, ICD 2003*, Lille, France, Dec. 2-4.

86. Eskandarian A., Chen Y., Oskard M. and Lee J. D. , "Meshless Analyses of Fracture, Plasticity and Impact ", *Proceedings of IMECE'03 ASME International Mechanical Engineering Congress & Exposition*, Washington, D.C., November 16-21, 2003.

87. Chen Y., Lee J. D. and Eskandarian A., "Atomistic Formulation of a Multiscale Theory for Nano/Micro Physics", *Proceedings of IMECE'03 ASME International Mechanical Engineering Congress & Exposition*, Washington, D.C., November 16-21, 2003.

88. Lee J. D., Chen Y. and Eskandarian A., "Wave Propagation in Micromorphic Ferroelectric Solids", *Proceedings of IMECE'03 ASME International Mechanical Engineering Congress & Exposition*, Washington, D.C., November 16-21, 2003.

89. Chen Y., Lee J. D. and Eskandarian A., "Atomistic Formulation of A Multiscale Theory for Nano/Micro Physics", Presentation and abstract in *40th Annual Conference of the Society of Engineering Science*, Ann Arbor, Michigan, October 12-15, 2003.

90. Kurtaran, H.; Buyuk, M.; Eskandarian, A., "Design Automation of a Laminated Armor for Ballistic Impact Using Approximate Optimization Method", *Hypervelocity Impact Symposium HVIS,* Noordwijk, The Netherlands, 8-11 December 2003.

91. Chen Y., Lee J. D. and Eskandarian A., "Connecting Discrete Atomic Model to Microcontinuum Field Theories", *39th Annual Conference of the Society of Engineering Science*, Pennsylvania, October 13-16, 2003.

92. Chen Y., Lee J. D. and Eskandarian A., "Applicability analysis of continuum theories from viewpoint of phonon dispersion relations", *14th Congress of Theoretical and Applied Mechanics*, Blacksburg, Virginia, USA, June 22-27, 2002.

93. Yonten, K., Manzari, M., and Eskandarian, A., and Marzougui, "An Evaluation of Constitutive Models of Concrete in LS-DYNA Finite Element Code", *Proceedings of 15th ASCE Engineering Mechanics Conference*, Columbia Univ., New York, N.Y., June 2-5, 2002, CD ROM, pp. 1-8.

94. Chen, Y., Eskandarian, A., and Lee, J.D., "Local and Nonlocal Meshless Method of Fracture Mechanics", published in Advances in Computational Engineering & Sciences (edited by S.N. Atluri and D.W. Pepper), Tech Science Press, presented at *Proceedings of the International Conference on Computational Engineering and Science*, Reno, Nevada, July 31-August 2, 2002, CD ROM, pp. 1-6.

95.  Chen, Y., Lee, J.D., and Eskandarian, A., "Finding Material Constants in Micromorphic Theory through Phonon Dispersion Relations", published in Advances in Computational Engineering & Sciences (edited by S.N. Atluri and D.W. Pepper), Tech Science Press, presented at *Proceedings of the International Conference on Computational Engineering and Science*, Reno, Nevada, July 31-August 2, 2002, CD-ROM.

96.  C.D. Kan, Eskandarian, A., and Mader, J., "Evaluation and Benchmark of High Performance Computer Platforms for Automotive Crashworthiness Simulation", *High Performance Computing Conference*, Italy, September 22-27, 2002.

97.  Omar, T.A., Bedewi, N.E., and Eskandarian, A., "Significant Severity Reduction of Side-Impact Injuries by Using ITS-airbag FE Simulation and Severity Analysis", *ASME Winter Annual Meeting, International Mechanical Engineering Congress and Exposition*, *Transportation Safety Session*, New Orleans, LA, November 17-22, 2002.

98.  Chen, Y., Lee, J.D., and Eskandarian, A., "Meshless Particle Methods for Nonlocal Continua", published in Advances in Computational Engineering & Sciences (edited by Atluri, Nishioka and Kikuchi), Tech Science Press, presented at *Proceedings of the International Conference on Computational Engineering and Science*, Puerto Vallerta, Mexico, on CD-ROM, 19-25 August 2001.

99.  Kurtaran, H., Omar, T., and Eskandarian, A., "Crashworthiness Design Optimization of Energy-Absorbing Rails for the Automotive Industry", *ASME International Mechanical Engineering Congress and Exposition, IMECE2001/AMD-25452,* New York, NY, Nov. 11-16, 2001, pp. 1-12.

100. Monclus, J.G., Eskandarian, A., Takatori, O., and Morimoto, J., "Development of Detailed Finite Element Models of Child Restraint Systems for Occupant Protection", *ESV International Technical Conference*, Paper Number 01-S9-O-126, Amsterdam, Netherlands, June 2001, CD.

101. Chen, Y., Lee, J.D., Eskandarian, A. and Bedewi, N.E., "Adiabatic Shear Localization in Impact Problem," *International Crash Worthiness Conference, IJCrash2000*, London, UK, September 2000, pp. 69-76.

102. Ennis, J., Marzougui, D., Eskandarian, A., and Bedewi, N., "Finite Element Modeling of Anthropomorphic Test Devices for Vehicle Crashworthiness Evaluation", *International Crashworthiness Conference 2000*, London, UK, September 2000, pp. 306-318.

103. Eskandarian, A., Bahouth, G., Marzougui, D., Kan, C.D., "Challenges of Finite Element Simulations of Vehicle Crashes", **Keynote Paper**, *2nd Triennial International Symposium on Multi-Body Dynamics: Monitoring & Simulation Techniques*, U. of Bradford, West Yorkshire, UK, June 27-28, 2000, pp. 27-41.

104. Marzougui, D., Kan, C.D., Eskandarian, A., "Safety Performance Evaluation of Roadside Hardware Using Finite Element Simulation", *ASCE Fourteenth Engineering Mechanics Conference*, Austin, Texas, June 2000. On CD ROM.

105. Omar, T.A., Kan, C.D., Bedewi, N.E., and Eskandarian, A., "Major Parameters Affecting Nonlinear Finite Element Simulations of Vehicle Crashes", *ASME Winter Annual Meeting*, *International Mechanical Engineering Congress and Exposition*, AMD, Vol 237/BED-Vol. 45, Crashworthiness, Occupant Protection, and Biomechanics in Transportation Systems, Nashville, TN, November 14-19, 1999, pp. 1-18.

106. Marzougui, D., Kan, C.D., and Eskandarian, A., "Finite Element Simulation and Analysis of Portable Concrete Barriers Using LS-DYNA", Proceedings of *LS-DYNA Users Conference, Gothenburg Sweden,* June 14-15, 1999, pp. I-19- 25.

107. Digges, K.H., Noureddine, A., Eskandarian, A., and Bedewi, N.E., "Effect of Occupant Position and Airbag Inflation Parameters on Driver Injury Measures", *Society of Automotive Engineers (SAE) International Conference and Exposition*, No. 980637, *Airbag Technology* (SP-1333), Detroit, MI, Feb. 23-26, 1998, CD-PDF file, pp. 1-6.

108. Bedewi, N.E., Miller, L., Eskandarian, A., Kan, C.D., Meczkowski, L., "Role of High Performance Computing in Crashworthiness and Highway Safety Research-Present and Future", **Keynote Paper**, Presented and published in *International Conference on High Performance Computing In Automotive Design, Engineering, and Manufacturing*, Paris, France, Oct. 1996, pp. 5-15.

109. Eskandarian, A., Marzougui, D. and Bedewi, N.E., "Failure Analysis of Highway Small Sign Support Systems in Crashes Using Impact Finite Element Models", *the 29th International Symposium on Automotive Technology and Automation (ISATA), Road and Vehicle Safety*, Florence Italy, June 3-6, 1996, pp. 395-402.

110. Bedewi, N.E., Omar, T., and Eskandarian, A., "Effect of Mesh Density Variation in Vehicle Crashworthiness Finite Element Modeling", *the ASME Winter Annual Meeting*, DSC-Vol. 54/DE-Vol. 76, Transportation Systems, Chicago, IL., Nov. 6-11, 1994, pp. 353-373.

111. Brown, E.F. and Eskandarian, A., "A Method for Propulsion Nozzle Design", *International Conference on Inverse Design Concepts in Engineering Sciences*, Austin, Texas, 1984.

## Additional Presentations/Abstracts at Conferences (some are refereed) and Invited Talks

1. Eskandarian, A., (Invited Speaker), "Advances in Vehicle Safety and Mobility Leading to Autonomous and Connected Driving," Rensselaer Polytechnic Institute (RPI), Troy, NY, Feb. 2020.

2. Eskandarian, A., (Invited Speaker & Panelist), "Advances, Benefits, and Challenges in Connectivity for Autonomous Driving," The 2nd ITSS-ITE Symposium, IEEE ITSC'19, Auckland, New Zealand, Oct 29, 2019.

3. Eskandarian, A., (Invited Speaker), "Advances in Vehicle Safety and Mobility Leading to Autonomous and Connected Driving," University of Texas, Dallas, October 2019.

4. Eskandarian, A., (Invited Speaker), "Advances in Vehicle Safety and Mobility Leading to Autonomous and Connected Driving," University of Minnesota, April 24, 2019.

5. Eskandarian, A., (Invited Speaker), "Advances in Vehicle Safety and Mobility Leading to Autonomous and Connected Driving", SUNY Buffalo, March 2019.

6. Eskandarian, A., "ADAS for Occupant Protection: Progressing from Crashworthiness to Crash Avoidance and Autonomy", TRB, ANB45, P19-21259, Session: The Impact of Advanced Driver Assist Systems on Occupant Safety, Washington DC, January 2019.

7. Eskandarian, A., (Invited Speaker), "Advances in Vehicle Safety and Mobility Leading to Autonomous Driving", Case Western Reserve University, November 16, 2018.

8. Eskandarian, A., (Invited Keynote Speaker), "Advances in Vehicle Safety and Mobility Leading to Autonomous Driving", Daegu International Future Auto Expo 2018, Korea, Nov. 1, 2018.

9. Eskandarian, A., (Invited Speaker), "Vehicle Safety and Connectivity in the Autonomous Driving Era", Seoul National University, Korea, Oct. 31, 2018.

10. Eskandarian, A., (Invited Speaker)," Advances in Vehicle Safety and Mobility Leading to Autonomous Driving' NC State University, October 19, 2018.

11. Eskandarian, A., (Invited Keynote Speaker), "Safety, Mobility, and Connectivity to Autonomous Vehicles", FISITA 2018, Sponsored by SAE India, Chennai, India, Oct.3, 2018.

12. Lin, Y., and Eskandarian, A., "Inter-vehicular Communication to Safely Mitigate Emergency Braking in Vehicle Platoons", Automated Vehicle Symposium, Poster presentation, San Francisco, CA. July 15-18, 2018.

13. Eskandarian, A., Invited Speaker, "A Critical Perspective on Vehicle Safety and Mobility in the Era of Autonomy", PAMS (Pangyo Autonomous Motor Show) 2017 Session on Global trend and core technologies of Autonomous vehicles, Pangyo, Korea, Nov. 16, 2017.

14. Eskandarian, A., (Invited Speaker for Outstanding Research Award in ITS by IEEE ITS Society), "A perspective on safety and mobility", IEEE Intelligent Transportation Systems Conf., Yokohoma, Japan, Oct. 16-19, 2017.

15. Eskandarian, A., (Invited Speaker), Controls and Signal Processing for Driver Assistance and Semi-Autonomous Driving (Partial Automation) to Enhance Safety, University of Central Florida, Mechanical and Aerospace Engineering Department, April 15, 2016.

16. Eskandarian, A., (Invited Speaker), Controls and Signal Processing for Driver Assistance and Semi-Autonomous Driving (Partial Automation) to Enhance Safety, Texas A&M University, Mechanical Engineering Department, April 2016.

17. Eskandarian, A., (Invited Speaker), Controls and Signal Processing for Driver Assistance and Semi-Autonomous Driving (Partial Automation) to Enhance Safety, UC San Diego, Mechanical Engineering Department, May 26, 2016.

18. Riyahi, P. and Eskandarian, A., "Investigation of the Effect of Visual LED Stimuli as BCI Alert System on Subjects' (drivers) Brain Signals Detection in Emergency Situation", BMES Annual Meeting, Tampa, FL, Oct. 7-10, 2015.

19. Kan, A., Yonten, K., Eskandarian, A., Arispe, E.N., Summers, S. "Development and Validation of Finite Element Models of Midsize Sedan Including Interiors for Crashworthiness Simulations", 94th Annual Meeting of TRB, Washington DC, January 2015.

20. Yang, Z., Lee, J. D. and Eskandarian, A., "Objectivity in Molecular Dynamics Simulation: Objective Velocity, Temperature and Stress", American Physical Society March Meeting, Denver, CO, 2014.

21. Ruparel, T., Eskandarian, A., and Lee., J. "Multiple Length Scale and Multiple Time Scale Coupling for Linear Structural Dynamic Equations." Proceedings of the 12th U.S. National Congress on Computational Mechanics, Raleigh, NC, 2013.

22. Yang Z., Wang X., Lee, J. D. and Eskandarian A., "Atomistic Simulation of Multi-Grain Multi-Phase Polycrystalline Materials", 12th U.S. National Congress on Computational Mechanics, Raleigh, NC, 2013.

23. Eskandarian, A., (Invited Speaker), "Vehicle Active Safety Systems for Collision Avoidance", Clemson University, CU-ICAR Seminar, April 18, 2012.

24. Yang Z., Wang X., Lee J. D. and Eskandarian A., "Simulating Nano-Machining Process with Molecular Dynamics", ASME 2012 International Mechanical Engineering Congress & Exposition, Houston, TX, 2012.

25. Eskandarian, A., (Invited Keynote Speaker), "Active Systems to Semi-autonomous Driving for Vehicle Safety", Indo-Us Seminar on Preventing Road Crash Injury Through Vehicle Safety Design, Indian Institute of Science, Bangalore, India, March 6-7, 2012.

26. Eskandarian, A., (Invited Speaker), "Active Systems to Semi-autonomous Driving for Vehicle Safety", Channabasaveshwara Institute of Technology, Gubbi, Tumkur, India, March 8, 2012.

27. Mahadevaiah, U., Marzougui, D., and Eskandarian, A., "Accurate Contact Algorithm for Explicit Finite Element Codes", 3rd International Conference on Impact Loading of Lightweight Structures, ICILLS, Valenciennes, France, June 28-July 1, 2011.

28. Eskandarian, A., (Invited Speaker), "Integrated Vehicle Safety and the Next Generation of Sensory Controls for Semi-Autonomous Driving", Seminar at Tufts University, March 17, 2011.

29. Soudbakhsh, D., and Eskandarian, A, "Development of a Collision Avoidance System Using Active Steering", The George Washington University SEAS 5th Annual Student Research and Development Showcase, Washington, DC. Feb. 2011.

30. Bonnevie S., Karcher, J., Marzougui, D., and Eskandarian, A, "Vehicle Dynamics Investigations to Develop Guidelines for the Selection and Lateral Placement of Cable Barriers on V-Shaped Medians", The George Washington University SEAS 5th Annual Student Research and Development Showcase, Washington, DC. Feb. 2011.

31. Eskandarian, A., (Invited Speaker), "A Signal Processing and Pattern Recognition Method for Drowsy and Fatigued Driver Assistance", Seminar at Johns Hopkins University, October 25, 2010.

32. Eskandarian, A. (Speaker and Host), Presentation of driving simulator and demonstrations of the dangers of texting and driving, The Society of Automotive Engineers' DC –Section monthly meeting, GWU, VSTC Campus, June 2010. The event and the simulations received coverage in both the Loudon Times and on the local CBS affiliate WUSA9.

33. Eskandarian, A. , (Invited Speaker), "Integrated Vehicle Safety: The Challenges and Opportunities for Intelligent Vehicles", SEAS Seminar Series on Engineering Challenges of the 21st Century, The George Washington University, Washington, DC, March 23, 2010.

34. Eskandarian, A., (Invited Speaker), "Intelligent Vehicles Active Safety: A Signal Processing Method for Unobtrusive Detection of Driver Drowsiness", Seminar at the Robotics Institute of Carnegie Mellon University, Pittsburg, PA, February 19, 2010.

35. Soudbakhsh, D., and Eskandarian, A., "Design and Application of a Linear Quadratic Regulator in an Active Steering Control System", *TRB 89th Annual Meeting,* Washington, DC January 13-18, 2010.

36. Eskandarian, A., (Invited Speaker and Panelist), "Advanced Vehicle Speed Adaptation System, a New Approach to ISA", at the *Special Session in Electronic Speed Enforcement/Control of the 15th World Congress on ITS*, New York, NY, Nov. 16-20, 2008.

37. Eskandarian, A., (Invited Speaker), "Passive and Active Vehicle Safety Research", the California Center for Innovative Transportation (CCIT), University of California, Berkeley, October 7, 2008.

38. Eskandarian, A., and Blum, J., "ITS at GWU: Investigation of Communications Considerations in the Simulation of VII-Enabled Applications", final briefing to sponsor, Federal Highway Administration, US DOT (Project duration: 2007-08.), August 2008.

39. Eskandarian, A., "Transportation Safety and Security Research and Academic programs at GWU", Presentation to Nissan Motor Company at GW, VA Campus, August 29, 2008.

40. Eskandarian, A., "Transportation Safety and Security Research and Academic Programs at GW", Federal Highway Administration, Turner Fairbank Highway Research Center, Office of Traffic Operations, Delivered at

GW VA Campus, Ashburn, Virginia, June 13, 2007.

41. Blum, J., and Eskandarian, A., "Investigation of Communications Considerations in the Simulation of Vehicle Infrastructure Integration (VII)-Enabled Applications," project presentation, Federal Highway Administration, Turner Fairbank Highway Research Center, Delivered at GW VA Campus, Ashburn, Virginia, June 2007.

42. Eskandarian, A., "Center for Intelligent Systems Research and Transportation Safety and Security Research and Academic Programs at GW", including demos of Driving Simulators to National Highway Traffic Safety Administration Representatives (human factors group), GW VA Campus, January 24, 2008.

43. Eskandarian, A. CISR and Transportation research capabilities and demonstrations of Driving Simulators, presented at GW Science, Technology, and Engineering Day, Feb. 26, 2008.

44. Eskandarian, A., Arhin, S., and Blum, J. "Advanced Vehicle Speed Adaptation System (AVSAS)", project final presentation, Federal Highway Administration, Turner Fairbank Highway Research Center, McLean, Virginia, November, 2007.

45. Eskandarian, A., (Invited Speaker), "Vehicle Rollover Analysis, Modeling, and Simulation", Federal Highway Administration, Turner Fairbank Highway Research Center, McLean, Virginia, May 17, 2006.

46. Eskandarian, A., (Invited Speaker and Panelist), Session on "Human Performance, Capability, and Behavior", *TRB Conference on Future Truck and Bus Safety Research Opportunities*, Arlington, VA, March 23-24, 2005.

47. Eskandarian, A., (Invited Speaker), "From Collision Avoidance to Crashworthiness for Transportation Safety", School of Engineering, Embry Riddle Aeronautical University, Daytona Beach, FL, Feb., 2005.

48. Eskandarian, A., "Virtual Reality in Transportation Safety and Security Modeling and Simulation", *The Homeland Security and Defense Seminar*, the George Washington University, VA Campus, June 10, 2004.

49. Eskandarian, A. and Sayed, R.A., "An Improved Method for Detecting Driver Drowsiness", *Real-time Non-intrusive Driver Status Monitoring session*, 7th *International IEEE ITSC Conference*, Washington, DC, Oct. 3-6, 2004.

50. Eskandarian (Invited Speaker), A., Soltani, H., "Dynamic Modeling of Vehicle in Real Rollover Cases", *International Symposium on Multi-Body Dynamics: Monitoring and Simulation Techniques III*, Loughborough University, UK, July 12-13, 2004.

51. Eskandarian, A., (Invited Speaker), "Research and Education for Future Transportation Systems", DOT Event: *Excellence in Science, Technology, and Mathematics Education (ESTME) Week*, US DOT, Washington, D.C., March 15-20, 2004.

52. Eskandarian, A., (Invited Speaker), "Center for Intelligent Systems Research", Thomas Jefferson High School, (Science and Technology magnet school), Virginia, USA, May 26, 2004.

53. Sayed, R. and Eskandarian, A., "Driving Simulator Experiment: Detecting Driver Fatigue by Monitoring Eye and Steering Activity", *Presented at the NDIA 3rd Annual Intelligent Vehicle Systems Symposium*, Traverse City Michigan, June 9-12, 2003.

54. Eskandarian, A., "Design of Safety Barriers Using Computer Simulation and Crash Testing", *Transportation Safety and Security Workshop*, sponsored by The International Emergency Management Society, and GW's Institute for Crisis, Disaster, and Risk Management, Washington DC, January 28-29, 2003.

55. Chen Y., Lee J. D. and Eskandarian A., "Multiscale Modeling of Polycrystalline Silicon", presentation only, IMECE'03 2003 ASME *International Mechanical Engineering Congress & Exposition,* Washington, D.C., November 16-21, 2003.

56. Eskandarian, A., (Invited Speaker) "Simulation and Modeling for Crashworthiness and Collision Avoidance," University of Valencienne, France, March 22, 2002.

57. Chen, Y., Lee, J.D., and Eskandarian, A., "Applicability Analysis of Continuum Theories from Viewpoint of Phonon Dispersion Relations," presentation at *US 14th Congress of Theoretical and Applied Mechanics*, Blacksburg, Virginia, USA, June 22-27, 2002.

58. Chen, Y., Lee, J.D., and Eskandarian, A., "Connecting Discrete Atomic Model to Micro-continuum Field Theories," *Annual Meeting of Society of Engineering Science*, Penn State Univ., State College, PA, Oct. 2002.

59. Eskandarian, A., "Capabilities for Modeling Rollover and Vehicle Roof Crush," Presented to Santos Foundation, at GW, Virginia Campus, March 2002.

60. Eskandarian, A., "GW Transportation Research Institute, Research and Academic Programs", Presentation delivered to faculty and students of Shepherds College, West Virginia, at GW Virginia Campus, March 15, 2002.

61. Eskandarian, A., "GW Transportation Research Institute, Research and Academic Programs", Presentation delivered to faculty and students of Shepherds College, West Virginia, at GW Virginia Campus, Dec. 2001.

62. Eskandarian, A., "Presentation of CISR Driving Simulator", GW Virginia Campus Annual Tech Expo. 2002.

63. Eskandarian, A., "GW Transportation Research Institute, Research and Academic Programs in Transportation Safety", *Today's Issues in Aviation and Automotive Safety Session* on Ten-Year Anniversary Celebration of Virginia Campus December 3, 2001.

64. Eskandarian, A. (Invited Speaker), "GW Transportation Research Institute, Research and Academic Programs", Presentation delivered to Dean and Faculty of James Madison University, Harrisonburg, VA, May 10, 2001.

65. Eskandarian, A., "Issues of Roadside Hardware and Single Vehicle Crashes for Highway Safety", *First Safety on the Road Conference, Session on Highway Safety Design*, Cairo, Egypt, Nov. 13-19, 2000.

66. Eskandarian, A., "Intelligent Transportation System Concepts, Architecture, and Implementation to Improve Traffic Flow and Safety", *First Safety on the Road Conference, Session on Traffic Congestion, Traffic Flow, and Safety*, Cairo, Egypt, Nov. 13-19, 2000.

67. Marzougui, D., Bahouth, G., Eskandarian, A., Meczkowski, L., and Taylor, H., "Evaluation of Portable Concrete Barriers Using Finite Element Simulation", *Transportation Research Board Annual Meeting, Computer Simulation of Impact with Roadside Safety Features*, Jan. 2000.

68. Eskandarian, A. (Invited Speaker), Marzougui, D., and Bahouth, G., "Issues in Simulation and Modeling of Vehicle Crashes", *Society of Plastic Engineers First Annual International Automotive Safety Conference*, Troy, MI., Feb. 7, 2000.

69. Eskandarian, A. (Invited Speaker), "Simulation of Rollover", *University of North Carolina Transportation Research Center, FHWA Worshop/meeting on Rollover*, Feb. 2000.

70. Eskandarian, A., "ITS Research at Center for Intelligent Systems Research at GW-TRI", *GW Virginia Campus, Technology Expo. 2000*, Apr. 26, 2000.

71. Eskandarian, A. "George Washington Transportation Research Institute and Academic Programs", *Ansaldo Brada Company*, Naples, Italy, Oct. 1999.

72. Eskandarian, A., "Vehicle Crashworthiness and Occupant Protection at The FHWA/NHTSA National Crash Analysis Center", Presented at *The George Washington University Research Showcase,* Jan. 26, 1999, Washington, D.C.

73. Eskandarian, A., "FHWA/NHTSA National Crash Analysis Center", *US DOT Safety Integration Conference*, Presented at FHWA, Turner Fairbank Highway Research Center, McLean, VA, March 22-26, 1999.

74. Tignor, S., Sobhi, N., Worhiedi, K., and Eskandarian, A., "Human Factor Study of Traffic Control in Construction and Maintenance Zones" Presented at *Transportation Research Board 3D Visualization in Transportation Symposium and Workshop*, Orlando, Florida, May 26-29, 1999.

75. Eskandarian, A., Invited Speaker and panelist, "Safety Planning, Data and Technology", US Department of Transportation TEA21 Listening Session on Surface Transportation Safety, George Mason University, Johnson Center, Fairfax, VA, Sep. 18, 1998.

76. Eskandarian, A. and Marzougui, D., "Validation of Portable Concrete Barriers Model*",* Presented at the *Workshop on Crashworthiness in the 21st Century*, Sponsored by TRB Committee A204—Roadside Safety Features, National Cooperative Highway Research Program of TRB of NRC, and US DOT FHWA*,* Seattle, WA, Aug. 2-5, 1998.

77. Meczkowski, L., Kan, C.D., Bedewi, N.E., and Eskandarian, A., "Validation Procedure of Finite Element Models Used for Simulation in Crash Impact Applications", Presented at *Transportation Research Board 77th Annual Meeting,* Washington, D.C., January 11-15, 1998.

78. Eskandarian, A., "A Collision Avoidance Method Using Neural Networks", Presented at *The George Washington University, School of Engineering and Applied Science Research Showcase,* Washington, D.C., March 3, 1997.

79. Eskandarian, A., (Invited Speaker), "Intelligent Transportation Systems", *Washington Society of Engineers (WSE)*, Washington, D.C., Oct. 1996.

80. Eskandarian, A., Opening Speaker, *Application of Neural Networks in Highway and Vehicle Engineering*, *sponsored conference by FHWA and GWU,* Ashburn, Virginia, Apr. 1996.

81. Eskandarian, A., (Invited Speaker), "Application of Intelligent Systems -- Neural Networks, Fuzzy Logic to Highway Transportation", *Federal Highway Administration, Turner Fairbank Highway Research Center*, Mclean, Virginia, Apr. 1996.

82. Eskandarian, A., (Invited Speaker), "Application of Neural Networks for Driving Model and Driver Behavior Analysis", *Federal Highway Administration, Turner Fairbank Highway Research Center, Office of Safety and Traffic Operations R&D*, Mclean, Virginia, Feb. 1996.

83. Bedewi, N.E., C.D. Kan, A. Eskandarian, H. Schinke, D. Marzougui, and B. Zaouk, "Development of a Finite Element Model of a Chevy Pick-up Truck", Presented at *the Transportation Research Board (TRB) Annual Meeting/Conference, Session on Computer Simulation of Impacts with Roadside Safety Features*, Washington, D.C., Jan, 1996.

84. Eskandarian, A., Marzougui, D., Gaith, A. and Bedewi, N.E., "Computer Simulation of Roadside Hardware Using LS-DYNA3D", Presented at *the International IEMS Conference*, Coco Beach, Fl., Mar. 13-15, 1995.

85. Meczkowski, L., Bedewi, N.E., and Eskandarian, A. "Overview of On-Going Crash Simulation at The National Crash Analysis Center", Presented at *the International IEMS Conference*, Coco Beach, Fl., Mar. 13-15, 1995.

86. Eskandarian, A., Marzougui, D. and Bedewi, N.E., "Material Characterization and Modeling For Failure Analysis of Small Sign Support Systems", Presented at *the Transportation Research Board (TRB) Annual Meeting/Conference, Session on Computer Simulation of Impacts with Roadside Safety Features*, Washington, D.C., Jan, 1995.

87. Eskandarian, A., Marzougui, D., Gaith, A. and Bedewi, N.E., "Impact Simulation of Slip Base Mechanisms Using DYNA3D", Presented at *the Transportation Research Board (TRB) Annual Meeting/Conference, Session on Computer Simulation of Impacts with Roadside Safety Features*, Washington, D.C., Jan, 1995.

88. Eskandarian, A., (Invited Speaker), "Intelligent Transportation Systems and Automated Highway Systems with a Safety Perspective", *Colonial Boards Lecture Series Distinguished Speaker*, GWU, VA Campus, 1994.

89. Eskandarian, A., Marzougui, D. and Bedewi, N.E., "Finite Element Impact Modeling of Highway Narrow Objects", Presented at *the Transportation Research Board (TRB) Annual Meeting/Conference, Session on Computer Simulation of Impacts with Roadside Safety Features,* Washington, D.C., Jan 11, 1994.

90. Eskandarian, A., and Bedewi, N.E., "National Crash Analysis Center and Safety Simulation Research", Presented at *the Transportation Research Board (TRB) Annual Meeting/Conference, A2A04(1) Subcommittee on Computer Simulation*, Washington, D.C., Jan 10, 1994.

91. Eskandarian, A., and Bedewi, N.E., "Research and Resources at the FHWA/NHTSA National Crash Analysis Center", Presented at *the Transportation Research Board (TRB) Annual Meeting/Conference, A2A04 Committee on Roadside Safety Features*, Washington, D.C., Jan 11, 1994.

92. Eskandarian, A., and Bedewi, N.E., "Progress on Finite Element Modeling of 4 Lb./Ft. U-Channel Post Sign Support Systems", Presented at *the Transportation Research Board (TRB) A2A04 (1) Subcommittee Meeting on Computer Simulation,* Washington, D.C., Oct. 14, 1993.

93. Eskandarian, A., and Bedewi, N.E., "Simulation and Modeling Research and Activities at the NCAC", Presented at *the Transportation Research Board (TRB) A2A04(1) Subcommittee Meeting on Computer Simulation,* Washington, D.C., July 20, 1993.

94. Eskandarian, A., and Bedewi, N.E., "Artificial Neural Networks and Applications", seminar series *at the Department of Transportation, Federal Highway Administration*, 1993-1994.

## Technical Reports

Over 37 authored and co-authored research, analysis, design, and development technical reports.



