Sasha G. Rao (SBN 244303)
srao@maynardcooper.com
MAYNARD COOPER & GALE, LLP
600 Montgomery Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 646-4702

Ashe Puri (SBN 297814)
apuri@maynardcooper.com
MAYNARD COOPER & GALE, LLP
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 596-4344

Joseph V. Saphia (admitted *pro hac vice*)
JSaphia@haugpartners.com
Jessica H. Zafonte (admitted *pro hac vice*)
JZafonte@haugpartners.com
Laura A. Chubb (admitted *pro hac vice*)
LChubb@haugpartners.com
HAUG PARTNERS LLP
745 Fifth Avenue, New York, NY 10151
Telephone: (212) 588-0800
Facsimile:  (212) 588-0500

*Attorneys for Plaintiff*
*RSA Protective Technologies, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RSA PROTECTIVE TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>        v.<br><br><br>DELTA SCIENTIFIC CORPORATION,<br><br>    Defendant. | Case No.  2:19-cv-06024-JAK-PLA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO INFRINGEMENT, WILLFUL INFRINGEMENT AND ENHANCED DAMAGES**<br><br>Date: May 17, 2021<br><br>Time: 8:30 A.M.<br><br><br>Judge: Hon. John A. Kronstadt |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.     Introduction ............................................................................................. 1

II.    Background ............................................................................................... 2

    A.  RSA Accuses Delta's DSC600, DSC650, and DSC675, Sold Since 2007-2008, of Infringing the '865 Patent ..................... 2

    B.  ████████████████████████████████████████ .................. 3

    C.  Sale of RSA's Shallow-Mount Bollards Began in 2004-2005 .......................................................................................... 3

    D.  Delta Seemingly Aware of RSA's Shallow-Mount Bollards, Has Not Produced Evidence of Its Own Development .............................................................................. 4

    E.  Delta Abandoned Its DSC600 Patent Application Because of Prior Art, Including RSA's '558 Patent .............. 5

    F.  Delta's President Agreed It Was Plausible That Delta Copied RSA's Shallow-Mount Bollard Invention ................. 6

    G.  The '865 Patent Issued in 2012, and Delta Was Aware by 2018 and Sought Counsel's Advice (Not Relied Upon Here) ............................................................................................... 7

    H.  Despite Its Reexamination Rejection, Delta Relies on Prior Art Already Before the USPTO or Rejected by This Court ............................................................................................ 8

    I.  Delta Concedes Infringement ........................................... 11

    J.  Delta Could Have Easily Designed Around, But Did Not ................. 12

    K.  Delta Has Made Two Baseless Motions to Amend ........................... 12

III.   Legal Standard ....................................................................................... 13

    A.  Federal Rule of Civil Procedure 56, Summary Judgment ................. 13

    B.  Infringement ......................................................................... 13

    C.  Willful Infringement and Enhanced Damages .................................... 13

IV.    RSA Should Be Granted Summary Judgment of Infringement, Willfulness, and Enhanced Damages ..................................... 15

    A.  Delta Admits Infringement, Thus RSA Should Be Granted Summary Judgment ..................................................... 15

i

B.   The Totality of the Circumstances Warrant a Finding of Subjective Willful Infringement ........................................................ 15

1.   Delta Seemingly Copied RSA's Patented Invention ............... 15

2.   Delta Was Aware of the '865 Patent by at Least 2018 .......................................................................................... 16

3.   Delta Failed to Produce Evidence of Good-Faith Defenses, Including an Opinion of Counsel ........................... 17

4.   Delta Could Have Designed Around, But Did Not ................. 19

C.   Delta's Egregious Behavior Results in Enhanced Damages ................................................................................... 20

1.   Delta Had Knowledge of the '865 Patent ............................... 20

2.   Delta Seemingly Copied RSA's Patented Invention (*Read* Factor 1) ........................................................................ 21

3.   There Is No Evidence of Adequate Investigation or Good-Faith Defenses (*Read* Factors 2, 5) ........................... 22

4.   Delta's Litigation Tactics Evidence Bad Faith (*Read* Factor 3) ........................................................................ 23

5.   Delta Infringed Since the '865 Patent Issued, and Failed to Remediate, But Could Have (*Read* Factors 4, 6, 7) ........................................................................ 24

D.   Fees Should Be Awarded for Delta's Unreasonable Conduct .................................................................................... 24

V.   Conclusion ........................................................................................ 25

# TABLE OF AUTHORITIES

## **Cases**

*Advanced Cardiovascular Sys. v. Medtronic, Inc.*,
   CA No. C-95-03577, 2000 U.S. Dist. LEXIS 22648
   (N.D. Cal. Mar. 31, 2000) ..........................................................................21

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................. 13

*Apple Inc. v. Samsung Elecs. Co.*,
   258 F. Supp. 3d 1013 (N.D. Cal. 2017) ................................................passim

*Barry v. Medtronic, Inc.*,
   250 F. Supp. 3d 107 (E.D. Tex. 2017) ..............................................21, 22

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................. 13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   *136 S. Ct. 1923 (2016)* .................................................................13, 14, 20

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
   78 F.3d 1575 (Fed. Cir. 1996) .................................................................. 14

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, CA No. 2:17-cv-07639,
   2020 U.S. Dist. LEXIS 83014
   (C.D. Cal. Apr. 2, 2020) .......................................................................passim

*Kaufman Co. v. Lantech, Inc.*,
   807 F.2d 970 (Fed. Cir. 1986) .......................................................13, 16, 18

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
   988 F.2d 1117 (Fed. Cir. 1993) .............................................................15, 18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ..................................................................................25

*Polara Eng'g Inc. v. Campbell Co.*,
   894 F.3d 1339 (Fed. Cir. 2018) .............................................................15, 18

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992) ...............................................20, 21, 22, 23

*Shiley, Inc. v. Bentley Labs, Inc.*,
    794 F.2d 1561 (Fed. Cir. 1986) ...................................................................... 17

*SRI Int'l, Inc. v. Cisco Sys.*,
    930 F.3d 1295 (Fed. Cir. 2019) ...................................................................... 14

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016) .............................................................. 17, 20

## Statutes

35 U.S.C. § 271(a) .......................................................................................... 13, 15

35 U.S.C. § 284 ................................................................................................... 14

35 U.S.C. § 285 ................................................................................................... 25

## Rules

Fed. R. Civ. P. 30(b)(6) ............................................................................... 2, 23, 24

Fed. R. Civ. P. 56(a) ............................................................................................ 13

## I.    INTRODUCTION

Delta Scientific Corporation ("Delta") has admitted infringement and is, and has been, willfully infringing RSA's patent rights.

