Sasha G. Rao (SBN 244303)
srao@maynardcooper.com
MAYNARD COOPER & GALE, LLP
600 Montgomery Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 646-4702

Ashe Puri (SBN 297814)
apuri@maynardcooper.com
MAYNARD COOPER & GALE, LLP
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 596-4344

Joseph V. Saphia (admitted *pro hac vice*)
JSaphia@haugpartners.com
Jessica H. Zafonte (admitted *pro hac vice*)
JZafonte@haugpartners.com
Laura A. Chubb (admitted *pro hac vice*)
LChubb@haugpartners.com
HAUG PARTNERS LLP
745 Fifth Avenue, New York, NY 10151
Telephone: (212) 588-0800
Facsimile:  (212) 588-0500

*Attorneys for Plaintiff*
*RSA Protective Technologies, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RSA PROTECTIVE TECHNOLOGIES, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>DELTA SCIENTIFIC CORPORATION,<br><br>      Defendant. | Case No.  2:19-cv-06024-JAK-PLA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF PATENT VALIDITY AS TO WRITTEN DESCRIPTION AND CLAIM DEFINITENESS**<br><br>Date: May 17, 2021<br><br>Time: 8:30 A.M.<br><br>Judge: Hon. John A. Kronstadt |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

I.      INTRODUCTION ................................................................................. 1

II.     OVERVIEW OF THE '865 PATENT ................................................. 1

III.    LEGAL STANDARD............................................................................ 2

        A.      Written Description ................................................................... 2

        B.      Definiteness ............................................................................... 3

IV.     THE '865 patent is not invalid for lack of written description support or
        indefiniteness ..............................................................................................5

        A.      Written Description ................................................................... 5

                1.      This Issue Has Already Been Determined by the PTO............. 5

                2.      RSA's Expert's Opinion is Consistent with the Findings of the
                        PTO ...................................................................................... 6

                3.      Dr. Eskandarian's Opinion is Not Only Factually Incorrect But
                        Misapplies the Law .............................................................. 8

                4.      Delta's Position is Inconsistent ................................................ 9

        B.      Indefiniteness................................................................................ 10

                1.      RSA's Expert Understood the Scope of the Invention ........... 10

                2.      The Fact Witnesses Understood The Scope of the Invention .. 11

                3.      Dr. Eskandarian's Opinion is Not Only Factually Incorrect But
                        Misapplies the Law ................................................................ 12

                4.      The Court Has Considered This Issue...................................... 13

V.      CONCLUSION.................................................................................... 14

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Allergan, Inc. v. Sandoz Inc.*,
    796 F.3d 1293 (Fed. Cir. 2015) ................................................................. 3

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) ................................................................. 3

*Blue Calypso, LLC v. Groupon, Inc.*,
    815 F.3d 1331 (Fed. Cir. 2016) ................................................................. 3

*Capon v. Eshhar*,
    418 F.3d 1349, (Fed. Cir. 2005) ............................................................... 3

*Enzo Biochem, Inc. v. Applera Corp.*,
    599 F.3d 1325 (Fed. Cir. 2010) ................................................................. 4

*Falko-Gunter Falkner v. Inglis*,
    448 F.3d 1357 (Fed. Cir. 2006) ................................................................. 2

*Immunex Corp. v. Sandoz Inc.*,
    964 F.3d 1049 (Fed. Cir. 2020) ................................................................. 3

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) ................................................................. 3

*Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*,
    No. 06-1066, 614 F. Supp. 2d 1006 (N.D. Cal. Feb. 6, 2009) ...................... 4

*Microsoft Corp. v. i4i Limited Partnership*,
    564 U.S. 91 S. Ct. 2238, 180 L. Ed. 2d 131 (2011)..................................... 4

*Nalpropion Pharms., Inc. v. Actavis Labs. FL, Inc.*,
    934 F.3d 1344 (Fed. Cir. 2019) ................................................................. 3

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)................................................................................. 4

*Nevro Corp. v. Boston Sci. Corp.*,
    955 F.3d 35 (Fed. Cir. 2020) .................................................................... 4

**Statutes**

35 U.S.C. § 112 ................................................................................................................ 1

35 U.S.C. § 112(b) ........................................................................................................... 4

35 U.S.C. § 282 ................................................................................................................ 4