96 N. 3rd Street
Suite 301
San Jose, CA 95112

408 261 8800
experts@teklicon.com
teklicon.com

**AZIM ESKANDARIAN, D.Sc.**          **LITIGATION ADDENDUM**

IP Consulting and Exert Opinion cases (in chronological order)

1.  (2019-2020); Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. ("Finnegan") at 901 New York Ave, N.W., Washington, D.C. 20001, on behalf of BMW of North America, LLC and BMW Manufacturing Co., LLC (collectively "BMW"); Serving as expert consultant to the defendant for literature searches, expert opinion, declaration preparation and other related services, including depositions.

2.  (2014-15); Formmer Lawrence & Haug LLP (FLH) and its client Porsche Cars North America, Inc. (PCNA) through Thomson Reuters Expert Witness Services, a division of West Publishing Corporation ("TREWS")

    RE: U.S. Patent No. 5,714,927, "Method of Improving Zone of Coverage Response of Automotive Radar"

    Served as a consultant to the defendant and provided literature searches and expert opinion, and a declaration on the Patent No. 5,714,927 for indefiniteness.

    Provided additional consulting services on two more patents: 6,012,007, "Occupant Detection Method and Apparatus for Airbag Systems", and 6,434,486, "Techniques for Limiting the Range of An Object System in a Vehicle."

3.  (2013); Dickstein Shapiro, LLP, 1825 Eye St. NW, Washington DC 20006,

    Client: Audi RE: U.S. Patent No. 8,056,962; Energy Absorber, Tauchi et al.:

    An energy absorber which is configured to be installed between an auto body panel and an interior member such as a door or a ceiling of an automobile, so as to absorb the impact energy of a collision. Served as an expert consultant and prepared declaration for Ex parte Reexamination of
    U.S. Patent No. 8,056,962. (case accepted.) I declared that the design of an energy absorbing component of the defendant (an automobile manufacturer) was different from an existing patent and that in my opinion, the two devices (designs) were so structurally and functionally different from each other that it would not have been obvious to one of ordinary skill in the art to modify the plaintiff's patent in view of the defendants' in the manner suggested in the Office Action.

4. (2012-13); Dickstein Shapiro, LLP, 1825 Eye St. NW, Washington DC

20006 RE: U.S. Patent No. 7,104,695 B2 Asymmetric Hub

Assembly:

Served as an expert consultant and prepared declaration on the invalidity of a patent on the design of a vehicle mechanical component (bearings) in preparation for a possible future litigation, which the client may face in the future. Reviewed data and design, conducted analyses, and prepared declaration that some claims in the patent were not correct and valid. No litigation occurred.

5. (2005-06); Latham Watkins, Washington DC

RE: U.S. Patent No.6,556,916; Civil Action No. 2:05CV00073:

Subject: traffic sensor and processing for vehicle counts in lanes. Case involved serving as an expert witness for an IP patent invalidity and non-infringement case for the defendant, included depositions and testimony in court. The defendant won the case. Also made declaration that some of the claim constructions on a patent were already taught but the available prior art/documents were obvious to one of ordinary skill in the art.

# EXHIBIT B

**Exhibit B**
**Documents Considered**

Complaint for Infringement of U.S. Patent No. 8,215,865 filed July 12, 2019

Order Granting Joint Stipulation Regarding Claim Construction (Dkt 69) filed August 10, 2020

U.S. Patent No. 8,215,865

Delta Scientific Corporation's Preliminary Invalidity Contentions dated April 3, 2020 and Exhibits A-E

Delta Scientific Corporation's Revised Final Invalidity Contentions dated October 29, 2020 (Clean and Redlined versions)

DS00000321

DS00000656-DS00001006

DS00001007-DS00001048

DS00002391

DS00002392

DS00002398

DS00002491

DS00002830

RSA-DELTA043705-RSA-DELTA044050

Department of Defense Handbook, Selection and Application of Vehicle Barriers, MIL-HDBK-1013/14, February 1, 1999

National Capital Planning Commission, The National Capital Urban Design and Security Plan, Designing and Testing of Perimeter Security Elements

Standard Test Method for Vehicle Crash Test of Perimeter Barriers and Gates, ASTM F2656-07


Ameristar IPR2020-01369 Documents:
     Paper No. 3 – Petition for *Inter Partes* Review of United States Patent No. 8,215,865 Pursuant to 35 U.S.C. §§ 311-319, 37 C.F.R. § 42
     Exhibits 1003-1009, 1012, 1022, 1032, 1034


Guardiar IPR2019-01161 Documents:
     Paper No. 8 – Decision dated November 21, 2019
     Exhibits 1007, 1008, 1010-1013, 1016, 1017, 1019, 1027, 2001-2003


Guardiar IPR2019-01162 Documents:
     Paper No. 7 – Decision dated November 21, 2019
     Exhibits 1001, 1007, 1008, 1010-1013, 1016, 1017, 1019, 1027, 2001-2007

112740533.1

## CERTIFICATE OF SERVICE

I certify that on November 9, 2020, pursuant to Federal Rules of Civil Procedure, a true and correct copy of the foregoing document described as **OPENING EXPERT REPORT OF DR. AZIM ESKANDARIAN** was served on the parties in this action by electronic mail addressed as follows:

Sasha G. Rao
**srao@maynardcooper.com**
Maynard Cooper & Gale, LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 2600
San Francisco, CA 94111.com

Joseph V. Saphia
**JSaphia@haugpartners.com**
Jessica H. Zafonte
**JZafonte@haugpartners.com**
Laura A. Chubb
**lchubb@haugpartners.com**
HAUG PARTNERS LLP
745 Fifth Avenue, New York, NY 10151

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on November 9, 2020 at Glendale, California.

/s/ Stacy-Ann Goodwin
Stacy-Ann Goodwin

130

112759262.2

# Exhibit D

**DAVID A. DILLARD, CA Bar No. 97515**
ddillard@lrrc.com
**CONSTANTINE MARANTIDIS, CA Bar No. 173318**
cmarantidis@lrrc.com
**SAMI I. SCHILLY, CA Bar No. 301653**
sschilly@lrrc.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, CA 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Defendant
**DELTA SCIENTIFIC CORPORATION**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RSA PROTECTIVE TECHNOLOGIES, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> DELTA SCIENTIFIC CORPORATION, <br><br> Defendant. | Case No. 2:19-cv-06024 JAK (PLAx) <br><br> **DEFENDANT DELTA SCIENTIFIC CORPORATION'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** <br><br> **Hon. John A. Kronstadt** |

Defendant Delta Scientific Corporation ("Delta") responds to the First Set of Interrogatories propounded to it by Plaintiff RSA Protective Technologies, LLC ("RSA") as follows:

## GENERAL OBJECTIONS

1.  Delta objects to RSA's instructions, definitions, and requests to the extent that they are inconsistent with or purport to impose a duty of disclosure that is greater than or different from that required under the applicable Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California.

-1-

111253992.1

2.      Delta objects to the definition of "Defendant" as ambiguous, vague, confusing, and overly broad and responds to each request for itself alone.

3.      Delta objects to the interrogatories to the extent that they seek the information to which the parties have equal access, is already in possession of RSA, or has already been provided to RSA.

4.      Delta objects to RSA's definitions, instructions and interrogatories to the extent that they impose on Delta an unreasonable burden or expense.

5.      Delta objects to the definition of "shallow mount bollard." The definition is not supported by United States Patent No. 8,215,865, which indicates that "shallow excavations" refers to excavations having a depth less than the depth of utility lines such as gas, water, electric, etc., which may vary.

6.      The responses set forth below are true and correct to the best of Delta's knowledge as of this date. Discovery remains ongoing. Delta has not completed its investigation or discovery relating to this case, and has not completed its preparation for trial. The following responses, subject to inadvertent or undiscovered errors, mistakes, or omissions, are based upon and necessarily limited by the records and information still in existence, presently recollected, and thus far discovered in the course of preparing these responses. Delta reserves the right to further investigation and discovery, and thus reserves the right to amend or supplement these responses, and to produce and to refer to at trial or at any other hearing any evidence, facts, documents or information not yet discovered, or the relevance of which has not yet been determined, by Delta or its counsel.

7.      Delta makes these responses solely for purposes of this action. Each response is made subject to all objections as to relevancy, materiality, propriety, and admissibility of any facts or other information identified in these responses. All objections and grounds for objections are expressly reserved by Delta and may be interposed at any later stage of this action, including at the time of trial.

-2-

111253992.1

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

Subject to and without waiving the foregoing objections, each of which is specifically incorporated into each individual response below, Delta responds to RSA's First Set of Interrogatories as follows:

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1**:

Describe in detail, on an element-by-element basis in the form of a claim chart, all factual and legal bases for Delta Scientific's contention that it does not infringe, directly, or indirectly, literally or under the doctrine of equivalents, any Asserted Claim of the Patent-in-Suit, including but not limited to each limitation in the Patent-in-Suit that Delta Scientific contends is missing, identify all Documents and Things that support Delta Scientific's contentions.

**RESPONSE TO INTERROGATORY NO. 1**:

Delta incorporates its General Objections. Subject to the foregoing objections, Delta responds as follows:

As described in Delta's Invalidity Contentions, set forth on an element-by-element basis in the form of claim charts, Delta established that the Asserted Claims are anticipated and/or rendered obvious at least by U.S. Patent Application Publication No. 2004/0033106 to Turpin et al. ("Turpin") or rendered obvious to a person of ordinary skill in the art by Turpin in view of the prior art sale and public use of Delta's DSC501 barrier, and separately the Asserted Claims were anticipated or rendered obvious by U.S. Patent No. 5,406,663 to Chen, alone or in combination with U.S. Patent No. 5,836,715 to Hendrix et al.

"A party cannot infringe an invalid claim or the claims of an unenforceable patent." *Novartis Pharm. Corp. v. Roxane Labs. Inc.*, Civil Action No. 08-CV-3853 (DMC)(JAD), 2011 WL 1322271, *3 (D.N.J. Mar. 31, 2011)

Because the Asserted Claims of the Patent-In-Suit are invalid, they cannot be infringed directly, or indirectly, literally or under the doctrine of equivalents.

-3-

111253992.1

In addition, there are claim elements that are not or may not be contained in one or more of the Accused Products, depending how the claim terms are construed. In claims 1, 16 and 33, these elements include: "at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base" and "a plurality of structural members which intersect with each other." "[S]tructural members which intersect with each other" has previously been construed to mean two structural members "which pass or lie across each other". See, *RSA Protective Tech., LLC v. Secure USA, Inc.*, Case No.: 9:18-CV-81124-RLR, Order Construing Disputed Claim Terms. Given that all Asserted Claims have these two limitations, the Asserted Claims do not literally cover the Accused Products, even if the Asserted Claims were valid.

Certain of the dependent claims also have elements that are not or may not be contained in one or more of the Accused Products. Specifically, in claims 2 and 17, the element is "at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured." In claims 3 and 19, the element is "intersecting structures." In claims 14 and 30, the element is "at least one plate."

Claim construction in the present proceeding is not yet complete. Delta expressly reserves the right to supplement this response following a claim construction order by the Court, which may significantly impact Delta's analysis.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**:

While Delta contends that the Asserted Claims are invalid, Delta states that, if the Asserted Claims are found to be valid and enforceable, it will not contest that the following Asserted Claims read on the indicated Accused Products below:

| Accused Product | Asserted Claims |
|---|---|
| DSC600, DSC650 | 1-5, 7, 10, 14-21, 23, 26, 31-35 |
| DSC675 | 1-5, 7, 10, 14-15 |

-4-

111253992.1

The DSC675 Accused Product is a single bollard structure, and therefore does not include the required "plurality of bollards" required in independent claims 16 and 33. As such, if the Asserted Claims are found to be valid and enforceable, DSC675 cannot infringe claims 16 or 33, or any claims depending therefrom.

Dated: May 18, 2020                     Respectfully submitted,

LEWIS ROCA ROTHGERBER
CHRISTIE LLP

By /s/ David A. Dillard
        David A. Dillard

Attorneys for Defendant
Delta Scientific Corporation

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-5-

**CERTIFICATE OF SERVICE**

I certify that on May 18, 2020, pursuant to Federal Rules of Civil Procedure, a true and correct copy of the foregoing document described as **DEFENDANT DELTA SCIENTIFIC CORPORATION'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** was served on the parties in this action by electronic mail addressed as follows:

Sasha G. Rao
**srao@maynardcooper.com**
Maynard Cooper & Gale, LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 2600
San Francisco, CA 94111.com

Joseph V. Saphia
**JSaphia@haugpartners.com**
Jessica H. Zafonte
**JZafonte@haugpartners.com**
HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on May 18, 2020 at Yorba Linda, California.

_/s/ Grace Kim_
Grace Kim

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-6-

111253992.1

# Exhibit E

**DAVID A. DILLARD, CA Bar No. 97515**
DDillard@lrrc.com
**CONSTANTINE MARANTIDIS, CA Bar No. 173318**
cmarantadis@lrrc.com
**SAMI I. SCHILLY, CA Bar No. 301653**
sschilly@lrrc.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, California 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Defendant
Delta Scientific Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RSA Protective Technologies, LLC, | Case No. 2:19-cv-06024-JAK-PLA |
| Plaintiff, | **DEFENDANT DELTA SCIENTIFIC CORPORATION'S PRELIMINARY INVALIDITY CONTENTIONS** |
| vs. | |
| Delta Scientific Corporation, | |
| Defendant. | **Hon. John A. Kronstadt** |

Without waiving any objections, Defendant Delta Scientific Corporation ("Defendant" or "Delta") provides these Preliminary Invalidity Contentions as to claims 1-5, 7, 10, 14-21, 23, 26 and 30-35 (collectively the "Asserted Claims") of U.S. Patent No. 8,215,865 (the "'865 patent"), asserted by Plaintiff RSA Protective Technologies, LLC ("Plaintiff" or "RSA") against Delta in the present action.

## I.    GENERAL RESERVATIONS

These Preliminary Invalidity Contentions are based on information reasonably known and available to Delta at this time. The Court has not yet issued a claim construction ruling, and Delta has not completed its investigation of the facts and documents relating to this action. Delta reserves the right to supplement

-1-

110898641.1

and revise the information provided in these Preliminary Invalidity Contentions as additional information becomes available.

To the extent that these Preliminary Invalidity Contentions rely on or otherwise embody particular constructions of terms or phrases in the asserted claims, Delta does not necessarily endorse any such construction, and reserves the right to take different positions during formal claim construction proceedings. Delta thus may rely in some circumstances on the apparent construction adopted by RSA in its Infringement Contentions for purposes of these Preliminary Invalidity Contentions only, and without any admission that such construction is correct or that Delta's accused products satisfy the limitation at issue.

Further, by providing these preliminary contentions, Delta does not waive its right to contest the construction of any required claim element and may allege additional invalidity positions based thereon. Delta reserves its right to amend and/or supplement these preliminary contentions either before or after the submission of expert disclosures, or upon receipt of further information either through its own research or through information provided by its experts, or following the Court's claim construction order.

Based on RSA's Infringement Contentions, and RSA's reservations therein, these Preliminary Invalidity Contentions may also require subsequent amendment, alteration, or supplementation based on, for example, any additional alleged infringement information provided by RSA; any claim construction positions taken by RSA or claim construction rulings by the Court; any relevant arguments or stipulations made by Delta in this case or any other proceeding or litigation involving the '865 Patent or related patent(s); and any additional prior art or other relevant information learned through the course of fact and expert discovery, including references known to the experts and the experts' opinions.

The preliminary contentions and disclosures provided below and in the attached exhibits are illustrative of how each reference identified invalidates the

-2-

110898641.1

asserted claims. By not discussing other portions of the references, Delta does not waive the right to rely on other portions of the reference, and indeed, Delta expressly reserves their right to rely on other portions of the references. Similarly, the obviousness combinations of references provided under 35 U.S.C. § 103 are examples only and are not intended to be exhaustive. Delta reserves the right to use additional obviousness combinations of the references identified in these contentions in this litigation. For example, a secondary reference may be used as a primary reference, and vice versa. In particular, Delta is currently unaware of the extent, if any, to which RSA will contend that any limitations of the asserted claims are not disclosed in the references identified by Delta. To the extent an issue arises with respect to any such limitation, Delta reserves the right to identify other references that would have made obvious the addition of the allegedly missing limitation to the disclosed device, system or method.

Delta's preliminary contentions under 35 U.S.C. §§ 102 and 103 are made in the alternative, and should in no way be seen as admissions: (1) as to the proper construction or scope of the asserted claims; (2) that any asserted claims meet the written description, enablement, or definiteness requirements of 35 U.S.C. § 112; (3) that any asserted claims meet the eligible subject matter requirements of 35 U.S.C. § 101 or (4) that Defendants waive the right to assert any of the foregoing as basis for invalidity.

## II.    PRELIMINARY INVALIDITY CONTENTIONS

### A.    The Identity of Each Item of Prior Art that Allegedly Anticipates Each Asserted Claim or Renders it Obvious

Based on the prior art presently known to Delta, as well as its current understanding of the meaning of the claims and Plaintiff's infringement contentions, Delta identifies the following non-exhaustive list of prior art as anticipating and/or rendering obvious the asserted claims of the '865 Patent:

-3-

110898641.1

### 1.   Patents and Patent Publications

| Reference | Country of Origin | Issuance or Publication Date |
|---|---|---|
| US 2004/0033106 ("Turpin") | United States | Feb. 19, 2004 |
| 5,406,663 ("'663 patent" or "Chen")[1] | United States | April 18, 1995 |
| US 2006/0090408 ("'408 publication" or "Darcy")[2] | United States | May 4, 2006 (Filed February 9, 2005) |
| 5,836,715 ("'715 patent" or "Hendrix")[3] | United States | November 17, 1998 |
| US 2002/0073876 ("'876 publication" or "Einar")[4] | United States | June 20, 2002 |
| 3,943,540 (the "'540 patent" or "Bruner")[5] | United States | January 27, 1976 |

[1] Chen is a primary reference relied upon in the Petition for Reexamination of the '865 Patent, filed on March 30, 2020 ("Reexam Petition"), which is attached hereto as Exhibit D.

[2] Darcy is another primary reference cited in the Reexam Petition (Ex. D).

[3] Hendrix is a secondary reference cited in the Reexam Petition (Ex. D).

[4] Einar is a secondary reference cited in the Reexam Petition (Ex. D).

[5] Bruner is a secondary reference cited in the Reexam Petition (Ex. D).

-4-

110898641.1

## 2. Sales, Offers for Sale, and Public Uses

| Activity or Event | Country of Origin | Date of Anticipating Activity or Event[6] |
|---|---|---|
| Sale and public use of DSCTT203RB bollards installed at Amgen in Thousand Oaks, CA ("TT203R"), sold by Delta | United States | 1997 |
| Sale and public use of DSC800RFB bollards installed of at bollards at UCLA Health Sci. Bldg. No. 1, Los Angeles CA ("DSC800RFB"), sold by Delta | United States | 2002 |
| Sale and public use of the DSC501 shallow mount barrier ("DSC501"), sold by Delta for installation at the Washington Navy Yard, Washington DC | United States | 2001 |

As to any of the foregoing references that describe a product that was actually in use and/or on sale prior to the priority date of the '865 Patent, Delta reserves the right to separately rely upon the products themselves and any associated evidence of such prior uses or sales that may be uncovered through the

---

[6] Dates provided are at least as early as the listed year.

-5-

110898641.1

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

course of discovery. Unless such prior use or sale evidence shows the product being used differently than what is described in the references above (in which case Delta will amend its contentions accordingly as to such use), the charts attached hereto shall be understood to likewise describe the manner in which Delta would intend to rely upon such prior use or sale evidence.

## B. Anticipation and/or Obviousness

Based on the art presently known to Delta, as well as its current understanding of the meaning of the claims and RSA's infringement contentions, Delta contends that the following references anticipate and/or render obvious to a person having ordinary skill in the art, alone or in combination with other prior art, one or more of the asserted claims of the '865 Patent, as set forth below. For any single reference listed below, Delta's preliminary contention is that, to the extent RSA contends any limitation is not expressly disclosed by that reference, such limitation would nevertheless be obvious in view of the teaching of that references and the knowledge of one of ordinary skill in the art.

| Reference, Activity, or Event | Claims of the '865 Patent | Basis | Exhibit |
|---|---|---|---|
| Turpin | All asserted claims | 35 U.S.C. §102 35 U.S.C. §103 | A |
| Turpin and DSC501 | All asserted claims | 35 U.S.C. §103 | A |
| Chen | All asserted claims | 35 U.S.C. §102 35 U.S.C. §103 | D |
| Chen and Hendrix | Claims 32, 35 | 35 U.S.C. §103 | D |

-6-

110898641.1

| Reference, Activity, or Event | Claims of the '865 Patent | Basis | Exhibit |
|---|---|---|---|
| Darcy | All asserted claims | 35 U.S.C. §103 | D |
| Darcy and Bruner and Einar | Claims 32 and 35 | 35 U.S.C. §103 | D |
| Darcy and DSC501 | All asserted claims | 35 U.S.C. §103 | D, E |
| DSC800RFB | Claims 1, 3-5, 7, 10, 14-16, 18-23, 26, 30-35 | 35 U.S.C. §102 35 U.S.C. §103 | B |
| TT203R | Claims 1, 3-5, 7, 10, 14-15 | 35 U.S.C. §102 35 U.S.C. §103 | C |

### 1.    Motivation to Combine

Motivation and suggestion to combine one or more of the prior art references with any of the other prior art references, or other references cited below, exist. Generally, motivation and suggestion to combine any of these prior art references with each other exist within the prior art references themselves, as well as within the knowledge of those of ordinary skill in the art. Moreover, the relied-upon prior art references identify and address the same technical issues and suggest very similar solutions to those issues.

Furthermore, the nature of the problem or problems to be solved would have given a person of ordinary skill in the art reason to combine the prior art references, and the modifications or combinations would have had more than a reasonable expectation of success. Moreover, there were a finite number of identified, predictable solutions that had a reasonable expectation of success to lead one of

-7-

110898641.1

ordinary skill in the art inexorably to the claimed inventions. The claimed inventions were the result of the application of known technical concepts to designs to yield predictable results.

Aside from, or related to, the express teachings, suggestions, and motivations to combine discussed in the cited references, it would have been obvious to one of ordinary skill in the art to combine one or more of the prior art references with any other prior art references, or other references cited herein, under the legal standard to determine obviousness under 35 U.S.C. § 103. *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).

In addition, common knowledge of those of ordinary skill in the art can be prior art and may be relied on by Delta by way of testimony or declarations in combination with the above prior art publications and patents. This includes knowledge of well-known technology and various industry practices, standards, and protocols.

Consequently, the Asserted Claims, to the extent that they are not anticipated, would have been obvious.

Exemplary motivations to combine the references are provided in the claim charts attached hereto. Additional motivations to combine, along with evidence supporting these motivations, may be discovered as discovery progresses, including through expert testimony and discovery. Delta further reserve the right to provide rebuttal evidence in response to any contention by Plaintiff concerning Delta's Preliminary Invalidity Contentions, including any rebuttal evidence concerning the existence of a claim element in the prior art, a motivation to modify or combine, a reasonable expectation of success and evidence refuting purported secondary considerations.

## 2. **References Relating to the General States of the Art at the Time of the Alleged Invention**

The prior art references identified below and those incorporated by reference

-8-

110898641.1

as discussed above are illustrative of the general state of the art to which the '865 patent pertains (i.e., what one of ordinary skill in the art would have understood) at a time prior to the date of the alleged invention of the Asserted Claims of the '865 patent.

This prior art is exemplary only, and is not in any way intended to limit the scope of what one of ordinary skill in the art would have understood at the times of the alleged inventions. Delta reserves the right to rely upon additional prior art, information, or knowledge to demonstrate what one of ordinary skill would have understood at the time prior to the date of alleged invention of the Asserted Claims of the '865 patent.

Unless otherwise noted, all patents are United States patents. On information and belief, each listed publication or invention became prior art at least as early as the dates given.

a)    **Patents**

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 1,203,006 A | US | 10/1916 |
| 1,449,518 A | US | 3/1923 |
| 1,969,845 A | US | 8/1934 |
| 2,958,926 A | US | 11/1960 |
| D233,219 S | US | 10/1974 |
| 3,856,268 A | US | 12/1974 |
| 3,934,540 A | US | 1/1976 |
| 4,062,149 A | US | 12/1977 |
| 4,515,499 A | US | 5/1985 |
| 4,576,508 A | US | 3/1986 |
| 4,822,207 A | US | 4/1989 |
| 4,828,424 A | US | 5/1989 |

-9-

110898641.1

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 4,934,097 A | US | 6/1990 |
| 5,006,008 A | US | 4/1991 |
| 5,201,599 A | US | 4/1993 |
| 5,354,037 A | US | 10/1994 |
| 5,406,663 A | US | 4/1995 |
| 5,836,715 A | US | 11/1998 |
| 5,860,762 A | US | 1/1999 |
| 5,961,249 A | US | 10/1999 |
| 6,219,991 B1 | US | 4/2001 |
| 6,341,877 B1 | US | 1/2002 |
| 6,367,208 B1 | US | 4/2002 |
| 6,454,488 B1 | US | 9/2002 |
| 6,702,512 B1 | US | 3/2004 |
| 6,805,515 B2 | US | 10/2004 |
| 7,118,304 B2 | US | 10/2006 |
| 8,215,865 B2 | US | 7/2012 |

b)    **Patent Publications**

| Prior Art | Country of Origin | Date of Publication |
|---|---|---|
| 2002/0073876 | US | 6/2002 |
| 2003/0127636 | US | 7/2003 |
| 2004/0033106 | US | 2/2004 |
| 2004/0067104 | US | 4/2004 |
| 2004/0190990 | US | 9/2004 |
| 2005/0201829 | US | 9/2005 |
| 2006/0090408 | US | 5/2006 |
| 2008/0205982 | US | 1/2008 |

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-10-

| Prior Art | Country of Origin | Date of Publication |
|---|---|---|
| 2008/0038056 | US | 2/2008 |
| 2008/0122756 | US | 5/2008 |
| 2009/0028638 | US | 1/2009 |
| 2009/0035061 | US | 2/2009 |
| 2009/0250674 | US | 10/2009 |

c)    **Foreign Patents and Publications**

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 34 12354 | DE | 10/1985 |
| 4004851 | DE | 2/1990 |
| 0009235 | EP | 4/1980 |
| 0 955 414 | EP | 11/1999 |
| 1 054 108 | EP | 11/2000 |
| 1 479 826 | EP | 11/2004 |
| 2057107 | FR | 4/1971 |
| 2 194 577 | GB | 3/1988 |
| 2 229 472 | GB | 9/1990 |
| 10176314 | JP | 6/1998 |
| 11061746 | JP | 3/1999 |
| 2001295298 | JP | 10/2001 |
| WO 02/081824 | WO | 10/2002 |

d)    **Other Publications**

| Prior Art | Date |
|---|---|
| Department of Defence Handbook, "Selection and Application of Vehicle Barriers" MIL-DDBK-1013/14, Feb. 1, 1999 | 1999 |
| Project File for Amgen project for TT203 | 1997 |

-11-

110898641.1

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

| Prior Art | Date |
|---|---|
| Project File for UCLA Health Science Building for DSC800RFB | 2002 |
| Project File for SPAWAR, San Diego, CA for DSC800RFB | 2002 |
| Project File for Naval Annex in MD for DSC501 | 2001 |
| Project File for Naval Weapons Station in NJ for DSC501 | 2001 |
| Drawings for the DSC501 | 2001,2004 |
| Delta Scientific Press Release dated March 8, 2001 | 2001 |
| Delta Scientific brochure dated February 2002 | 2002 |
| Cold-Formed Steel Design, Third Edition, authored by Wei-Wen Yu, 2000 | 2000 |
| Cold-Formed Steel Structures to the AISI Specification, Hancock et al, 2001 | 2001 |
| Applied Structural Steel Design, Third Edition, Spiegel & Limbrunner, 1986 | 1986 |
| FEMA 426, Risk Management Series, Reference Manual to Mitigate Potential Terrorist Attacks Against Buildings, December 2003 | 2003 |
| FEMA 430, Chapter 4, Perimeter Security Design | |
| Hollow Structural Sections Connections Manual, American Institute of Steel Construction, 1997 | 1997 |
| The National Capital Urban Design and Security Plan, National Capital Planning Commission, October 2002 | 2002 |

-12-

110898641.1

| Prior Art | Date |
|---|---|
| Designing for Security in the Nation's Capital, National Capital Planning Commission, October 2001 | 2001 |
| Media Release, Planning Commission Approves Final Urban Design and Security Plan for the Nation's Capital, National Capital Planning Commission, October 3, 2002 | 2002 |
| Disguising Security as Something Artful – Ugly Barriers to Car Bombers Put Up After 9/11 Morph Into 'Designer Bollards', The Wall Street Journal, June 24, 2004 | 2004 |

To the extent not identified in the above tables, Delta incorporates by reference herein all prior art submitted to or considered by the United States Patent and Trademark Office ("PTO") or any foreign patent office in connection with the examination of the '865 patent, as well as any related U.S. or foreign applications and reserves the right to rely upon such references. Delta further incorporates by reference all prior art references cited in Petitions for *Inter Partes* Review of the '865 patent filed with the Patent Trial and Appeals Board ("PTAB") on June 6, 2019: IPR2019-01161 and IPR2019-01162. Delta further incorporates herein all prior art references presented in the Petition for Ex Parte Reexamination of U. S. Patent No. 8,215,865, filed March 30, 2020. Delta further incorporates any additional prior art cited in any patent infringement action in which claims of the '865 patent or any patent related to the '865 patent, e.g., U.S. Patent 7,699,558 (the "'558 patent"), were or are asserted.

-13-

110898641.1

### C.     Claim Charts

Attached as Exhibits A – C are preliminary invalidity claim charts for the Asserted Claims of the '865 patent for primary references Turpin, DSC800RFB, and TT203R.   Attached as Exhibit D is the Reexam Petition, which includes preliminary invalidity claim charts for the primary references Chen and Darcy. Exhibit E is a preliminary invalidity chart for the Asserted Claims which is based on the combination of Darcy and the prior art public sale and use of the DSC501barrier.  For each asserted claim, these charts specifically identify where each claim limitation is disclosed in the prior art reference or references.  Delta's preliminary invalidity charts are exemplary.  All references identified in the charts can be used as primary references for obviousness and primary references can be used as secondary references.   Furthermore, Delta reserves the right to assert additional combinations of references, based on the above-listed prior art references or additional prior art references identified or considered during further work and analysis in this case.  Delta also reserves the right to provide additional disclosures to address any elements that Plaintiff claims to be lacking.   Delta additionally reserves the right to include further information to support its invalidity defenses based on additional discovery, expert testimony and analysis, including information concerning the elements taught by each reference and the suggestion or motivation to modify or combine prior art references for obviousness purposes.