First, Delta copied RSA Protective Technologies, LLC's ("RSA") shallow-mount bollard product before the RSA patent issued.  Then, Delta continued its copying *after* the RSA '865 patent issued.  Delta produced no evidence of independent design.  Both Delta's and RSA's products have been listed on the Department of State's certification (important competitive information, which Delta would have likely been aware of).  Delta's President admitted Delta's product was similar to RSA's and the figures of the '865 patent.  Delta's President also admitted that it was "plausible" that Delta copied RSA's design.

Second, there is no dispute that Delta became aware of the '865 patent no later than August 2018, and likely earlier, but continued to sell its infringing product until suit was filed a year later and has not yet ceased.

Third, Delta has not provided evidence that it adequately investigated the '865 patent after it became aware in 2018, or at any time.  Even though Delta thought the '865 patent was important enough to seek advice of counsel, the written response Delta received was not provided as an infringement defense.  Without such evidence, or proof of independent development, Delta has no evidence of a good-faith defense.

Fourth, Delta's defenses are non-existent or frivolous.  As for invalidity, Delta's contentions have failed before the USPTO twice, during prosecution of the '865 patent, and in Delta's own reexamination, and they rely on prior art found not to be "but-for material" to patentability by this court.  Plus, the '865 patent has been upheld as valid in two *inter partes* review proceedings.

Fifth, Delta's President alleges it could have "easily modified" its product to be non-infringing, ***but Delta did not do that***.

1

Finally, Delta's litigation tactics evidence bad faith.  Delta has made two baseless motions to amend and add inequitable conduct claims, and inexcusably failed to comply with the rules governing 30(b)(6) depositions.

Thus, RSA should be granted summary judgment of infringement and willful infringement, and should be awarded enhanced damages and attorney's fees for an exceptional case.

## II.    BACKGROUND

### A.    RSA Accuses Delta's DSC600, DSC650, and DSC675, Sold Since 2007-2008, of Infringing the '865 Patent

On July 12, 2019, RSA filed a complaint against Delta alleging infringement of U.S. Patent No. 8,215,865 ("'865 patent"), "Anti-Ram System and Method of Installation," related to a shallow-mount bollard system for use in protecting buildings from being rammed by vehicles.[1]  RSA accused certain of Delta's shallow-mount bollard products (DSC600, DSC650, and DSC675) of infringing the '865 patent.[2]  Delta has been selling the accused products since approximately 2007-2008 when the DSC600 was introduced to the market, and Delta continues to sell the accused products to this day.[3]

---

[1] *See* Dkt. No. 1; SUF ¶¶ 2, 8; "SUF" refers to RSA's Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Partial Summary Judgment as to Infringement, Willful Infringement and Enhanced Damages, submitted concurrently herewith.

[2] *See* Dkt. No. 1, ¶ 22; Ex. 18, Disclosure of Asserted Claims and Final Infringement Contentions, dated September 28, 2020, pp. 1-3; SUF ¶¶ 3, 9.  "Ex. __" refers to relevant excerpts of the indicated exhibits to the Declaration of Jessica Zafonte, submitted concurrently herewith.

[3] *See* Ex. 19, 30(b)(6) Deposition of David Dickinson, President of Delta, September 30, 2020, Dep. Tr. 45:9-14; Ex. 20, DS00002605-2608; Ex. 21, 30(b)(6) Deposition of Gina Gile, Controller of Delta, September 17, 2020, Dep. Tr. 138:20-21, 139:8-10; SUF ¶¶ 4, 10.

**B.** ███████████████████████████████████

For Delta's infringement, RSA seeks damages adequate to compensate it.[4] Specifically, RSA seeks a reasonable royalty,[5] ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████ ████████████████████ █████████████████████████████████████████[7,8]

**C.    Sale of RSA's Shallow-Mount Bollards Began in 2004-2005**

Leading up to the issuance of the '865 patent and beginning in July 2004, RSA filed a series of provisional patent applications and a continuation patent application (that eventually issued as U.S. Patent No. 7,699,558 ("the '558 patent")) covering its shallow-mount bollard product and to which the '865 patent claims priority.[9]  On April 25, 2005, RSA filed one such provisional patent application, No. 60/674,965.[10]  Included therein was the following image of RSA's shallow-mount bollard product:[11]



Also, included within that provisional patent application, was a February 4, 2005 listing of barrier products certified by the Department of State ("DOS") which

---

[4] *See* Dkt. No. 1, ¶ 59, Prayer for Relief; SUF ¶ 12.

[5] *See* Ex. 23, Response to Defendant Delta Scientific Corporation's First Set of Interrogatories, dated June 17, 2020, pp. 9-10; Ex. 24, Supplemental Response to Interrogatory No. 7 of Defendant Delta Scientific Corporation's First Set of Interrogatories, dated December 11, 2020, p. 3; SUF ¶ 12.

[6] *See* Ex. 25, Expert Report of Neil J. Beaton, dated October 12, 2020, ¶¶ 1-4; SUF ¶ 13.

[7] *See* Ex. 25, at ¶¶ 23, 90, 93; SUF ¶ 14.  Following receipt of additional Delta documentation, Mr. Beaton served an update, although his ultimate conclusion did not change.  *See* Ex. 26, Update to the Expert Report of Neil J. Beaton, dated November 25, 2020, ¶ 5.  Mr. Beaton also served a letter identifying a few

identified RSA's shallow-mount bollards and a few Delta barrier products.[12]  Mr. Dickinson, Delta's President, agreed that the DOS certification would have been important competitive information for Delta to know.[13]  As evidenced by the DOS certification listing, by late 2004/early 2005, RSA's shallow-mount bollard product was already on the market.[14]

### D.    Delta Seemingly Aware of RSA's Shallow-Mount Bollards, Has Not Produced Evidence of Its Own Development

Not too long thereafter, in 2007-2008, Delta seemingly aware of RSA's shallow-mount bollard products due to the DOS certification, Delta's DSC600 shallow-mount bollard came to market.[15]



typographical errors in his expert reports.  *See* Ex. 27, December 14, 2020 letter from Neil J. Beaton to Joseph V. Saphia and Laura Chubb, counsel for RSA.
[8] RSA has concurrently moved for summary judgment as to the reasonable royalty rate to be applied in this case.
[9] *See* Dkt. No. 1, p. 24 ("Related U.S. Application Data"); SUF ¶ 15.
[10] *See generally* Ex. 73, Dickinson Dep. Ex. 10 (Provisional Patent Application No. 60/674,965, RSA-DELTA043814-44049), at RSA-DELTA043814; SUF ¶ 16.
[11] *See id.*, at RSA-DELTA043846; SUF ¶ 17.
[12] *See id.*, at RSA-DELTA043840-42; SUF ¶ 18.
[13] *See* Ex. 19, Dickinson Dep. Tr. 114:11-116:25; SUF ¶ 19.
[14] *See* Ex. 73, Dickinson Dep. Ex. 10, at RSA-DELTA043840-42; SUF ¶ 20.
[15] *See* Ex. 19, Dickinson Dep. Tr. 45:9-14; SUF ¶ 21.
[16] *See id.*, at 45:20-23, 48:1-7, 49:12-16; SUF ¶ 23.
[17] *See id.*, at 45:20-23, 48:1-7, 49:12-16; SUF ¶ 23.
[18] *See id.*, at 50:8-20, 53:12-16, 58:10-14, 59:9-60:13, 62:2-64:1; Ex. 32, Dickinson Dep. Ex. 3 (DS00000131-137); SUF ¶ 24.
[19] *See id.*; SUF ¶ 25.