## I.      INTRODUCTION

Delta Scientific Corporation ("Delta") cannot show as a matter of law that the claims of U.S. Patent No. 8,215,865 ("the '865 patent") are invalid under either the written description or definiteness requirements of 35 U.S.C. § 112.  For support, Delta relies solely on the expert opinion of Dr. Azim Eskandarian, who applied an improper legal standard to arrive at his opinion, did not bother to consider opinions from the U.S. Patent & Trademark Office ("PTO") or Delta's own engineers—both Persons Having Ordinary Skill in the Art ("PHOSITA")—and ignored relevant language in the '865 specification and U.S. Provisional applications that clearly would inform a PHOSITA.  Under these circumstances, Delta cannot show by clear and convincing evidence that the claims of the '865 patent are invalid under § 112, and summary judgment should be granted in favor of the plaintiff, RSA Protective Technologies, LLC.

## II.     OVERVIEW OF THE '865 PATENT

The '865 patent, assigned to Plaintiff RSA Protective Technologies, LLC, is titled "Anti-Ram System And Method Of Installation," and describes and claims an anti-ram system and method of constructing shallow mount security bollards.  (Ex. 1).  The '865 patent issued on July 10, 2012 from U.S. Application Ser. No. 12/694,730, which was filed on January 27, 2010.  The '865 patent claims priority to six provisional applications, the earliest of which is dated July 26, 2004.  (Exs. 2-7).

The '865 patent has three independent claims, with independent claim 1 reproduced below, with the claim limitation that Delta argues lacks written description support and is indefinite in bold:

> at least one bollard; and
>
> a base comprising opposed ends and a plurality of structural members which intersect and are tied together, for each bollard of the bollard structure at least one first structural member extending from a first of the opposed

1

ends of the base to a second of the opposed ends of the base in a first direction intersecting with the opposed ends, and at least one structural member extending to intersect with the at least one first structural member;

each bollard being secured to at least one of the at least one first structural member and the at least one structural member of the base for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;
wherein the base is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and

wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base when the base is mounted in the excavation **such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards**.

(Ex. 1, '865 at 9:19-42).  Independent claims 16 and 33 contain the same highlighted limitations of claim 1.  (*Id*. at 10:16-21; 11:8-12:13).  All of the independent claims begin by claiming a bollard structure, in which each bollard is secured to a base that is comprised of "at least one first structural member" and "at least one structural member" that intersect and are tied together.  The independent claims require that one of these two structural members must be attached to the bollard; one of them must extend between opposed ends of the base and intersect with the ends; and that at least one must be configured to retain supporting media, such as concrete, which facilitates the ***bollard structure resisting rotation upon being rammed by a vehicle***.  The independent claims also provide that, upon impact, the ramming forces are distributed from the bollard to the base and that the base is configured to be mounted in a shallow excavation.

## III.   LEGAL STANDARD

### A.   Written Description

"Written description is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date." *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006).  The determination of whether proper

1  written description exists is an "objective inquiry into the four corners of the
2  specification from the perspective of a person of ordinary skill in the art.  Based on
3  that inquiry, the specification must describe an invention understandable to that
4  skilled artisan and show that the inventor actually invented the invention claimed."
5  *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).  The
6  law is clear that "[i]t is ***not necessary*** that the exact terms of a claim be used in haec
7  verba [in these words] in the specification."  *Nalpropion Pharms., Inc. v. Actavis
8  Labs. FL, Inc.*, 934 F.3d 1344, 1350 (Fed. Cir. 2019), citing *Lockwood v. Am.
9  Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (necessary written description
10 support may be provided through the "words, structures, figures, diagrams,
11 formulas, etc., that fully set forth the claimed invention.").  *See also Blue Calypso,
12 LLC v. Groupon, Inc.*, 815 F.3d 1331, 1346 (Fed. Cir. 2016) (finding the Board erred
13 by giving improper weight to the mere fact that exact words from the claim were
14 absent from the text of the written description, because the words it did use "would
15 express the same concept" to a PHOSITA).  Rather, the analysis requires the
16 consideration of how a PHOSITA would understand the specification.  *Immunex
17 Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1063 (Fed. Cir. 2020) (the written description
18 analysis is not limited to the "four corners of the specification" but to the
19 understanding of a PHOSITA).  *See also Capon v. Eshhar*, 418 F.3d 1349, 1357
20 (Fed. Cir. 2005) ("The written description requirement must be applied in the context
21 of the particular invention and the state of the knowledge.").  There is no requirement
22 that a specification contain experimental data or other test results to demonstrate an
23 inventions effectiveness, nor does it require an explanation of how or why an
24 invention will be effective.  *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1308-9
25 (Fed. Cir. 2015).