Although Delta has identified at least one disclosure of a limitation contained in each prior art reference, Delta has not necessarily identified each and every disclosure of the same limitation in the same reference.  In an effort to focus the issues, Delta has cited representative portions of an identified reference, even where a reference may contain additional support for a particular claim limitation. Delta may rely on uncited portions of the prior art references and on other publications and expert testimony to provide context and as aids in understanding

-14-

110898641.1

and interpreting the portions that are cited. Where Delta cites to a particular figure in a reference, the citation should be understood to encompass the caption and description of the figure and any text relating to the figure. Similarly, where Delta cites to particular text referring to a figure, the citation should be understood to include the figure as well.

## III. INVALIDITY UNDER 35 U.S.C. § 112

### A. Indefiniteness Under 35 U.S.C. §112 Paragraph 2

Delta contends that the following claim limitations fail to comply with 35 U.S.C. § 112, paragraph 2:

- "Shallow excavation" appearing in all claims.

- "Resisted" appearing in all claims.

Discovery is ongoing. As a result, it is premature for Delta to determine whether there are other failures to comply with 35 U.S.C. § 112, paragraph 2. Accordingly, Delta is unable at this time to provide all contentions regarding these additional grounds of invalidity. Delta reserve the right to supplement or modify the positions and information in these Invalidity Contentions.

## IV. III. ACCOMPANYING DOCUMENT PRODUCTION

Delta is producing herewith prior art documents other than those identified in the file history of the '865 Patent or otherwise already in the possession of RSA that are within Delta's power, control, or custody. These prior art references are cited in and support the accompanying invalidity charts.

DATED: April 3, 2020          Respectfully submitted,

LEWIS ROCA ROTHGERBER
CHRISTIE LLP


By   /s/David A. Dillard
          David A. Dillard

Attorneys for Defendant
Delta Scientific Corporation

-15-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

110898641.1

# CERTIFICATE OF SERVICE

I certify that on April 3, 2020, pursuant to Federal Rules of Civil Procedure, a true and correct copy of the foregoing document described as **DEFENDANT DELTA SCIENTIFIC CORPORATION'S PRELIMINARY INVALIDITY CONTENTIONS** was served on the parties in this action by electronic mail addressed as follows:

Sasha G. Rao
**srao@maynardcooper.com**
Maynard Cooper & Gale, LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 2600
San Francisco, CA 94111.com

Joseph V. Saphia
**JSaphia@haugpartners.com**
Jessica H. Zafonte
**JZafonte@haugpartners.com**
HAUG PARTNERS LLP
745 Fifth Avenue, New York, NY 10151

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on April 3, 2020 at Glendale, California.

/s/ Stacy-Ann Goodwin

-16-

110898641.1

# EXHIBIT A

## Exhibit A
### Preliminary Invalidity Chart for U.S. Patent No. 8,215,865
### In View of "Turpin"

The asserted claims of U.S. Patent No. 8,215,865 (the "'865 Patent") are anticipated by Turpin et al., U.S. Patent Publication No. 2004/0033106 that has a priority date of at least as early as August 16, 2003, and a publication date of February 19, 2004, which is prior art under 35 U.S.C. § 102 because the application was published before the earliest possible priority date of July 26, 2004, for the claims of the '865 Patent.  Additionally, Turpin renders obvious the claims of the '865 Patent under 35 U.S.C. § 103, both individually and in view of Delta's <u>DSC501</u> barrier ("DSC501"), which is prior art under 35 U.S.C. § 102(b) because DSC501 was on sale, sold, and in public use at least as early as 2002, which is more than one year before the earliest possible priority date of July 26, 2004, for the claims of the '865 Patent.

Delta Scientific Corporation reserves the right to amend these preliminary invalidity contentions based on information obtained through research, discovery, expert opinions, claim construction contentions, or upon issuance of the Court's claim construction order in this case.

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 1. [Preamble] A bollard structure comprising: | To the extent the preamble is considered limiting, Turpin discloses a bollard structure having a plurality of bollards and a base.  Turpin, Abstract. |
| [1.1] at least one bollard; and | Turpin discloses a bollard structure that requires a minimum of two bollards, however in accordance with the illustrated preferred embodiment four are employed.  Turpin, para. [0027]; *see* Turpin, Figures 1 and 4. |

1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  Truncated FIG. 1 of Turpin (Annotated) |

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | **Truncated FIG. 4 of Turpin (Annotated)** |
| [1.2] a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | Turpin discloses that the base of the bollard structure includes a steel vault having a top plate (24), a bottom wall (18), two end walls (14), an approach side wall (17) and a shoulder side wall (19), all of which are structural members. Inside the vault, there is a network of additional structural members that intersect and are tied together. |

3

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  **Truncated FIG. 1 of Turpin (Annotated)** As shown in Figures 2, 4, and 5 of Turpin, the network of structural members inside the vault is made up of supports 20 which are evenly spaced throughout the vault 12 and are parallel to each other. *See* Turpin, para. [0011] ("The surfaces of the supports [20] feature a flat steel plate of adequate size to accommodate vehicular traffic."). Turpin discloses: "Mounted atop the supports 20 are a set of I-beams 23 disposed parallel to the direction of traffic flow over the vault. Mounted atop and perpendicular to the I-beams 23 are a plurality of channel beams 25, which support a flat steel plate 24 disposed over the vault 12. . . . The interior 22 of the vault 12 also includes an operational rotating rod 26, typically made of a schedule 80 steel pipe, which is removeably [sic] secured to each of a plurality of bollards 34." Turpin, para. [0026]. Turpin also discloses: "The operational rotating rod 26 is also secured with bushings to each I-beam 23 in the interior of the vault |

4

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | 12. The rotating rod 26 is designed to reach from side to side for impact control." Turpin, para. [0028].<br><br><br><br>**Truncated FIG. 2 of Turpin (Annotated)** |

5

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | Truncated FIG. 4 of Turpin (Annotated) |

6

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  **Truncated FIG. 5 of Turpin (Annotated)** |
| [1.3] for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with | Turpin discloses that, for each bollard of the bollard structure, I-beams 23 (the at least on first structural member) and side end walls 14 of the vault extend from the approach side wall 17 to the opposite shoulder side wall 19, which is a first direction intersecting the opposed ends (approach side end and shoulder side end). *See* Turpin, Figs. 2 and 4.<br><br>The channel beams 25, approach side wall 17 and shoulder side wall 19 of the vault and rotatable rod 26 (the at least one structural member) extend perpendicular to the I-Beams 23 and end walls 14. The I-beams 23 intersect with at least the channel beams 25 and rotating rod 26 and abuts the approach and shoulder side walls 17 and 19. |

7

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; | <br>**Truncated FIG. 2 of Turpin (Annotated)** |

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  **Truncated FIG. 4 of Turpin (Annotated)** |
| [1.4] each bollard being secured to at least one of the at least one first structural member and the at least one | Turpin discloses that each bollard is secured to the rotating rod 26 (the at least one structural member) and to two of the I-beams 23 (the at least one first structural member). *See* Turpin, para. [0027] ("Each of the bollards 34 is secured to the rotatable rod 26 by means of a collar secured to the rod with four Grade 8 bolts…."). |

9

Case 2:19-cv-06024-JAK-PLA   Document 82-3   Filed 11/16/20   Page 261 of 535
Page ID #:2563

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | *See* Turpin, para. [0028] ("The operational rotating rod 26 is also secured with bushings to each I-beam 23 in the interior of the vault 12. . . . The operational rotating rod 26 features split bushing blocks 32 at each connection or securing point, which provides for the rotation of the rod 26 in order to raise or lower each respective bollard 34. Each respective split bushing block 32 provides for steel bushings or the like which will also provide for grease fittings for maintenance purposes."). <br><br> The rotatable rod 26 is secured to steel straps of ½" x 16", which may be secured around the bushings. *See* Turpin, para. [0042] ("[A]dditional security against such a failure of the bollards at the point of rotation, i.e. at the rod 26 and the support bushings 32 therefor, steel straps of ½″×16″ may be secured around the bushings."). <br><br> The bollards 34, in their upright position, extend upwardly from the base. When a force is applied to the bollard, the force will be transmitted to the base. *See* Turpin, para. [0043] ("The axial force will be reacted by the structure below the grade of the roadway.") |

10

| Asserted Claim of '865 Patent | Prior Art |
| --- | --- |
| | <br>**Truncated FIG. 4 of Turpin (Annotated)** |

11

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  **Truncated FIG. 5 of Turpin (Annotated)** |
| [1.5] wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and | The Turpin bollard structure is configured to be mounted in a shallow excavation with the bollards extending above grade when activated. *See* Turpin, para. [0010] ("The system of the present invention can be installed with a minimum amount of excavation and a minimum amount of on-site construction.") |

12

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | <br><br>**Truncated FIG. 4 of Turpin (Annotated)** |
| [1.6] wherein the at least one first structural member or the at least one structural member or both are configured or tied | The configuration of the vault and interior structural members provide space between the I-beams 23 (the at least one first structural members) into which concrete or other media may be poured or placed after the base is mounted in the excavation to make the base heavier, which will increase resistance to rotation of the bollards and the base from an impact. |

13

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. |  **Truncated FIG. 5 of Turpin (Annotated)** <br><br> While Turpin does not disclose placement of concrete in these interior spaces where it could be poured, the claim in not a method claim and does not require the presence of cement in the vault to infringe. Such actual pouring would have been obvious to a person of ordinary skill in the art in view of the prior art sale and installation of Delta's DSC501 barrier, discussed below with respect to claim 35. The DSC501 installation includes the introduction of rebar and concrete into a large portion of the interior of the base. |

14

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 2. The bollard structure of claim 1, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | In the Turpin bollard structure, the opposed ends are formed by the approach side wall 17 and shoulder side wall 19 of the vault. Each are structural members (steel plates) to which an end of the I-beam 23 (first structural member) are secured. **Truncated FIG. 4 of Turpin (Annotated)** |
| 3. The bollard structure of claim 1, wherein the intersecting structural members | In the Turpin bollard structure, the intersecting structural members, e.g., I-beams 23, channel beams 25, I-beams 23 and rotating rod 26 all have axes that extend parallel to a plane, e.g., top plate 16 or bottom plate 18 of the base. |

15

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| have axes that extend parallel to a plane of the base. |  Truncated FIG. 2 of Turpin (Annotated) |

16

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 4. The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches. | Turpin describes the installation of a preferred embodiment as follows:<br><br>The first step in the installation of a preferred embodiment of the present invention requires that the existing roadway be cut away to a dimension of approximately 12′×9′×24″ deep or the like, thus creating a pit or the like. Located directly in the center of the pit or the like is an area approximately 7′×3′×1′ that must be filled with gravel, thus creating a gravel bed. Once the soil and gravel are compacted, the system 10 of the present invention may be placed into this foundation perimeter leaving an area of 2′ of concrete in front of the approach side 17, and 1′ of concrete after the shoulder side 19. . . . Further to the method, the system 10 is set into the pit and leveled with the road surface.<br><br>Turpin, para. [0049].<br><br>A two feet deep pit filled with one foot with gravel leaves a depth of 12 inches from the bottom to the top of the vault for the top to be level with the road surface. |
| 5. The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members. | In the Turpin bollard structure, a structural member, i.e., the rotating rod 26, is a schedule 80 steel pipe and is a tubular member.  Turpin, para. [0026]. |

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 7. The bollard structure of claim 5, wherein at least one tubular member comprises a tube. | In the Turpin bollard structure, the rotating rod 26, which is a structural member, is a schedule 80 steel pipe which is a tube. Turpin, para. [0026]. |
| 10. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube. | In the Turpin bollard structure, the rotating rod 26, which is a structural member, is a schedule 80 steel pipe which is a tube. Turpin, para. [0026]. |
| 14. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate. | The Turpin bollard structure includes a bottom plate 18 as well as side plates 14, 17, 19 and a top plate 24. Turpin, para. [0025]. |
| 15. The bollard structure of claim 1, wherein the | In the Turpin bollard structure, at least the bottom plate 18 as well as side plates 14, 17, 19 and a top plate 24, supports 20, rotating rod 26, I-beams 23, which are structural steel members. *See, e.g.,* Turpin, para. [0025], [0026]. |

18

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| plurality of structural members comprise structural steel members. | |
| 16. [Abstract] A bollard structure comprising: | **See 1.** |
| [16.1] a plurality of bollards; and | Turpin disclose that in a preferred embodiment of the Turpin bollard structure, there are four bollards.  Turpin, para. [0027].<br><br><br><br>**Truncated FIG. 1 of Turpin (Annotated)** |

19

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | <br>**Truncated FIG. 4 of Turpin (Annotated)** |
| [16.2] a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | See 1.2. |

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| [16.3] for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; | **See 1.3.** |
| [16.4] each of the plurality of bollards being secured to at least one of the at least one first structural | **See 1.4.** |

21

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | |
| [16.5] wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and | **See 1.5.** |
| [16.6] wherein the at least one first structural member or the at least one structural member | **See 1.6.** |

22

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | |
| 17. The bollard structure of claim 16, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | **See 2.** |

23

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 18. The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and wherein each of the plurality of bollards is secured to at least one structural member that extends in the first direction. | The Turpin bollard structure is configured to resist impact from a direction of expected impact (the approach direction) and each of the bollards are secured to structural members, i.e., I-beams 23 that extend in the first direction, i.e., the direction of approach.<br><br><br><br>**Truncated FIG. 4 of Turpin (Annotated)** |
| 19. The bollard structure of claim 16 wherein the intersecting | See 3. |

24

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| structural members have axes that extend parallel to a plane of the base. | |
| 20. The bollard structure of claim 16 wherein the base has a height of 3 inches to 14 inches. | **See 4.** |
| 21. The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members. | **See 5.** |
| 23. The bollard structure of claim 21, wherein at least one tubular member comprises a tube. | **See 7.** |
| 26. The bollard structure of claim | **See 10.** |

25

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 16, wherein the plurality of structural members comprises at least one tube. | |
| 30. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate. | See 14. |
| 31. The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members. | See 15. |
| 32. The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar | Turpin discloses the use of re-bar outside of the vault and pouring concrete around the vault after rebar is placed in the area in which the concrete is to be poured.  *See* Turpin, para. [0025], [0049].  It would be understood by a person of ordinary skill in the art that the rebar would be formed in a "grillage" comprising intersecting and tied together rebar members, and that such rebar members would extend coextensively with at least a portion of the base that includes a structural member to which a bollard is secured, as the rebar would be |

26

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. | ineffective if not provided in a manner that meets these limitations.  Accordingly, Turpin discloses the limitations of claim 32.<br><br>Moreover, a "rebar grillage comprising intersecting and tied together rebar members that would extend coextensively with at least a portion of the base that includes a structural member to which a bollard is secured" is obvious in view of the DSC501 barrier, discussed below with respect to claim 35. The DSC501 includes a rebar grillage comprising intersecting and tied together rebar members in the interior of the base which extend laterally across the base and out of the base through portals in the side walls of the base.  It would have been obvious to a person of ordinary skill in the art to add rebar grillage to the interior of the Turpin base to add weight to the base and to more extensively tie the structural members together to more thoroughly dissipate the forces received by the base during a collision. |
| 33. [Preamble] A bollard structure comprising: | **See 1.** |
| [33.1] a plurality of bollards; and | **See 16.1.** |
| [33.2] a base comprising opposed ends and a plurality of members which intersect and are tied together, | **See 1.2.** |

27

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| [33.3] for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; | **See 1.3.** |
| [33.4] each of the plurality of bollards being secured to at least one of the at least one first structural | **See 1.4.** |

28

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | |
| [33.5] at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to | Turpin discloses that the bollards are secured to the I-beams 23. Both the rod 26 and C-channels 25 extend parallel to the ends of the base and extend between I-beams to which adjacent bollards are secured. *See* Turpin Fig. 2. |

29

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| the first bollard is secured; |
Truncated FIG. 2 of Turpin (Annotated) |

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| [33.6] wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and | **See 1.5.** |
| [33.7] wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards | **See 1.6.** |

31

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| and the base from an impact against the bollard or bollards. | |
| 34. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member. | Turpin discloses members that extend between a structural member (e.g., I-beam 23) to which a first bollard is secured and a structural member (e.g., another I-beam 23) to which a second bollard adjacent to the first bollard is secured that are structural members (e.g., channel beams 25 or rotatable rod 26). *See* Fig. 5 of Turpin.  **Truncated FIG. 5 of Turpin (Annotated)** |
| 35. The bollard structure according to claim 33, | Turpin discloses that "#5 re-bar, or the like, is placed in the areas in which concrete is to be placed." Turpin, para. [0049]. |

32

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. | As shown in Figs 3 and 4 of Turpin, concrete may be placed below and around the sides of the vault 12.<br><br><br><br>**Truncated FIG. 3 of Turpin (Annotated)**<br><br>Turpin does not appear to explicitly disclose the use of rebar within the vault 12. To the extent that Turpin does not disclose a rebar member as a structural member that extends between a structural member to which a first bollard is secured and a structural member to |

33

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
|  | which a second bollard adjacent to the first bollard is secured, such an arrangement would be obvious in view of DSC501.<br><br>Below are images of a DSC501 barrier taken from a 2002 brochure entitled "Advanced Highest security, high duty cycle counter-terrorist protection!"<br><br><br><br>The image above is a side perspective view of the DSC501 in its open position. Rebar rods extend through generally rectangular holes in the interior I-beams and the C-channels which form the side walls.<br><br>For convenience, drawings showing aspects of the base of the DSC501 barrier are provided below. |

34

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  Exploded view of DSC501 base (with added labeling) (engineering drawing) |

35

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  **Top View of DSC501 base (engineering drawing)** |

36

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  **3D Image of DSC501 Design** Above is a 3D image showing the placement of the rebar in the DSC501.  Cement is poured in the area of the rebar behind the large square steel tube.  The hardened concrete can be seen in the images below, also taken from the 2002 brochure. |

37

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
|  | **Images from 2002 Brochure** The DSC barrier demonstrates numerous concepts that were well known and used in commercial practice in 2002 and prior.  These included the use of tubular steel, steel I-Beams and C-channel beams in the design of barrier bases.  The addition of cement to the base, or any other media to make the base heavier to improve resistance to linear or rotational movement when a vehicle crashes into the barrier.  The use of rebar in concrete is known to increase its tensile strength. Providing rebar, rebar grillage or a rebar cage that extends between, through and/or around the non-rebar structural steel members assures that the concrete will remain with the non-rebar members if the base is lifted during a collision. |

38

110907559.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | The portions of the square steel tubing and rebar that extend laterally outwardly into adjacent concrete add additional strength and stability to the barrier.<br><br>The DSC501 makes use of a long and wide but shallow (18 inches) base.  The shallow depth of the base which allows it to be used in applications where deep trenching is not a practical option, e.g. locations where utility lines and the like may be buried. |

39

110907559.1

# EXHIBIT B

**Exhibit B**
**Preliminary Invalidity Chart for U.S. Patent No. 8,215,865**
**In View of "DSC800RFB"**

The asserted claims identified below of U.S. Patent No. 8,215,865 (the "'865 Patent") are anticipated and/or obvious by the Delta DSC800RFB bollard ("DSC800RFB") which was on sale, sold, installed at the UCLA Health Science Building, and thereafter in public use at least as early as 2002, which more than one year before the earliest possible priority date of July 26, 2004, for the claims of the '865 Patent.

Delta Scientific Corporation reserves the right to amend these preliminary invalidity contentions based on information obtained through research, discovery, expert opinions, claim construction contentions, or upon issuance of the Court's claim construction order in this case.

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 1. [Preamble] A bollard structure comprising: | To the extent the preamble is considered limiting, the DSC800RFB installation is a bollard structure.[1] |
| [1.1] at least one bollard; and | The DSC800RFB installation has a bollard. |

---

[1] Figures are of related engineering drawing for convenience.

1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  |
| [1.2] a base comprising opposed ends and a plurality of | The base of the DSC800RFB includes a foundation base assembly comprising a plurality of structural members.  The structural members include a generally horizontal lower steel plate, a generally horizontal upper steel plate, and a steel foundation tube |

2

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| structural members which intersect and are tied together, | extending generally vertically between the lower and upper plates. Structural members of the base also include intersecting and tied-together steel bars (rebar) forming a cage around the foundation tube assembly.  |

3

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| [1.3] for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; | The DSC800RFB includes a lower plate that inherently includes a first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member. The '865 patent discusses this inherency: In its most basic form the bollard system of this invention would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards. . . . The cross pieces are inherent in the continuous plate. '865 Patent, 5:48-52. The figure below shows the upper plate in a plan view. The lower plate has substantially the same structure, except that the lower plate does not have the opening to accommodate the bollard or the screw holes of the upper plate. |

4

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | <br><br>For convenience, the following schematic shows an annotated drawing of the lower plate. |

5

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  |
| [1.4] each bollard being secured to at least one of the at least one first structural member and the at least one structural | The DSC800RFB includes a bollard that is secured to the lower plate and foundation tube, which includes the at least one first structural member and the at least one structural member of the base, and extends upwardly from the base so as to transmit forces applied to the bollard to the base. |

6

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | |

7

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| [1.5] wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and | The DSC800RFB includes a foundation base assembly that has a height of 16.75" and is configured to be mounted in a shallow excavation with the bollard extending above grade.<br><br><br>SECTION B—B |
| [1.6] wherein the at least one first structural member or the at least one structural member or both are configured or | The DSC800RFB includes a foundation tube assembly and rebar cage that are configured to retain within the base supporting media introduced into the base, i.e., concrete, when the base is mounted in the excavation. The added weight of the concrete increases resistance to rotation of the bollard and the base from an impact against the bollard. |

8

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | See circled text below: "#4 Rebar Typ. All Rebar to be tied typ."<br><br><br><br>SECTION B–B |
| 3. The bollard structure of claim 1, wherein the intersecting structural members have axes | The DSC800RFB includes structural members that include a generally horizontal lower steel plate, a generally horizontal upper steel plate, and a steel foundation tube extending generally vertically between the lower and upper plates.  Structural members of the base also include intersecting and tied-together steel bars (rebar) forming a cage |

9

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| that extend parallel to a plane of the base. | around the foundation tube assembly.  Each of these structural members has an axis that extends parallel to a plane of the base. |
| 4. The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches. | It would have been obvious to a person ordinary skill in the art to tailor the dimensions of the DSC800RFB based on the needs of a particular installation, including reducing the overall height of the base to a height of 3 inches to 14 inches.  The DSC800RFB has a height of 16.75 inches.  Including the rebar cage, an excavation of slightly deeper than 16.75 inches would be required.  The '865 patent does not disclose that a base height of 14 or less inches is critical to accomplish the purpose of the invention, i.e., to avoid underground utilities which are typically installed at greater depths. Fourteen inched appears to be arbitrary.  Thus, a base having a height of 16.75 inches or slightly higher would be equivalent to a 14 inch base and simply a matter of obvious design choice.  Moreover, it would have been obvious to reduce the height of the base of the DSC800RFB to reduce the amount of required excavation. |
| 5. The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members. | The DSC800RFB includes a steel foundation tube that comprises a tubular member.<br><br>4. WEIGHT: BOLLARD (WITHOUT DECORATIVE CASTING)....95.8 lbs<br>FOUNDATION TUBE.......................................97.7 lbs<br>TOTAL BOLLARD............................................193.5 Lbs |
| 7. The bollard structure of claim 5, wherein at least one tubular member comprises a tube. | The DSC800RFB includes a steel foundation tube that comprises a tube.<br><br>4. WEIGHT: BOLLARD (WITHOUT DECORATIVE CASTING)....95.8 lbs<br>FOUNDATION TUBE.......................................97.7 lbs<br>TOTAL BOLLARD............................................193.5 Lbs |

10

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 10. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube. | The DSC800RFB includes a steel foundation tube that comprises a tube.<br><br>4. WEIGHT: BOLLARD (WITHOUT DECORATIVE CASTING)....95.8 lbs<br>FOUNDATION TUBE.........................................97.7 lbs<br>TOTAL BOLLARD...........................................193.5 Lbs |
| 14. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate. | The DSC800RFB includes upper and lower plates that each comprise a plate. |
| 15. The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members. | DSC800RFB includes various structural members, all of which comprise structural steel members. Example provided below from engineering drawing:<br><br>7   REINFORCING STEEL SHALL BE DEFORMED BARS CONFORMING TO<br>ASTM A615, GRADE 60 (60,000 PSI OR 413 7MPA) |
| 16. [Abstract] A bollard structure comprising: | **See 1.** |
| [16.1] a plurality of bollards; and | The DSC800RFB installation has a plurality of bollards. |

11

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
|  | Bollards |
| [16.2] a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | **See 1.2.** |
| [16.3] for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, | **See 1.3.** |

12

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| and at least one structural member extending to intersect with the at least one first structural member; | |
| [16.4] each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | See 1.4. |
| [16.5] wherein the base is configured to be mounted in a shallow excavation with the plurality of | See 1.5. |

13

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| bollards extending above grade of the excavation; and | |
| [16.6] wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | **See 1.6.** |
| 18. The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a | The DSC800RFB bollard structure is configured to resist impact from a direction of expected impact, and the first direction is parallel to the direction of expected impact. Each of the plurality of bollards is secured to at least one structural member (generally horizontal lower steel plate) that extends in the first direction. |

14

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| direction of expected impact and the first direction is parallel to the direction of expected impact, and wherein each of the plurality of bollards is secured to at least one structural member that extends in the first direction. | |
| 19. The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base. | **See 3.** |
| 20. The bollard structure of claim 16 wherein the base has a height of 3 inches to 14 inches. | **See 4.** |

15

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 21. The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members. | **See 5.** |
| 23. The bollard structure of claim 21, wherein at least one tubular member comprises a tube. | **See 7.** |
| 26. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube. | **See 10.** |
| 30. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate. | **See 14.** |
| 31. The bollard structure of claim 16, wherein the plurality | **See 15.** |

16

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| of structural members comprise structural steel members. | |
| 32. The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. | The DSC800RFB bollard structure comprises a rebar grillage comprising intersecting and tied together rebar members extending coextensively with a least a portion of the base that includes a structural member to which a bollard is secured.<br><br>7  REINFORCING STEEL SHALL BE DEFORMED BARS CONFORMING TO ASTM A615, GRADE 60 (60,000 PSI OR 413 7MPA).<br><br>See circled text below: "#4 Rebar Typ. All Rebar to be tied typ." |

17

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | <br>SECTION B-B |
| 33. [Abstract] A bollard structure comprising: | See 1. |
| [33.1] a plurality of bollards; and | See 16.1. |
| [33.2] a base comprising opposed ends and a plurality of | See 1.2. |

18

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| members which intersect and are tied together, | |
| [33.3] for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; | **See 1.3** |
| [33.4] each of the plurality of bollards being secured to at least one of the at least one first structural member and the at | **See 1.4.** |

19

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | |
| [33.5] at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured; | In the DSC800RFB bollard structure, at least a portion of the rebar (of the plurality of members) extends parallel to the ends of the base extending between a lower plate of one bollard, to which a first bollard is secured, and a lower plate of a second bollard to which a second bollard is secured, the second bollard being adjacent to the first bollard. |
| [33.6] wherein the base is configured to be mounted in a shallow excavation | **See 1.5.** |

20

110906894.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| with the plurality of bollards extending above grade of the excavation; and | |
| [33.7] wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | **See 1.6.** |
| 34. The bollard structure according to claim 33, wherein the at least one of the | The rebar, which is at least one of the plurality of members that extends between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured, comprises a structural member. |

21

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member. | |
| 35. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. | The rebar, which is at least one of the plurality of members that extends between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured, comprises rebar. |

22

# EXHIBIT C

**Exhibit C**
**Preliminary Invalidity Chart for U.S. Patent No. 8,215,865**
**In View of "TT203R"**

The asserted claims identified below of U.S. Patent No. 8,215,865 (the "'865 Patent") are anticipated by the DSCTT203RB bollards installed at Amgen in Thousand Oaks, CA ("TT203R"), that was on sale and in public use at least as early as 1997, which is prior art under 35 U.S.C. § 102(b) because TT203R was offered for sale, sold, and in public use at least one year before the earliest possible priority date of July 26, 2004, for the claims of the '865 Patent. Additionally, TT203R renders obvious the claims identified below of the '865 Patent under 35 U.S.C. § 103.

Delta Scientific Corporation reserves the right to amend these preliminary invalidity contentions based on information obtained through research, discovery, expert opinions, claim construction contentions, or upon issuance of the Court's claim construction order in this case.

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| 1. [Preamble] A bollard structure comprising: | To the extent the preamble is considered limiting, the TT203R is a bollard structure.[1] |
| [1.1] at least one bollard; and | The TT203R has a bollard. |

---

[1] Figures are of related engineering drawing for convenience.