4

███████████████████████████████████████████████████████

██████████████████████████████████████████.[20]  By August

2007, Delta announced the introduction of DSC600 into the marketplace with a

press release.[21]

### E. Delta Abandoned Its DSC600 Patent Application Because of Prior Art, Including RSA's '558 Patent

Following the introduction of Delta's DSC600 into the market, on March 19,

2008, Delta filed a patent application identifying Harry Dickinson as the inventor

and disclosing an invention intended to cover the DSC600 and DSC650 shallow-

mount bollard products.[22]  Figures 1 and 2 of the Delta patent application were an

embodiment of its shallow-mount bollard invention and similar to the drawing of

the DSC600 product on Delta's website (see table below).[23]

| Fig. 1, Delta's pat. app. | Fig. 2, Delta's pat. app. | DSC600, Delta's website |
|---|---|---|
|  |  |  |

During the prosecution of its patent application, in 2011, Delta submitted and

the examiner considered an information disclosure statement ("IDS") that included

---

[20] *See id.*; SUF ¶ 26.  Mr. Dickinson is currently president and has been running Delta for the last twenty years while reporting to his father, Harry Dickinson, the former president.  *See* Ex. 19, Dickinson Dep. Tr. 39:12-15, 40:8-41:1; SUF ¶ 22.

[21] *See* Ex. 19, Dickinson Dep. Tr. 91:24-92:4, 93:3-94:1; Ex. 33, Dickinson Dep. Ex. 7 (August 14, 2007 Press Release by Delta); SUF ¶ 27.

[22] *See* Ex. 19, Dickinson Dep. Tr. 94:3-95:7, 97:16-25; Ex. 34, Dickinson Dep. Ex. 6 (Delta's shallow-mount bollard patent application, filed March 19, 2008, DS00000139-232); SUF ¶ 28.  Mr. David Dickinson was Delta's 30(b)(6) witness regarding shallow-mount bollard inventions disclosed in Delta's patent applications. *See* Ex. 19, Dickinson Dep. Tr. 37:15-39:10; SUF ¶ 29.

[23] *See* Ex. 19, Dickinson Dep. Tr. 77:16-21, 98:2-24, 99:22-103:22; Ex. 34, Dickinson Dep. Ex. 6, at DS0000189-90; Ex. 71, Dickinson Dep. Ex. 2, pp. 223, 228; SUF ¶ 30.

as prior art RSA's '558 patent, to which the '865 patent is a continuation of and shares the same specification.[24]  Prior to submitting that IDS, in October 2010, Delta's patent attorney commissioned an invalidity study for the '558 patent which concluded that "[t]here are several relevant references not cited in the prosecution of the 558' [sic] patent in question, however, none much better than those already cited.  I have also listed three references that are 'too recent' to be considered for invalidity, however, I included them to show the current state of the art."[25]  At that point, Delta was certainly aware that RSA had patents in the bollard space and thought it important enough to perform an invalidity study.  As its president David Dickinson testified, thereafter, Delta abandoned its patent application because "there was a lot of prior art."[26]

### F. Delta's President Agreed It Was Plausible That Delta Copied RSA's Shallow-Mount Bollard Invention

In June 2009, Delta became more aware of RSA, including a product brochure for a surface mount bollard indicating that patent protection was pending.[27]  Mr. Dickinson did not know if Delta did any further investigation into RSA's patent portfolio at that time, but agreed that if he had been president of Delta then, Delta probably would have investigated.[28]

---

[24] *See* Ex. 35, Patent Application No. 12/077,425, DS00003739-4016, at DS00003749-57; SUF ¶ 31.

[25] *See* Ex. 36, Invalidity Study of the '558 Patent, commissioned in 2010, DS00004052-54; SUF ¶ 32.  The invalidity study included 404/6 as a field of search, which is the same U.S. classification as the '865 patent.  *See id.*, at DS00004052; *See* Dkt. No. 1, p. 24 ("U.S. Cl."); SUF ¶ 33.

[26] *See* Ex. 19, Dickinson Dep. Tr. 103:23-104:13; SUF ¶ 34.

[27] *See id.*, at 110:21-23, 112:15-114:9; Ex. 37, Dickinson Dep. Ex. 9 (DS00000354-360); SUF ¶¶ 35, 36.

[28] *See id.*

Mr. Dickinson agreed that a picture of RSA's shallow-mount bollard (see below) looked similar to Figures 1 and 2 of the Delta patent application for a shallow-mount bollard and Delta's DSC600 product (see table above).[29]



Mr. Dickinson also agreed that the picture of RSA's product from the April 25, 2005 provisional patent application was similar to the Delta product images.[30]  Mr. Dickinson testified that it was plausible that Delta copied RSA's invention.[31]

### G.     The '865 Patent Issued in 2012, and Delta Was Aware by 2018 and Sought Counsel's Advice (Not Relied Upon Here)

As of July 1, 2010, RSA's patent application that led to the '865 patent and the patent applications to which it claims priority were published and publicly available.[32]  On July 10, 2012, the '865 patent issued.[33]



---

[29] *See* Ex. 19, Dickinson Dep. Tr. 104:14-16, 105:23-106:20; Ex. 72, Dickinson Dep. Ex. 8; SUF ¶ 37.

[30] Ex. 19, Dickinson Dep. Tr. 114:11-125:3; Ex. 73, Dickinson Dep. Ex. 10, at RSA-DELTA043814, 43840-42, 846; SUF ¶¶ 38, 39.