26     **B.**    **Definiteness**

27     A patent's specification must conclude "with one or more claims particularly
28 pointing out and distinctly claiming the subject matter which the inventor or a joint

1    inventor regards as the invention." 35 U.S.C. § 112(b).  The legal standard for

2    determining indefiniteness is whether the "claims, read in light of the specification

3    delineating the patent, and the prosecution history, fail to inform, with reasonable

4    certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v.*

5    *Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  Functional language in a claim

6    "does not inherently render it indefinite," but rather can "promote[] definiteness

7    because it helps bound the scope of the claims by specifying the operations that the

8    [claimed invention] must undertake." *Nevro Corp. v. Boston Sci. Corp.*, 955 F.3d

9    35, 39 (Fed. Cir. 2020).  Any ambiguity in functional terms may be resolved where

10   the patent "provides a general guideline and examples sufficient to enable a person

11   of ordinary skill in the art to determine the scope of the claims." *Id.*  "In the face of

12   an allegation of indefiniteness, general principles of claim construction apply,"

13   although the burdens are different because a patent is "presumed valid under 35

14   U.S.C. § 282." *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed.

15   Cir. 2010).  Therefore, "[a]s with any other invalidity defense, a defendant asserting

16   indefiniteness must prove that defense by clear and convincing evidence." *Microsoft*

17   *Corp. v. i4i Limited Partnership*, 564 U.S. 91, 95, 131 S. Ct. 2238, 180 L. Ed. 2d

18   131 (2011).  The fact that there may be "conflicting examples" of what a claim term

19   actually means does "not go to the central question whether [the claim term] can

20   actually be understood by a person of ordinary skill in the art." *Medtronic Vascular,*

21   *Inc. v. Advanced Cardiovascular Sys., Inc.*, No. 06-1066, 614 F. Supp. 2d 1006,

22   1030-1 (N.D. Cal. Feb. 6, 2009) (further noting that the court's own repeated use of

23   the allegedly indefinite claim phrase in its claim construction order "suggests that

24   the court's discussion was premised upon an implicit understanding of [this claim

25   term]" and that the "court's easy reliance on the term thus further suggests that it is

26   not indefinite.").

27

28

## IV.   THE '865 PATENT IS NOT INVALID FOR LACK OF WRITTEN DESCRIPTION SUPPORT OR INDEFINITENESS

### A.   Written Description

Delta added its written description validity defense in its final validity contentions, having never contended prior that the claim phrase "rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" is not supported by the specification.  (Ex. 8, Delta's Final Invalidity Contentions in Redline at 18).  Now, solely through its expert Dr. Eskandarian, Delta argues that while the '865 patent specification provides literal support for the limitation that the ***bollards resist rotation***, it does not provide written description that the "the rotation is resisted of a bollard or bollards ***and the base*** from an impact against the bollard or bollards."  (Ex. 9, Eskandarian Opening Report at ¶ 61).  This baseless argument, chosen specifically to avoid adverse decisions from the PTO, is a contrivance.  It is understood by PHOSITAs reading the '865 patent, as it was by the PTO, that resisting rotation of the bollards ***and*** the base upon impact go hand-in-hand.  Thus, when the application was filed, the patentee was in possession of a bollard structure in which the ***bollard and base*** resist rotation upon impact by a vehicle.

### 1.   This Issue Has Already Been Determined by the PTO

The PTO has already identified support for the claim phrase "such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" in the '865 patent's earliest provisional application, Provisional No. 60/591,018.  (Ex. 3).  In the April 22, 2020 office action responding to Delta's Request for Reexamination, the PTO determined that the Darcy reference was not prior art to the '865 patent, because the patent was entitled to the priority date of its earliest provisional application.  In carrying out this analysis, the PTO stated:

> Requester contends that none of these three provisional applications provides support for the limitation "such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards." Upon

> inspection, provisional application no. 60/591,018 discloses a bollard system having a shallow base with bollards attached thereto.
>
> The purpose of the system is to provide a shallow ground mounted base to support an array of anti-ram features. Specification, pg. 1.
>
> On page 3, Item #11 Discusses how to increase resistive forces with post tensioned cables.
>
> Page 4 discloses that the base is formed of modules wherein the modules anti-ram capacities are provided by the width, length and thickness of the modules and that the modules are filled with concrete on-site.
>
> Page 10 states: "modules may be tied with post-tensioned cables to provide greater anti-ram capacity."