1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | <br><br>SIDE VIEW |
| [1.2] a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | The base of the TT203R includes a foundation base assembly comprising a plurality of structural members. The members include a generally horizontal lower steel plate, a generally horizontal upper steel plate, a steel foundation tube extending generally vertically between the lower and upper plates and a laterally extending steel access box. |

2

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | <br><br>Additionally, intersecting and tied-together steel bars (rebar) form a cage around the foundation tube assembly. |

3

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  |

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| [1.3] for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member; | The lower plate of the TT203R inherently includes a first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member.<br><br>In its most basic form the bollard system of this invention would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards. . . . The cross pieces are inherent in the continuous plate. '865 Patent, 5:48-52.<br><br>For convenience, the following schematic shows an annotated drawing of the lower plate.<br><br> |

5

| Asserted Claim of '865 Patent | Prior Art |
| --- | --- |
| [1.4] each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | The bollard of the TT203R is secured to the lower plate and foundation tube, which includes the at least one first structural member and the at least one structural member of the base, and extends upwardly from the base so as to transmit forces applied to the bollard to the base. |

6

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| [1.5] wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and | The TT203R includes a foundation base assembly that has a height of 17.625 inches and is configured to be mounted in a shallow excavation with the bollard extending above grade.<br><br> |

7

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | Bollard<br>42.25 REF<br>GRADE<br>Foundation Base Assembly<br>OPTIONAL DRAIN PORT −1/2 NPT<br>A<br>FRONT VIEW |
| [1.6] wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the | The TT203R includes a foundation tube assembly and rebar cage that are configured to retain within the base supporting media introduced into the base, i.e., concrete, when the base is mounted in the excavation. The added weight of the concrete increases resistance to rotation of the bollard and the base from an impact against the bollard. |

8

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | |
| 3. The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base. | The TT203R includes structural members that include a generally horizontal lower steel plate, a generally horizontal upper steel plate, and a steel foundation tube extending generally vertically between the lower and upper plates.  Structural members of the base also include intersecting and tied-together steel bars (rebar) forming a cage around the foundation tube assembly.  Each of these structural members has an axis that extends parallel to a plane of the base. |
| 4. The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches. | It would have been obvious to a person ordinary skill in the art to tailor the dimensions of the TT203R based on the needs of a particular installation, including reducing the overall height of the base to a height of 3 inches to 14 inches.  The TT203R foundation base assembly has a height of 17.625 inches.  Including the rebar cage, an excavation of slightly deeper than 17.625 inches would be required.  The '865 patent does not disclose that a base height of 14 or less inches is critical to accomplish the purpose of the invention, i.e., to avoid underground utilities which are typically installed at greater depths. Fourteen inched appears to be arbitrary.  Thus, a base having a height of 17.625 inches or slightly higher |

9

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | would be equivalent to a 14 inch base and simply a matter of obvious design choice. Moreover, it would have been obvious to reduce the height of the base of the TT203R to reduce the amount of required excavation. |
| 5. The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members. | The TT203R includes a steel foundation tube that comprises a tubular member.<br><br> |
| 7. The bollard | The TT203R includes a steel foundation tube that comprises a tube.  **See 5.** |

10

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| structure of claim 5, wherein at least one tubular member comprises a tube. | |
| 10. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube. | The TT203R includes a steel foundation tube that comprises a tube.  **See 5.** |
| 14. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate. | The TT203R includes upper and lower plates that each comprise a plate.  **See 5.** |
| 15. The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members. | The TT203R includes various structural members, all of which comprise structural steel members. |

11

# EXHIBIT D

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*I hereby certify that this correspondence is being electronically filed with the United States Patent and Trademark Office on March 27, 2020 at or before 11:59 p.m. Pacific Time under the Rules of 37 CFR § 1.8.*

/Rose Liu/
Rose Liu

| | | |
|---|---|---|
| In Re | : | **U.S. Patent No. 8,215,865** |
| Issue Date | : | **July 10, 2012** |
| Filed | : | January 27, 2010 |
| | | |
| Reexamination No. | : | TBD |
| Assignee | : | **RSA Protective Technologies, LLC** |
| Title | : | **ANTI-RAM SYSTEM AND METHOD OF INSTALLATION** |
| Docket No. | : | 184301 |
| Customer No. | : | 23363 |

### REQUEST FOR REEXAMINATION OF U.S. PATENT NO. 8,215,865

**Mail Stop *Ex Parte* Reexam**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Post Office Box 9001
Glendale, CA  91209-9001
March 27, 2020

Commissioner:

This is a Request for Ex Parte Reexamination pursuant to 37 CFR § 1.510 of U.S. Patent No. 8,215,865, issued on July 10, 2012, entitled ANTI-RAM SYSTEM AND METHOD OF INSTALLATION.

The Request is made by Delta Scientific Corporation.

-1-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

## I.    IDENTIFICATION OF CLAIMS FOR WHICH REEXAMINATION IS REQUESTED

In accordance with 37 CFR § 1.510, reexamination of claims 1-35 of U.S. Patent No. 8,215,865 is requested in view of the prior art identified in U.S. Patent No. 5,406,663 (the "'663 patent"), U.S. Patent No. 5,836,715 (the "'715 patent"), U.S. Patent Publication No. 2006/0090408 (the "'408 publication), U.S. Patent Publication No. 2002/0073876 ("the '876 publication"), and U.S. Patent No. 3,934,540 ("the '540 patent").

## II.    STATEMENT IDENTIFYING EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY (37 CFR § 1.510(b)(1))

1.    The '663 patent and the '715 patent were not considered by the Examiner of the application that matured as the '865 patent.  The '663 patent discloses a road foundation with supports structure that can act as a bollard structure or is equivalent to a bollard structure.  The road foundations and supports structure is designed for supporting an elevated road above ground (column 1, lines 8-11) and includes an overall foundation or base having a frame 1 and a rectangular foundation 2 formed by foundation portions 21 and connection plates 22.  The overall foundation is installed below grade and vertical supports 3, including L- shaped legs 31, are made of metal, e.g. steel, and are connected to the foundation and extend from the foundation above grade, as for example shown in FIG. 3 and described on column 2, lines 58-67 and column 3 lines 43-52).  The vertical supports 3, including L- shaped legs 31, also serve as bollards as they are made of steel and would take an impact from a vehicle and transfer the loads of such impact to the foundation or base so as to prevent their failure and the collapse of the elevated road that they support.  Thus, the '663 patent discloses at least one bollard (or an equivalent to a bollard) defined by vertical support member 3, including L-shaped legs 31, made of steel.  The '663 patent also discloses on column 2,

-2-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

line 56 to column 3, line 32,  and on FIG. 2, a base (defined by the combination of supporting frame 1, foundation portions 21 and connection plates 22) comprising opposed ends (defined by two opposite members of the supporting frame 1) and a plurality of structural members which intersect and are tied together (the members forming supporting frame 1, the foundation portions 21 and the connection plates 22). The four members are connected to each other forming a rectangular supporting frame 1.  Foundation portions 21 are fastened to two opposite members of the supporting frame 1 which extend perpendicularly from the members of the supporting frame defining the opposed ends (column 3, lines 30-37 and FIG. 2).  The connection plates 22 are fastened to the foundation portions 21 (column 3, lines 15-20).  The '663 patent further discloses for each bollard (vertical support member 3 including L- shaped legs 31) of the bollard structure, at least one first structural member (defined a member of the supporting frame 1 in combination with a foundation portion 21 which is fastened to such member) extends from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction and intersects with the opposed ends (FIG. 2).  The '663 patent further discloses in FIG. 2 that the at least one structural member (defined by a member of the supporting frame 1 defining one of the opposed ends) extends to intersect with the at least one first structural member (defined by the member of the supporting frame 1 in combination with a foundation portion 21 which is fastened to such member).  Each bollard (vertical support 3 including L- shaped legs 31) is secured to a foundation portion 21 which forms at least one of the at least one first structural member and extends upwardly from the base so as to transmit forces applied to the bollard (vertical support 3 including L- shaped legs 31) to the base (column 3, lines 43-52).     According to the '663 patent, the base (the supporting frame 1, the foundation portions 21 and connection plates 22) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade (column 1, lines 25-31; column 4, lines 10-15).  The at least one first structural member or the at least one structural member or both are configured or tied together (the supporting frame 1,

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

foundation portions 21 and connection plates 22 are all tied together) to retain within the base supporting media introduced into the base when the base is mounted in excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.    The foundation portions 21 and the connection plates 22 have grooves (channels) 23 on their upper surface to retain the asphalt (column 3, lines 20-29).

The word "tied" is used only once in the specification of the '865 patent and specifically on column 3, lines 44-46 where it is stated: "The framework means the tubes (or other structural steel elements) tied together to form the grillage."  The specification does not teach how the tying together of the structural members cause the retention of the supporting media and result in the resistance of rotation. Moreover, according the '865 patent "In its most basic form the bollard system would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards.  The plate would need a minimum depth 5" to qualify as a DOS rated system.  The cross pieces are inherent in the continuous plate.  Still another basic configuration of the bollard system of this invention is to bolt separate thick pieces of steel to continuous cross plates, and to have the bollard set inside that construction" (column lines 48-54). As such, according to the '865 patent, the tied together structural members are inherent in a continuous plate structure.  Thus, the rectangular foundation 2 (defined by foundation portions 21 and connection plates 22) which is a continuous plate structure also inherently discloses structural members that are tied together.

In addition, the word "retain" does not appear in the specification of the '865 patent.   On col. 3 lines 51-54, the '865 patent states: "The top surface of the pad is to be formed in such a way to support the materials forming the final finished appearance (non-structural stone pavers or tiles, etc.)"   On col. 7, lines 39 -49 the '865 patent states "FIG. 1 shows an embodiment of the anti-ram system of this invention installed in a shallow trench alongside a sidewalk. The top surface **10** of the base or pad of the anti-

-4-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

ram system is shown recessed below the desired grade level. As shown in FIG. 2, a landscaping surface, such as grass **12** is placed over the top surface **10** of the base or pad. As further shown in FIG. 2, ornamental or functional objects are placed over the bollards **14** shown in FIG. 1. Such objects include lamp posts **16**, waste container **18**, ornaments **20**, and a seat and shelter **22**. The ornamental and functional items disguise the presence of the bollards of the anti-ram system."  Support (not "supporting") media as stated on column 3, lines 8-10 is soil or concrete.  Thus, any media placed on top of the base or any structural member should be construed to be "supporting" media that provides some resistance to rotation.   Thus, the structural members (the supporting frame 1, foundation portions 21 and connection plates 22) disclosed in the '663 patent retain supporting media in the form of asphalt as for example disclosed in the Abstract and on column 3, lines 20-29, such that rotation of the bollard (vertical support 3 including L- shaped legs 31) and the base (supporting frame 1 in combination with the foundation portions 21 and connection plates 22) is resisted.

In order to get the application that matured as the '865 patent allowed and issued, the patentee of the '865 patent in the amendment filed on July 26, 2011, amended all the independent claims, and also added a new independent claim, to include the limitation "and wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards."  The patentee of the '865 patent then argued that cited reference of Reale (U.S. Patent No. 6,702, 512) did not disclose such limitations. Specifically, the patentee argued that "Real '512 does not disclose structure that would resist rotation of the bollard from impact against the bollard, and in fact teaches away from this because the bollard installation 20 is designed so that the bollard 30 rotates from impact, as clearly shown in Figs. 2-3 and 7-8."   The patentee of the '865 patent

-5-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

also argued in the amendment filed on January 24, 2012, that the cited reference of Fuchs, DE 40044851, "does not disclose configuring the members 3 'to retain within the base supporting media introduced into the base when the base is mounted in the excavation'" (page 3 of response filed on January 24, 2012). As a result, the application was allowed and issued as the '865 patent. The '663 patent discloses these features that the patentee argued lacked in Reale and in Fuchs. Thus, the '663 patent raises a substantial new question of patentability. The '663 patent discloses all of the limitations of claims 1-31, 33, and 34 of the '865 patent. Thus, the '663 patent anticipates claim 1-31, 33 and 34 of the '865 patent.

Moreover, the '715 patent discloses a gridwork 10 that can be used with asphaltic concrete (column 7, lines 54-57) and in concrete and asphalt road constructions (column 8, lines 36-39). Thus, the gridwork 10 disclosed in the '715 patent can be used with the overall foundation defined by the supporting frame 1 and foundation portions 21 and connection plates 22 to in the '663 to reinforce such structure when embedded in the asphalt. Thus, the '663 patent in combination with the '715 patent disclose all the limitations of claims 32 and 35 of the '865 patent. As such the '663 patent in combination with the '715 patent render claims 32 and 35 of the '865 patent obvious.

2.    The '408 publication and the '876 publication were not considered by the Examiner of the application that matured as the '865 patent. The '540 patent was considered by the Examiner of the application that matured as the '865 patent. The '865 patent claims priority to provisional application No. 60/591,018 filed on July 26, 2004, provisional application No. 60/600,955, filed on August 12, 2004, provisional application No. 60/605,959, filed on August 30, 2004, provisional application No. 60/622,385, filed on October 26, 2004, provisional application No. 60/674,965, filed on April 25, 2005, and provisional application No. 60/679,647, filed on May 9, 2005. The '865 patent also

-6-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

issued from a continuation of application No. 11,191,251, filed on July 26, 2005, and issued as Patent No. 7,699,558. True copies of these applications are submitted herewith in Appendix A.

All independent claims of the '865 patent require "wherein the at least one first structural member of the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards." This limitation was first introduced to the application that matured as the '865 patent in the amendment filed on July 26, 2011. None of the applications filed before July 26, 2005, described how the structural members "are . . . tied together to retain within the base supporting media . . . such that rotation is resisted of a bollard or bollards and the base . . .". No description appeared in the applications filed prior to July 26, 2005 that described **how the tying** of the structural members caused such structural members to retain the supporting media within the base such that rotation of the bollard or bollards **was resisted**. In other words, no description relating to the resistance of rotation due to the tying of the structural members was provided in the applications filed before July 26, 2005. A description directed the resistance of rotation first appeared in application No. 11,191,251, filed on July 26, 2005. Assuming such description provided support for this limitation, the earliest priority that all the claims of the '865 patent have is July 26, 2005.

The '408 publication was published on May 4, 2006 and has a filing date of February 9, 2005 and a priority date of October 22, 2004, both of which are prior the July 26, 2005 date which is the earliest possible priority date of the claims of the '865 patent. Thus, the '408 publication is prior art to the '865 patent.

The '408 publication discloses a vehicle barrier system including at least one bollard (post 14), as for example shown in FIG. 5. It also discloses a base (reaction

-7-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

mass 12) comprising opposed ends (defined by beams 42 and 44) and a plurality of structural members (beams 42-54) which intersect and are tied together (fastened together in any suitable fashion, e.g., bolts, welding (paragraphs 0029)).   The '408 publication further discloses for each bollard (post 14) of the bollard structure at least one first structural member (beam 50 or 52) extends from a first of the opposed ends (beam 44) of the base to a second of the opposed ends (beam 42) of the base in a first direction intersecting with the opposed ends, as for example shown in FIG. 5.  The '408 publication discloses that the at least one structural member (beam 50 or 52) extends to intersect with the at least one first structural member (beam 42 or 44).  Each bollard (post 14) shown in the '408 publication is secured to at least one of the at least one first structural member (beam 50 or 52) of the base for the respective bollard and extends upwardly from the base so as to transmit forces applied to the at least one bollard to the base, as for example shown in FIGS. 1-3 and 6A and described in paragraphs 0027, 0028 and 0029.     The base (reaction mass 12) disclosed in the '408 publication is configured to be mounted in a shallow excavation with the at least one bollard extending above grade, as for example disclosed in paragraphs 0006 and 0031.  The at least one first structural member (beam 50 or 52) or the at least one structural member (beam 42 or 44) or both are configured or tied together (paragraphs 0012, 0023) to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards, as for example disclosed on paragraphs 0012, 0027 and 0030 which describe that the metal framework or the beams which may be filled with concrete as for example shown in FIG. 7 and as such the barrier system would resist rotation from an impact against the bollards (posts 14).  In order to get the application that matured as the '865 patent allowed and issued, the patentee of the '865 patent in the amendment filed on July 26, 2011, amended all the independent claims and also added a new independent claim to include the limitation "and wherein the at least one first structural member or the at least one structural member or both are

-8-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards."  The patentee of the '865 patent then argued that cited reference of Reale (U.S. Patent No. 6,702, 512) did not disclose such limitation. Specifically, the patentee argued that "Real '512 does not disclose structure that would resist rotation of the bollard from impact against the bollard, and in fact teaches away from this because the bollard installation 20 is designed so that the bollard 30 rotates from impact, as clearly shown in Figs. 2-3 and 7-8."    The patentee of the '865 patent also argued in the amendment filed on January 24, 2012, that the cited reference of Fuchs, DE 40044851, "does not disclose configuring the members 3 'to retain within the base supporting media introduced into the base when the base is mounted in the excavation'" (page 3 of response filed on January 24, 2012).  As a result, the application was allowed and issued as the '865 patent.  The '408 publication discloses these features that the patentee argued lacked in Reale and Fuchs.  As such, the '408 publication raises a substantial new question of patentability.  The '663 patent discloses all of the limitations of claims 1-31, 33, and 34 of the '865 patent.  As such, the '663 patent anticipates claims 1-31, 33 and 34 of the '865 patent.

The '876 publication discloses on paragraph 0075, a rebar reinforced concrete forms a shallow structure which forms a strong foundation below grade for attaching a column 60 extending above grade.  The '540 patent disclose a rebar cage having tie rods 11-14 to support a plurality of barrier elements extending upwardly above a foundation block.  It would have been obvious to one skilled in the art to have used rebar reinforced concrete as disclosed in the '876 publication or the tie-rods disclosed in the '540 patent, to strengthen the base (reaction mass 12) disclosed in the '663 patent for strengthening such base.  Thus, the '663 patent in combination with the '876 publication or the '540 patent disclose all the limitations of claims 32 and 35 of the '865

-9-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

patent. As such, the '663 patent in combination with the '876 publication or the '540 patent renders claims 32 and 35 of the '865 patent obvious.

### III.    DETAILED EXPLANATION (37 CFR § 1.510(b)(2))

1. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 1.

| | |
|---|---|
| 1. A bollard structure comprising: | The foundation and vertical supports disclosed in FIGS. 2, 3 and 7 and described on column 2, line 58 to column 2, line 36) are capable of acting as a bollard structure. |
| at least one bollard; and | the vertical support 3 including L- shaped legs 31, as shown in annotated FIG. 2 of the '663 patent below and described on column 3, lines 43-55, will act as a bollard if it were to be hit by a car. Thus, vertical support 3, including L-shaped 31, is a bollard or equivalent to a bollard.<br><br> |
| a base comprising opposed ends and a plurality of | The combination of supporting frame 1, foundation |

-10-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| structural members which intersect and are tied together, | portions 21 and connection plates 22 define a foundation or base comprising opposed ends defined by opposite members of supporting frame 1 as shown in annotated FIG. 2 below and described on column 3, lines 15-36.  Furthermore, as can be seen from annotated FIG. 2 below and described on column 2, line 58 to column 3, line 37, the foundation or base includes a plurality of structural members (members of supporting frame 1, foundation portions 21, and connection plates 22) which intersect and are connected together (i.e., tied together).  Moreover, according the '865 patent "In its most basic form the bollard system would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards.  The plate would need a minimum depth 5" to qualify as a DOS rated system.  The cross pieces are inherent in the continuous plate.  Still another basic configuration of the bollard system of this invention is to bolt separate thick pieces of steel to continuous cross plates, and to have the bollard set inside that construction" (column lines 48-54).  As such, according to the '865 patent, the tied together structural members are inherent in a continuous plate structure.  Thus, the rectangular foundation 2 (combination of foundation portions 21 and connection plates 22) which is a continuous plate structure inherently discloses structural members that are tied together. |

-11-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | for each vertical support 3 including L- shaped legs 31 (bollard), at least one first structural member (member of supporting frame 1 in combination with its corresponding foundation portion 21 as shown in annotated FIG. 2 below) extends from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends. |

-12-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| at least one structural member extending to intersect with the at least one first structural member; | a member of supporting frame 1 defining a structural member extends to intersect with the combination of another member of supporting frame 1 and its corresponding foundation portion 21 which combination defines a first structural member as shown in the annotated FIG. 2 below.<br><br> |

-13-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | each vertical support 3, including L- shaped legs 31, (bollard) is secured to each of the foundation portions 21 which along with a member of the supporting frame 1 define a first structural member. The vertical support 3, including L- shaped legs 31, (bollard) extends upwardly from the base (defined by supporting frame 1, foundations portions 21 and connection plates 22), as shown in annotated FIG. 2 below, so as to transmit forces applied to vertical support to the base (column 5, lines 6-19).  |
| wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and | the base (supporting frame 1 in combination with foundation portions 21 and connection plate 22) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade (see col. 1, lines 25-31; col. 4, lines 10-15). |
| wherein the at least one first | A member of supporting frame 1 and its corresponding |

-14-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | foundation portion 21 (which include grooves 23) define a first structural member as shown in annotated FIG. 2 below<br><br><br><br>is tied with another member of supporting frame 1 defining one structural member as shown in annotated FIG. 2 below |

-15-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 2

and they retain supporting media (e.g., asphalt) over foundation portions 21 and connection plates 22 and within the grooves 23, as shown, for example in FIGS. 3 and 7 such that rotation is resisted (see column 3, lines 24-57 and annotated FIG. 3 below).



FIG. 3

-16-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

2.  <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 2.</u>

| 2. The bollard structure of claim 1, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | A member of supporting frame 1 defines one of the opposed ends as shown in annotated FIG. 2 below.<br><br> |
| --- | --- |

3.  <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 3.</u>

| 3. The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base. | As can be seen in FIG. 2, the members of supporting frame 1, foundation portions 21 and connection plates 22, have axes that extend parallel to a plane of the base. |
| --- | --- |

-17-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

4. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 4.

| 4. The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches. | The base disclosed in the '663 patent has a height of 20 – 40 cm (7.9 - 15.7 inches). (See col. 4, lines 10-15). |
|---|---|

5. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 5.

| 5. The bollard structure of claim 1, wherein the plurality of structural members comprises one or more tubular members. | The plurality of members defining support frame 1 are tubular members as shown in annotated FIG. 2 below.<br><br> |
|---|---|

-18-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

6. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 6.</u>

| 6. The bollard structure of claim 5, wherein at least one tubular member comprises a pipe. | FIG 2. discloses that the tubular member of supporting frame 1 is a pipe with a square cross-section. |
|---|---|

7. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 7.</u>

| 7. The bollard structure of claim 5, wherein at least one tubular member comprises a tube. | FIG. 2 discloses that the tubular member of supporting frame 1 is a tube with a square cross-section. |
|---|---|

8. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 8.</u>

| 8. The bollard structure of claim 5, wherein at least one tubular member comprises an angle. | The horizontal end surface of the supporting frame 1 defines an angle with the flange 11 as shown in annotated FIG. 2 below. The grooves 23 (e.g., channels) on the upper surface of the foundation portions 21 also define angles. |
|---|---|

-19-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



9. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 9.

| 9. The bollard structure of claim 5, wherein at least one tubular member comprises a channel. | The first structural member defined by a tubular member of supporting frame 1 and its corresponding foundation portion 21 include grooves 23 (e.g., channels) on the upper surface of the foundation portion 21, as shown in annotated FIG. 2 below. |
|---|---|

-20-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



10. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 10.

| 10. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube. | The plurality of members defining support frame 1 include tubes as shown in annotated FIG. 2 below. |
|---|---|

-21-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG, 2

11. Pertinency and manner of applying the prior art disclosed in the '663 patent to
claim 11.

| 11. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one pipe. | The plurality of members defining support frame 1 include pipes as shown in annotated FIG. 2 below. |
|---|---|

-22-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



12. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 12.

| 12. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one angle. | The horizontal end surface of the supporting frame 1 defines an angle with the flange 11 as shown in annotated FIG. 2 below. The grooves on the upper surface of the foundation portions 21 also define angles. |
|---|---|

-23-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 2

13. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 13.</u>

| 13. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one channel. | The first structural member defined by a member of supporting frame 1 and its corresponding foundation portion 21 include grooves 23 (e.g., channels) on the upper surface of the foundation portion 21, as shown in annotated FIG. 2 below. |
|---|---|

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



14. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 14.

| 14. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate. | The foundation portions 21 and connection plates 22 are structural members and are plates. |
| --- | --- |

15. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 15.

| 15. The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel | The supporting frame 1 and foundation portions 21 are structural members and are steel members. (See col. 2, lines 58-62). |
| --- | --- |

-25-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| members. | |

16. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 16.

| | |
|---|---|
| 16. A bollard structure comprising: | The foundation and vertical supports disclosed in FIGS. 2, 3 and 7 and described on column 2, line 58 to column 2, line 36) are capable of acting as a bollard structure. |
| a plurality of bollards; | The vertical supports 3, including L- shaped legs 31, as shown in annotated FIG. 3 below, FIG. 7 and described on column 3, lines 43-55, will act as bollards if they were to be hit by a car.<br><br> |
| a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | The combination of supporting frame 1, foundation portions 21 and connection plates 22 define a foundation or base having opposed ends defined by opposite members of supporting frame 1 as shown in annotated FIG. 2 below and described on column 3, lines 15-36. Furthermore, as can be seen from annotated FIG. 2 |

-26-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | below and described on column 2, line 58 to column 3, line 37, the foundation or base includes a plurality of structural members (members of supporting frame 1, foundation portions 21, and connection plates 22) which intersect and are connected together (i.e., tied together). Moreover, according the '865 patent "In its most basic form the bollard system would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards. The plate would need a minimum depth 5" to qualify as a DOS rated system. The cross pieces are inherent in the continuous plate. Still another basic configuration of the bollard system of this invention is to bolt separate thick pieces of steel to continuous cross plates, and to have the bollard set inside that construction" (column lines 48-54). As such, according to the '865 patent, the tied together structural members are inherent in a continuous plate structure. Thus, the rectangular foundation 2 (combination of foundation portions 21 and connection plates 22) which is a continuous plate structure inherently discloses structural members that are tied together. |

-27-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | for each vertical support 3 including L- shaped legs 31 (bollard), at least one first structural member (member of supporting frame 1 in combination with its corresponding foundation portion 21 as shown in annotated FIG. 2 below) extends from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends. |

-28-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

<table>
<tr><td></td><td><br><br>The mirror configuration exists for the second vertical support 3 (i.e., the second bollard) as shown in FIGS. 3 and 7.</td></tr>
<tr><td>at least one structural member extending to intersect with the at least one first structural member,</td><td>a member of supporting frame 1 defines a structural member that extends to intersect with the combination of another member of supporting frame 1 and its corresponding foundation portion 21 which combination defines a first structural member as shown in the annotated FIG. 2 below.</td></tr>
</table>

-29-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | each vertical support 3, including L- shaped legs 31, (bollard) is secured via connection plates 22 to each of the foundation portions 21 which along with a member of the supporting frame 1 define a first structural member. Each vertical support 3, including L- shaped legs 31, (bollard) extends upwardly from the base (defined by supporting frame 1, foundations portions 21 and connection plates 22) as shown in annotated FIG. 2, below, so as to transmit forces applied to vertical support to the base (column 5, lines 6-19). |

-30-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  The mirror configuration exists for the second vertical support 3 (i.e., the second bollard) as shown in FIGS. 3 |
| wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and | the base (supporting frame 1 in combination with foundation portions 21 and connection plate 22) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade (see col. 1, lines 25-31; col. 4, lines 10-15). |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted | A member of supporting frame 1 and its corresponding foundation portion 21 (including grooves 23) define a first structural member as shown in annotated FIG. 2 below |

-31-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.



is tied with the at least one structural member (another member of supporting frame 1 shown in annotated FIG. 2 below)



-32-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | and they retain supporting media (e.g., asphalt) over the foundation portions and connection members and within grooves 23, as shown, for example in FIGS. 3 and 7 such that rotation is resisted (see column 2, lines 24-57 and annotated FIG. 3 below)<br><br> |

17. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 17.</u>

| 17. The bollard structure of claim 16, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | A member of supporting frame 1 defines one of the opposed ends as shown in annotated FIG. 2 below. |
|---|---|

-33-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



18. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 18.

| 18. The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and | The structure disclosed in the '663 patent including the vertical supports 3 with L- shaped legs 31 will resist impact along a direction of expected impact which is parallel to the first direction, as for example shown in annotated FIG. 2, below. |
|---|---|

-34-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| wherein each of the plurality of bollards is secured to at least one structural member that extends in the first direction. | Each vertical support 3 including L- shaped legs 31 (bollard) is secured to the foundation portion 21 and its corresponding member of supporting frame 1 (the foundation portion 21 and its corresponding member of the supporting frame 1 together define a structural member) extending along the first direction as shown in annotated FIG. 2 below. |

-35-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 2

19. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 19.

| 19. The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base. | The structural members of supporting frame 1 and foundation portions 21 and connection plates 22 have axes that extend parallel to a plane of the base (FIG. 2). |
|---|---|

20. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 20.

| 20. The bollard structure of claim 16 wherein the base has a height of 3 inches to | The base disclosed in the '663 patent has a height of 20 – 40 cm (7.9 - 15.7 inches).  (See col. 4, lines 10-15). |
|---|---|

-36-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| 14 inches. | |
|---|---|

21. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 21.

| 21. The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members. | The plurality of members defining support frame 1 include tubular members as shown in annotated FIG. 2 below.<br> |
|---|---|

22. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 22.

| 22. The bollard structure of claim 21, wherein at least one tubular member comprises a pipe. | FIG. 2 discloses that the tubular member is a pipe with a square cross-section. |
|---|---|

-37-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

23. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 23.

| 23. The bollard structure of claim 21, wherein at least one tubular member comprises a tube. | FIG. 2 discloses that tubular member is a tube with a square cross-section. |
|---|---|

24. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 24.

| 24. The bollard structure of claim 21, wherein at least one tubular member comprises an angle. | The horizontal end surface of the supporting frame 1 defines an angle with the flange 11 as shown in annotated FIG. 2 below. The grooves 23 on the upper surface of the foundation portions 21 also define angles. |
|---|---|

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

25. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 25.

| 25. The bollard structure of claim 21, wherein at least one tubular member comprises a channel. | The first structural member defined by a tubular member of supporting frame 1 and its corresponding foundation portion 21 include grooves 23 (e.g., channels) on the upper surface of the foundation portion 21, as shown in annotated FIG. 2 below.  |
| --- | --- |

26. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 26.

| 26. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube. | The plurality of members defining support frame 1 include tubes as shown in annotated FIG. 2 below. |
| --- | --- |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



27. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 27.

| 27. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one pipe. | The plurality of members defining support frame 1 include pipes as shown in annotated FIG. 2 below. |
|---|---|

-40-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



28. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 28.</u>

| 28. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one angle. | The horizontal end surface of the supporting frame 1 defines an angle with the flange 11 as shown in annotated FIG. 2 below. The grooves 23 (e.g., channels) on the upper surface of the foundation portions 21 also define angles. |
|---|---|

-41-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



29. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 29.

| 29. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one channel. | The first structural member defined by a member of supporting frame 1 and its corresponding foundation portion 21 include grooves 23 (e.g., channels) on the upper surface of the foundation portion 21, as shown in annotated FIG. 2 below. |
|---|---|

-42-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



30. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 30.

| 30. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate. | The foundation portions 21 and connection plates 22 are structural members and are plates. |
| --- | --- |

31. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 31.

| 31. The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members. | The supporting frame 1 and foundation portions 21 are structural members and are steel members. (See col. 2, lines 58-62). |
| --- | --- |

-43-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

32. Pertinency and manner of applying the prior art disclosed in the '663 patent and the '715 patent to claim 32.

| 32. The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. | The '715 patent discloses a gridwork 10 that can be used with asphaltic concrete (column 7, lines 54-57) and in concrete and asphalt road constructions (column 8, lines 36-39). Thus, the gridwork 10 disclosed in the '715 patent can be used with the foundation or base, defined by the supporting frame 1 and foundation portions 21 and connection plates 22 in the '663 patent, to reinforce such foundation when embedded in the asphalt. Such gridwork can coextensively extend with a foundation portion 21 to which the vertical support 3, including L-shaped legs 31, (bollard) is secured. |
|---|---|

33. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 33.

| 33. A bollard structure comprising: | The foundation and vertical supports disclosed in FIGS. 2, 3 and 7 and described on column 2, line 58 to column 2, line 36) are capable of acting as a bollard structure. |
|---|---|
| a plurality of bollards; and | The vertical supports 3 including L- shaped legs 31, as shown in annotated FIG. 3 below, FIG. 7 and described on column 3, lines 43-55, will act as bollards if they were to be hit by a car. |

-44-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  FIG.3 |
| a base comprising opposed ends and a plurality of members which intersect and are tied together, | The combination of supporting frame 1, foundation portions 21 and connection plates 22 define a foundation or base comprising opposed ends defined by opposite members of supporting frame 1 as shown in annotated FIG. 2 below and described on column 3, lines 15-36. Furthermore, as can be seen from annotated FIG. 2 below and described on column 2, line 58 to column 3, line 37, the foundation or base includes a plurality of structural members (members of supporting frame 1, foundation portions 21, and connection plates 22) which intersect and are connected together (i.e., tied together). Moreover, according the '865 patent "In its most basic form the bollard system would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards. The plate would need a minimum depth 5" to qualify as a DOS rated system. The cross pieces are inherent in the continuous plate. Still another |

-45-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | basic configuration of the bollard system of this invention is to bolt separate thick pieces of steel to continuous cross plates, and to have the bollard set inside that construction" (column lines 48-54). As such, according to the '865 patent, the tied together structural members are inherent in a continuous plate structure. Thus, the rectangular foundation 2 (combination of foundation portions 21 and connection plates 22) which is a continuous plate structure inherently discloses structural members that are tied together.<br><br> |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed | for each vertical support 3 including L- shaped legs 31 (bollard), at least one first structural member (member of supporting frame 1 in combination with its corresponding foundation portion 21 as shown in annotated FIG. 2 below) extends from a first of the opposed ends of the base to a second of the opposed ends of the base in a |

-46-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| ends of the base in a first direction intersecting with the opposed ends, and | first direction intersecting with the opposed ends. |
|---|---|
| | FIG. 2 — Bollard, 32, 3, 31, 311, First Structural Member, Second Opposed End (Not Shown), 21, 23, 22, 21, 23, 1, 11, First Structural Member, First Direction, First Opposed End, First Direction<br><br>The mirror configuration exists for the second vertical support 3 (i.e., the second bollard) as shown in FIGS. 3 and 7. |
| at least one structural member extending to intersect with the at least one first structural member; | a member of supporting frame 1 defining a structural member extends to intersect with the combination of another member of supporting frame 1 and its corresponding foundation portion 21 which combination defines a first structural member as shown in the annotated FIG. 2 below. |

-47-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

<table>
<tr>
<td></td>
<td><br>FIG. 2</td>
</tr>
<tr>
<td>each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;</td>
<td>each vertical support 3 including L- shaped legs 31 (bollard) is secured via connection plates 22 to each of the foundation portions 21 which along with a member of the supporting frame 1 define the one first structural member. Each vertical support 3 (bollard) extends upwardly from the base (defined by supporting frame 1, foundations portions 21 and connection plates 22) as shown in annotated FIG. 2 below, so as to transmit forces applied to vertical support to the base (column 5, lines 6-19).</td>
</tr>
</table>

-48-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 2

The mirror configuration exists for the second vertical support 3 (i.e., the second bollard) as shown in FIGS. 3

| at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured; | Connection plate 22 is a plate member (and one of the plurality of members) and has a side parallel to the first opposed end defined by a member of supporting frame 1 of the foundation or base as shown in annotated FIG. 2 below.  Thus, connection plate 22 is a member that extends parallel to one of the opposed ends of the base. The first vertical support 3 including L- shaped legs 31 (first bollard) is connected to a first foundation portion 21 forming the first structural member.  Similarly, a second vertical support 3 (the second bollard) is connected to a second foundation portion 21 forming the second structural member, as shown in annotated FIGS. 2 and 7 below.  The connection plate 22 (the member) extends from the first foundation portion 21 forming the first |

-49-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | structural member to the second foundation portion 21 forming the second structural member and is connected to such foundation portions.  |
| wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards | the base (supporting frame 1 in combination with foundation portions 21 and connection plate 22) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade (see col. |

-50-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| extending above grade of the excavation; and | 1, lines 25-31; col. 4, lines 10-15). |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | A member of supporting frame 1 and its corresponding foundation portion 21 including grooves 23 defining a first structural member as shown in annotated FIG. 2 below  is tied with the at least one structural member (another member of supporting frame 1 shown in annotated FIG. 2 below) |

-51-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 2

and they retain supporting media (e.g., asphalt) over the foundation portions 21 and within grooves 23, as shown, for example in FIGS. 3 and 7 such that rotation is resisted (see column 2, lines 24-57 and annotated FIG. 3 below).