[31] Ex. 19, Dickinson Dep. Tr. 114:11-125:3; Ex. 73, Dickinson Dep. Ex. 10, at RSA-DELTA043814, 43840-42, 846; SUF ¶¶ 38, 39.  Mr. Dickinson testified on behalf of Delta regarding: (i) Delta's awareness of RSA; (ii) Delta's awareness of the '865 patent; and (iii) shallow mount bollard inventions disclosed in Delta's patent applications.  *See* Ex. 19, Dickinson Dep. Tr. 37:15-39:10; SUF ¶ 40.

[32] *See* Dkt. No. 1, p. 24 ("Prior Publication Data"); SUF ¶ 41.

[33] *See* Dkt. No. 1, p. 24; SUF ¶¶ 1, 7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

█████████[34]  Again recognizing the importance of RSA's patents, immediately following receipt of the e-mail, Delta sought advice of patent counsel with respect to the '865 patent and patent counsel provided Delta with a written response.[35] Neither evidence of the adequacy of the advice sought, nor the response itself, has been produced or relied upon here.[36]

**H.    Despite Its Reexamination Rejection, Delta Relies on Prior Art Already Before the USPTO or Rejected by This Court**

In May 2019, Delta was served with a subpoena by SecureUSA related to a lawsuit against it by RSA and which requested information from Delta regarding prior art to the '865 patent.[37]  Delta responded in June 2019 with only two patents issued to Darcy, which had been provided to Delta by outside counsel.[38]  Delta did not identify any of its own products as prior art.[39]  Recognizing the importance of the RSA patent, in view of the subpoena, in-house counsel for Delta issued a litigation hold notice.[40]  Delta took a "wait and see" approach, including not engaging counsel to further assess infringement or validity of the '865 patent.[41]

At that time, SecureUSA filed two *inter partes* reviews ("IPR") at the USPTO challenging the validity of the '865 patent, as well as challenging its

---

[34] *See* Ex. 19, Dickinson Dep. Tr. 128:3-15; Ex. 38, Dickinson Dep. Ex. 11 (DS00000365-387); Ex. 39, 30(b)(6) Deposition of Trent Barnes, Delta's In-house counsel, September 22, 2020, Dep. Tr. 34:24-35:8, 36:17-37:1, 39:8-18; SUF ¶ 42.
[35] *See* Ex. 19, Dickinson Dep. Tr. 135:10-137:4; SUF ¶ 43.
[36] SUF ¶ 44.
[37] *See* Ex. 19, Dickinson Dep. Tr. 137:14-16, 138:21-141:1, 143:5-146:5; Ex. 64, Dickinson Dep. Ex. 13 (June 3, 2019 Delta response to SecureUSA subpoena); SUF ¶ 45.
[38] *See id*.; SUF ¶ 46.
[39] *See id*.; SUF ¶ 46.
[40] *See* Ex. 39, Barnes Dep. Tr. 29:5-23; SUF ¶ 47.
[41] *See id*., at 40:12-41:18; SUF ¶ 48.

8

validity in the related district court action.  By November 2019, however, the USPTO had denied institution of both SecureUSA's IPRs.[42]

On July 12, 2019, RSA filed a complaint against Delta alleging infringement of the '865 patent.[43]  Delta did not further seek patent counsel's advice about the '865 patent or take any proactive measures until Delta was sued itself by RSA.[44]  As Delta's in-house counsel testified, Delta seems to have an acute misunderstanding of the presumption of validity that a U.S. patent holds, believing that the other failed patent challenges did not reflect on the validity of the '865 patent because those had not been appealed.[45]  That misunderstanding exists today even though Delta is aware that two IPR petitions and their own re-examination were denied by the USPTO.[46]

On March 27, 2020, Delta filed an *ex parte* reexamination proceeding at the USPTO.[47]  A few days later, Delta's initial invalidity contentions were served and included the reference Turpin, as well as five (5) other references (Chen, Darcy, Hendrix, Einar, and Bruner) that Delta had asserted in the reexamination of the '865 patent pending at the USPTO.[48]

Only three months later, on June 30, 2020, the USPTO denied Delta's reexamination concluding that "[t]he prior art of record does not teach a bollard

---

[42] *See generally* Ex. 41, Decision Denying Institution of *Inter Partes* Review, IPR2019-01162, dated Nov. 21, 2019; Ex. 40, Decision Denying Institution of *Inter Partes* Review, IPR2019-01161, dated Nov. 21, 2019; SUF ¶ 49.

[43] *See* Dkt. No. 1; SUF ¶¶ 2, 8.

[44] *See* Ex. 39, Barnes Dep. Tr. 41:24-43:23; SUF ¶ 50.

[45] *See id*., at 46:2-22; SUF ¶ 51.

[46] *See* Ex. 19, Dickinson Dep. Tr. 149:7-150:2; SUF ¶ 52.

[47] *See generally* Ex. 42, Request for Reexamination of U.S. Patent No. 8,215,865, pp. 1-2; SUF ¶ 53.

[48] *See* Ex. 43, Defendant Delta Scientific Corporation's Preliminary Invalidity Contentions, dated April 3, 2020, p. 4; SUF ¶ 54.

9

structure" as claimed in the '865 patent.[49]  The USPTO determined that the '865 patent is patentable over that prior art.[50]

Shortly after serving its initial invalidity contentions, on April 17, 2020, Delta filed a motion to add a counterclaim for a declaratory judgment of patent unenforceability due to inequitable conduct based upon alleged false representations to the USPTO related to one piece of prior art (Turpin).[51]  On August 14, 2020, this Court denied Delta's motion finding that "[u]nder the proper interpretation of this claim language, Delta has not proposed plausible allegations that Turpin is but-for material to the patentability of the asserted claims of the '865 Patent.  On this ground alone, Delta's request for leave to amend would be futile."[52]

Delta's October 29, 2020 S.P.R. 4.2 Final Invalidity Contentions still include the prior art references: Turpin, Darcy, Hendrix, Einar, and Bruner.[53]  Delta's Final Invalidity Contentions continue to include the Turpin reference that this court found not to be but-for material to patentability.[54]  Turpin and Darcy were before the USPTO during prosecution of the '865 patent when it was issued as patentable,[55] and Darcy, Hendrix, Einar, and Bruner were found immaterial by the USPTO during Delta's failed reexamination.[56]  With respect to Darcy, the USPTO found during Delta's reexamination that it was not even prior art as the '865 patent was entitled to a priority date earlier than Darcy.[57]  Delta continues to rely upon the