(Ex. 10, U.S. Patent & Trademark Office *Ex Parte* Reexamination Communication at 8-9).  The PTO concluded that support for this limitation was therefore found, despite that it was "not expressly stated." (*Id*. at 9).

### 2.    RSA's Expert's Opinion is Consistent with the Findings of the PTO

RSA's expert, Mr. Peraza, opined that a PHOSITA would understand from reading the '865 specification that the entire ***anti-ram bollard system*** resists rotation when impacted, and certainly not just the bollard(s). (Ex. 11, Peraza Rebuttal Report at ¶ 47).  Mr. Peraza points to various instances where the '865 specification describes the invention as a shallow mount "bollard system" or "bollard structure," which are the bollards and base together, and opined that a PHOSITA would understand that this ***entire structure resists rotation upon impact***. (Ex. 11, Peraza Rebuttal Report at ¶ 48, citing Ex. 1, '865 at 2:33-40) ("The bollard system of the invention includes one or more bollards secured to a shallow mounting pad or base.").

Mr. Peraza also provides the opinion that the '865 specification sufficiently describes the specific attributes of the base that allow it to resist rotation, such that a PHOSITA reading the specification would understand that the invention included a

bollard *and base* that resisted rotation when struck.  These included descriptions of the base as having "considerable mass," being filled with concrete such to "add strength and weight to the base or pad," being "heavy," "rigid," and "extended" in order to provide "resistance to stop the rotation of the pipe bollard."  (Ex. 11, Peraza Rebuttal Report at ¶49, citing Ex. 1, '865 at abstract; 3:42; 5:39-41; 2:38-40; 8:7-10).

Mr. Peraza also opines that the '865 specification did, in fact, explicitly speak to the resistance of the base itself, teaching that "it is preferred that the concrete be in contact with the soil or existing concrete at the base of the excavation in order to improve the *resistance* of the lateral motion *of the pad*" (Ex. 1, '865 at 3:48-51) (emphasis added) and that the "base or pad . . . is constructed using a series of structural tube to form a grillage . . . to produce *rigidity of the pad or base against upheaval and torsion forces*."  (Ex. 1, '865 at 3:39-43) (emphasis added).  (Ex. 11, Peraza Rebuttal Report at ¶ 50).

Mr. Peraza also opines in his expert report that the '865 specification describes the physics behind the invention and how it works, and that this discussion of physics would be understood by a PHOSITA to be discussing an anti-ram structure in which the bollard *and base* resist rotation upon impact.  (Ex. 11, Peraza Rebuttal Report at ¶51, citing Ex. 1, '865 at 2:65-3:3) ("The bollard system of this invention works as the crash vehicle strikes the bollard near its top edge translating the forces from that impact to the base of the bollard.  The forces at the base of the bollard are transmitted to the foundation pad or base, and from there into the soil or concrete depending on what the unit is seated on.").

Finally, Mr. Peraza notes that the '865 specification makes numerous references to the fact that the invention prevents a vehicle from "breaching the . . . system," making clear that the inventors were in possession of a system that would not be breached upon ramming by a car.  (Ex. 11, Peraza Rebuttal Report at ¶¶50-1, citing Ex. 1, '865 at 2:60-64) ("In the shallow mount bollard system of this invention

the resistive forces are all at the base of the bollard (at the top of the trench) and therefore reduce the likelihood of the bollard rotating and vehicle breaching the security system."). According to Mr. Peraza, a PHOSITA would recognize that if the bollard base rotated, the vehicle would undoubtedly "breach the system." (Ex. 11, Peraza Rebuttal Report at ¶¶ 50-1). With respect to the crash testing that Dr. Eskandarian wrongfully argues must be included in order for this claim limitation to have written description support, Mr. Peraza testified that the various crash test ratings were merely "categories for the resistance of the system" but were not required for a PHOSITA to understand that the '865 bollard and base resisted rotation. (Ex. 12, Peraza Dep. Tr. at 47:23-48:2).