FIG. 3

-52-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

34. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 34.

| | |
|---|---|
| 34. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member. | The connection plate 22 (member) which extends between the structural member (a member of supporting frame 1 and its corresponding foundation portion 21) to which the first vertical support 3 including L- shaped legs 31 (first bollard) is connected and the structural member (another opposite member of the supporting frame 1 and its corresponding foundation portion 21) to which the second vertical support 3, including L-shaped legs 31, (second bollard) is connected is a structural member as shown in annotated FIG. 2 below.<br><br> |

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

35. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent and the '715 patent to claim 35.</u>

| 35. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. | the '715 patent discloses a gridwork 10 that can be used with asphaltic concrete (column 7, lines 54-57) and in concrete and asphalt road constructions (column 8, lines 36-39).  Thus, the gridwork 10 disclosed in the '715 patent can be used with the structure, defined by the vertical supports 3, including L-shaped legs 31, supporting frame 1, foundation portions 21 and connection plates 22 in the '663 patent to reinforce such structure when embedded in the ground such that a member of the gridwork (i.e., the rebar grillage) extends between a structural member to which a first vertical support 3 including L- shaped legs 31 (first bollard) is secured and a structural member to which a second structural support 3 including L- shaped legs 31 (second bollard) adjacent to the first structural support is secured forming a structural member. |
|---|---|

36. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 1.</u>

| 1. A bollard structure comprising: | The '408 publication discloses a vehicle barrier system including a plurality of posts 14 (i.e., bollards). |
|---|---|
| at least one bollard; and | at least one post 14 (e.g., bollard) is shown in annotated FIG. 5 of the '408 publication below. |

-54-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | <br>FIG. 5 |
| a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | annotated FIG. 5 of the '408 publication, shown below, discloses a base (reaction mass 12) comprising opposed ends (ends defined by the beam or forward channel 42 and beam or rearward channel 44) and a plurality of structural members (beams 42, 44, 50 and 52) which intersect and are tied together. (See paragraphs 0012 and 0029 which describe that beams 42-54 are welded together). |

-55-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
|  | |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | As shown in annotated FIG. 5 of the '408 publication below, a first structural member (beam 50 or 52) extends from a first of the opposed ends (end defined by the beam or rearward channel 44) to a second of the opposed ends (beam or forward channnel 42) of the base in a first direction and intersects the opposed ends. |

-56-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| at least one structural member extending to intersect with the at least one first structural member; | Beams 42 and 44 are structural members that extend and intersect with beams 50 and 52 which define a first structural member as shown in annotated FIG. 5 below.<br><br> |
| each bollard being secured to at least one of the at least one first structural member and the at least one | each bollard (post 14) being secured to at least one of the at least one first structural member (beam 50 or 52) for the respective post 14 (bollard) and extends upwardly from the reaction mass 12 (base) so as to transmit forces |

-57-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | applied to the at least one post 14 (bollard) to the reaction mass 12 (base) (See paragraphs 0012 and 0027 of the '408 publication which disclose that at least one post 14 (i.e., one bollard) is immovably anchored to the reaction mass 12 (i.e., the base)). |
| wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and | the base (reaction mass 12) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade. (See paragraph 0006, 0031 of the '408 pub which describe the disclosed barrier system is a shallow ground mounted system. FIGS. 1, 2, 8, 9 of this '408 publication disclose that the posts 14 (i.e., bollards) extend above ground). |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | the beam 50 or 52 (at least one first structural member) and the beam 42 or 44 (at least one structural member) or both are welded (tied) together as disclosed in paragraphs 0012 and 0029.   In addition, supporting media such as concrete may be received within the interior of the base according to paragraphs 0003, 0012 and 0030 of the '408 publication. Thus, the beams 42, 44, 50, and 52 (structural members) disclosed in the '408 publication retain supporting media such that rotation is resisted of a post 14 (bollard) and the reaction mass 12 (base) from an impact against the post 14 (bollard). |

-58-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

37. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 2.

| | |
|---|---|
| 2. The bollard structure of claim 1, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | As shown on the annotated FIG. 5 of the '408 publication below, structural members (beams 42, 44) form the opposed ends.<br><br> |

38. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 3.

| | |
|---|---|
| 3. The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base. | As shown below on the annotated FIG. 5 of the '408 publication below, the beams 42, 44, 50 and 52 have axes that extend parallel to a plane of the reaction mass 12 (base). |

-59-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 5

39. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 4.

| | |
|---|---|
| 4. The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches. | The reaction mass 12 (base) as disclosed in paragraph 0027 of the '408 publication has a depth of 15 inches. Also, the cross beams 50, 52 have a height of 6 inches as described in paragraph 0027. The height of the base appears to be a matter of design choice as long as it remains shallow. No advantages were identified in the '408 publication that stemmed from the base having a height of up to 14 inches that would not be available if the base had a height of 15 inches. |

40. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 5.

| | |
|---|---|
| 5. The bollard structure of claim 1, wherein the plurality of structural members | The plurality of structural members include beams which define angles and/or channels (paragraph 0028 of the '408 publication also describes beams 42 and 44 as |

-60-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| comprises one or more tubular members. | forward and rear channels).  According to claims 8 and 9 of the '865 patent, tubular members include angles and channels.   Thus, by disclosing beams which include angles and/or channels, the '408 publication discloses tubular members. |

41. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 6.

| | |
|---|---|
| 6. The bollard structure of claim 5, wherein at least one tubular member comprises a pipe. | No advantage has been identified in the '865 patent when using a tubular member that is a pipe versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to pipes.  In the alternative use of a pipe instead of a beam is matter of design choice. |

42. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 7.

| | |
|---|---|
| 7. The bollard structure of claim 5, wherein at least one tubular member comprises a tube. | No advantage has been identified in the '865 patent when using a tubular member that is a tube versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to tubes.  In the alternative use of a tube instead of a beam is matter of design choice. |

43. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 8.

| | |
|---|---|
| 8. The bollard structure of claim 5, wherein at least one | The tubular members, i.e., the beams 42, 44, 50 and 52 disclosed in the '408 publication each define an angle. |

-61-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| tubular member comprises an angle. | For example, beam 42 is described as a forward channel and beam 44 as a rearward channel. Channels define opposite angles. Moreover, no advantage has been identified in the '865 patent in using an angle, channel or beam. Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication are also equivalent to angles. In the alternative use of an angle is a matter of design choice. |
|---|---|

44. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 9.</u>

| 9. The bollard structure of claim 5, wherein at least one tubular member comprises a channel. | The beams 42, 44, 50 and 52 disclosed in the '408 publication may each define a channel (paragraph 0028 of the '408 publication). |
|---|---|

45. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 10.</u>

| 10. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube. | No advantage has been identified in the '865 patent when using a structural member that is a tube versus one that is an angle, channel or beam. Thus, the beams 42, 44, 50 and 52 disclosed in the ''408 publication, are equivalent to tubes. In the alternative use of a tube instead of a beam is matter of design choice. |
|---|---|

46. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 11.</u>

| 11. The bollard structure of claim 1, wherein the plurality | No advantage has been identified in the '865 patent when using a structural member that is a pipe versus one |
|---|---|

-62-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| of structural members comprises at least one pipe. | that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to pipes.  In the alternative use of a tube instead of a beam is matter of design choice. |

47. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 12.</u>

| 12. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one angle. | The tubular members, i.e., the beams 42, 44, 50 and 52, disclosed in the '408 publication each define an angle. For example, beam 42 is described as a forward channel and beam 44 as a rearward channel.  Channels define opposite angles.  Moreover, no advantage has been identified in the '865 patent in using an angle, channel or beam.  Thus, the beams disclosed in the '408 publication are also equivalent to angles.  In the alternative use of an angle is a matter of design choice. |

48. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 13.</u>

| 13. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one channel. | The beams 42, 44, 50 and 52 disclosed in the '408 publication may each define a channel (paragraph 0028 of the '408 publication). |

49. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 14.</u>

| 14. The bollard structure of | The beams 42, 44, 50 and 52 disclosed in the '408 |

-63-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| claim 1, wherein the plurality of structural members comprises at least one plate. | publication each define a plate on their upper portions. |

50. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 15.</u>

| | |
|---|---|
| 15. The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members. | The beams 42, 44, 50 and 52 include steel (paragraphs 0003, 0027, and 0028 of the '408 publication). |

51. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 16.</u>

| | |
|---|---|
| 16. A bollard structure comprising: | The '408 publication discloses a vehicle barrier system including a plurality of posts 14 (i.e., bollards). |
| a plurality of bollards; and | A plurality of posts 14 (e.g., bollards) are shown in annotated FIG. 5 of the '408 publication below. |

-64-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | <br>FIG. 5 |
| a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | As shown in annotated FIG. 5 of the '408 publication below, a reaction mass 12 (e.g., base) comprises opposed ends (ends defined by the beam or forward channel 42 and beam or rearward channel 44) and a plurality of structural members (beams 42, 44, 50 and 52) which intersect and are tied together (paragraphs 0012 and 0029 describe that beams 42-54 are welded together). |

-65-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  FIG. 5 |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | A first structural member (beam 50 or 52) extends from a first of the opposed ends (end defined by the beam or rearward channel 44) to a second of the opposed ends (beam or forward channnel 42) of the reaction mass 12 (base) in a first direction and intersects the opposed ends as shown in annotated FIG. 5 of the '408 publication below. |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| at least one structural member extending to intersect with the at least one first structural member, | Beams 42 and 44 are structural members that extend and intersect with beams 50 and 52 which define a first structural member as shown in annotated FIG. 5 below.<br><br> |
| each of the plurality of bollards being secured to at least one of the at least one | each bollard (post 14) being secured to at least one of the at least one first structural member (beam 50 or 52) for the respective post 14 (bollard) and extends upwardly |

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | from the reaction mass 12 (base) so as to transmit forces applied to the at least one post 14 (bollard) to the reaction mass 12 (base) (See paragraphs 0012 and 0027 of the '408 publication which disclose that at least one post 14 (i.e., one bollard) is immovably anchored to the reaction mass 12 (i.e., the base)). |
| wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and | the base (reaction mass 12) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade.  Paragraph 0006, 0031 of the '408 publication describe that the disclosed barrier system (bollard structure) is a shallow ground mounted system.  FIGS. 1, 2, 8 and 9 of the '408 publication disclose that the posts 14 (bollards) extend above ground. |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against | the beam 50 or 52 (at least one first structural member) and the beam 42 or 44 (at least one structural member) or both are welded (tied) together as disclosed in paragraphs 0012 and 0029.  In addition, supporting media such as concrete may be received within the interior of the base according to paragraphs 0003, 0012 and 0030 of the '408 publication. Thus, the beams 42, 44, 50, and 52 (structural members) disclosed in the '408 publication retain supporting media such that rotation is resisted of a post 14 (bollard) and the reaction mass 12 (base) from an impact against the post 14 (base). |

-68-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| the bollard or bollards. | |
|---|---|

52. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 17.</u>

| 17. The bollard structure of claim 16, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | As shown below on the annotated FIG. 5 of the '408 publication below, beams 42 and 44 (structural members) form opposite ends.<br><br> |
|---|---|

53. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 18.</u>

| 18. The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of | As shown in annotated FIG. 5 below and in FIG. 1 of the '408 publication, each post 14 (bollard) is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and each of the plurality of posts 14 is secured to at least one structural member (50 or 52) that extends in the first direction. |
|---|---|

-69-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| expected impact, and wherein each of the plurality of bollards is secured to at least one structural member that extends in the first direction. |  |

54. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 19.

| | |
|---|---|
| 19. The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base. | Beams 42, 44, 50 and 52 (intersecting structural members) have axes that extend parallel to a plane of the reaction mass 12 (base).  |

-70-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

55. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 20.</u>

| 20. The bollard structure of claim 16 wherein the base has a height of 3 inches to 14 inches. | The base as disclosed in paragraph 0027 of the '408 publication has a depth of 15 inches. Also, the cross beams 50, 52 have a height of 6 inches as described in paragraph 0027. The height of the base appears to be a matter of design choice as long as it remains shallow. No advantages were identified in the '408 publication that stemmed from the base having a height of up to 14 inches that would not be available if the base had a height of 15 inches. |
|---|---|

56. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 21.</u>

| 21. The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members. | The beams 42, 44, 50, and 52 define angles and/or channels (paragraph 0029 of the '408 publication). According to claims 8 and 9 of the '865 patent tubular members include angles and channels. Thus, the '408 publication discloses tubular members. |
|---|---|

57. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 22.</u>

| 22. The bollard structure of claim 21, wherein at least one tubular member comprises a pipe. | No advantage has been identified in the '865 patent when using a tubular member that is a pipe versus one that is an angle, channel or beam. Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to pipes. In the alternative use of a tube instead of a beam is matter of design choice. |
|---|---|

-71-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

58. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 23.

| 23. The bollard structure of claim 21, wherein at least one tubular member comprises a tube. | No advantage has been identified in the '865 patent when using a tubular member that is a tube versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to tubes.  In the alternative use of a tube instead of a beam is matter of design choice. |
| --- | --- |

59. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 24.

| 24. The bollard structure of claim 21, wherein at least one tubular member comprises an angle. | The tubular members, i.e., the beams 42, 44, 50 and 52, disclosed in the '408 publication each define an angle. For example, beam 42 is described as a forward channel and beam 44 as a rearward channel.  Channels define opposite angles.  Moreover, no advantage has been identified in the '865 patent in using an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication are equivalent to angles.  In the alternative use of an angle is a matter of design choice. |
| --- | --- |

60. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 25.

| 25. The bollard structure of claim 21, wherein at least one tubular member comprises a channel. | The tubular members, i.e., the beams, disclosed in the '408 publication each define a channel (paragraph 0028 of the '408 publication) |
| --- | --- |

-72-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

61. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 26.</u>

| 26. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube. | No advantage has been identified in the '865 patent when using a structural member that is a tube versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the ''408 publication, are equivalent to tubes.  In the alternative use of a tube instead of a beam is matter of design choice. |
| --- | --- |

62. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 27.</u>

| 27. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one pipe. | No advantage has been identified in the '865 patent when using a structural member that is a pipe versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 pub, are equivalent to pipes.  In the alternative use of a tube instead of a beam is matter of design choice. |
| --- | --- |

63. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 28.</u>

| 28. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one angle. | The beams 42, 44, 50 and 52 disclosed in the '408 publication each define an angle.  For example, beam 42 is described as a forward channel and beam 44 as a rearward channel.  Channels define opposite angles.  Moreover, no advantage has been identified in the '865 patent in using an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 |
| --- | --- |

-73-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | publication are equivalent to angles.  In the alternative use of an angle is a matter of design choice. |
|---|---|

64. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 29.</u>

| 29. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one channel. | The beams 42, 44, 50 and 52 disclosed in the '408 publication each define a channel (paragraph 0028 of the '408 publication). |
|---|---|

65. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 30.</u>

| 30. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate. | The beams 42, 44, 50 and 52 disclosed in the '408 publication each define a plate on their upper portions. |
|---|---|

66. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 31.</u>

| 31. The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members. | The beams 42, 44, 50 and 52 include steel (paragraphs 0003, 0027, and 0028 of the '408 publication). |
|---|---|

-74-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

67. Pertinency and manner of applying the prior art disclosed in the '408 publication, the '540 patent and the '876 publication to claim 32.

| 32. The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. | The '540 patent discloses use of a rebar cage including tie rods 11-14 to support a plurality of barrier elements, extending upwardly above a foundation block. The '876 publication discloses on paragraph 0075 a wide and shallow structure of rebar reinforced concrete. Thus, it would have been obvious at the time the invention was made to include the rebar cage disclosed in the '540 patent, or the rebar reinforcement disclosed in the '876 publication, to reinforce the reaction mass 12 (base) disclosed in the '408 publication to which a post 14 (bollard) is secured and to have tie rods or rebar members forming rebar cage to extend coextensively with at least a portion of the reaction mass 12 (base) that includes the structural member to which a post 14 (bollard) is secured. |
|---|---|

68. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 33.

| 33. A bollard structure comprising: | The '408 publication discloses a vehicle barrier system including a plurality of posts 14 (i.e., bollards). |
|---|---|
| a plurality of bollards; and | A plurality of posts 14 (bollards) are shown in annotated FIG. 5 of the '408 publication. |

-75-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

<table>
<tr>
<td></td>
<td><br>FIG. 5</td>
</tr>
<tr>
<td>a base comprising opposed ends and a plurality of members which intersect and are tied together,</td>
<td>Annotated FIG. 5 of the '408 publication, below, discloses reaction mass 12 (base) comprising opposed ends (ends defined by the beam or forward channel 42 and beam or rearward channel 44) and a plurality of beams 42, 44, 50 and 52 (structural members) which intersect and are welded (tied) together (paragraphs 0012 and 0029 describe that the beam 42-54 are welded together).<br><br><br>FIG. 5</td>
</tr>
</table>

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | As shown in annoted FIG. 5 of the '408 publication below, a first structural member (beam 50 or 52) extends from a first of the opposed ends (end defined by the beam or rearward channel 44) to a second of the opposed ends (beam or forward channnel 42) of the base in a first direction and intersects the opposed ends.<br><br> |
| at least one structural member extending to intersect with the at least one first structural member; | Annotated FIG. 5 of the '408 publication shown below, discloses beam 42 or 44 (one structural member) extending to intersect with the beams 50 or 52 (one first structural member). |

-77-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | FIG. 5 |
| each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | Annotated FIG. 5 of the '408 publication, shown below, discloses that the posts 14 (bollards) are secured to beams 50, 52 (at least one structural member) and they extend upwardly from the reaction mass 12 (base) to transmit forces applied at the post 14 (bollard) to the reaction mass 12 (base).  Paragraphs 0012 and 0027 of the '408 publication disclose that at least one post 14 (i.e., one bollard) is immovably anchored to the reaction mass 12 (i.e., the base). |

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

|  |  |
|---|---|
| |  |
| at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured; | As shown in annotated FIG. 5 of the 408 publication below, beam or rearward channel 44 and beam or forward channel 42 (a member) extends parallel to the first and second opposed ends (ends defined by the beam or forward channel 42 and beam or rearward channel 44) and between beams 50 and 52 (structural members) to which the posts 14 (bollards) are secured.<br><br> |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and | the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade. (See paragraph 0006, 0031 of the '408 publication which describe that the disclosed barrier system is a shallow ground mounted system) |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | the beam 50 or 52 (at least one first structural member) and the beam 42 or 44 (at least one structural member) or both are welded (tied) together as disclosed in paragraphs 0012 and 0029.   In addition, supporting media such as concrete may be received within the interior of the base according to paragraphs 0003, 0012 and 0030 of the '408 publication. Thus, the beams 42, 44, 50, and 52 (structural members) disclosed in the '408 publication retain supporting media such that rotation is resisted of a post 14 (bollard) and the reaction mass 12 (base) from an impact against the post 14 (base). |

69. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 34.</u>

| | |
|---|---|
| 34. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first | As shown in annotated FIG. 5 of the '408 publication below, the beam 42 or 44 (member) extends between adjacent beams 50 and 52 (structural members) to which the posts 14 (bollards) are secured is a structural member. |

-80-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member. |  FIG. 5 |

70. Pertinency and manner of applying the prior art disclosed in the '408 publication, the '540 patent, and the '876 publication to claim 35.

| 35. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. | The '540 patent discloses use of a rebar cage including tie rods 11-14 to support a plurality of barrier elements, extending upwardly above a foundation block. The '876 publication discloses on paragraph 0075 a wide and shallow structure of rebar reinforced concrete. Thus, it would have been obvious at the time the invention was made to include the rebar cage disclosed in the '540 patent, or the rebar reinforcement disclosed in the '876 publication, to reinforce the reaction mass 12 (base) disclosed in the '408 publication to which a post 14 (bollard) is secured. |
|---|---|

-81-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

### IV.    CONCLUSION

For the reasons given above, reexamination of claims 1-35 of U.S. Patent 8,215,865 is requested.

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP


By /Constantine Marantidis/
Constantine Marantidis
Reg. No. 39,759
626/795-9900

CM/rl

110257149.2

# EXHIBIT E

**Exhibit E**
**Preliminary Invalidity Chart for U.S. Patent No. 8,215,865**
**In View of "Darcy" and "DSC501"**

In addition to the combinations set forth in Exhibit D, incorporated herein by reference, the asserted claims identified below of U.S. Patent No. 8,215,865 (the "'865 Patent") are obvious under 35 U.S.C. § 103, both under U.S. Patent Publication No. 2006/0090408 ("Darcy"), both individually and in view of the structure of Delta's DSC501 barriers ("DSC501"), which is prior art under 35 U.S.C. § 102 because the DSC501 barriers were on sale, sold, and in public use, and described and shone in a published brochure at least as early as 2002, which is more than one year before the earliest possible priority date of July 26, 2004, for the claims of the '865 Patent. Analysis of the independent claims is set forth in Exhibit D, which is not reproduced below.

Delta Scientific Corporation reserves the right to amend these preliminary invalidity contentions based on information obtained through research, discovery, expert opinions, claim construction contentions, or upon issuance of the Court's claim construction order in this case.

| Asserted Claim of '865 Patent | Prior Art |
| --- | --- |
| 5. The bollard structure of claim 1, wherein the plurality of structural members comprise one or more tubular members. | As discussed at Exhibit D, this feature is anticipated by and/or obvious over Darcy. Moreover, such an arrangement would be obvious in view of DSC501. Below are images of a DSC501 barrier taken from a 2002 brochure entitled "Advanced Highest security, high duty cycle counter-terrorist protection!" |

110907281.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  The image above is a side perspective view of the DSC501 in its open position. Rebar rods extend through generally rectangular holes in the interior I-beams and the C-channels which form the side walls.<br><br>For convenience, a drawing showing aspects of the base of the DSC501 barrier are provided below. |

110907281.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  **Exploded view of DSC501 base (with added labeling) (engineering drawing)** <br><br> The DSC barrier demonstrates numerous concepts that were well known and used in commercial practice in 2002 and prior. These included the use of tubular steel, steel I- |

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | Beams and C-channel beams in the design of barrier bases.<br><br>The portions of the square steel tubing and rebar that extend laterally outwardly into adjacent concrete add additional strength and stability to the barrier.<br><br>The DSC501 makes use of a long and wide but shallow (18 inches) base. The shallow depth of the base which allows it to be used in applications where deep trenching is not a practical option, e.g. locations where utility lines and the like may be buried.<br><br>A person of ordinary skill in the art would have been motivated to combine Darcy and the DSC501 design to provide additional strength and stability to the barrier. |
| 7. The bollard structure of claim 5, wherein at least one tubular member comprises a tube. | **See 5.** |
| 10. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube. | **See 5.** |
| 21. The bollard structure of claim 16, wherein the plurality of structural members | **See 5.** |

110907281.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| comprise one or more tubular members. | |
| 23. The bollard structure of claim 21, wherein at least one tubular member comprises a tube. | **See 5.** |
| 26. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube. | **See 5.** |
| 32. The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. | As discussed at Exhibit D, to the extent Darcy does not disclose a rebar member as a structural member that extends between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured, such an arrangement would be obvious in view of DSC501. <br><br> Moreover, a "rebar grillage comprising intersecting and tied together rebar members that would extend coextensively with at least a portion of the base that includes a structural member to which a bollard is secured" is obvious in view of the DSC501 barrier, discussed below with respect to claim 35. The DSC501 includes a rebar grillage comprising intersecting and tied together rebar members in the interior of the base which extend laterally across the base and out of the base through portals in the side walls of the base. It would have been obvious to a person of ordinary skill in the art to add rebar grillage to the interior of the Turpin base to add weight to the base and to |

110907281.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | more extensively tie the structural members together to more thoroughly dissipate the forces received by the base during a collision |
| 35. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. | As discussed at Exhibit D, to the extent Darcy does not disclose a rebar member as a structural member that extends between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured, such an arrangement would be obvious in view of DSC501. Below are images of a DSC501 barrier taken from a 2002 brochure entitled "Advanced Highest security, high duty cycle counter-terrorist protection!" The image above is a side perspective view of the DSC501 in its open position. Rebar rods extend through generally rectangular holes in the interior I-beams and the C- |

110907281.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | channels which form the side walls.<br><br>For convenience, drawings showing aspects of the base of the DSC501 barrier are provided below. |

| Asserted Claim of '865 Patent | Prior Art |
| --- | --- |
| |

**Exploded view of DSC501 base (with added labeling) (engineering drawing)** |

110907281.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  <br><br> **Top View of DSC501 base (engineering drawing)** |

110907281.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| |  **3D Image of DSC501 Design** <br><br> Above is a 3D image showing the placement of the rebar in the DSC501.  Cement is poured in the area of the rebar behind the large square steel tube.  The hardened concrete can be seen in the images below, also taken from the 2002 brochure. |

110907281.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | <br>**Images from 2002 Brochure**<br><br>The DSC barrier demonstrates numerous concepts that were well known and used in commercial practice in 2002 and prior.  These included the use of tubular steel, steel I-Beams and C-channel beams in the design of barrier bases.  The addition of cement to the base, or any other media to make the base heavier to improve resistance to linear or rotational movement when a vehicle crashes into the barrier.  The use of rebar in concrete is known to increase its tensile strength. Providing rebar, rebar grillage or a rebar cage that extends between, through and/or around the non-rebar structural steel members assures that the concrete will remain with the non-rebar members if the base is lifted during a collision. |

110907281.1

| Asserted Claim of '865 Patent | Prior Art |
|---|---|
| | The portions of the square steel tubing and rebar that extend laterally outwardly into adjacent concrete add additional strength and stability to the barrier.<br><br>The DSC501 makes use of a long and wide but shallow (18 inches) base.  The shallow depth of the base which allows it to be used in applications where deep trenching is not a practical option, e.g. locations where utility lines and the like may be buried. |

110907281.1

# Exhibit F

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*I hereby certify that this correspondence is being electronically filed with the United States Patent and Trademark Office on March 27, 2020 at or before 11:59 p.m. Pacific Time under the Rules of 37 CFR § 1.8.*

/Rose Liu/
Rose Liu

| | | |
|---|---|---|
| In Re | : | **U.S. Patent No. 8,215,865** |
| Issue Date | : | **July 10, 2012** |
| Filed | : | January 27, 2010 |
| | | |
| Reexamination No. | : | TBD |
| Assignee | : | **RSA Protective Technologies, LLC** |
| Title | : | **ANTI-RAM SYSTEM AND METHOD OF INSTALLATION** |
| Docket No. | : | 184301 |
| Customer No. | : | 23363 |

### REQUEST FOR REEXAMINATION OF U.S. PATENT NO. 8,215,865

**Mail Stop *Ex Parte* Reexam**
Commissioner for Patents                                         Post Office Box 9001
P.O. Box 1450                                          Glendale, CA  91209-9001
Alexandria, VA 22313-1450                                         March 27, 2020

Commissioner:

This is a Request for Ex Parte Reexamination pursuant to 37 CFR § 1.510 of U.S. Patent No. 8,215,865, issued on July 10, 2012, entitled ANTI-RAM SYSTEM AND METHOD OF INSTALLATION.