---

[49] *See* Ex. 58, *Ex Parte* Reexamination Communication Transmittal Form, Statement of Reasons for Patentability and/or Confirmation, p. 2; SUF ¶ 55.
[50] *See id*; SUF ¶ 56.
[51] *See* Dkt. 41; SUF ¶ 57.
[52] *See* Dkt. 74, p. 4; SUF ¶ 58.
[53] *See* Ex. 45, Revised Final Invalidity Contentions, dated October 29, 2020, pp. 3, 4; SUF ¶ 59.
[54] *See id*., at p. 3; SUF ¶ 60.
[55] *See* Dkt. No. 1, p. 25 ("US Patent Documents"); SUF ¶ 61.
[56] *See* Ex. 58, *Ex Parte* Reexamination Communication, p. 2; SUF ¶ 62.
[57] *See* Ex. 10, Order Granting Request for *Ex Parte* Reexamination, dated April 22, 2020, pp. 8, 9; SUF ¶ 63.

same prior art despite each having been rejected at least once by the USPTO.  Delta also relies upon three of its own non-shallow-mount barriers (DSC501, TT203, and DSC800),[58] which in response to the SecureUSA May 2019 subpoena to produce prior art in Delta's possession, Delta did not even identify or provide.[59]

## I. Delta Concedes Infringement

Delta has no defense of non-infringement.  During discovery, Delta conceded that it will not contest infringement of the asserted claims if they are found to be valid and enforceable.[60]  Delta tried to maintain a non-infringement defense, but concluded it could not reasonably do so as: Delta first responded on May 7, 2020 to an interrogatory seeking Delta's contention of non-infringement that certain claim elements may not be present in the accused products,[61] then on May 18, 2020 Delta supplemented its response to say that it will not contest infringement if the claims are found valid and enforceable,[62] then on May 28, 2020 Delta supplemented its response to clarify that a certain claim construction (that did not materialize) would render one claim non-infringed,[63] then on August 18, 2020 Delta supplemented its response for the third time to withdraw its concession of non-infringement for various reasons,[64] and finally on August 21, 2020 Delta withdrew its third

---

[58] See Ex. 45, Revised Final Invalidity Contentions, p. 4; SUF ¶ 64.

[59] Regardless, Delta's assertion that its own non-shallow-mount barriers are prior art is very weak as they are no different than the prior art already overcome and are either deep mounted and/or do not retain media.  See RSA's Motion for Partial Summary Judgment as to Invalidity filed concurrently herewith.

[60] See Ex. 22, Defendant Delta Scientific Corporation's Supplemental Responses to Plaintiff's First Set of Interrogatories, dated May 18, 2020, p. 4; SUF ¶¶ 6, 65.

[61] See Ex. 46, Defendant Delta Scientific Corporation's Responses to Plaintiff's First Set of Interrogatories, dated May 7, 2020, p. 4; SUF ¶ 66.

[62] See Ex. 22, Delta's Supplemental Responses, p. 4; SUF ¶ 67.

[63] See Ex. 47, Delta Scientific Corporation's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, dated May 28, 2020, p. 5; SUF ¶ 68.

[64] See Ex. 48, Delta Scientific Corporation's Third Supplemental Responses to Plaintiff's First Set of Interrogatories, dated August 18, 2020, pp. 5, 6; SUF ¶ 69.

supplement thereby reinstituting Delta's concession of infringement.[65]  In the end, Delta has no defense of non-infringement; Delta did not even proffer an expert on the issue of non-infringement.  Despite that, Delta continues to infringe the '865 patent.

### J.    Delta Could Have Easily Designed Around, But Did Not

Faced with damages for its infringement of the '865 patent, Delta's President claims that the following statement is accurate: "For many applications, [other Delta products sold since the 1990s] could have been used as-is or ***easily modified*** to compete with designs covered by the '865 patent.  Delta estimates that the cost of designing any such modified design and obtaining certification would be ███████ ██████████"[66]  Delta has failed to make those easy modifications and has chosen instead to market the DSC600, 650 and 675 since 2007-2008 and infringe the '865 patent.

### K.    Delta Has Made Two Baseless Motions to Amend

Having already had one unenforceability claim rejected by this court and in the face of meritless invalidity positions and no non-infringement defense, on December 14, 2020, Delta filed a motion seeking to add a claim of inequitable conduct surrounding the revival of RSA's first patent application filed in 2005 of which the '865 patent is a continuation and based solely on the reasonable acts of a patent attorney, Mr. Gealow, that represented RSA at the time.[67]  As RSA sets forth in its opposition, Delta's motion is baseless and accuses Mr. Gealow, a patent attorney for over 50 years with a flawless record, of wrongdoing, when in fact, he did nothing wrong and each of his actions were in plain sight of the patent office.[68]

---

[65] *See* Ex. 44, Delta Scientific Corporation's Third Supplemental Responses to Plaintiff's First Set of Interrogatories, dated August 21, 2020, p. 5; SUF ¶ 70.
[66] *See* Ex. 30, Deposition of Barbara Luna, December 16, 2020, Dep. Tr. 120:15-23; Ex. 70, Luna Dep. Ex. 7 (LUNA00000006) (emphasis added); SUF ¶¶ 71, 72.
[67] *See* Dkt. No. 90; SUF ¶ 73.
[68] *See* Dkt. No. 93; SUF ¶ 74.

RSA should be granted judgment of infringement and willfulness, and be awarded its fees and enhanced damages because of Delta's egregious behavior.

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 56, Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56, which states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate when there are no "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

### B.    Infringement

Infringement is found when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States … during the term of the patent therefor." 35 U.S.C. § 271(a).

### C.    Willful Infringement and Enhanced Damages

Courts have found willful infringement of a patent through evidence such as deliberate copying, infringer's disregard of infringement, frivolous defenses of invalidity or non-infringement, or infringer's failure to adopt a non-infringing alternative. Under the Supreme Court's *Halo* case, there are no bright line rules in determining willfulness or awarding enhanced damages. *See Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1026-27 (N.D. Cal. 2017). The court should look at the totality of the circumstances in determining whether an infringer acted willfully. *See Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 978-79 (Fed. Cir. 1986). Willful infringement is a "measure of reasonable commercial behavior in the context of the tort of patent infringement." *Hoechst Celanese Corp. v. BP Chems.*

*Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir. 1996). "[I]t is the *circumstances* that transform simple 'intentional or knowing' infringement into egregious, sanctionable behavior, and that makes all the difference." *SRI Int'l, Inc. v. Cisco Sys.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019). "A patentee need only show by a preponderance of the evidence the facts that support a finding of willful infringement." *Id*.

Damages in a patent infringement action are governed by 35 U.S.C. § 284, which states:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ***the court may increase the damages up to three times the amount found or assessed***.