Mr. Peraza concluded that a PHOSITA would understand from reading these passages in the '865 specification that the invention was one in which the bollard and base resisted rotation (without the extensive disclosures required by Eskandarian), and that a PHOSITA would immediately understand that an anti-ram bollard system in which the ***bollard*** resists rotation means that the bollard's ***base*** will also not rotate upon impact. (Ex. 11, Peraza Rebuttal Report at ¶¶ 47-53). In his opinion, if a bollard base rotated upon impact, the bollard would also, necessarily, rotate as well. (Ex. 11, Peraza Rebuttal Report at ¶ 53). Mr. Peraza testified that "the only way that the base of the bollard or the bottom of the bollard could rotate is if what it's attached to rotated." (Ex. 12, Peraza Dep. Tr. at 61:9-12). In his opinion, a PHOSITA would understand that "resisting rotation" requires satisfying three conditions: 1) that the entire bollard structure as a whole not rotate upon impact, 2) that the bollard not yield, deform, or fail upon impact, 3) that the base not yield, deform, or fail upon impact. (Ex. 11, Peraza Rebuttal Report at ¶ 48).

### 3.    Dr. Eskandarian's Opinion is Not Only Factually Incorrect But Misapplies the Law

Delta's expert, Dr. Eskandarian reaches the opposite conclusion of both the PTO and Mr. Peraza, testifying that "[f]rom the written description and what's

disclosed in this patent, the person of ordinary skill of the art would not understand what's the benefit of this and what's the nature of this patent or this design."  (Ex. 13, Eskandarian Dep. Tr. at 177:3-6).  Not only does Dr. Eskandarian fail to provide support for this statement, but his opinion should be discredited as based on the application of improper law: he opined that neither the '865 patent nor its parent applications contain an "express disclosure of resisting rotation of the base." (Ex. 9, Eskandarian Opening Report at ¶ 63) (emphasis added).  But, there is no legal requirement that there be an express disclosure.  During his deposition, Dr. Eskandarian supported his opinion for lack of written description by stating that:

> the '865 patent . . . does not consider all the material that it's supposed to consider in terms of the impact, in terms of the angle of impact, the velocity of the vehicle, the mass, the energy that the impacting vehicle introduces into the bearer -- excuse me -- the rotation of the bollard and the base, the interaction between the impacting objects and the base. Everything that is required to design a barrier or show the novelty or the newness or the creativity in the barrier is all missing.

> there's no indication whether the barrier is for 15-ton truck, a K level four, a K level 12. There's no indication about the resisting capacity other than just a design of a barrier.

> you have to specify why it is -- how it is resisting. What are its capabilities. What are its limit. What is it resisting. What level of tests is it resisting.

(Ex. 13, Eskandarian Dep. Tr.  pp. 102:14-25; 103:2-5; 169:21-24).  Clearly Dr. Eskandarian is mistaken about the level of specificity required by the written description requirement, somehow conflates novelty with written description, and seems to mandate various test results in order for the written description requirement to be satisfied.  (*See also* Plaintiff's Motion to Preclude Expert Opinion of Dr. Eskandarian under *Daubert*).

### 4.    Delta's Position is Inconsistent

Delta has also taken positions earlier in this case that are inconsistent with its current position.  In its claim construction briefing, Delta argued that "[a] POSITA

9

would understand that a base will inherently resist rotation and that providing any weight (i.e., media) to the base will result in the base being more resistant to rotation upon any impact. This is simple physics." (Dkt. 62 at 5). Therefore, Delta itself already recognized that a PHOSITA would recognize a base that resists rotation, and not just the bollards.

## B.   Indefiniteness

Delta also cannot meet its burden to prove that the '865 patent claims are invalid because the claim phrase "such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" is indefinite. Here again, Delta's argument relies solely on Dr. Eskandarian's mistaken and artificial legal requirements, while ignoring the testimony of fact witnesses who all clearly recognized the scope of the invention.

## 1.   RSA's Expert Understood the Scope of the Invention

RSA's expert, Mr. Peraza provides the opinion that the claim limitation at issue is definite, testifying that "resistance to rotation" was a "property of the structure itself," but that could be determined "based on vehicle weight and speed, either by calculation or by a crash test. (Ex. 12, Peraza Dep. Tr. at 51:10-15). When asked whether the specification required any particular level of impact, Mr. Peraza testified that "it's going to resist rotation of the impact, whatever the impact is." (Ex 12, Peraza Dep. Tr. at 74:17-75:4). When asked whether there was some standard for determining whether the limitation resisting rotation was met or not, Mr. Peraza testified that:

> an engineer would interpret that to mean that number one, there is no overall rotation of the entire unit comes out of the ground for instance.  And number two, there is no failure than a component of the unit.  Any shall we say permanent deformation for example would be a type of failure.  So as long as it doesn't overturn as a unit and as

long as there's no failure of an individual component, the bollard for example, then it has resisted rotation.