The Request is made by Delta Scientific Corporation.

-1-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

## I.    IDENTIFICATION OF CLAIMS FOR WHICH REEXAMINATION IS REQUESTED

In accordance with 37 CFR § 1.510, reexamination of claims 1-35 of U.S. Patent No. 8,215,865 is requested in view of the prior art identified in U.S. Patent No. 5,406,663 (the "'663 patent"), U.S. Patent No. 5,836,715 (the "'715 patent"), U.S. Patent Publication No. 2006/0090408 (the "'408 publication), U.S. Patent Publication No. 2002/0073876 ("the '876 publication"), and U.S. Patent No. 3,934,540 ("the '540 patent").

## II.    STATEMENT IDENTIFYING EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY (37 CFR § 1.510(b)(1))

1.    The '663 patent and the '715 patent were not considered by the Examiner of the application that matured as the '865 patent. The '663 patent discloses a road foundation with supports structure that can act as a bollard structure or is equivalent to a bollard structure. The road foundations and supports structure is designed for supporting an elevated road above ground (column 1, lines 8-11) and includes an overall foundation or base having a frame 1 and a rectangular foundation 2 formed by foundation portions 21 and connection plates 22. The overall foundation is installed below grade and vertical supports 3, including L- shaped legs 31, are made of metal, e.g. steel, and are connected to the foundation and extend from the foundation above grade, as for example shown in FIG. 3 and described on column 2, lines 58-67 and column 3 lines 43-52). The vertical supports 3, including L- shaped legs 31, also serve as bollards as they are made of steel and would take an impact from a vehicle and transfer the loads of such impact to the foundation or base so as to prevent their failure and the collapse of the elevated road that they support. Thus, the '663 patent discloses at least one bollard (or an equivalent to a bollard) defined by vertical support member 3, including L-shaped legs 31, made of steel. The '663 patent also discloses on column 2,

-2-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

line 56 to column 3, line 32,  and on FIG. 2, a base (defined by the combination of supporting frame 1, foundation portions 21 and connection plates 22) comprising opposed ends (defined by two opposite members of the supporting frame 1) and a plurality of structural members which intersect and are tied together (the members forming supporting frame 1, the foundation portions 21 and the connection plates 22). The four members are connected to each other forming a rectangular supporting frame 1.  Foundation portions 21 are fastened to two opposite members of the supporting frame 1 which extend perpendicularly from the members of the supporting frame defining the opposed ends (column 3, lines 30-37 and FIG. 2).  The connection plates 22 are fastened to the foundation portions 21 (column 3, lines 15-20).  The '663 patent further discloses for each bollard (vertical support member 3 including L- shaped legs 31) of the bollard structure, at least one first structural member (defined a member of the supporting frame 1 in combination with a foundation portion 21 which is fastened to such member) extends from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction and intersects with the opposed ends (FIG. 2).  The '663 patent further discloses in FIG. 2 that the at least one structural member (defined by a member of the supporting frame 1 defining one of the opposed ends) extends to intersect with the at least one first structural member (defined by the member of the supporting frame 1 in combination with a foundation portion 21 which is fastened to such member).  Each bollard (vertical support 3 including L- shaped legs 31) is secured to a foundation portion 21 which forms at least one of the at least one first structural member and extends upwardly from the base so as to transmit forces applied to the bollard (vertical support 3 including L- shaped legs 31) to the base (column 3, lines 43-52).    According to the '663 patent, the base (the supporting frame 1, the foundation portions 21 and connection plates 22) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade (column 1, lines 25-31; column 4, lines 10-15).  The at least one first structural member or the at least one structural member or both are configured or tied together (the supporting frame 1,

-3-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

foundation portions 21 and connection plates 22 are all tied together) to retain within the base supporting media introduced into the base when the base is mounted in excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.    The foundation portions 21 and the connection plates 22 have grooves (channels) 23 on their upper surface to retain the asphalt (column 3, lines 20-29).

The word "tied" is used only once in the specification of the '865 patent and specifically on column 3, lines 44-46 where it is stated: "The framework means the tubes (or other structural steel elements) tied together to form the grillage."   The specification does not teach how the tying together of the structural members cause the retention of the supporting media and result in the resistance of rotation. Moreover, according the '865 patent "In its most basic form the bollard system would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards.  The plate would need a minimum depth 5" to qualify as a DOS rated system.  The cross pieces are inherent in the continuous plate.  Still another basic configuration of the bollard system of this invention is to bolt separate thick pieces of steel to continuous cross plates, and to have the bollard set inside that construction" (column lines 48-54). As such, according to the '865 patent, the tied together structural members are inherent in a continuous plate structure.  Thus, the rectangular foundation 2 (defined by foundation portions 21 and connection plates 22) which is a continuous plate structure also inherently discloses structural members that are tied together.

In addition, the word "retain" does not appear in the specification of the '865 patent.   On col. 3 lines 51-54, the '865 patent states: "The top surface of the pad is to be formed in such a way to support the materials forming the final finished appearance (non-structural stone pavers or tiles, etc.)"   On col. 7, lines 39 -49 the '865 patent states "FIG. 1 shows an embodiment of the anti-ram system of this invention installed in a shallow trench alongside a sidewalk. The top surface **10** of the base or pad of the anti-

-4-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

ram system is shown recessed below the desired grade level. As shown in FIG. 2, a landscaping surface, such as grass **12** is placed over the top surface **10** of the base or pad. As further shown in FIG. 2, ornamental or functional objects are placed over the bollards **14** shown in FIG. 1. Such objects include lamp posts **16**, waste container **18**, ornaments **20**, and a seat and shelter **22**. The ornamental and functional items disguise the presence of the bollards of the anti-ram system."  Support (not "supporting") media as stated on column 3, lines 8-10 is soil or concrete.  Thus, any media placed on top of the base or any structural member should be construed to be "supporting" media that provides some resistance to rotation.  Thus, the structural members (the supporting frame 1, foundation portions 21 and connection plates 22) disclosed in the '663 patent retain supporting media in the form of asphalt as for example disclosed in the Abstract and on column 3, lines 20-29, such that rotation of the bollard (vertical support 3 including L- shaped legs 31) and the base (supporting frame 1 in combination with the foundation portions 21 and connection plates 22) is resisted.

In order to get the application that matured as the '865 patent allowed and issued, the patentee of the '865 patent in the amendment filed on July 26, 2011, amended all the independent claims, and also added a new independent claim, to include the limitation "and wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards."  The patentee of the '865 patent then argued that cited reference of Reale (U.S. Patent No. 6,702, 512) did not disclose such limitations. Specifically, the patentee argued that "Real '512 does not disclose structure that would resist rotation of the bollard from impact against the bollard, and in fact teaches away from this because the bollard installation 20 is designed so that the bollard 30 rotates from impact, as clearly shown in Figs. 2-3 and 7-8."   The patentee of the '865 patent

-5-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

also argued in the amendment filed on January 24, 2012, that the cited reference of Fuchs, DE 40044851, "does not disclose configuring the members 3 'to retain within the base supporting media introduced into the base when the base is mounted in the excavation'" (page 3 of response filed on January 24, 2012).  As a result, the application was allowed and issued as the '865 patent.  The '663 patent discloses these features that the patentee argued lacked in Reale and in Fuchs.  Thus, the '663 patent raises a substantial new question of patentability. The '663 patent discloses all of the limitations of claims 1-31, 33, and 34 of the '865 patent.  Thus, the '663 patent anticipates claim 1-31, 33 and 34 of the '865 patent.

Moreover, the '715 patent discloses a gridwork 10 that can be used with asphaltic concrete (column 7, lines 54-57) and in concrete and asphalt road constructions (column 8, lines 36-39).  Thus, the gridwork 10 disclosed in the '715 patent can be used with the overall foundation defined by the supporting frame 1 and foundation portions 21 and connection plates 22 to in the '663 to reinforce such structure when embedded in the asphalt.  Thus, the '663 patent in combination with the '715 patent disclose all the limitations of claims 32 and 35 of the '865 patent.  As such the '663 patent in combination with the '715 patent render claims 32 and 35 of the '865 patent obvious.

2.    The '408 publication and the '876 publication were not considered by the Examiner of the application that matured as the '865 patent.    The '540 patent was considered by the Examiner of the application that matured as the '865 patent. The '865 patent claims priority to provisional application No. 60/591,018 filed on July 26, 2004, provisional application No. 60/600,955, filed on August 12, 2004, provisional application No. 60/605,959, filed on August 30, 2004, provisional application No. 60/622,385, filed on October 26, 2004, provisional application No. 60/674,965, filed on April 25, 2005, and provisional application No. 60/679,647, filed on May 9, 2005.  The '865 patent also

-6-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

issued from a continuation of application No. 11,191,251, filed on July 26, 2005, and issued as Patent No. 7,699,558.   True copies of these applications are submitted herewith in Appendix A.

All independent claims of the '865 patent require "wherein the at least one first structural member of the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards."   This limitation was first introduced to the application that matured as the '865 patent in the amendment filed on July 26, 2011.  None of the applications filed before July 26, 2005, described how the structural members "are . . . tied together to retain within the base supporting media . . . such that rotation is resisted of a bollard or bollards and the base . . .".  No description appeared in the applications filed prior to July 26, 2005 that described **how the tying** of the structural members caused such structural members to retain the supporting media within the base such that rotation of the bollard or bollards **was resisted**.  In other words, no description relating to the resistance of rotation due to the tying of the structural members was provided in the applications filed before July 26, 2005.  A description directed the resistance of rotation first appeared in application No. 11,191,251, filed on July 26, 2005. Assuming such description provided support for this limitation, the earliest priority that all the claims of the '865 patent have is July 26, 2005.

The '408 publication was published on May 4, 2006 and has a filing date of February 9, 2005 and a priority date of October 22, 2004, both of which are prior the July 26, 2005 date which is the earliest possible priority date of the claims of the '865 patent.  Thus, the '408 publication is prior art to the '865 patent.

The '408 publication discloses a vehicle barrier system including at least one bollard (post 14), as for example shown in FIG. 5.  It also discloses a base (reaction

-7-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

mass 12) comprising opposed ends (defined by beams 42 and 44) and a plurality of structural members (beams 42-54) which intersect and are tied together (fastened together in any suitable fashion, e.g., bolts, welding (paragraphs 0029)).  The '408 publication further discloses for each bollard (post 14) of the bollard structure at least one first structural member (beam 50 or 52) extends from a first of the opposed ends (beam 44) of the base to a second of the opposed ends (beam 42) of the base in a first direction intersecting with the opposed ends, as for example shown in FIG. 5.  The '408 publication discloses that the at least one structural member (beam 50 or 52) extends to intersect with the at least one first structural member (beam 42 or 44).  Each bollard (post 14) shown in the '408 publication is secured to at least one of the at least one first structural member (beam 50 or 52) of the base for the respective bollard and extends upwardly from the base so as to transmit forces applied to the at least one bollard to the base, as for example shown in FIGS. 1-3 and 6A and described in paragraphs 0027, 0028 and 0029.    The base (reaction mass 12) disclosed in the '408 publication is configured to be mounted in a shallow excavation with the at least one bollard extending above grade, as for example disclosed in paragraphs 0006 and 0031.  The at least one first structural member (beam 50 or 52) or the at least one structural member (beam 42 or 44) or both are configured or tied together (paragraphs 0012, 0023) to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards, as for example disclosed on paragraphs 0012, 0027 and 0030 which describe that the metal framework or the beams which may be filled with concrete as for example shown in FIG. 7 and as such the barrier system would resist rotation from an impact against the bollards (posts 14).  In order to get the application that matured as the '865 patent allowed and issued, the patentee of the '865 patent in the amendment filed on July 26, 2011, amended all the independent claims and also added a new independent claim to include the limitation "and wherein the at least one first structural member or the at least one structural member or both are

-8-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards."  The patentee of the '865 patent then argued that cited reference of Reale (U.S. Patent No. 6,702, 512) did not disclose such limitation. Specifically, the patentee argued that "Real '512 does not disclose structure that would resist rotation of the bollard from impact against the bollard, and in fact teaches away from this because the bollard installation 20 is designed so that the bollard 30 rotates from impact, as clearly shown in Figs. 2-3 and 7-8."    The patentee of the '865 patent also argued in the amendment filed on January 24, 2012, that the cited reference of Fuchs, DE 40044851, "does not disclose configuring the members 3 'to retain within the base supporting media introduced into the base when the base is mounted in the excavation'" (page 3 of response filed on January 24, 2012).   As a result, the application was allowed and issued as the '865 patent.  The '408 publication discloses these features that the patentee argued lacked in Reale and Fuchs.  As such, the '408 publication raises a substantial new question of patentability.  The '663 patent discloses all of the limitations of claims 1-31, 33, and 34 of the '865 patent.  As such, the '663 patent anticipates claims 1-31, 33 and 34 of the '865 patent.

The '876 publication discloses on paragraph 0075, a rebar reinforced concrete forms a shallow structure which forms a strong foundation below grade for attaching a column 60 extending above grade.  The '540 patent disclose a rebar cage having tie rods 11-14 to support a plurality of barrier elements extending upwardly above a foundation block.  It would have been obvious to one skilled in the art to have used rebar reinforced concrete as disclosed in the '876 publication or the tie-rods disclosed in the '540 patent, to strengthen the base (reaction mass 12) disclosed in the '663 patent for strengthening such base.   Thus, the '663 patent in combination with the '876 publication or the '540 patent disclose all the limitations of claims 32 and 35 of the '865

-9-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

patent.  As such, the '663 patent in combination with the '876 publication or the '540 patent renders claims 32 and 35 of the '865 patent obvious.

### III.    DETAILED EXPLANATION (37 CFR § 1.510(b)(2))

1. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 1.</u>

| | |
|---|---|
| 1. A bollard structure comprising: | The foundation and vertical supports disclosed in FIGS. 2, 3 and 7 and described on column 2, line 58 to column 2, line 36) are capable of acting as a bollard structure. |
| at least one bollard; and | the vertical support 3 including L- shaped legs 31, as shown in annotated FIG. 2 of the '663 patent below and described on column 3, lines 43-55, will act as a bollard if it were to be hit by a car.  Thus, vertical support 3, including L-shaped 31, is a bollard or equivalent to a bollard. |
| a base comprising opposed ends and a plurality of | The combination of supporting frame 1, foundation |

-10-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| structural members which intersect and are tied together, | portions 21 and connection plates 22 define a foundation or base comprising opposed ends defined by opposite members of supporting frame 1 as shown in annotated FIG. 2 below and described on column 3, lines 15-36.  Furthermore, as can be seen from annotated FIG. 2 below and described on column 2, line 58 to column 3, line 37, the foundation or base includes a plurality of structural members (members of supporting frame 1, foundation portions 21, and connection plates 22) which intersect and are connected together (i.e., tied together).  Moreover, according the '865 patent "In its most basic form the bollard system would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards.  The plate would need a minimum depth 5" to qualify as a DOS rated system.  The cross pieces are inherent in the continuous plate.  Still another basic configuration of the bollard system of this invention is to bolt separate thick pieces of steel to continuous cross plates, and to have the bollard set inside that construction" (column lines 48-54).  As such, according to the '865 patent, the tied together structural members are inherent in a continuous plate structure.  Thus, the rectangular foundation 2 (combination of foundation portions 21 and connection plates 22) which is a continuous plate structure inherently discloses structural members that are tied together. |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | for each vertical support 3 including L- shaped legs 31 (bollard), at least one first structural member (member of supporting frame 1 in combination with its corresponding foundation portion 21 as shown in annotated FIG. 2 below) extends from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends. |

-12-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| at least one structural member extending to intersect with the at least one first structural member; | a member of supporting frame 1 defining a structural member extends to intersect with the combination of another member of supporting frame 1 and its corresponding foundation portion 21 which combination defines a first structural member as shown in the annotated FIG. 2 below.<br><br> |

-13-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | each vertical support 3, including L- shaped legs 31, (bollard) is secured to each of the foundation portions 21 which along with a member of the supporting frame 1 define a first structural member.  The vertical support 3, including L- shaped legs 31, (bollard) extends upwardly from the base (defined by supporting frame 1, foundations portions 21 and connection plates 22), as shown in annotated FIG. 2 below, so as to transmit forces applied to vertical support to the base (column 5, lines 6-19).<br><br> |
| wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and | the base (supporting frame 1 in combination with foundation portions 21 and connection plate 22) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade (see col. 1, lines 25-31; col. 4, lines 10-15). |
| wherein the at least one first | A member of supporting frame 1 and its corresponding |

-14-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | foundation portion 21 (which include grooves 23) define a first structural member as shown in annotated FIG. 2 below<br><br><br><br>is tied with another member of supporting frame 1 defining one structural member as shown in annotated FIG. 2 below |

-15-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



and they retain supporting media (e.g., asphalt) over foundation portions 21 and connection plates 22 and within the grooves 23, as shown, for example in FIGS. 3 and 7 such that rotation is resisted (see column 3, lines 24-57 and annotated FIG. 3 below).



-16-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

2.  Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 2.

| 2. The bollard structure of claim 1, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | A member of supporting frame 1 defines one of the opposed ends as shown in annotated FIG. 2 below.<br> |
| --- | --- |

3.  Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 3.

| 3. The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base. | As can be seen in FIG. 2, the members of supporting frame 1, foundation portions 21 and connection plates 22, have axes that extend parallel to a plane of the base. |
| --- | --- |

-17-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

4.  Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 4.

| 4. The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches. | The base disclosed in the '663 patent has a height of 20 – 40 cm (7.9 - 15.7 inches). (See col. 4, lines 10-15). |
|---|---|

5.  Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 5.

| 5. The bollard structure of claim 1, wherein the plurality of structural members comprises one or more tubular members. | The plurality of members defining support frame 1 are tubular members as shown in annotated FIG. 2 below.<br><br> |
|---|---|

-18-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

6. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 6.</u>

| 6. The bollard structure of claim 5, wherein at least one tubular member comprises a pipe. | FIG 2. discloses that the tubular member of supporting frame 1 is a pipe with a square cross-section. |
|---|---|

7. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 7.</u>

| 7. The bollard structure of claim 5, wherein at least one tubular member comprises a tube. | FIG. 2 discloses that the tubular member of supporting frame 1 is a tube with a square cross-section. |
|---|---|

8. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 8.</u>

| 8. The bollard structure of claim 5, wherein at least one tubular member comprises an angle. | The horizontal end surface of the supporting frame 1 defines an angle with the flange 11 as shown in annotated FIG. 2 below.  The grooves 23 (e.g., channels) on the upper surface of the foundation portions 21 also define angles. |
|---|---|

-19-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 2

9. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 9.</u>

| 9. The bollard structure of claim 5, wherein at least one tubular member comprises a channel. | The first structural member defined by a tubular member of supporting frame 1 and its corresponding foundation portion 21 include grooves 23 (e.g., channels) on the upper surface of the foundation portion 21, as shown in annotated FIG. 2 below. |
| --- | --- |

-20-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



10. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 10.

| 10. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube. | The plurality of members defining support frame 1 include tubes as shown in annotated FIG. 2 below. |
|---|---|

-21-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



11. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 11.</u>

| 11. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one pipe. | The plurality of members defining support frame 1 include pipes as shown in annotated FIG. 2 below. |
| --- | --- |

-22-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



12. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 12.

| 12. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one angle. | The horizontal end surface of the supporting frame 1 defines an angle with the flange 11 as shown in annotated FIG. 2 below. The grooves on the upper surface of the foundation portions 21 also define angles. |
|---|---|

-23-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



13. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 13.</u>

| 13. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one channel. | The first structural member defined by a member of supporting frame 1 and its corresponding foundation portion 21 include grooves 23 (e.g., channels) on the upper surface of the foundation portion 21, as shown in annotated FIG. 2 below. |
|---|---|

-24-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



14. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 14.

| 14. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one plate. | The foundation portions 21 and connection plates 22 are structural members and are plates. |
| --- | --- |

15. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 15.

| 15. The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel | The supporting frame 1 and foundation portions 21 are structural members and are steel members. (See col. 2, lines 58-62). |
| --- | --- |

-25-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| members. | |

16. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 16.

| | |
|---|---|
| 16. A bollard structure comprising: | The foundation and vertical supports disclosed in FIGS. 2, 3 and 7 and described on column 2, line 58 to column 2, line 36) are capable of acting as a bollard structure. |
| a plurality of bollards; | The vertical supports 3, including L- shaped legs 31, as shown in annotated FIG. 3 below, FIG. 7 and described on column 3, lines 43-55, will act as bollards if they were to be hit by a car.<br><br><br>FIG,3 |
| a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | The combination of supporting frame 1, foundation portions 21 and connection plates 22 define a foundation or base having opposed ends defined by opposite members of supporting frame 1 as shown in annotated FIG. 2 below and described on column 3, lines 15-36. Furthermore, as can be seen from annotated FIG. 2 |

-26-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | below and described on column 2, line 58 to column 3, line 37, the foundation or base includes a plurality of structural members (members of supporting frame 1, foundation portions 21, and connection plates 22) which intersect and are connected together (i.e., tied together). Moreover, according the '865 patent "In its most basic form the bollard system would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards. The plate would need a minimum depth 5" to qualify as a DOS rated system. The cross pieces are inherent in the continuous plate. Still another basic configuration of the bollard system of this invention is to bolt separate thick pieces of steel to continuous cross plates, and to have the bollard set inside that construction" (column lines 48-54). As such, according to the '865 patent, the tied together structural members are inherent in a continuous plate structure. Thus, the rectangular foundation 2 (combination of foundation portions 21 and connection plates 22) which is a continuous plate structure inherently discloses structural members that are tied together. |

-27-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  FIG. 2 |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | for each vertical support 3 including L- shaped legs 31 (bollard), at least one first structural member (member of supporting frame 1 in combination with its corresponding foundation portion 21 as shown in annotated FIG. 2 below) extends from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends. |

-28-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  The mirror configuration exists for the second vertical support 3 (i.e., the second bollard) as shown in FIGS. 3 and 7. |
| at least one structural member extending to intersect with the at least one first structural member, | a member of supporting frame 1 defines a structural member that extends to intersect with the combination of another member of supporting frame 1 and its corresponding foundation portion 21 which combination defines a first structural member as shown in the annotated FIG. 2 below. |

-29-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | FIG. 2 |
| each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | each vertical support 3, including L-shaped legs 31, (bollard) is secured via connection plates 22 to each of the foundation portions 21 which along with a member of the supporting frame 1 define a first structural member. Each vertical support 3, including L-shaped legs 31, (bollard) extends upwardly from the base (defined by supporting frame 1, foundations portions 21 and connection plates 22) as shown in annotated FIG. 2, below, so as to transmit forces applied to vertical support to the base (column 5, lines 6-19). |

-30-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  The mirror configuration exists for the second vertical support 3 (i.e., the second bollard) as shown in FIGS. 3 |
| wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and | the base (supporting frame 1 in combination with foundation portions 21 and connection plate 22) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade (see col. 1, lines 25-31; col. 4, lines 10-15). |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted | A member of supporting frame 1 and its corresponding foundation portion 21 (including grooves 23) define a first structural member as shown in annotated FIG. 2 below |

-31-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.



FIG. 2

is tied with the at least one structural member (another member of supporting frame 1 shown in annotated FIG. 2 below)



FIG. 2

-32-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | and they retain supporting media (e.g., asphalt) over the foundation portions and connection members and within grooves 23, as shown, for example in FIGS. 3 and 7 such that rotation is resisted (see column 2, lines 24-57 and annotated FIG. 3 below)<br><br><br>FIG.3 |

17. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 17.

| | |
|---|---|
| 17. The bollard structure of claim 16, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | A member of supporting frame 1 defines one of the opposed ends as shown in annotated FIG. 2 below. |

-33-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



18. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 18.

| 18. The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and | The structure disclosed in the '663 patent including the vertical supports 3 with L- shaped legs 31 will resist impact along a direction of expected impact which is parallel to the first direction, as for example shown in annotated FIG. 2, below. |
|---|---|

-34-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | <br><br>FIG. 2 |
| wherein each of the plurality of bollards is secured to at least one structural member that extends in the first direction. | Each vertical support 3 including L- shaped legs 31 (bollard) is secured to the foundation portion 21 and its corresponding member of supporting frame 1 (the foundation portion 21 and its corresponding member of the supporting frame 1 together define a structural member) extending along the first direction as shown in annotated FIG. 2 below. |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



19. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 19.

| 19. The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base. | The structural members of supporting frame 1 and foundation portions 21 and connection plates 22 have axes that extend parallel to a plane of the base (FIG. 2). |
|---|---|

20. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 20.

| 20. The bollard structure of claim 16 wherein the base has a height of 3 inches to | The base disclosed in the '663 patent has a height of 20 – 40 cm (7.9 - 15.7 inches).  (See col. 4, lines 10-15). |
|---|---|

-36-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| 14 inches. | |
| --- | --- |

21. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 21.

| 21. The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members. | The plurality of members defining support frame 1 include tubular members as shown in annotated FIG. 2 below.<br><br><br>FIG. 2 |
| --- | --- |

22. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 22.

| 22. The bollard structure of claim 21, wherein at least one tubular member comprises a pipe. | FIG. 2 discloses that the tubular member is a pipe with a square cross-section. |
| --- | --- |

-37-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

23. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 23.

| 23. The bollard structure of claim 21, wherein at least one tubular member comprises a tube. | FIG. 2 discloses that tubular member is a tube with a square cross-section. |
| --- | --- |

24. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 24.

| 24. The bollard structure of claim 21, wherein at least one tubular member comprises an angle. | The horizontal end surface of the supporting frame 1 defines an angle with the flange 11 as shown in annotated FIG. 2 below.  The grooves 23 on the upper surface of the foundation portions 21 also define angles.<br><br> |
| --- | --- |

-38-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

25. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 25.

| 25. The bollard structure of claim 21, wherein at least one tubular member comprises a channel. | The first structural member defined by a tubular member of supporting frame 1 and its corresponding foundation portion 21 include grooves 23 (e.g., channels) on the upper surface of the foundation portion 21, as shown in annotated FIG. 2 below.<br><br> |
| --- | --- |

26. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 26.

| 26. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube. | The plurality of members defining support frame 1 include tubes as shown in annotated FIG. 2 below. |
| --- | --- |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 2

27. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 27.

| 27. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one pipe. | The plurality of members defining support frame 1 include pipes as shown in annotated FIG. 2 below. |
|---|---|

-40-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG, 2

28. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 28.

| 28. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one angle. | The horizontal end surface of the supporting frame 1 defines an angle with the flange 11 as shown in annotated FIG. 2 below. The grooves 23 (e.g., channels) on the upper surface of the foundation portions 21 also define angles. |
|---|---|

-41-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



29. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 29.

| 29. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one channel. | The first structural member defined by a member of supporting frame 1 and its corresponding foundation portion 21 include grooves 23 (e.g., channels) on the upper surface of the foundation portion 21, as shown in annotated FIG. 2 below. |
|---|---|

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



30. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 30.

| 30. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate. | The foundation portions 21 and connection plates 22 are structural members and are plates. |
|---|---|

31. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 31.

| 31. The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members. | The supporting frame 1 and foundation portions 21 are structural members and are steel members. (See col. 2, lines 58-62). |
|---|---|

-43-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

32. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent and the '715 patent to claim 32.</u>

| | |
|---|---|
| 32. The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. | The '715 patent discloses a gridwork 10 that can be used with asphaltic concrete (column 7, lines 54-57) and in concrete and asphalt road constructions (column 8, lines 36-39).  Thus, the gridwork 10 disclosed in the '715 patent can be used with the foundation or base, defined by the supporting frame 1 and foundation portions 21 and connection plates 22 in the '663 patent, to reinforce such foundation when embedded in the asphalt.  Such gridwork can coextensively extend with a foundation portion 21 to which the vertical support 3, including L-shaped legs 31, (bollard) is secured. |

33. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 33.</u>

| | |
|---|---|
| 33. A bollard structure comprising: | The foundation and vertical supports disclosed in FIGS. 2, 3 and 7 and described on column 2, line 58 to column 2, line 36) are capable of acting as a bollard structure. |
| a plurality of bollards; and | The vertical supports 3 including L- shaped legs 31, as shown in annotated FIG. 3 below, FIG. 7 and described on column 3, lines 43-55, will act as bollards if they were to be hit by a car. |

-44-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| a base comprising opposed ends and a plurality of members which intersect and are tied together, | The combination of supporting frame 1, foundation portions 21 and connection plates 22 define a foundation or base comprising opposed ends defined by opposite members of supporting frame 1 as shown in annotated FIG. 2 below and described on column 3, lines 15-36. Furthermore, as can be seen from annotated FIG. 2 below and described on column 2, line 58 to column 3, line 37, the foundation or base includes a plurality of structural members (members of supporting frame 1, foundation portions 21, and connection plates 22) which intersect and are connected together (i.e., tied together). Moreover, according the '865 patent "In its most basic form the bollard system would have its base or pad formed of a continuous flat piece of steel with holes cut out for the bollards. The plate would need a minimum depth 5" to qualify as a DOS rated system. The cross pieces are inherent in the continuous plate. Still another |

-45-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | basic configuration of the bollard system of this invention is to bolt separate thick pieces of steel to continuous cross plates, and to have the bollard set inside that construction" (column lines 48-54). As such, according to the '865 patent, the tied together structural members are inherent in a continuous plate structure. Thus, the rectangular foundation 2 (combination of foundation portions 21 and connection plates 22) which is a continuous plate structure inherently discloses structural members that are tied together.  |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed | for each vertical support 3 including L- shaped legs 31 (bollard), at least one first structural member (member of supporting frame 1 in combination with its corresponding foundation portion 21 as shown in annotated FIG. 2 below) extends from a first of the opposed ends of the base to a second of the opposed ends of the base in a |

-46-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| ends of the base in a first direction intersecting with the opposed ends, and | first direction intersecting with the opposed ends.<br><br><br><br>The mirror configuration exists for the second vertical support 3 (i.e., the second bollard) as shown in FIGS. 3 and 7. |
| at least one structural member extending to intersect with the at least one first structural member; | a member of supporting frame 1 defining a structural member extends to intersect with the combination of another member of supporting frame 1 and its corresponding foundation portion 21 which combination defines a first structural member as shown in the annotated FIG. 2 below. |

-47-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | <br>*FIG. 2* |
| each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | each vertical support 3 including L- shaped legs 31 (bollard) is secured via connection plates 22 to each of the foundation portions 21 which along with a member of the supporting frame 1 define the one first structural member. Each vertical support 3 (bollard) extends upwardly from the base (defined by supporting frame 1, foundations portions 21 and connection plates 22) as shown in annotated FIG. 2 below, so as to transmit forces applied to vertical support to the base (column 5, lines 6-19). |

-48-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  The mirror configuration exists for the second vertical support 3 (i.e., the second bollard) as shown in FIGS. 3 |
| at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured; | Connection plate 22 is a plate member (and one of the plurality of members) and has a side parallel to the first opposed end defined by a member of supporting frame 1 of the foundation or base as shown in annotated FIG. 2 below. Thus, connection plate 22 is a member that extends parallel to one of the opposed ends of the base. The first vertical support 3 including L- shaped legs 31 (first bollard) is connected to a first foundation portion 21 forming the first structural member. Similarly, a second vertical support 3 (the second bollard) is connected to a second foundation portion 21 forming the second structural member, as shown in annotated FIGS. 2 and 7 below. The connection plate 22 (the member) extends from the first foundation portion 21 forming the first |

-49-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | structural member to the second foundation portion 21 forming the second structural member and is connected to such foundation portions.<br><br> |
| wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards | the base (supporting frame 1 in combination with foundation portions 21 and connection plate 22) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade (see col. |

-50-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| extending above grade of the excavation; and | 1, lines 25-31; col. 4, lines 10-15). |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | A member of supporting frame 1 and its corresponding foundation portion 21 including grooves 23 defining a first structural member as shown in annotated FIG. 2 below<br><br><br><br>is tied with the at least one structural member (another member of supporting frame 1 shown in annotated FIG. 2 below) |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 2

and they retain supporting media (e.g., asphalt) over the foundation portions 21 and within grooves 23, as shown, for example in FIGS. 3 and 7 such that rotation is resisted (see column 2, lines 24-57 and annotated FIG. 3 below).