35 U.S.C. § 284 (emphasis added).

In the Supreme Court's decision in *Halo*, it determined that the prior test for finding enhanced damages under the *Seagate* case was too rigid in its requirement of finding objective recklessness of the infringer as it "excludes from discretionary punishment many of the most culpable offenders . . . who intentionally infringes a patent—with no doubts about its validity or any notion of a defense." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1926, 32-33 (2016). "A patent infringer's subjective willfulness, whether intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id*. at 1926. District courts should look at the particular circumstances of the case and the culpability of the infringer at the time of the challenged conduct, and using their discretion, "reserve punishment for egregious cases typified by willful misconduct." *Id*. at 1926-27, 31-34. The patentee must prove enhanced damages by preponderance of the evidence. *See Id*. at 1926-27, 34.

## IV. RSA SHOULD BE GRANTED SUMMARY JUDGMENT OF INFRINGEMENT, WILLFULNESS, AND ENHANCED DAMAGES

### A. Delta Admits Infringement, Thus RSA Should Be Granted Summary Judgment

There is no dispute that Delta infringes the '865 patent under 35 U.S.C. § 271(a). Delta has never been licensed or authorized under the '865 patent.[69] Delta was selling its accused products as early as 2007-2008, as Delta's documentation shows and Delta's President testified. Most importantly, Delta conceded that it will not contest infringement of the asserted claims if they are found to be valid and enforceable. In furtherance of its admission, Delta did not proffer an expert regarding the issue of non-infringement. Thus, there is no genuine factual dispute and summary judgment of infringement should be granted in favor of RSA.

### B. The Totality of the Circumstances Warrant a Finding of Subjective Willful Infringement

Delta has willfully infringed the '865 patent by (1) seemingly copying RSA's patented invention, (2) having knowledge of the '865 patent pre-lawsuit filing, (3) failing to produce evidence of a good-faith belief of non-infringement or invalidity, and (4) failing to "easily modify" to a non-infringing alternative since at least the '865 patent issued. Delta's behavior is egregious, not reasonable commercial behavior, and amounts to willful infringement.

#### 1. Delta Seemingly Copied RSA's Patented Invention

There is no question that Delta has not produced any evidence of independent development of its DSC600 product, and the evidence that exists points to Delta having copied RSA's patented invention. Courts have found willful infringement where the infringer deliberately copied the patented invention. *See Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1353-55 (Fed. Cir. 2018) (affirming willfulness finding given infringer's intentional copying despite a known risk of infringement among other circumstances); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126-27 (Fed. Cir. 1993) (reversing finding of no willfulness where

---

[69] Dkt. No. 1, ¶ 55; SUF ¶¶ 5, 11.

infringer admitted copying without justification and continued the accused activities even after patent issuance); *Kaufman*, 807 F.2d at 978-79.  Even where the infringer copied a patented invention prior to the patent issuing, courts have found that contributes to a finding of willful infringement.  *See Apple*, 258 F. Supp. 3d at 1027-30 (upholding jury's finding of willfulness in part because infringer deliberately copied before patent issued).

Here, RSA's shallow-mount bollard product was on sale, on the market, and publicly available to its competitors in late 2004/early 2005.  In February 2005, RSA's shallow-mount bollard products were listed as certified by the DOS.  Some of Delta's products (not the accused) were also listed.  Delta's President testified that DOS certification would have been important competitive information to Delta.  Delta did not produce any evidence of independent design of its DSC600 product. ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████, and then one month later, Delta launched its DSC600.  Delta's President agreed at deposition that RSA's shallow-mount bollard on sale in 2004/2005 was similar to Delta's later-marketed DSC600.  Most importantly, Delta's President testified that it was plausible that Delta copied RSA's invention.  The fact that Delta has no evidence of independent development of the DSC600 which is admittedly a similar design to RSA's product and it is admittedly plausible that Delta copied RSA's patented product requires the conclusion that Delta's infringement should be found willful.

### 2.    Delta Was Aware of the '865 Patent by at Least 2018

There is no dispute that Delta was aware of the '865 patent by at least 2018, prior to this lawsuit being filed.  A party must have knowledge of a patent to willfully infringe it and willful infringement has been found where the infringer had knowledge at the time infringement began.  *See Apple*, 258 F. Supp. 3d at 1024 (internal citations omitted); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339-42

(Fed. Cir. 2016) (affirming finding of willfulness and enhancement of damages by 50% where infringer had knowledge of the patent at the time of infringement). But just because a party began manufacturing an accused device prior to the issuance of a patent, does not excuse them from willful infringement, as the total circumstances must be considered. *See Shiley, Inc. v. Bentley Labs, Inc.*, 794 F.2d 1561, 1567-68 (Fed. Cir. 1986) (rejecting "that a finding of willful infringement can not stand whenever manufacture of an accused device begins prior to the issuance of a patent"), *cert. denied*, 479 U.S. 1087 (1987).

Here willful infringement should be found even though Delta was already marketing the DSC600 in 2007 before the '865 patent issued. Delta was aware of the '865 patent by at least August 2018 (about a year prior to this lawsuit). Based on that alone, willful infringement should be found.

Delta was also likely aware of the '865 patent prior to August 2018 because of its own prosecution activities related to the DSC600. In the prosecution of its patent application, after the '865 patent published in 2010, Delta submitted prior art to the USPTO, including RSA's '558 patent (of which the '865 patent is a continuation). Delta thought RSA's '558 patent important enough to commission an invalidity study. Then in July 2012, the '865 patent issued. Given Delta's awareness of the '558 patent (in the same family of the '865 patent), it seems likely Delta was aware of the '865 patent when it issued. █████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████. At that time, Delta thought the '865 patent important enough to immediately seek advice of counsel. Delta's awareness of the '865 patent, and its parent patent, prior to the lawsuit being filed here are circumstances warranting a finding of willful infringement.

### 3. Delta Failed to Produce Evidence of Good-Faith Defenses, Including an Opinion of Counsel

There is no dispute that Delta has not produced evidence of a good-faith belief of non-infringement or invalidity at any point in time, including when it first

17

infringed the '865 patent or when it became aware of the '865 patent. Courts have found willful infringement where infringers have taken untenable or frivolous defense positions. *See Kaufman*, 807 F.2d at 978-79 (affirming finding of willfulness and award of double damages based on fact that infringer "faithfully copied the claimed invention, took an untenable position regarding validity of the patent, and presented a frivolous defense of noninfringement"). The focus is on whether the infringer had a good-faith belief at the time of first infringement. *See Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, CA No. 2:17-cv-07639, 2020 U.S. Dist. LEXIS 83014, at *18-19, 25 (C.D. Cal. Apr. 2, 2020) (finding willful infringement where infringer knew of patent, failed in an attempt to invalidate it through an IPR, then accelerated marketing the product, while knowing it would be sued for infringement). "Although a party to litigation may indeed withhold disclosure of the advice given by its counsel, as a privileged communication, it will not be presumed that such withheld advice was favorable to the party's position. We have held that the assertion of privilege with respect to infringement and validity opinions of counsel may support the drawing of adverse inferences." *L.A. Gear*, 988 F.2d at 1126-27 (reversing finding of no willfulness where infringer had no good faith belief of non-infringement, admitted copying without justification and continued the accused activities even after patent issuance); *see Polara Eng'g*, 894 F.3d at 1353-55 (affirming willfulness finding given infringer's intentional copying despite a known risk of infringement, awareness of patent prior to development of accused competitive product, and lack of produced opinion of counsel despite allegedly having obtained one).