(Ex. 12, Peraza Dep. Tr. at 58:22-59:6).  Mr. Peraza also opines that a PHOSITA would know from reading the '865 specification that if a bollard structure provides "resistance to rotation," it means that the striking vehicle does not "breach the system" and that the system works as a result of its structure and the physics involved.  (Ex. 11, Peraza Rebuttal Report at ¶ 56, citing Ex. 1, '865 at 2:60-64; 3:39-52; 5:47-9:3; 2:41-54; 2:65-3:20; 3:65-4:14; 4:25-29).  Therefore a system that does not have sufficient resistance to rotation, would be a system that would be breached.   (Ex. 12, Peraza Dep. Tr. at 73:1-14).   A PHOSITA reading the specification of the '865 patent would be informed from these descriptions what is meant by the claim term "rotation is resisted" and how it would be measured.  (Ex. 11, Peraza Rebuttal Report at ¶ 57).  Even Dr. Eskandarian's own report explains the various testing criteria, known to PHOSITAs, designed to demonstrate whether a barrier could resist rotation from various types of crashes, therefore pass the test. (Ex. 9, Eskandarian Opening Report at ¶¶ 39, 41, 44-5).  A PHOSITA would read the '865 claims in light of this knowledge.  In fact, even the '865 specification refers to one of these rating systems, the Department of State's system.  (Ex. 1, '865 at 5:50-1) ("The plate would need a minimum depth 5" to qualify as a DOS rated system.").

## 2.    The Fact Witnesses Understood The Scope of the Invention

Mr. Peraza's expert opinion is consistent with testimony from various fact witnesses, who made clear that it was general knowledge in the field that the claim limitation "such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" meant that the bollard structure stopped a vehicle.   When co-inventor and engineer John Crawford was asked about the meaning of a bollard "resisting rotation," he testified that "the whole point is you don't allow it to rotate more than a little bit, you know, and that rotation is what

11

you're trying to control with everything you're doing." (Ex. 14, Crawford Dep. Tr. at 106:25-107:25). John Friend, the head of Delta's engineering department with a 30-year tenure at Delta, and a PHOSITA, testified that he understood that a bollard structure that "resisted rotation" meant that the "device intended to resist the ramming by a vehicle at speed" and that in the industry, an anti-ram system was one that resists penetration of a vehicle trying to harm either persons or property. (Ex. 15, Friend Dep. Tr. at 51:1-10). Notably, in reaching his opinion, Dr. Eskandarian did not consider the testimony of any witnesses, much of which is inconsistent with his expert report.

### 3.    Dr. Eskandarian's Opinion is Not Only Factually Incorrect But Misapplies the Law

Dr. Eskandarian's opines that the '865 specification does not "describe, or even suggest how resistance to rotation is determined," and fails to teach: "[w]hat constitutes insufficient resistance to rotation vs sufficient resistance to rotation?," "[w]hat is the impact force?," "[w]hat are the dimensions of the base that must be extended / how much should it be extended?," and "[w]hat degree of rotation (short of complete prevention) is resistance?" (Ex. 9, Eskandarian Opening Report at ¶¶ 65-6). He therefore concludes that the claim phrase "such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards" is indefinite because it "fails to inform with reasonable certainty." (Id., at ¶ 67). When asked during his deposition to clarify, he testified:

> It doesn't have the reasonable certainty to explain to a person of ordinary skill in the art the nature of rotation, the magnitude, the design capability or capacity. It's just all in uncertain terms. There's no specificity in this '865 that will tell a person of ordinary skill the capacity of this -- the resisting capacity of this design.
>
> I am saying that it does not have enough specifics, enough details that is required to teach the capacity of this bollard, the rotation of the bollard, the bollard and the base. The capacity to resist to -- what to -- there is no specificity that supports this claim that it is resisted -- resists what? Does it resist a toy vehicle? Does it resist a 15-ton vehicle? How much does it rotate. Does it consider the interaction with

12

1  the vehicle? So it's lacking the sufficient details that a person with a skill in the art will understand what is this patent for.