FIG. 3

-52-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

34. Pertinency and manner of applying the prior art disclosed in the '663 patent to claim 34.

| | |
|---|---|
| 34. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member. | The connection plate 22 (member) which extends between the structural member (a member of supporting frame 1 and its corresponding foundation portion 21) to which the first vertical support 3 including L- shaped legs 31 (first bollard) is connected and the structural member (another opposite member of the supporting frame 1 and its corresponding foundation portion 21) to which the second vertical support 3, including L-shaped legs 31, (second bollard) is connected is a structural member as shown in annotated FIG. 2 below.  |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

35. <u>Pertinency and manner of applying the prior art disclosed in the '663 patent and the '715 patent to claim 35.</u>

| 35. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. | the '715 patent discloses a gridwork 10 that can be used with asphaltic concrete (column 7, lines 54-57) and in concrete and asphalt road constructions (column 8, lines 36-39). Thus, the gridwork 10 disclosed in the '715 patent can be used with the structure, defined by the vertical supports 3, including L-shaped legs 31, supporting frame 1, foundation portions 21 and connection plates 22 in the '663 patent to reinforce such structure when embedded in the ground such that a member of the gridwork (i.e., the rebar grillage) extends between a structural member to which a first vertical support 3 including L- shaped legs 31 (first bollard) is secured and a structural member to which a second structural support 3 including L- shaped legs 31 (second bollard) adjacent to the first structural support is secured forming a structural member. |
|---|---|

36. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 1.</u>

| 1. A bollard structure comprising: | The '408 publication discloses a vehicle barrier system including a plurality of posts 14 (i.e., bollards). |
|---|---|
| at least one bollard; and | at least one post 14 (e.g., bollard) is shown in annotated FIG. 5 of the '408 publication below. |

-54-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | <br>FIG. 5 |
| a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | annotated FIG. 5 of the '408 publication, shown below, discloses a base (reaction mass 12) comprising opposed ends (ends defined by the beam or forward channel 42 and beam or rearward channel 44) and a plurality of structural members (beams 42, 44, 50 and 52) which intersect and are tied together. (See paragraphs 0012 and 0029 which describe that beams 42-54 are welded together). |

-55-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | <br>FIG. 5 |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | As shown in annoted FIG. 5 of the '408 publication below, a first structural member (beam 50 or 52) extends from a first of the opposed ends (end defined by the beam or rearward channel 44) to a second of the opposed ends (beam or forward channnel 42) of the base in a first direction and intersects the opposed ends. |

-56-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| at least one structural member extending to intersect with the at least one first structural member; | Beams 42 and 44 are structural members that extend and intersect with beams 50 and 52 which define a first structural member as shown in annotated FIG. 5 below.<br><br> |
| each bollard being secured to at least one of the at least one first structural member and the at least one | each bollard (post 14) being secured to at least one of the at least one first structural member (beam 50 or 52) for the respective post 14 (bollard) and extends upwardly from the reaction mass 12 (base) so as to transmit forces |

-57-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | applied to the at least one post 14 (bollard) to the reaction mass 12 (base) (See paragraphs 0012 and 0027 of the '408 publication which disclose that at least one post 14 (i.e., one bollard) is immovably anchored to the reaction mass 12 (i.e., the base)). |
| wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and | the base (reaction mass 12) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade. (See paragraph 0006, 0031 of the '408 pub which describe the disclosed barrier system is a shallow ground mounted system. FIGS. 1, 2, 8, 9 of this '408 publication disclose that the posts 14 (i.e., bollards) extend above ground). |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | the beam 50 or 52 (at least one first structural member) and the beam 42 or 44 (at least one structural member) or both are welded (tied) together as disclosed in paragraphs 0012 and 0029.  In addition, supporting media such as concrete may be received within the interior of the base according to paragraphs 0003, 0012 and 0030 of the '408 publication. Thus, the beams 42, 44, 50, and 52 (structural members) disclosed in the '408 publication retain supporting media such that rotation is resisted of a post 14 (bollard) and the reaction mass 12 (base) from an impact against the post 14 (bollard). |

-58-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

37. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 2.

| 2. The bollard structure of claim 1, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | As shown on the annotated FIG. 5 of the '408 publication below, structural members (beams 42, 44) form the opposed ends.<br><br> |
| --- | --- |

38. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 3.

| 3. The bollard structure of claim 1, wherein the intersecting structural members have axes that extend parallel to a plane of the base. | As shown below on the annotated FIG. 5 of the '408 publication below, the beams 42, 44, 50 and 52 have axes that extend parallel to a plane of the reaction mass 12 (base). |
| --- | --- |

-59-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**



FIG. 5

39. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 4.

| 4. The bollard structure of claim 1, wherein the base has a height of 3 inches to 14 inches. | The reaction mass 12 (base) as disclosed in paragraph 0027 of the '408 publication has a depth of 15 inches. Also, the cross beams 50, 52 have a height of 6 inches as described in paragraph 0027. The height of the base appears to be a matter of design choice as long as it remains shallow. No advantages were identified in the '408 publication that stemmed from the base having a height of up to 14 inches that would not be available if the base had a height of 15 inches. |
|---|---|

40. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 5.

| 5. The bollard structure of claim 1, wherein the plurality of structural members | The plurality of structural members include beams which define angles and/or channels (paragraph 0028 of the '408 publication also describes beams 42 and 44 as |
|---|---|

-60-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| comprises one or more tubular members. | forward and rear channels).  According to claims 8 and 9 of the '865 patent, tubular members include angles and channels.  Thus, by disclosing beams which include angles and/or channels, the '408 publication discloses tubular members. |

41. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 6.</u>

| | |
|---|---|
| 6. The bollard structure of claim 5, wherein at least one tubular member comprises a pipe. | No advantage has been identified in the '865 patent when using a tubular member that is a pipe versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to pipes.  In the alternative use of a pipe instead of a beam is matter of design choice. |

42. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 7.</u>

| | |
|---|---|
| 7. The bollard structure of claim 5, wherein at least one tubular member comprises a tube. | No advantage has been identified in the '865 patent when using a tubular member that is a tube versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to tubes.  In the alternative use of a tube instead of a beam is matter of design choice. |

43. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 8.</u>

| | |
|---|---|
| 8. The bollard structure of claim 5, wherein at least one | The tubular members, i.e., the beams 42, 44, 50 and 52 disclosed in the '408 publication each define an angle. |

-61-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| tubular member comprises an angle. | For example, beam 42 is described as a forward channel and beam 44 as a rearward channel. Channels define opposite angles. Moreover, no advantage has been identified in the '865 patent in using an angle, channel or beam. Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication are also equivalent to angles. In the alternative use of an angle is a matter of design choice. |
|---|---|

44. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 9.

| 9. The bollard structure of claim 5, wherein at least one tubular member comprises a channel. | The beams 42, 44, 50 and 52 disclosed in the '408 publication may each define a channel (paragraph 0028 of the '408 publication). |
|---|---|

45. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 10.

| 10. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one tube. | No advantage has been identified in the '865 patent when using a structural member that is a tube versus one that is an angle, channel or beam. Thus, the beams 42, 44, 50 and 52 disclosed in the ''408 publication, are equivalent to tubes. In the alternative use of a tube instead of a beam is matter of design choice. |
|---|---|

46. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 11.

| 11. The bollard structure of claim 1, wherein the plurality | No advantage has been identified in the '865 patent when using a structural member that is a pipe versus one |
|---|---|

-62-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| of structural members comprises at least one pipe. | that is an angle, channel or beam. Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to pipes. In the alternative use of a tube instead of a beam is matter of design choice. |

47. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 12.

| | |
|---|---|
| 12. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one angle. | The tubular members, i.e., the beams 42, 44, 50 and 52, disclosed in the '408 publication each define an angle. For example, beam 42 is described as a forward channel and beam 44 as a rearward channel. Channels define opposite angles. Moreover, no advantage has been identified in the '865 patent in using an angle, channel or beam. Thus, the beams disclosed in the '408 publication are also equivalent to angles. In the alternative use of an angle is a matter of design choice. |

48. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 13.

| | |
|---|---|
| 13. The bollard structure of claim 1, wherein the plurality of structural members comprises at least one channel. | The beams 42, 44, 50 and 52 disclosed in the '408 publication may each define a channel (paragraph 0028 of the '408 publication). |

49. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 14.

| | |
|---|---|
| 14. The bollard structure of | The beams 42, 44, 50 and 52 disclosed in the '408 |

-63-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| claim 1, wherein the plurality of structural members comprises at least one plate. | publication each define a plate on their upper portions. |

50. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 15.

| | |
|---|---|
| 15. The bollard structure of claim 1, wherein the plurality of structural members comprise structural steel members. | The beams 42, 44, 50 and 52 include steel (paragraphs 0003, 0027, and 0028 of the '408 publication). |

51. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 16.

| | |
|---|---|
| 16. A bollard structure comprising: | The '408 publication discloses a vehicle barrier system including a plurality of posts 14 (i.e., bollards). |
| a plurality of bollards; and | A plurality of posts 14 (e.g., bollards) are shown in annotated FIG. 5 of the '408 publication below. |

-64-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | FIG. 5 |
| a base comprising opposed ends and a plurality of structural members which intersect and are tied together, | As shown in annotated FIG. 5 of the '408 publication below, a reaction mass 12 (e.g., base) comprises opposed ends (ends defined by the beam or forward channel 42 and beam or rearward channel 44) and a plurality of structural members (beams 42, 44, 50 and 52) which intersect and are tied together (paragraphs 0012 and 0029 describe that beams 42-54 are welded together). |

-65-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | <br>FIG. 5 |
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | A first structural member (beam 50 or 52) extends from a first of the opposed ends (end defined by the beam or rearward channel 44) to a second of the opposed ends (beam or forward channnel 42) of the reaction mass 12 (base) in a first direction and intersects the opposed ends as shown in annotated FIG. 5 of the '408 publication below. |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| at least one structural member extending to intersect with the at least one first structural member, | Beams 42 and 44 are structural members that extend and intersect with beams 50 and 52 which define a first structural member as shown in annotated FIG. 5 below.<br><br> |
| each of the plurality of bollards being secured to at least one of the at least one | each bollard (post 14) being secured to at least one of the at least one first structural member (beam 50 or 52) for the respective post 14 (bollard) and extends upwardly |

-67-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | from the reaction mass 12 (base) so as to transmit forces applied to the at least one post 14 (bollard) to the reaction mass 12 (base) (See paragraphs 0012 and 0027 of the '408 publication which disclose that at least one post 14 (i.e., one bollard) is immovably anchored to the reaction mass 12 (i.e., the base)). |
| wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and | the base (reaction mass 12) is configured to be mounted in a shallow excavation with the at least one bollard extending above grade. Paragraph 0006, 0031 of the '408 publication describe that the disclosed barrier system (bollard structure) is a shallow ground mounted system. FIGS. 1, 2, 8 and 9 of the '408 publication disclose that the posts 14 (bollards) extend above ground. |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against | the beam 50 or 52 (at least one first structural member) and the beam 42 or 44 (at least one structural member) or both are welded (tied) together as disclosed in paragraphs 0012 and 0029. In addition, supporting media such as concrete may be received within the interior of the base according to paragraphs 0003, 0012 and 0030 of the '408 publication. Thus, the beams 42, 44, 50, and 52 (structural members) disclosed in the '408 publication retain supporting media such that rotation is resisted of a post 14 (bollard) and the reaction mass 12 (base) from an impact against the post 14 (base). |

-68-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| the bollard or bollards. | |
|---|---|

52. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 17.</u>

| 17. The bollard structure of claim 16, wherein at least one of the opposed ends is formed by a structural member to which an end of the at least one first structural member is secured. | As shown below on the annotated FIG. 5 of the '408 publication below, beams 42 and 44 (structural members) form opposite ends.<br><br> |
|---|---|

53. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 18.</u>

| 18. The bollard structure of claim 16, wherein the bollard structure is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of | As shown in annotated FIG. 5 below and in FIG. 1 of the '408 publication, each post 14 (bollard) is configured to resist impact from a direction of expected impact and the first direction is parallel to the direction of expected impact, and each of the plurality of posts 14 is secured to at least one structural member (50 or 52) that extends in the                         first                         direction. |
|---|---|

-69-

**Request for Reexamination of U.S. Patent No. 8,215,865
Docket No. 184301
Filed March 27, 2020**

| | |
|---|---|
| expected impact, and wherein each of the plurality of bollards is secured to at least one structural member that extends in the first direction. |  |

54. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 19.</u>

| | |
|---|---|
| 19. The bollard structure of claim 16 wherein the intersecting structural members have axes that extend parallel to a plane of the base. | Beams 42, 44, 50 and 52 (intersecting structural members) have axes that extend parallel to a plane of the reaction mass 12 (base).  |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

55. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 20.

| 20. The bollard structure of claim 16 wherein the base has a height of 3 inches to 14 inches. | The base as disclosed in paragraph 0027 of the '408 publication has a depth of 15 inches. Also, the cross beams 50, 52 have a height of 6 inches as described in paragraph 0027.  The height of the base appears to be a matter of design choice as long as it remains shallow. No advantages were identified in the '408 publication that stemmed from the base having a height of up to 14 inches that would not be available if the base had a height of 15 inches. |
|---|---|

56. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 21.

| 21. The bollard structure of claim 16, wherein the plurality of structural members comprise one or more tubular members. | The beams 42, 44, 50, and 52 define angles and/or channels (paragraph 0029 of the '408 publication). According to claims 8 and 9 of the '865 patent tubular members include angles and channels.  Thus, the '408 publication discloses tubular members. |
|---|---|

57. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 22.

| 22. The bollard structure of claim 21, wherein at least one tubular member comprises a pipe. | No advantage has been identified in the '865 patent when using a tubular member that is a pipe versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to pipes.  In the alternative use of a tube instead of a beam is matter of design choice. |
|---|---|

-71-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

58. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 23.</u>

| 23. The bollard structure of claim 21, wherein at least one tubular member comprises a tube. | No advantage has been identified in the '865 patent when using a tubular member that is a tube versus one that is an angle, channel or beam. Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication, are equivalent to tubes. In the alternative use of a tube instead of a beam is matter of design choice. |
|---|---|

59. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 24.</u>

| 24. The bollard structure of claim 21, wherein at least one tubular member comprises an angle. | The tubular members, i.e., the beams 42, 44, 50 and 52, disclosed in the '408 publication each define an angle. For example, beam 42 is described as a forward channel and beam 44 as a rearward channel. Channels define opposite angles. Moreover, no advantage has been identified in the '865 patent in using an angle, channel or beam. Thus, the beams 42, 44, 50 and 52 disclosed in the '408 publication are equivalent to angles. In the alternative use of an angle is a matter of design choice. |
|---|---|

60. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 25.</u>

| 25. The bollard structure of claim 21, wherein at least one tubular member comprises a channel. | The tubular members, i.e., the beams, disclosed in the '408 publication each define a channel (paragraph 0028 of the '408 publication) |
|---|---|

-72-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

61. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 26.

| | |
|---|---|
| 26. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one tube. | No advantage has been identified in the '865 patent when using a structural member that is a tube versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the ''408 publication, are equivalent to tubes.  In the alternative use of a tube instead of a beam is matter of design choice. |

62. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 27.

| | |
|---|---|
| 27. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one pipe. | No advantage has been identified in the '865 patent when using a structural member that is a pipe versus one that is an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 pub, are equivalent to pipes.  In the alternative use of a tube instead of a beam is matter of design choice. |

63. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 28.

| | |
|---|---|
| 28. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one angle. | The beams 42, 44, 50 and 52 disclosed in the '408 publication each define an angle.  For example, beam 42 is described as a forward channel and beam 44 as a rearward channel.  Channels define opposite angles. Moreover, no advantage has been identified in the '865 patent in using an angle, channel or beam.  Thus, the beams 42, 44, 50 and 52 disclosed in the '408 |

-73-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

|  | publication are equivalent to angles.  In the alternative use of an angle is a matter of design choice. |
|---|---|

64. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 29.

| 29. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one channel. | The beams 42, 44, 50 and 52 disclosed in the '408 publication each define a channel (paragraph 0028 of the '408 publication). |
|---|---|

65. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 30.

| 30. The bollard structure of claim 16, wherein the plurality of structural members comprises at least one plate. | The beams 42, 44, 50 and 52 disclosed in the '408 publication each define a plate on their upper portions. |
|---|---|

66. Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 31.

| 31. The bollard structure of claim 16, wherein the plurality of structural members comprise structural steel members. | The beams 42, 44, 50 and 52 include steel (paragraphs 0003, 0027, and 0028 of the '408 publication). |
|---|---|

-74-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

67. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication, the '540 patent and the '876 publication to claim 32.</u>

| 32. The bollard structure of claim 16, comprising a rebar grillage comprising intersecting and tied together rebar members extending coextensively with at least a portion of the base that includes a structural member to which a bollard is secured. | The '540 patent discloses use of a rebar cage including tie rods 11-14 to support a plurality of barrier elements, extending upwardly above a foundation block.  The '876 publication discloses on paragraph 0075 a wide and shallow structure of rebar reinforced concrete.  Thus, it would have been obvious at the time the invention was made to include the rebar cage disclosed in the '540 patent, or the rebar reinforcement disclosed in the '876 publication, to reinforce the reaction mass 12 (base) disclosed in the '408 publication to which a post 14 (bollard) is secured and to have tie rods or rebar members forming rebar cage to extend coextensively with at least a portion of the reaction mass 12 (base) that includes the structural member to which a post 14 (bollard) is secured. |
|---|---|

68. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 33.</u>

| 33. A bollard structure comprising: | The '408 publication discloses a vehicle barrier system including a plurality of posts 14 (i.e., bollards). |
|---|---|
| a plurality of bollards; and | A plurality of posts 14 (bollards) are shown in annotated FIG. 5 of the '408 publication. |

-75-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | FIG. 5 |
| a base comprising opposed ends and a plurality of members which intersect and are tied together, | Annotated FIG. 5 of the '408 publication, below, discloses reaction mass 12 (base) comprising opposed ends (ends defined by the beam or forward channel 42 and beam or rearward channel 44) and a plurality of beams 42, 44, 50 and 52 (structural members) which intersect and are welded (tied) together (paragraphs 0012 and 0029 describe that the beam 42-54 are welded together).<br><br>FIG. 5 |

-76-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| for each bollard of the bollard structure at least one first structural member extending from a first of the opposed ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and | As shown in annoted FIG. 5 of the '408 publication below, a first structural member (beam 50 or 52) extends from a first of the opposed ends (end defined by the beam or rearward channel 44) to a second of opposed ends (beam or forward channnel 42) of the base in a first direction and intersects the opposed ends.  |
| at least one structural member extending to intersect with the at least one first structural member; | Annotated FIG. 5 of the '408 publication shown below, discloses beam 42 or 44 (one structural member) extending to intersect with the beams 50 or 52 (one first structural member). |

-77-

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| |  |
| each of the plurality of bollards being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base; | Annotated FIG. 5 of the '408 publication, shown below, discloses that the posts 14 (bollards) are secured to beams 50, 52 (at least one structural member) and they extend upwardly from the reaction mass 12 (base) to transmit forces applied at the post 14 (bollard) to the reaction mass 12 (base). Paragraphs 0012 and 0027 of the '408 publication disclose that at least one post 14 (i.e., one bollard) is immovably anchored to the reaction mass 12 (i.e., the base). |

-78-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| | <br>FIG. 5 |
| at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured; | As shown in annotated FIG. 5 of the 408 publication below, beam or rearward channel 44 and beam or forward channel 42 (a member) extends parallel to the first and second opposed ends (ends defined by the beam or forward channel 42 and beam or rearward channel 44) and between beams 50 and 52 (structural members) to which the posts 14 (bollards) are secured.<br><br><br>FIG. 5 |

110257149.2

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| | |
|---|---|
| wherein the base is configured to be mounted in a shallow excavation with the plurality of bollards extending above grade of the excavation; and | the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade. (See paragraph 0006, 0031 of the '408 publication which describe that the disclosed barrier system is a shallow ground mounted system) |
| wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards. | the beam 50 or 52 (at least one first structural member) and the beam 42 or 44 (at least one structural member) or both are welded (tied) together as disclosed in paragraphs 0012 and 0029.  In addition, supporting media such as concrete may be received within the interior of the base according to paragraphs 0003, 0012 and 0030 of the '408 publication. Thus, the beams 42, 44, 50, and 52 (structural members) disclosed in the '408 publication retain supporting media such that rotation is resisted of a post 14 (bollard) and the reaction mass 12 (base) from an impact against the post 14 (base). |

69. <u>Pertinency and manner of applying the prior art disclosed in the '408 publication to claim 34.</u>

| | |
|---|---|
| 34. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first | As shown in annotated FIG. 5 of the '408 publication below, the beam 42 or 44 (member) extends between adjacent beams 50 and 52 (structural members) to which the posts 14 (bollards) are secured is a structural member. |

-80-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

| bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a structural member. |  |
|---|---|

FIG. 5

70. Pertinency and manner of applying the prior art disclosed in the '408 publication, the '540 patent, and the '876 publication to claim 35.

| 35. The bollard structure according to claim 33, wherein the at least one of the plurality of members that extend between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured comprises a rebar member. | The '540 patent discloses use of a rebar cage including tie rods 11-14 to support a plurality of barrier elements, extending upwardly above a foundation block. The '876 publication discloses on paragraph 0075 a wide and shallow structure of rebar reinforced concrete. Thus, it would have been obvious at the time the invention was made to include the rebar cage disclosed in the '540 patent, or the rebar reinforcement disclosed in the '876 publication, to reinforce the reaction mass 12 (base) disclosed in the '408 publication to which a post 14 (bollard) is secured. |
|---|---|

-81-

**Request for Reexamination of U.S. Patent No. 8,215,865**
**Docket No. 184301**
**Filed March 27, 2020**

### IV.    CONCLUSION

For the reasons given above, reexamination of claims 1-35 of U.S. Patent 8,215,865 is requested.

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By /Constantine Marantidis/
Constantine Marantidis
Reg. No. 39,759
626/795-9900

CM/rl

110257149.2

# Exhibit G

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oғғɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/014,483 | 03/27/2020 | 8215865 | 184301 | 1057 |

20999        7590        06/30/2020
HAUG PARTNERS LLP
745 FIFTH AVENUE - 10th FLOOR
NEW YORK, NY 10151

| EXAMINER |
|---|
| WEHNER, CARY ELLEN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/30/2020 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

CONSTANTINE MARANTIDIS
LEWIS ROCA ROTHGERBER CHRISTIE LLP
P.O. BOX 29001
GLENDALE, CA 91209-9001

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/014,483* .

PATENT UNDER REEXAMINATION *8215865* .

ART UNIT *3993* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| | Control No. | Patent Under Reexamination |
|---|---|---|
| ***Notice of Intent to Issue Ex Parte Reexamination Certificate*** | **90/014,483** | 8215865 |
| | **Examiner**<br>CARY E WEHNER | **Art Unit**<br>3993 / **AIA Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☑ Prosecution on the merits is (or remains) closed in this *ex parte* reexamination proceeding. This proceeding is subject to reopening at the initiative of the Office or upon petition. *Cf.* 37 CFR 1.313(a). A Certificate will be issued in view of
   (a) ☑ Patent owner's communication(s) filed: 5/27/20.
   (b) ☐ Patent owner's failure to file an appropriate timely response to the Office action mailed: _____.
   (c) ☐ Patent owner's failure to timely file an Appeal Brief (37 CFR 41.31).
   (d) ☐ The decision on appeal by the ☐ Board of Patent Appeals and Interferences ☐ Court dated _____
   (e) ☐ Other: _____.

2. The Reexamination Certificate will indicate the following:
   (a) Change in the Specification: ☐ Yes ☑ No
   (b) Change in the Drawing(s):   ☐ Yes ☑ No
   (c) Status of the Claim(s):

       (1) Patent claim(s) confirmed: 1-35.
       (2) Patent claim(s) amended (including dependent on amended claim(s)): _____
       (3) Patent claim(s) canceled: _____.
       (4) Newly presented claim(s) patentable: _____.
       (5) Newly presented canceled claims: _____.
       (6) Patent claim(s) ☐ previously ☐ currently disclaimed: _____
       (7) Patent claim(s) not subject to reexamination: _____.

3. ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

4. ☑ Note the attached statement of reasons for patentability and/or confirmation. Any comments considered necessary by patent owner regarding reasons for patentability and/or confirmation must be submitted promptly to avoid processing delays. Such submission(s) should be labeled: "Comments On Statement of Reasons for Patentability and/or Confirmation."

5. ☐ Note attached NOTICE OF REFERENCES CITED (PTO-892).

6. ☐ Note attached LIST OF REFERENCES CITED (PTO/SB/08 or PTO/SB/08 substitute).

7. ☐ The drawing correction request filed on _____ is: ☐approved ☐disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All   b) ☐ Some*   c) ☐None of the certified copies have
       ☐been received.
       ☐not been received.
       ☐been filed in Application No. _____.
       ☐been filed in reexamination Control No. _____.
       ☐been received by the International Bureau in PCT Application No. _____.

   * Certified copies not received: _____.

9. ☐ Note attached Examiner's Amendment.

10. ☐ Note attached Interview Summary (PTO-474).

11. ☐ Other: _____.

**All correspondence** relating to this reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

| /CARY E WEHNER/<br>Primary Examiner, Art Unit 3993 | |
|---|---|

cc: Requester (if third party requester)

Application/Control Number: 90/014,483                                                                 Page 2
Art Unit: 3993

## *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## STATEMENT OF REASONS FOR PATENTABILITY AND/OR CONFIRMATION

The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding: The prior art of record does not teach a bollard structure comprising, *inter alia,* at least one first structural member and at least one structural member, wherein the at least one first structural member or the at least one structural member are configured or tied together to retain within the base supporting media. The closest prior art of record is to Chen. The request identified 3, 31 as a bollard. Chen discloses that 3 represents a vertical support for an elevated road above a city road and that 31 is an L-shaped leg for connecting the vertical support to the foundation 2. The dictionary defines a bollard as "a post of metal or wood on a wharf around which to fasten mooring lines", or "any of a series of short posts set at intervals to delimit an area (such as a traffic island) or to exclude vehicles."[i] The vertical support of Chen cannot be considered to be a bollard because it is not a short post. Also, the claims require that the at least one first structural member or the at least one structural member or both are configured or tied together to retain in the base, supporting media introduced into the base. However, the supporting media (asphalt) of Chen is poured on top of the base and is not retained *within* the base. Figs. 1F and 7 show this. The claims further require that at least one structural member extends to intersect with at least one first structural member. The request identifies the horizontal flanges 11 as the structural member and the top part of the frame 1 and the foundation 2 as the first structural members. However, the flange 11 does not extend to intersect with either the top part of the frame or the foundation 2. The flange 11 that is identified as a one structural member in annotated Fig. 2 of

Application/Control Number: 90/014,483                                                    Page 3
Art Unit: 3993

the request (the flange of the opposed ends) does not intersect with any other part of the

structure.

Any comments considered necessary by PATENT OWNER regarding the above

statement must be submitted promptly to avoid processing delays.  Such submission by the

patent owner should be labeled: "Comments on Statement of Reasons for Patentability and/or

Confirmation" and will be placed in the reexamination file.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to CARY E WEHNER  whose telephone number is (571)272-4715.  The

examiner can normally be reached on 9am to 5 pm.

Examiner interviews are available via telephone, in-person, and video conferencing

using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is

encouraged to use the USPTO Automated Interview Request (AIR) at

http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Eileen Lillis can be reached on 571-272-6928.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see https://ppair-my.uspto.gov/pair/PrivatePair. Should you have questions on access

to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-

Application/Control Number: 90/014,483                                            Page 4
Art Unit: 3993

free). If you would like assistance from a USPTO Customer Service Representative or access to

the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CARY E WEHNER/
Primary Examiner, Art Unit 3993

Conferee: /CSW/
Conferee: /E.D.L/
            SPRS, Art Unit 3993

---

[i] https://www.merriam-webster.com/dictionary/bollard

# Exhibit H

**DAVID A. DILLARD, CA Bar No. 97515**
DDillard@lrrc.com
**CONSTANTINE MARANTIDIS, CA Bar No. 173318**
cmarantadis@lrrc.com
**SAMI I. SCHILLY, CA Bar No. 301653**
sschilly@lrrc.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, California 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Defendant
Delta Scientific Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RSA Protective Technologies, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Delta Scientific Corporation,<br><br>Defendant. | Case No. 2:19-cv-06024-JAK-PLA<br><br>**DEFENDANT DELTA SCIENTIFIC CORPORATION'S ~~PRELIMINARY~~ FINAL INVALIDITY CONTENTIONS**<br><br>**Hon. John A. Kronstadt** |

Pursuant to the Standing Patent Rules for Cases Assigned to Judge John A. Kronstadt ("S.P.R.") 4.2.2~~Without waiving any objections~~, Defendant Delta Scientific Corporation ("Defendant" or "Delta") hereby provides ~~these Preliminary~~its Final Invalidity Contentions as to claims 1-5, 7, 10, 14-21, 23, 26 and ~~30~~31-35 (collectively the "Asserted Claims") of U.S. Patent No. 8,215,865 (the "'865 patent"), asserted by Plaintiff RSA Protective Technologies, LLC ("Plaintiff" or "RSA") against Delta in the present action.