At no point in time since Delta began to infringe the '865 patent has Delta had a good-faith belief of non-infringement or invalidity, including as follows:

- In 2010, Delta performed an invalidity study of RSA's '558 patent (the parent of the '865 patent with the same specification) and did not produce the results of the study to evidence a good-faith belief of invalidity;

18

- Delta abandoned its own patent application covering the DSC600 in view of prior art, which included RSA's '558 patent (the parent of the '865 patent).

- In 2018, after the '865 patent issued ███████████████████████ ████████████████████████████████, Delta sought advice of counsel and received a written response. Delta has not produced that advice to evidence a good-faith belief of invalidity or non-infringement.

- Here, Delta admits infringement; lacking a good-faith non-infringement belief.

- In this lawsuit, Delta's invalidity theories are based upon: (i) prior art already before the USPTO in prosecution of the '865 patent; (ii) prior art already before the USPTO in Delta's failed reexamination of the '865 patent; (iii) prior art of Delta's own products that when responding to a third-party subpoena in June 2019 Delta did not identify as prior art; and (iv) prior art found not to be but-for material to patentability by this court in denying Delta's first motion to amend. Plus, not only surviving Delta's reexamination, the '865 patent also survived two IPRs. Delta's invalidity positions do not evidence a good-faith belief.

These circumstances put together demonstrate that Delta has no good-faith belief of non-infringement (it has admitted infringement) or invalidity, and willful infringement should be found.

### 4.    Delta Could Have Designed Around, But Did Not

It is not disputed that Delta claims to have an easy solution to modify certain of its current products to be competitive non-infringing alternatives, but it has not. Courts have found that infringers who choose not to pursue quick non-infringing alternatives are willful. *See Apple*, 258 F. Supp. 3d at 1027-30 (upholding jury's finding of willfulness where infringer deliberately copied before patent issued, continued sale of accused product following notice of patent, chose not to pursue quick non-infringing alternative, and had failed defenses).

Similar to *Apple* where the infringer had a quickly available non-infringing alternative and chose not to pursue it, Delta's President claims that other Delta

products that have been marketed since the 1990s could have been "easily modified" to compete with the shallow-mount bollards covered by the '865 patent. Failing to make these modifications, which Delta could have done at any point since it began marketing DSC600 in 2007, evidences Delta's willful infringement.

**C.    Delta's Egregious Behavior Results in Enhanced Damages**

In assessing whether the circumstances of a case at the time of the challenged conduct warrant enhanced damages under *Halo*, courts have applied the following non-exhaustive guideposts in assessing whether to enhance damages:

(1) whether infringer deliberately copied ideas or design of another;

(2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

(3) the infringer's behavior as a party to the litigation;

(4) defendant's size and financial condition;

(5) closeness of the case;

(6) duration of defendant's misconduct;

(7) remedial action by the defendant;

(8) defendant's motivation for harm; and

(9) whether defendant attempted to conceal its misconduct.

*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992); *Juno Therapeutics*, 2020 U.S. Dist. LEXIS 83014, at *6-7.

**1.    Delta Had Knowledge of the '865 Patent**

As discussed above in Section IV(B)(2), there is no dispute that Delta was aware of the '865 patent by at least 2018, prior to this lawsuit being filed. "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *Apple*, 258 F. Supp. 3d at 1024 (citing *WBIP*, 829 F.3d at 1341)  Even where an infringing product was developed and released prior to the patent issuing, and knowledge of the patent was not until filing of the

lawsuit, a jury's finding of willfulness supports an award of enhanced damages. *See Advanced Cardiovascular Sys. v. Medtronic, Inc.*, CA No. C-95-03577, 2000 U.S. Dist. LEXIS 22648, at *25-27 (N.D. Cal. Mar. 31, 2000).

Here, Delta's DSC600 product was on the market prior to the '865 patent issuance and Delta had knowledge of the '865 patent prior to this lawsuit being filed. Even if Delta was found not to have knowledge until this lawsuit was filed, that still supports a finding of enhanced damages in this case because of Delta's willful infringement.

### 2. Delta Seemingly Copied RSA's Patented Invention (*Read* Factor 1)

As discussed above in Section IV(B)(1), there is no question that Delta has not produced any evidence of independent development of its DSC600 product, and the evidence that exists points to Delta having plausibly copied RSA's patented invention. Courts have awarded enhanced damages where an infringer has copied a patented invention. *See Juno Therapeutics*, 2020 U.S. Dist. LEXIS 83014, at *19-20 (enhancing damages by 50% for bad-faith behavior, even though infringing product was a life-saving treatment, where infringer admitted copying, and failed in its licensing and invalidation attempts). "The proper inquiry under Factor 1 is not limited to a patent itself, but rather the 'ideas or design of another,' including the 'commercial embodiment, not merely the elements of a patent claim.'" *Id.*, at *22-23 (citing *Read*, 970 F.2d at 827); *Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 112-15 (E.D. Tex. 2017) (finding reckless copying supports enhancement and noting that "'slavish copying' of a commercial embodiment is not required," "'[s]moking gun' evidence of copying is also not required," but "recklessness towards copying alone merits some enhancement").

Here, Delta has not produced any evidence of independently designing its DSC600 product. ████████████████████████████████████████
████████████████  At that time, RSA's shallow-mount bollard product (for which the '865 patent was pending) was already on the market and publicly available. Delta's

21

President agreed at deposition that RSA's shallow-mount bollard on sale in 2004/2005 was similar to Delta's DSC600, and the fact that both RSA and Delta had products listed as certified by the DOS would have been important competitively. Most importantly, Delta's President testified that it was plausible that Delta copied RSA's invention. Even without evidence of "slavish copying," the evidence available here and lack of independent design evidence tells a story of plausible copying under factor one that merits enhancement of damages.