2

3  (Ex. 13, Eskandarian Dep. Tr. at 104:20-106:19).  In Dr. Eskandarian's view, unless

4  every last piece of detail is explicitly described in the claims, including test results,

5  the claims are indefinite.  Dr. Eskandarian ignores the central issue, i.e., whether a

6  PHOSITA would after considering the patent understand the scope of the invention

7  with reasonable certainty.  His argument seems to be that because various tests exist

8  to assign ratings to the crash worthiness of anti-ram barrier, the claim is indefinite

9  for not specifying which, if any, of these tests it meets.  This is not the law.

10  It is also unclear how Dr. Eskandarian can maintain his indefiniteness

11  position, while simultaneously concluding in his invalidity arguments under sections

12  §§102 and 103 that various other pieces of prior art disclose this limitation with

13  much less support.  For instance, Dr. Eskandarian testified that he could tell just by

14  looking at the specification drawing of the TT203 that it resists rotation, despite

15  having no test or other data that he argues would be necessary for the '865 claims

16  not to be indefinite.  When asked whether he knew if the prior art TT203 bollards

17  "actually do resist rotation upon impact," he testified that "from the structure -- the

18  way the structure seems and the way that it's constructed from the upper and lower

19  plate and the assembly and other parts that are mentioned in my report, it should

20  resist rotation."  (Ex. 13, Esk. Dep. Tr. at 255:6-23).  Dr. Eskandarian similarly

21  concludes that the invention subject of the Darcy application resisted rotation,

22  despite identifying no such support in its specification, and evidence to the contrary.

23  (Ex. 9, Eskandarian Opening Report at ¶230; Ex. 11, Peraza Rebuttal Report at ¶

24  ¶181-185).  Delta and its expert cannot have it both ways—either a PHOSITA can

25  understand the boundaries and scope of this claim limitation or not.

26  **4.      The Court Has Considered This Issue**

27  When this Court issued its tentative ruling on claim construction, it stated that

28  it did not believe the claim phrase "rotation is resisted" was indefinite and that Delta

13

had not submitted clear and convincing evidence to support such a conclusion. (Ex. 16, Tentative Markman Order at 7, fn. 3). Dr. Eskandarian has provided no additional evidence though apart from conclusory statements. (Ex. 9, Eskandarian Opening Report at ¶¶ 64-7). In fact, when the Court considered this issue, it arrived at the same conclusion, i.e., the claim phrase "rotation is resisted" means what is says, concluding that the claim phrase did not require construction. (Ex. 16, Tentative Markman Order at 7). Delta ultimately agreed that the claim term "rotation is resisted" did not need to be construed by the Court because it had a plain and ordinary meaning to a PHOSITA. (Dkt. 69).

## V.   CONCLUSION

For the reasons stated above, the Court should grant this Summary Judgment Motion and eliminate these issues from trial.


Dated: January 19, 2021                    /s/ Ashe P. Puri

                                          Sasha G. Rao (SBN 244303)
                                          srao@maynardcooper.com
                                          MAYNARD COOPER & GALE, LLP
                                          600 Montgomery Street, Suite 2600
                                          San Francisco, CA 94111
                                          Telephone: (415) 646-4702

                                          Ashe Puri (SBN 297814)
                                          apuri@maynardcooper.com
                                          MAYNARD COOPER & GALE, LLP
                                          1925 Century Park East, Suite 1700
                                          Los Angeles, CA 90067
                                          Telephone: (310) 596-4344

                                          Joseph V. Saphia (admitted *pro hac vice*)
                                          JSaphia@haugpartners.com
                                          Jessica H. Zafonte (admitted *pro hac vice*)
                                          JZafonte@haugpartners.com
                                          Laura A. Chubb (admitted *pro hac vice*)
                                          LChubb@haugpartners.com
                                          HAUG PARTNERS LLP
                                          745 Fifth Avenue
                                          New York, New York 10151
                                          Telephone: (212) 588-0800

Facsimile: (212) 588-0500

*Attorneys for Plaintiff*
*RSA Protective Technologies, LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**CERTIFICATE OF SERVICE**

2

     The undersigned hereby certifies that the foregoing document was filed via

3

CM/ECF on January 19, 2021 and was served upon all counsel of record via

4

CM/ECF.

5

6

                      <u>/s/ Ashe P. Puri</u>

7

                      Ashe P. Puri

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28