## I.   GENERAL RESERVATIONS

These ~~Preliminary~~ Final Invalidity Contentions are based on information reasonably known and available to Delta at this time.  ~~The Court has not yet issued~~

-1-

112614733.3

a claim construction ruling, and Delta has not completed its investigation of the facts and documents relating to this action. Discovery is ongoing and has not yet closed. Delta reserves the right to supplement and/or revise the information provided in these Preliminary Final Invalidity Contentions as additional information becomes available.

To the extent that these Preliminary Invalidity Contentions rely on or otherwise embody particular constructions of terms or phrases in the asserted claims, Delta does not necessarily endorse any such construction, and reserves the right to take different positions during formal claim construction proceedings. Delta thus may rely in some circumstances on the apparent construction adopted by RSA in its Infringement Contentions for purposes of these Preliminary Invalidity Contentions only, and without any admission that such construction is correct or that Delta's accused products satisfy the limitation at issue.

Further, by providing these preliminary contentions, Delta does not waive its right to contest the construction of any required claim element and may allege additional invalidity positions based thereon. Delta reserves its right to amend and/or supplement these preliminary contentions either before or after the submission of expert disclosures, or upon receipt of further information either through its own research or through information provided by its experts, or following the Court's claim construction order.

Based on RSA's Infringement Contentions, and RSA's reservations therein, these Preliminary These Final Invalidity Contentions may also require subsequent amendment, alteration, or supplementation based on, for example, any additional alleged infringement information assertions provided by RSA; any claim construction positions taken by RSA or claim construction rulings by the Court; any relevant arguments or stipulations made by Delta RSA in this case or any other proceeding or litigation involving the '865 Patent or related patent(s); and any additional prior art or other relevant information learned through the course of fact

-2-

and expert discovery, which are still ongoing, including references known to the experts and the experts' opinions.

The ~~preliminary~~ contentions and disclosures provided below and in the attached exhibits are illustrative of how each reference identified invalidates the asserted claims. By not discussing other portions of the references, Delta does not waive the right to rely on other portions of the reference, and indeed, Delta expressly reserves their right to rely on other portions of the references. Similarly, the obviousness combinations of references provided under 35 U.S.C. § 103 are examples only and are not intended to be exhaustive. Delta reserves the right to use additional obviousness combinations of the references identified in these contentions in this litigation. For example, a secondary reference may be used as a primary reference, and vice versa. In particular, Delta is currently unaware of the extent, if any, to which RSA will contend that any limitations of the asserted claims are not disclosed in the references identified by Delta. To the extent an issue arises with respect to any such limitation, Delta reserves the right to identify other references that would have made obvious the addition of the allegedly missing limitation to the disclosed device, system or method.

Delta's ~~preliminary~~ contentions under 35 U.S.C. §§ 102 and 103 are made in the alternative, and should in no way be seen as admissions: (1) as to the proper construction or scope of the asserted claims; (2) that any asserted claims meet the written description, enablement, or definiteness requirements of 35 U.S.C. § 112; (3) that any asserted claims meet the eligible subject matter requirements of 35 U.S.C. § 101 or (4) that Defendants waive the right to assert any of the foregoing as ~~basis~~ bases for invalidity.

## II. ~~PRELIMINARY~~ FINAL INVALIDITY CONTENTIONS

### A. The Identity of Each Item of Prior Art that Allegedly Anticipates Each Asserted Claim or Renders it Obvious

Based on the prior art presently known to Delta, as well as its current

-3-

112614733.3

understanding of the meaning of the claims and Plaintiff's infringement contentions, Delta identifies the following non-exhaustive list of prior art as anticipating and/or rendering obvious the asserted claims of the '865 Patent:

### 1. Patents and Patent Publications

| Reference | Country of Origin | Issuance or Publication Date |
|---|---|---|
| US 2004/0033106 ("Turpin") | United States | Feb. 19, 2004 |
| ~~5,406,663 ("'663 patent" or "Chen")[1]~~ | ~~United States~~ | ~~April 18, 1995~~ |
| US 2006/0090408 ("'408 publication" or "Darcy")[2] | United States | May 4, 2006 (Filed February 9, 2005) |
| 5,836,715 ("'715 patent" or "Hendrix")[3] | United States | November 17, 1998 |
| US 2002/0073876 ("'876 publication" or "Einar")[4] | United States | June 20, 2002 |
| 3,943,540 (the "'540 patent" or "Bruner")[5] | United States | January 27, 1976 |

---

[1] ~~Chen is a primary reference relied upon in the Petition for Reexamination of the '865 Patent, filed on March 30, 2020 ("Reexam Petition"), which is attached hereto as Exhibit D.~~

[2] Darcy is ~~another~~ a primary reference relied upon in the Petition for Reexamination of the '865 Patent, filed on March 30, 2020 ~~cited in the~~ ("Reexam Petition") (Ex. D).

[3] Hendrix is a secondary reference cited in the Reexam Petition (Ex. D).

[4] Einar is a secondary reference cited in the Reexam Petition (Ex. D).

[5] Bruner is a secondary reference cited in the Reexam Petition (Ex. D).

-4-

## 2. Sales, Offers for Sale, and Public Uses

| Activity or Event | Country of Origin | Date of Anticipating Activity or Event[6] |
|---|---|---|
| Sale and public use of DSCTT203RB bollards installed at Amgen in Thousand Oaks, CA ("TT203R"), sold by Delta | United States | 1997 |
| Sale and public use of DSC800RFB bollards installed ~~of at bollards~~ at UCLA Health Sci. Bldg. No. 1, Los Angeles CA ("DSC800RFB"), sold by Delta | United States | 2002 |
| Sale and public use of the DSC501 shallow mount barrier ("DSC501"), sold by Delta for installation at the Washington Navy Yard, Washington DC | United States | 2001 |

As to any of the foregoing references that describe a product that was actually in use and/or on sale prior to the priority date of the '865 Patent, Delta reserves the right to separately rely upon the products themselves and any associated evidence of such prior uses or sales that may be uncovered through the

---

[6] Dates provided are at least as early as the listed year.

-5-

course of discovery, which has not yet closed. ~~Unless such prior use or sale evidence shows the product being used differently than what is described in the references above (in which case Delta will amend its contentions accordingly as to such use), the~~The charts attached hereto shall be understood to likewise describe the manner in which Delta would intend to rely upon such prior use or sale evidence.

### B. Anticipation and/or Obviousness

Based on the art presently known to Delta, as well as its current understanding of the meaning of the claims and RSA's infringement contentions, Delta contends that the following references anticipate and/or render obvious to a person having ordinary skill in the art, alone or in combination with other prior art, one or more of the asserted claims of the '865 Patent, as set forth below. For any single reference listed below, Delta's ~~preliminary~~ contention is that, to the extent RSA contends any limitation is not expressly disclosed by that reference, such limitation would nevertheless be obvious in view of the teaching of that reference~~s~~ and the knowledge of one of ordinary skill in the art.

| Reference, Activity, or Event | Claims of the '865 Patent | Basis | Exhibit |
|---|---|---|---|
| Turpin | All asserted claims | 35 U.S.C. §102 35 U.S.C. §103 | A |
| Turpin and DSC501 | All asserted claims | 35 U.S.C. §103 | A |
| ~~Chen~~ | ~~All asserted claims~~ | ~~35 U.S.C. §102 35 U.S.C. §103~~ | ~~D~~ |
| ~~Chen and Hendrix~~ | ~~Claims 32, 35~~ | ~~35 U.S.C. §103~~ | ~~D~~ |

112614733.3

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

| Reference, Activity, or Event | Claims of the '865 Patent | Basis | Exhibit |
|---|---|---|---|
| Darcy | All asserted claims | 35 U.S.C. §103 | D |
| Darcy and Bruner and Einar | Claims 32 and 35 | 35 U.S.C. §103 | D |
| Darcy and DSC501 | All asserted claims | 35 U.S.C. §103 | D, E |
| DSC800RFB | Claims 1, 3-5, 7, 10, 14-16, 18-23, 26, ~~30~~31-35 | 35 U.S.C. §102 35 U.S.C. §103 | B |
| TT203R | Claims 1, 3-5, 7, 10, 14-15 | 35 U.S.C. §102 35 U.S.C. §103 | C |

### 1.   **Motivation to Combine**

Motivation and suggestion to combine one or more of the prior art references with any of the other prior art references, or other references cited below, exists. Generally, motivation and suggestion to combine any of these prior art references with each other exists within the prior art references themselves, as well as within the knowledge of those of ordinary skill in the art. Moreover, the relied-upon prior art references identify and address the same technical issues and suggest very similar solutions to those issues.

Furthermore, the nature of the problem or problems to be solved would have given a person of ordinary skill in the art reason to combine the prior art references, and the modifications or combinations would have had more than a reasonable expectation of success. Moreover, there were a finite number of identified, predictable solutions that had a reasonable expectation of success to lead one of

-7-

ordinary skill in the art inexorably to the claimed inventions. The claimed inventions were the result of the application of known technical concepts to designs to yield predictable results.

Aside from, or related to, the express teachings, suggestions, and motivations to combine discussed in the cited references, it would have been obvious to one of ordinary skill in the art to combine one or more of the prior art references with any other prior art references, or other references cited herein, under the legal standard to determine obviousness under 35 U.S.C. § 103. *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).

In addition, common knowledge of those of ordinary skill in the art can be prior art and may be relied on by Delta by way of testimony or declarations in combination with the above prior art publications and patents. This includes knowledge of well-known technology and various industry practices, standards, and protocols.

Consequently, the Asserted Claims, to the extent that they are not anticipated, would have been obvious.

Exemplary motivations to combine the references are provided in the claim charts attached hereto. Additional motivations to combine, along with evidence supporting these motivations, may still be discovered as discovery progresses has not yet closed, including through outstanding depositions and expert testimony and discovery. Delta further reserves the right to provide rebuttal evidence in response to any contention by Plaintiff concerning Delta's Preliminary Final Invalidity Contentions, including any rebuttal evidence concerning the existence of a claim element in the prior art, a motivation to modify or combine, a reasonable expectation of success and evidence refuting purported secondary considerations.

**2.   References Relating to the General States of the Art at the Time of the Alleged Invention**

The prior art references identified below and those incorporated by reference

-8-

112614733.3

as discussed above are illustrative of the general state of the art to which the '865 patent pertains (i.e., what one of ordinary skill in the art would have understood) at a time prior to the date of the alleged invention of the Asserted Claims of the '865 patent.

This prior art is exemplary only, and is not in any way intended to limit the scope of what one of ordinary skill in the art would have understood at the times of the alleged inventions.  Delta reserves the right to rely upon additional prior art, information, or knowledge to demonstrate what one of ordinary skill would have understood at the time prior to the date of the alleged invention of the Asserted Claims of the '865 patent.

Unless otherwise noted, all patents are United States patents.  On information and belief, each listed publication or invention became prior art at least as early as the dates given.

a)    **Patents**

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 1,203,006 A | US | 10/1916 |
| 1,449,518 A | US | 3/1923 |
| 1,969,845 A | US | 8/1934 |
| 2,958,926 A | US | 11/1960 |
| D233,219 S | US | 10/1974 |
| 3,856,268 A | US | 12/1974 |
| 3,934,540 A | US | 1/1976 |
| 4,062,149 A | US | 12/1977 |
| 4,515,499 A | US | 5/1985 |
| 4,576,508 A | US | 3/1986 |
| 4,822,207 A | US | 4/1989 |
| 4,828,424 A | US | 5/1989 |

-9-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 4,934,097 A | US | 6/1990 |
| 5,006,008 A | US | 4/1991 |
| 5,201,599 A | US | 4/1993 |
| 5,354,037 A | US | 10/1994 |
| 5,406,663 A | US | 4/1995 |
| 5,836,715 A | US | 11/1998 |
| 5,860,762 A | US | 1/1999 |
| 5,961,249 A | US | 10/1999 |
| 6,219,991 B1 | US | 4/2001 |
| 6,341,877 B1 | US | 1/2002 |
| 6,367,208 B1 | US | 4/2002 |
| 6,454,488 B1 | US | 9/2002 |
| 6,702,512 B1 | US | 3/2004 |
| 6,805,515 B2 | US | 10/2004 |
| 7,118,304 B2 | US | 10/2006 |
| 8,215,865 B2 | US | 7/2012 |

b)      **Patent Publications**

| Prior Art | Country of Origin | Date of Publication |
|---|---|---|
| 2002/0073876 | US | 6/2002 |
| 2003/0127636 | US | 7/2003 |
| 2004/0033106 | US | 2/2004 |
| 2004/0067104 | US | 4/2004 |
| 2004/0190990 | US | 9/2004 |
| 2005/0201829 | US | 9/2005 |
| 2006/0090408 | US | 5/2006 |
| 2008/0205982 | US | 1/2008 |

-10-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

112614733.3

| Prior Art | Country of Origin | Date of Publication |
|---|---|---|
| 2008/0038056 | US | 2/2008 |
| 2008/0122756 | US | 5/2008 |
| 2009/0028638 | US | 1/2009 |
| 2009/0035061 | US | 2/2009 |
| 2009/0250674 | US | 10/2009 |

c)      Foreign Patents and Publications

| Prior Art | Country of Origin | Date of Issuance |
|---|---|---|
| 34 12354 | DE | 10/1985 |
| 4004851 | DE | 2/1990 |
| 0009235 | EP | 4/1980 |
| 0 955 414 | EP | 11/1999 |
| 1 054 108 | EP | 11/2000 |
| 1 479 826 | EP | 11/2004 |
| 2057107 | FR | 4/1971 |
| 2 194 577 | GB | 3/1988 |
| 2 229 472 | GB | 9/1990 |
| 10176314 | JP | 6/1998 |
| 11061746 | JP | 3/1999 |
| 2001295298 | JP | 10/2001 |
| WO 02/081824 | WO | 10/2002 |

d)      Other Publications

| Prior Art | Date |
|---|---|
| Department of ~~Defence~~ Defense Handbook, "Selection and Application of Vehicle Barriers" MIL-DDBK-1013/14, Feb. 1, 1999 | 1999 |
| Project File for Amgen project for TT203 | 1997 |

-11-

112614733.3

| Prior Art | Date |
|---|---|
| Project File for UCLA Health Science Building for DSC800RFB | 2002 |
| Project File for SPAWAR, San Diego, CA for DSC800RFB | 2002 |
| Project File for Naval Annex in MD for DSC501 | 2001 |
| Project File for Naval Weapons Station in NJ for DSC501 | 2001 |
| Drawings for the DSC501 | 2001,2004 |
| Delta Scientific Press Release dated March 8, 2001 | 2001 |
| Delta Scientific brochure dated February 2002 | 2002 |
| Cold-Formed Steel Design, Third Edition, authored by Wei-Wen Yu, 2000 | 2000 |
| Cold-Formed Steel Structures to the AISI Specification, Hancock et al, 2001 | 2001 |
| Applied Structural Steel Design, Third Edition, Spiegel & Limbrunner, 1986 | 1986 |
| FEMA 426, Risk Management Series, Reference Manual to Mitigate Potential Terrorist Attacks Against Buildings, December 2003 | 2003 |
| FEMA 430, Chapter 4, Perimeter Security Design | |
| Hollow Structural Sections Connections Manual, American Institute of Steel Construction, 1997 | 1997 |
| The National Capital Urban Design and Security Plan, National Capital Planning Commission, October 2002 | 2002 |

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-12-

| Prior Art | Date |
|---|---|
| Designing for Security in the Nation's Capital, National Capital Planning Commission, October 2001 | 2001 |
| Media Release, Planning Commission Approves Final Urban Design and Security Plan for the Nation's Capital, National Capital Planning Commission, October 3, 2002 | 2002 |
| Disguising Security as Something Artful – Ugly Barriers to Car Bombers Put Up After 9/11 Morph Into 'Designer Bollards', The Wall Street Journal, June 24, 2004 | 2004 |

To the extent not identified in the above tables, Delta incorporates by reference herein all prior art submitted to or considered by the United States Patent and Trademark Office ("PTO") or any foreign patent office in connection with the examination of the '865 patent, as well as any related U.S. or foreign applications and reserves the right to rely upon such references. Delta further incorporates by reference all prior art references cited in Petitions for *Inter Partes* Review of the '865 patent filed with the Patent Trial and Appeals Board ("PTAB") on June 6, 2019: IPR2019-01161 and IPR2019-01162. Delta further incorporates herein all prior art references presented in the Petition for Ex Parte Reexamination of U. S. Patent No. 8,215,865, filed March 30, 2020. Delta further incorporates any additional prior art cited in any patent infringement action in which claims of the '865 patent or any patent related to the '865 patent, e.g., U.S. Patent 7,699,558 (the "'558 patent"), were or are asserted. For convenience, the references incorporated by reference in this paragraph and which Delta has identified as being excluded from the tables above are listed below. These references are references cited in the

-13-

112614733.3

petitions for *Inter Partes* Review of the '865 Patent, including IPR2020-01369, and invalidity contentions of others accused of infringement by RSA which RSA has produced in this proceeding.  Accordingly, it is Delta's understanding that these references are already in RSA's possession and are not being separately produced by Delta, but to the extent these documents are not in RSA's possession, Delta requests the RSA advise Delta as such.

**e)    Patents and Patent Publications**

| Prior Art | Country of Origin | Date of Issuance or Publication |
|---|---|---|
| 3,881,697 | US | 5/1975 |
| 4,018,055 | US | 4/1977 |
| 4,123,887 | US | 11/1978 |
| 4,645,168 | US | 2/1987 |
| 4,705,426 | US | 11/1987 |
| 7,040,836 | US | 5/2006 |
| 7,101,112 | US | 10/2005 |
| 7,232,275 | US | 6/2007 |
| 8,197,156 | US | 6/2012 |
| 2008/0232901 | US | 9/2008 |
| 8326389 | DE | 1/1984 |
| 8602044 | DE | 3/1986 |
| 3827030 | DE | 4/1989 |
| 91/06721 | WO | 5/1991 |
| 2 261 454 | GB | 5/1993 |
| 2 282 838 | GB | 4/1995 |
| 1033786Y | Spain (ES) | 3/1997 |
| 688483 | Switzerland (CH) | 10/1997 |

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-14-

| Prior Art | Country of Origin | Date of Issuance or Publication |
|---|---|---|
| 29717516 | DE | 1/1998 |
| 19826445 | DE | 12/1999 |
| 200071499 | AU | 5/2001 |
| 2002-115324 | JP | 4/2002 |
| 2004-068428 | JP | 3/2004 |
| 2004/092543 | WO | 10/2004 |

f)      Other Publications

| Prior Art | Date |
|---|---|
| SecureUSA 2002 Project Designs | 2002 |
| Lateral Loads, http://web.mit.edu/4.441/1_lectures/1_lecture18/1 lecture18.html, MIT Structures I: Lateral Loads lecture notes, 1998, last accessed June 15, 2020 | 1998 |
| Robert E. Kimmerling, GEOTECHNICAL ENGINEERING CIRCULAR NO. 6: Shallow Foundations, Federal Highway Administration, Sept. 2002 | 2002 |
| John M. Biggs, Introduction to Structural Dynamics, McGraw-Hill, ISBN 07-005255-7, 1964 | 1964 |
| Crash Testing and Evaluation of the Anti-Ram Wall with Single Unit Truck, TTI, 2002 | 2002 |
| SD-STD-02.01, Revision A, Certification Standard, Test Method for Vehicle Crash Testing of Perimeter Barriers and Gates, Dept. of State., March 2003 | 2003 |
| The National Capital Urban Design and Security Plan, National Capital Planning Commission, Oct. 2002 | 2002 |
| Thornton Tomasseti Project Designs | 2004 |
| Calpipe Security Bollards | 2003 |
| Mark Maremont Disguising Security as Something Artful Ugly Barriers to Car Bombers Put Up After | 2004 |

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-15-

112614733.3

| Prior Art | Date |
|---|---|
| 911 Morph Into Designer Bollards WALL STREET JOURNAL | |

### C.    Claim Charts

Attached as Exhibits A – C are ~~preliminary~~ final invalidity claim charts for the Asserted Claims of the '865 patent for primary references Turpin, DSC800RFB, and TT203R.  Attached as Exhibit D is a red-lined version of the Reexam Petition, which includes ~~preliminary~~ a final invalidity claim chart~~s~~ for the primary reference~~s Chen and~~ Darcy[7].  Exhibit E is a preliminary invalidity chart for the Asserted Claims which is based on the combination of Darcy and the prior art public sale and use of the DSC501 barrier.  For each asserted claim, these charts specifically identify where each claim limitation is disclosed in the prior art reference or references.  Delta's ~~preliminary~~ final invalidity charts are exemplary.  All references identified in the charts can be used as primary references for obviousness and primary references can be used as secondary references.  ~~Furthermore, Delta reserves the right to assert additional combinations of references, based on the above-listed prior art references or additional prior art references identified or considered during further work and analysis in this case.~~  Delta ~~also~~ reserves the right to provide additional disclosures to address any elements that Plaintiff claims to be lacking.  Delta additionally reserves the right to include further information to support its invalidity defenses based on additional discovery, which has not yet closed, expert testimony and analysis, including information concerning the elements taught by each reference and the suggestion or motivation to modify or combine prior art references for obviousness purposes.

Although Delta has identified at least one disclosure of a limitation contained

---

[7] Portions of the Reexam Petition that do not pertain to the invalidity arguments under Darcy have been stricken.

-16-

in each prior art reference, Delta has not necessarily identified each and every disclosure of the same limitation in the same reference. In an effort to focus the issues, Delta has cited representative portions of an identified reference, even where a reference may contain additional support for a particular claim limitation. Delta may rely on uncited portions of the prior art references and on other publications and expert testimony to provide context and as aids in understanding and interpreting the portions that are cited. Where Delta cites to a particular figure in a reference, the citation should be understood to encompass the caption and description of the figure and any text relating to the figure. Similarly, where Delta cites to particular text referring to a figure, the citation should be understood to include the figure as well.

## III.   INVALIDITY UNDER 35 U.S.C. § 112

### A.   Written Description Under 35 U.S.C. §112, Paragraph 1

Delta contends that the following claim limitations fail to comply with 35 U.S.C. § 112, paragraph 1:

- "Rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in all claims.

"To fulfill the written description requirement, the patent specification must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (internal quotation marks and citation omitted) (modification in original). "[A] broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1127 (Fed. Cir. 2008). "The purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Atl. Rsch. Mktg. Sys. v. Troy*, 659 F.3d 1345, 1354 (Fed. Cir. 2011) (quoting *In re*

-17-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

*Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1319 (Fed. Cir. 2011)). A patentee's "original disclosure serves to limit the permissible breadth of his later-drafted claims." *Gentry*, 134 F.3d at 1479.

Delta contends that all of the Asserted Claims are invalid as failing to meet the written description requirement because the claim element "rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards, which was introduced during prosecution and appears in all claims, is unsupported by the original disclosure and impermissibly broad.

There is no support in the original disclosure for the claim limitation that "rotation is resisted of a bollard or bollards and the base;" the disclosure only discusses rotation of the bollard(s), but does not discuss resisting rotation of the base, nor does it describe how such resistance to rotation is achieved. To the extent RSA argues this feature is inherent in all bollard systems, then the limitation "overreach[es] the scope of the inventor's contribution to the field of art as described in the patent specification," also failing to meet the written description requirement. *Atl. Rsch. Mktg.*, 659 F.3d at 1354.

Discovery is ongoing, and various depositions, including the deposition of a co-inventor, are still outstanding. As a result, it is premature for Delta to determine whether there are other failures to comply with 35 U.S.C. § 112, paragraph 2. Accordingly, Delta reserves the right to supplement or modify the positions and information in these Invalidity Contentions to the extent other relevant information is uncovered through further discovery.

### A.B.  Indefiniteness Under 35 U.S.C. §112, Paragraph 2

Delta contends that the following claim limitations fail to comply with 35 U.S.C. § 112, paragraph 2:

- "Shallow excavation" appearing in all claims.
- "Resisted Such that rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in all claims.

-18-

112614733.3

The Supreme Court has held that the proper standard for indefiniteness under 35 U.S.C. § 112, paragraph 2 is as follows: "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 901 (2014). The Supreme Court further explained that "a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* at 909 (internal quotation and punctuation omitted).

Delta contends that all of the Asserted Claims are invalid as indefinite because the claim element "such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" appearing in each independent claim fails to inform with reasonable certainty those skilled in the art the scope of the Asserted Claims.

Whether a bollard structure comprising one or more bollards and a base is able to resist rotation of the bollard(s) and the base depends not only on the design and characteristics of the bollard(s) and the base, but the amount of the collision force transferred to the bollard by the impact. A bollard structure may resist rotation from a relatively low collision force, but may be unable to resist rotation by a greater collision force. The amount of force generated by a collision will be dependent on many factors including the weight and speed of the vehicle. The claims do not set forth any criteria by which the resistance to rotation of the bollard(s) and base is to be determined, nor is the claim term "impact" defined in a way that would provide reasonable certainty as to the scope of the claims.

Similarly, Delta contends that all of the Asserted Claims are invalid as indefinite because the claim element "shallow excavation" appearing in each independent claim fails to inform with reasonable certainty those skilled in the art

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-19-

the scope of the Asserted Claims.  The metes and bounds of whether a bollard structure comprises a base that is "configured to be mounted in a shallow excavation" is not made clear by the '865 Patent or its prosecution history.

Discovery is ongoing, and various depositions, including the deposition of a co-inventor, are still outstanding.  As a result, it is premature for Delta to determine whether there are other failures to comply with 35 U.S.C. § 112, paragraph 2. Accordingly, ~~Delta is unable at this time to provide all contentions regarding these additional grounds of invalidity.~~ Delta reserves the right to supplement or modify the positions and information in these Invalidity Contentions to the extent other relevant information is uncovered through further discovery.

**IV.   ~~III.~~ ACCOMPANYING DOCUMENT PRODUCTION**

~~Delta is producing herewith prior art documents other than those identified in the file history of the '865 Patent or otherwise already in the possession of RSA that are within Delta's power, control, or custody.  These prior art references are cited in and support the accompanying invalidity charts.~~

DATED:  ~~April 3~~October 26, 2020      Respectfully submitted,

LEWIS ROCA ROTHGERBER
CHRISTIE LLP

By   /s/ David A. Dillard
        David A. Dillard

Attorneys for Defendant
Delta Scientific Corporation

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-20-

### Delta's Statement of Reasons for Amendments to S.P.R. 2.5 Preliminary Invalidity Contentions

Pursuant to the Court's Standing Order, Special Patent Rules ("S.P.R.") 4.2.2, Delta Scientific Corporation ("Delta") submits the following statement of reasons for amendments to its S.P.R. 2.5. Preliminary Invalidity Contentions.

1.     Page 1, line 23[8]:  Delta has amended the listing of Asserted Claims based on RSA's Final Infringement Contentions.

2.     Page 4, lns. 10-11, footnote 1; page 6, lns. 25-27; page 16, lns. 5-6: Delta is no longer contending that the Asserted Claims are invalid under the Chen reference.

3.     Page 4, footnote 2:  This footnote has been revised to include pertinent information previously included in footnote 1.

4.     Page 13, lns. 26-28, tables at page 14: For the parties' convenience, Delta has listed each of the references incorporated by reference in the preceding paragraph, which Delta identified as not being specifically listed elsewhere in the Invalidity Contentions.  Delta notes that each of these references is from another proceeding involving the '865 Patent.

5.     Section III.A. (beginning at page 17, line 13): Delta has amended its invalidity contentions to expressly include its contention that all Asserted Claims are invalid under 35 U.S.C. § 112, paragraph 1, based on the claim term "such that rotation is resisted of a bollard or bollards and the base from an impact again the bollard or bollards," which appears in all claims.  As a courtesy, although not required in invalidity contentions, Delta has also included a brief statement relating to its contention and supporting case law.  During the course of discovery, including the deposition of Richard Adler, Delta has become aware that this claim

---

[8] References to page numbers and lines are to the redlined version of Delta's Redlined Final Invalidity Contentions.

-21-

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

limitation results in a claim scope that is broader than the described invention. Based on such new discovery, Delta is amending its contentions herein.

6.     Section III.B. (beginning at page 18, line 27): Delta has amended its invalidity contentions to expressly include its contention that all Asserted Claims are invalid under 35 U.S.C. § 112, paragraph 2, for indefiniteness based on the claim term "such that rotation is resisted of a bollard or bollards and the base from an impact again the bollard or bollards," which appears in all claims.  During claim construction briefing, it became apparent that the issues with "resisted" are best understood when in context with the surrounding claim language, so Delta has clarified that Delta contends that the corresponding clause in its entirety is indefinite.  As a courtesy, although not required in invalidity contentions, Delta has also included a brief statement relating to its contention and supporting case law. Also as a courtesy, although not required, Delta added a brief statement relating to its contention that "shallow excavation" is indefinite.

7.     Exhibit A:  Delta has added additional clarifying information relating to the motivation to combine Turpin and the DSC501 references.

8.     Exhibit D:  Delta has deleted, as shown by red lines, portions pertaining to Chen, which is no longer asserted, and other background information that is not part of the Darcy claim chart.  Delta has also added an explanatory cover sheet including a preamble similar to those in Exhibits A-C and E.

9.     Exhibit E:  Delta has added a paragraph explaining its basis for the contention that Darcy is prior art to the '865 Patent.

10.     Delta's remaining amendments are to remove superfluous language that does not apply to its Final Invalidity Contentions and/or to clarify the current status of discovery and expert discovery.

-22-

112614733.3

# CERTIFICATE OF SERVICE

I certify that on ~~April 3~~October 26, 2020, pursuant to Federal Rules of Civil Procedure, a true and correct copy of the foregoing document described as **DEFENDANT DELTA SCIENTIFIC CORPORATION'S ~~PRELIMINARY~~ FINAL INVALIDITY CONTENTIONS** was served on the parties in this action by electronic mail addressed as follows:

Sasha G. Rao
**srao@maynardcooper.com**
Maynard Cooper & Gale, LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 2600
San Francisco, CA 94111.com

Joseph V. Saphia
**JSaphia@haugpartners.com**
Jessica H. Zafonte
**JZafonte@haugpartners.com**
Laura Chubb
**LChubb@haugpartners.com**
HAUG PARTNERS LLP
745 Fifth Avenue, New York, NY 10151

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on ~~April 3~~October 26, 2020 at Glendale, California.

/s/ Stacy Goodwin

655 North Central Avenue
Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

-23-

112614733.3