### 3. There Is No Evidence of Adequate Investigation or Good-Faith Defenses (*Read* Factors 2, 5)

As discussed above in Section IV(B)(3), there is no dispute that Delta has not produced evidence of a good-faith belief of non-infringement or invalidity at any point, including when it became aware of the '865 patent. "The proper inquiry under *Read* is 'whether the infringer, **when he knew of the other's patent protection**, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed.'" *Juno Therapeutics*, 2020 U.S. Dist. LEXIS 83014, at *25-26 (emphasis added) (citing *Read*, 970 F.2d at 827). Enhancement of damages have been awarded where there is no evidence about the adequacy of an investigation and no evidence of an opinion of counsel letter to show a good-faith belief. *See Barry*, 250 F. Supp. 3d at 115-16 (factor favors enhancement where infringer had pre-suit knowledge of patent, produced no evidence of investigation into patent validity or infringement and no evidence (such as an opinion of counsel letter) of good-faith belief of invalidity at that time); *Apple*, 258 F. Supp. 3d at 1032 (finding enhancement favored where no evidence about "nature, scope, and adequacy" of any investigation after learning of the patent, and no evidence subjectively believed patent not infringed or invalid). In *Juno*, "[e]ven omitting any negative inference (as precluded by § 298 for a finding of willful infringement), the Court determine[d] that no fact testimony was presented regarding a good-faith defense" and enhanced damages. *Juno Therapeutics*, 2020 U.S. Dist. LEXIS 83014, at *27 (finding *Read* factor two weighs in favor of

22

enhancement because although infringer chose to exercise privilege and not present an advice of counsel opinion, infringer was not precluded from presenting fact testimony).

Here, there is no evidence from Delta regarding a good-faith defense. Once Delta received notice of the '865 patent ████████████████████████ ████████████████████████████ sought the advice of counsel and received a written response. Delta has provided no evidence of the adequacy of the investigation and advice it received from counsel regarding non-infringement and invalidity of the '865 patent. Delta has also not provided the written response from counsel to demonstrate a good-faith defense. Now, in fact, Delta admits infringement and maintains frivolous invalidity defenses (see Section IV(B)(3))— prior art before the USPTO in prosecution and Delta's failed reexamination.

There is also no evidence provided by Delta to assess the reasonableness of its actions. This case cannot be close when Delta has no non-infringement position and relies upon previously failed invalidity defenses. Thus, *Read* factors two and five favor enhancement of damages.

### 4.    Delta's Litigation Tactics Evidence Bad Faith (*Read* Factor 3)

There is no dispute that Delta filed two baseless motions to amend and failed to properly prepare two 30(b)(6) witnesses, amounting to bad litigation conduct. *Read* factor three contemplates enhanced damages for an "infringer's behavior as a party to the litigation." *Read*, 970 F.2d at 826-27.

Delta has acted badly in this litigation. Delta's first bad act was its baseless motion to amend to add a counterclaim of unenforceability due to inequitable conduct based upon alleged false representations to the USPTO related to one piece of prior art (Turpin). This Court rejected the underpinnings of Delta's motion finding that Delta provided no "plausible allegations that Turpin is but-for material to the patentability of the asserted claims." Delta's second bad act is failing to prepare Mr. Trent Barnes regarding several 30(b)(6) deposition topics for which

23

RSA then had to depose Mr. Dickinson about, and failing to prepare Ms. Gina Gile about many 30(b)(6) deposition topics resulting in a second deposition of Mr. Keith Bobrosky to cover the same material.[70]  Delta's third bad act is its currently pending motion to amend to add a claim of inequitable conduct surrounding the revival of RSA's first patent application, which baselessly accuses a patent attorney with over fifty years experience of wrongdoing.  These bad acts reflect improper litigation conduct and favor enhancing damages.

### 5.    Delta Infringed Since the '865 Patent Issued, and Failed to Remediate, But Could Have (*Read* Factors 4, 6, 7)

As discussed above in Section IV(B)(4), Delta itself admits that there is remedial action it could have taken since it began infringing.  Courts have enhanced damages where an infringer continued sales after notice of a patent, chose not to pursue an alternative design, and the company's size indicates the alternative design could have been leveraged.  *See Apple*, 258 F. Supp. 3d at 1030-33 (finding enhancement was warranted where infringer deliberately copied, continued sale after notice of patent, chose not to pursue available non-infringing alternative and where size indicated could have leveraged implementation of a non-infringing alternative); *Juno Therapeutics*, 2020 U.S. Dist. LEXIS 83014, at *37-38 (finding factor favored enhancement of damages where infringer was aware of patent and had many years to seek a license before it released its product).

Here, Delta has been selling the accused products since before the '865 patent issued, and alleges that it could have "easily modified" an existing Delta product to a non-infringing alternative.  However, Delta chose not to do so.  Delta's failure to take any remedial action favors enhanced damages.

### D.    Fees Should Be Awarded for Delta's Unreasonable Conduct

Due to Delta's willful infringement, this case is exceptional.  "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35

---

[70] Declaration of Jessica Zafonte, submitted concurrently herewith, ¶ 4; SUF ¶ 75.

U.S.C. § 285.  An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  The party seeking fees must prove the case is exceptional by preponderance of the evidence.  *Id.*, at 557.

Delta's actions—plausible copying of RSA's commercial embodiment, awareness of the '865 patent and continued sale of its products, failure to provide evidence of adequate investigation or good-faith defenses, admission of infringement, maintenance of already-failed invalidity positions in face of a patent that withstood two IPRs and a reexamination, allegation of an easy design around that was not implemented, and bad litigation conduct—warrant a finding of an exceptional case and an award of RSA's attorney's fees.

## V.    CONCLUSION

This court should grant RSA summary judgment of infringement and willful infringement, and award RSA a trebled reasonable royalty of ▇▇▇▇▇▇▇ and RSA's attorney's fees.

Dated: January 19, 2021          /s/ Ashe P. Puri

Sasha G. Rao (SBN 244303)
srao@maynardcooper.com
MAYNARD COOPER & GALE, LLP
600 Montgomery Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 646-4702

Ashe Puri (SBN 297814)
apuri@maynardcooper.com
MAYNARD COOPER & GALE, LLP
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 596-4344

Joseph V. Saphia (admitted *pro hac vice*)
JSaphia@haugpartners.com
Jessica H. Zafonte (admitted *pro hac vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JZafonte@haugpartners.com
Laura A. Chubb (admitted *pro hac vice*)
LChubb@haugpartners.com
HAUG PARTNERS LLP
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 588-0800
Facsimile: (212) 588-0500

*Attorneys for Plaintiff*
*RSA Protective Technologies, LLC*

26

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed via CM/ECF on January 19, 2021 and was served upon all counsel of record via CM/ECF.

/s/ Ashe P. Puri

Ashe P. Puri